UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RICHARD PRATT and LARRY JONES,
individually and
on behalf of all others similarly situated,

        Plaintiffs,                Case No. 1:21-cv-11404

v.                                                Honorable Thomas L. Ludington
                                                     United States District Judge

KSE SPORTSMAN MEDIA, INC.,
d/b/a
OUTDOOR SPORTSMAN GROUP, INC.,

        Defendant.
_____/

**OPINION AND ORDER GRANTING AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

Defendant has filed a motion to dismiss Plaintiffs' Complaint, which alleges violations of the Preservation of Personal Privacy Act (PPPA),[1] MICH. COMP. LAWS § 445.1711 *et seq. See* ECF No. 17. As explained hereafter, Defendant's Motion to Dismiss will be granted and denied in part.

I.

This case arises from Defendant's alleged disclosure of Plaintiffs' "Private Reading Information" to several data miners that "disclosed their information to aggressive advertisers,

---

[1] Although other courts have referred to the Michigan statute as the "Video Rental Privacy Act" (VRPA), the Michigan Supreme Court has referred to it as the Preservation of Personal Privacy Act (PPPA), which will be used herein. *See Deacon v. Pandora Media, Inc.*, 885 N.W.2d 628, 629 n.1 (Mich. 2016). Michigan amended the PPPA in May 2016. 2016 Mich. Pub. Acts No. 92 (codified at MICH. COMP. LAWS § 445.1711 *et seq.*). The version of the Act in effect before the May 2016 amendment and codified at Michigan Compiled Laws §§ 445.1711–1715 (effective through July 30, 2016), will be called the "PPPA" herein. The version of the Act currently in effect will be called the "2016 PPPA" herein.

political organizations, and non-profit companies," leading to "a barrage of unwanted junk mail." ECF No. 1 at PageID.1–2.

Defendant KSE Sportsman Media, Inc. is a Colorado corporation with its headquarters and principal place of business in New York, New York. *Id.* at PageID.7. Doing business as Outdoor Sportsman Group, Inc.,[2] Defendant publishes several subscription magazines, including *Guns & Ammo*, *RifleShooter*, and *Handguns*. *See id.* at PageID.1, 7–8. Plaintiffs Richard Pratt and Larry Jones, paying subscribers of *Guns & Ammo*, *RifleShooter*, and *Handguns*, filed a class-action complaint individually and on behalf of all others similarly situated. *Id.* at PageID.1.

On June 15, 2021, Plaintiffs filed a complaint alleging that Defendant violated the PPPA. ECF No. 1. Specifically, Plaintiffs contend that Defendant "rents, exchanges, or otherwise discloses its customers' [private] information," including "full names, titles of publications subscribed to, and home addresses (collectively 'Private Reading Information'), as well as . . . age, gender, income, marital status, occupation, and hunting license status" to data miners "without the written consent of its customers." *Id.* at PageID.4. Because Defendant does not sell exclusive rights to the information, Plaintiffs explain, Defendant "is able to disclose the information time and time again to countless third parties." *Id.* Plaintiffs warn that this practice is extraordinarily dangerous, as the buyers could filter the information to uncover "particularly vulnerable members of society," for example, "women . . . over the age of 40, possess a hunting license, and make over $80,000.00 per year." *Id.* at PageID.5. Plaintiffs conclude that Defendant's "rental, exchange, and/or disclosure of its customers' Private Reading Information" violates the [PPPA], because Defendant "does not obtain its customers' written consent." *Id.* at PageID.5.

---

[2] Defendant purports to be "the largest media company devoted to bringing the best content and entertainment to America's 80-million+ outdoor enthusiasts." *We Create*, OUTDOOR SPORTSMAN GRP. (2022), https://www.outdoorsg.com/ [https://perma.cc/HVM9-PBHE].

On November 24, 2011, Defendant filed a Motion to Dismiss, advancing two arguments. *See* ECF No. 17. First, Defendant contends that Michigan's three-year statute of limitations, which applies to "death of a person or *for injury to a person* or property," bars Plaintiffs' PPPA claims. *See id.* at PageID.578–91. According to Plaintiffs, who filed the Complaint on June 15, 2021, their PPPA claims accrued between June 15, 2015 and July 30, 2016. ECF No. 20 at PageID.627; *see* ECF No. 1 at PageID.3–4, 23. Second, Defendant claims that if Michigan's six-year statute of limitations applies instead of the three-year statute of limitations, then Plaintiffs lack an injury in fact sufficient to establish Article III standing. *See* ECF No. 17 at PageID.591–94.

Before addressing the merits of Defendant's Motion, this Court will provide some background of the PPPA and the two Michigan statutes of limitations at issue.

## II.

### A.

Effective January 1, 1963, Michigan passed the Revised Judicature Act, which completely overhauled the organization and jurisdiction of Michigan's court system. *See* 1961 Mich. Pub. Acts No. 236. Among its numerous changes, the Act revised "the time within which civil actions and proceedings may be brought in the courts." *Id.* To that end, the Michigan legislature enacted two statutes relevant to this case: Michigan Compiled Laws § 600.5805 and 600.5813. *See* JOINT COMM. ON MICH. PROCEDURAL REVISION, FINAL REPORT, PART I, COMMITTEE REPORT AND RECOMMENDATIONS, at 366–68 (1959) [hereinafter JOINT COMM. FINAL REPORT].

Although titled "Injuries to persons or property," Michigan courts refer to § 600.5805, as the "general tort statute of limitations because it is 'a compilation of the limitations on the general tort remedies.'" *Miller-Davis Co. v. Ahrens Constr., Inc.*, 802 N.W.2d 33, 38 (Mich. 2011) (quoting JOINT COMM. FINAL REPORT, at 309). Michigan's legislative history indicates that §

600.5805's purpose was to codify the "[e]xisting time periods" for traditional torts. *Sam v. Balardo*, 308 N.W.2d 142, 154 (Mich. 1981) (citing JOINT COMM. FINAL REPORT, at 309).

For personal injuries that are not traditional torts, the Michigan legislature enacted Michigan Compiled Laws § 600.5813. Michigan's six-year statute of limitations "is a residual, or 'catch-all' period . . . which takes effect if no other subsection applies." Kevin Tierney, *Contracts*, 18 WAYNE L. REV. 265, 293 n.132 (1972) (comparing MICH. COMP. LAWS ANN. § 600.5807 (1968), with *id.* § 600.5805 (1968)).

These two statutes have worked in tandem for many years. Although litigants have tried to kick sand over the line, § 600.5805 provides a three-year statute of limitations "for damages for injuries to persons or property," while § 600.5813 sets a six-year limit for actions "not based on a contract" that alleged an injury "to some other legally protected interest." *Id.*

**B.**

On May 10, 1988, Congress enacted the Video Privacy Protection Act of 1988 (VPPA). Pub. L. No. 100-618, § 2, 102 Stat. 3195 (codified as amended at 18 U.S.C. § 2710). Congress enacted the VPPA "after a newspaper 'published a profile of [Supreme Court nominee and then D.C. Circuit] Judge Robert H. Bork[,]' which contained the titles of 146 films he and his family had rented from a local video store." *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1252 (11th Cir. 2015) (quoting S. Rep. No. 100-599, 2d Sess., at 5 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 4342); *see also Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 621 (7th Cir.2014) (recounting the history of the VPPA). Recognizing, as Justice Brandeis had decades earlier, that "subtler and more far reaching means of invading privacy have become available," *Olmstead v. United States*, 277 U.S. 438, 473 (1928) (Brandeis, J., dissenting), the VPPA sought "to preserve personal privacy with respect to the rental, purchase, or delivery of video tapes or similar audio

visual materials," as "[t]hese activities are at the core of any definition of personhood." 134 Cong. Rec. S5,396–08, S5,397–01 (May 10, 1988) (statements of Sen. Patrick Leahy).

Effective March 30, 1989, Michigan enacted the Preservation of Personal Privacy Act of 1988 (PPPA). 1988 Mich. Pub. Acts No. 378. The PPPA "lacks any significant litigation history." *Halaburda v. Bauer Publ'g Co.*, No. 12-CV-12831, 2013 WL 4012827, at *2 (E.D. Mich. Aug. 6, 2013). What can be said of the PPPA is that it "provid[es] greater protections than the federal VPPA, including protection of book purchase or borrowing records." Chad Woodford, Comment, *Trusted Computing or Big Brother? Putting the Rights Back in Digital Rights Management*, 75 U. COLO. L. REV. 253, 284 n.155 (2004) (citing MICH. COMP. LAWS § 445.1712).

The original version of the PPPA contained a "$5,000-per-incident statutory damages provision." *Coulter-Owens v. Time Inc.*, 695 F. App'x 117, 121 (6th Cir. 2017) (unpublished). Effective July 31, 2016, however, the Michigan legislature amended the PPPA to remove statutory damages, leaving only actual damages, damages for emotional distress, and reasonable costs and attorney's fees. 2016 Mich. Pub. Acts No. 92.

As a matter of first impression, the heart of this case is whether § 600.5805(2) or § 600.5813 applies to the pre-2016 PPPA. If § 600.5813 applies, then Plaintiffs may recover statutory damages actual damages, damages for emotional distress, and reasonable costs and attorney's fees if successful. If § 600.5805(2) applies, then Plaintiffs' claims are time-barred.

**III.**

Under Rule 12(b)(6), a pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the court construes the pleading in the nonmovant's favor and accepts the motion's factual allegations as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th

Cir. 2008). The nonmovant need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," but the court need not accept as true the complaint's legal conclusions. *Iqbal*, 556 U.S. at 678–79 (quotations and citation omitted).

In addition to these general principles, the Sixth Circuit has emphasized that because the statute of limitations is an affirmative defense, a 12(b)(6) motion to dismiss "is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). Yet there are exceptions to this general rule, including "[i]f the allegations, for example, show that relief is barred by the applicable statute of limitations." *Jones v. Bock*, 549 U.S. 199, 215 (2007) (citing FED. R. CIV. P. 8(c)).

Michigan's substantive law applies because jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Jackson v. Ford Motor Co.*, 842 F.3d 902, 907 (6th Cir. 2016); *see also Blaha v. A.H. Robins & Co.*, 708 F.2d 238, 239 (6th Cir. 1983) (per curiam) ("Pursuant to the *Erie* doctrine, state statutes of limitations must be applied by federal courts sitting in diversity." (citing *Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99 (1945))). *See generally Coulter-Owens*, 695 F. App'x 117 (applying Michigan law in a diversity action brought under the PPPA).

Plaintiffs brings their claims under § 2 of the PPPA, which provides that:

> Except as provided in [Michigan Compiled Laws § 445.1713] or as otherwise provided by law, a person, or an employee or agent of the person, engaged in the business of selling at retail, renting, or lending books or other written materials, sound recordings, or video recordings shall not disclose to any person,

other than the customer, a record or information concerning the purchase, lease, rental, or borrowing of those materials by a customer that indicates the identity of the customer.

MICH. COMP. LAWS § 445.1712.[3]

With this background in mind, this Court will address Defendant's statute-of-limitations argument, *infra* Part IV, and then Defendant's standing argument, *infra* Part V. Admittedly, this is an unusual order to address the issues. But Defendant's standing argument conflates the resolution of the statute-of-limitations argument with Article III's injury-in-fact requirement for standing.

### IV.

Defendant contends that the three-year statute of limitations from Michigan Compiled Laws § 600.5805(2) governs Plaintiff's Complaint, because it governs "all actions for injury to a person, including invasion of privacy claims." *See* ECF No. 17 at PageID.578–91.

### A.

As relevant, § 600.5805(2) provides:

> A person shall not bring or maintain an action to recover damages for injuries to persons or property unless, after the claim first accrued to the plaintiff or to someone through whom the plaintiff claims, the action is commenced within . . . 3 years after the time of the death or injury for all actions to recover damages for the death of a person or for injury to a person or property.

MICH. COMP. LAWS §§ 600.5805(1)–(2).

---

[3] In May 2016, the Michigan legislature amended the PPPA. *See* S.B. 490, 98th Leg., Reg. Sess., P.A. No. 92 (Mich. 2016) (codified at MICH. COMP. LAWS § 445.1711 *et seq.*). The 2016 amendment, effective July 31, 2016, does not apply retroactively to claims that accrued before July 31, 2016. *See Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427, 439–41 (S.D.N.Y. 2016) (holding that "the amendment to the [PP]PA does not apply to Plaintiffs' claims, and the Court will assess the sufficiency of those claims under the law as it was when Plaintiffs' claims accrued." (citing *Landgraf v. USI Film Prods.*, 511 U.S. 224, 286 (1994))). The pre-2016 version of the PPPA applies to this case because Plaintiffs' claims accrued and thus vested before July 31, 2016. *See Horton v. GameStop Corp.*, 2018 WL 8335635, at *2–3 (W.D. Mich. Sept. 28, 2018).

Under § 600.5805(2), Defendant explains, if the claim "alleges an injury to [a] person, and . . . mirrors a claim traditionally recognized in tort, then the claims are subject to the three-year limitations period." ECF No. 17 at PageID.579. Defendant reasons that the PPPA "parallels traditional tort claims for invasion of privacy," because it "protects individuals' privacy rights." *Id.* at PageID.580 (emphasis omitted). Defendant elaborates that Michigan Compiled Laws § 600.5813,[4] the statute of limitations "on which Plaintiffs apparently rely," "only applies if neither [MCL] § 600.5805 nor [MCL] § 600.5807 applies."[5] *Id.* at PageID.579 n.3 (citing *Loc. 1064, RWDSU AFL-CIO v. Ernst & Young*, 535 N.W.2d 187, 189–90 (Mich. 1995)). Under this analysis, Defendant adds, Michigan "courts routinely apply the three-year statute of limitations in cases alleging invasions of privacy." *Id.* at PageID.580 (collecting cases). Plaintiffs' PPPA claim alleges invasions of privacy, Defendant asserts, because "Plaintiffs specifically allege that [Defendant] caused personal injury . . . by putting them at risk of physical injury." *Id.* at PageID.586. Defendant also notes that, in some unrelated cases, Plaintiffs' counsel "admitted that claims under the [PPPA] are governed by the three-year statute of limitations." *Id.* at PageID.587. Defendant concludes that the PPPA's codification "does not change the analysis." *Id.* at PageID.589.

Plaintiffs respond that Defendant's argument that § 600.5805(2) applies "fails as a matter of law because . . . a claim for violation of a statute that does not itself provide a limitation period—such as the [PPPA]—is governed by the six-year limitation period set forth in M.C.L. § 600.5813." ECF No. 20 at PageID.614. Plaintiffs elaborate that the Sixth Circuit explicitly held that §

---

[4] Section 600.5813 provides that "[a]ll other personal actions shall be commenced within the period of 6 years after the claims accrue and not afterwards unless a different period is stated in the statutes." MICH. COMP. LAWS § 600.5813.
[5] Section 600.5807 provides the statute of limitations for "an action to recover damages or money due for breach of contract or to enforce the specific performance of the contract." MICH. COMP. LAWS § 600.5807.

600.5813 applies to statutory causes of action that contain no statute of limitations. *Id.* (citing *Palmer Park Square, LLC v. Scottsdale Ins.*, 878 F.3d 530, 539–40 (6th Cir. 2017)). Plaintiffs emphasize that the Sixth Circuit's case "relies on, and is firmly supported by, [two] decisions of the Michigan Court of Appeals." *Id.* at PageID.614–15 (first citing *DiPonio Constr. v. Rosati Masonry Co.*, 631 N.W.2d 59, 66 (Mich. Ct. App. 2001); and then citing *Dep't of Env't Quality v. Gomez*, 896 N.W.2d 39, 50 (Mich. Ct. App. 2016)). Plaintiffs bolster their position with twelve pages of federal and Michigan precedent holding that § 600.5813 applies to codified causes of action. *See id.* at PageID.615–27. Plaintiffs conclude that their "claims are timely, and the Motion [to Dismiss] should be denied." *Id.* at PageID.627.

**B.**

A six-year statute of limitations applies to PPPA claims. MICH. COMP. LAWS §§ 445.1711 *et seq.*, 600.5813. The long and the short of the legal analysis is that (1) Michigan law governs this question, (2) no controlling Michigan authority is directly on point, (3) Michigan courts look to federal law in the absence of controlling Michigan law, (4) the Sixth Circuit has released a published opinion interpreting Michigan law to resolve this issue, and (5) published Sixth Circuit precedent is controlling authority for this Court. *See generally Palmer Park*, 878 F.3d at 539–40.

Although not directly addressing the PPPA—a statute—the Michigan Court of Appeals, the United States Court of Appeals for the Sixth Circuit, and the United States District Court for the Eastern District of Michigan have each explicitly held that Michigan Compiled Laws § 600.5813 applies to statutory causes of action. *Estes v. Idea Eng'g & Fabrications, Inc.*, 649 N.W.2d 84, 89 (Mich. Ct. App. 2002) (holding that the six-year "catch-all" period of limitation applies when the right to recovery arises from a statute); *Olschefski v. Northville Pub. Schs.*, No. 229770, 2002 WL 1482610, at *3 (Mich. Ct. App. July 9, 2002) (citing *Estes* to reverse a Michigan

court for not applying Michigan's six-year statute of limitations to a statutory cause of action); *Palmer Park Square, LLC v. Scottsdale Ins.*, 878 F.3d 530, 540 (6th Cir. 2017) ("[T]he Michigan Court of Appeals similarly held that the residual six-year statute of limitations in § 600.5813 applies to statutory causes of action, including those for civil fines."); *accord Smith v. Smith*, No. 19-10330, 2020 WL 2308683, at *3 (E.D. Mich. May 8, 2020). But that is not the entire story.

## C.

As Defendant contends, Michigan created the PPPA "to protect individual consumers from certain disclosures of their personal information." *Halaburda v. Bauer Publ'g Co.*, No. 12-CV-12831, 2013 WL 4012827, at *6 (E.D. Mich. Aug. 6, 2013).

The Michigan legislature enacted the PPPA shortly after Congress enacted the federal Video Privacy Protection Act (VPPA), 18 U.S.C. § 2710. *Lin v. Crain Commc'ns Inc.*, No. 19-11889, 2020 WL 248445, at *2 (E.D. Mich. Jan. 16, 2020). Originally passed "as a criminal statute without any private right of action," the Michigan legislature amended the PPPA "in 1989 to add a civil cause of action." *Boelter v. Advance Mag. Publishers Inc.*, 210 F. Supp. 3d 579, 586 (S.D.N.Y. 2016). Like the VPPA, the PPPA aims to "'preserve personal privacy with respect to the purchase, rental, or borrowing' of written materials, sound recordings, and video recordings." *Lin*, 2020 WL 248445, at *2 (quoting 1988 Mich. Pub. Acts No. 378 at 1559); *see also* discussion *supra* notes 1, 3.

Effective July 31, 2016, the Michigan legislature amended the PPPA to remove its $5,000 statutory-damages provision, requiring plaintiffs to prove "actual damages" to recover. *See* 2016 Mich. Pub. Acts No. 92 (codified at MICH. COMP. LAWS § 445.1715(2)(a)–(b)); *see also Perlin v. Time Inc.*, 237 F. Supp. 3d 623, 634 (E.D. Mich. 2017) (reasoning that the PPPA's amendment "was essentially a deletion of an entire cause of action.").

After the Michigan legislature amended the PPPA, a few federal courts released opinions that assumed the three-year statute of limitations from § 600.5805(2) applied to the PPPA. *See, e.g.*, *Edwards v. Hearst Commc'ns, Inc.*, No. 15CV9279ATJLC, 2017 WL 6458612, at *7 (S.D.N.Y. Dec. 18, 2017); *Boelter v. Hearst Commc'ns, Inc.*, 269 F. Supp. 3d 172, 189 (S.D.N.Y. 2017); *Edwards v. Hearst Commc'ns, Inc.*, No. 15CV9279ATJLC, 2016 WL 6651563, at *1 (S.D.N.Y. Nov. 9, 2016).

But those opinions assumed that the three-year statute of limitations applied because the parties in those cases did not contest the issue. Indeed, at that time, unlike now, there was no shorter statute of limitations that a defendant might have raised as an affirmative defense. *See* Stephanie A. Sheridan, Meegan Brooks & Surya Kundu, *It's All About that [Data]base—More Unexpected Trouble for Companies that Share Customer Information*, STEPTOE (Dec. 8, 2021), https://www.steptoe.com/en/news-publications/its-all-about-that-databasemore-unexpected-trouble-for-companies-that-share-customer-information.html [https://perma.cc/CA9S-7ASH] (explaining that plaintiffs brought "claims for statutory damages under the original version of the PPPA until the final days of the statute's limitations period, which up until recently was widely recognized as being three years," and that "[t]o continue collecting expansive statutory damages, instead of the miniscule (or non-existent) actual damages allowed under the 2016 amendment, the new suits [starting in June 2021] now creatively posit . . . a six-year limitations period").

In addition, those courts' opinions, like the Opinion of this Court, are not dispositive on issues of Michigan law. *King v. Ord. of United Com. Travelers of Am.*, 333 U.S. 153, 161 (1948) ("[A] federal court adjudicating a matter of state law in a diversity suit i[s], 'in effect, only another court of the State.'" (quoting *Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 108-09 (1945))); *accord Abela v. Gen. Motors Corp.*, 677 N.W.2d 325, 327 (Mich. 2004). Similarly, "a district court is not

bound by decisions of . . . other circuits." *Hall v. Eichenlaub*, 559 F. Supp. 2d 777, 782 (E.D. Mich. 2008) (citing *Ghandi v. Police Dep't of City of Detroit*, 74 F.R.D. 115, 122 (E.D. Mich. 1977)). Further, "a district court's opinion is never binding precedent." *Malam v. Adducci*, 469 F. Supp. 3d 767, 788 (E.D. Mich. 2020) (citing *Camreta v. Greene*, 563 U.S. 692, 709 (2011)). Moreover, the opinions are from neither the Supreme Court nor a circuit court of appeals. *See id.* As such, they do not "warrant" anything in this Court. *Hillman Power Co. v. On-Site Equip. Maint., Inc.*, No. 1:19-CV-11009, 2022 WL 193598, at *3 (E.D. Mich. Jan. 21, 2022).

When Michigan precedent does not expressly address which statute of limitations applies to a statutory cause of action, as in this case, Michigan courts look to "Federal court authority." *Glowacki v. Motor Wheel Corp.*, 241 N.W.2d 240, 245–46 (Mich. Ct. App. 1976).

The Sixth Circuit carefully analyzed Michigan precedent to hold that a six-year statute of limitations applies to statutory causes of action, like the PPPA. *See Palmer Park Square, LLC v. Scottsdale Ins.*, 878 F.3d 530, 540 (6th Cir. 2017) ("[T]he Michigan Court of Appeals similarly held that the residual six-year statute of limitations in § 600.5813 applies to statutory causes of action, including those for civil fines." (citing *DiPonio Constr. Co. v. Rosati Masonry Co.*, 631 N.W.2d 59, 65–66 (Mich. 2001)). That published Sixth Circuit precedent controls this Court. *Adducci*, 469 F. Supp. 3d at 788.

For these reasons, Michigan Compiled Laws § 600.5813 applies to the PPPA. Therefore, plaintiffs may bring a claim under the PPPA until six years from "the time the wrong upon which the claim is based was done regardless of the time when the damage results." MICH. COMP. LAWS § 600.5827; *see also Boyle v. Gen. Motors Corp.*, 661 N.W.2d 557, 560 n.5 (Mich. 2003) (per curiam) ("The wrong is done when the plaintiff is harmed rather than when the defendant acted." (citing *Stephens v. Dixon*, 536 N.W.2d 755, 756 (Mich. 1995))).

**D.**

Next, this Court must determine whether § 600.5813 bars Plaintiffs' PPPA claim. A PPPA claim accrues "at the time Defendant committed its alleged [PPPA] violations." *Perlin v. Time Inc.*, 237 F. Supp. 3d 623, 634 (E.D. Mich. 2017).

Plaintiffs timely filed most of their PPPA claims under Michigan Compiled Laws § 600.5813. The Complaint alleges that the PPPA violations are based on Defendant's nonconsensual disclosures of Plaintiffs' Private Reading Information between June 15, 2015, and July 30, 2016. *See, e.g.*, ECF Nos. 1 at PageID.3, 23; 20 at PageID.627. According to Federal Rule of Civil Procedure 6(a), Plaintiffs had until June 14, 2021, to file any PPPA claims accruing on June 15, 2015.[6] But Plaintiffs filed the Complaint on June 15, 2021. *See generally* ECF No. 1.

The six-year statute of limitations bars Plaintiffs' PPPA claims that accrued on or before June 15, 2015. But Plaintiffs also pled PPPA harms accruing from June 16, 2015, to July 30, 2016. Accordingly, any PPPA claims that accrued on or after June 16, 2015, were timely filed on June 15, 2021. Consequently, Defendant's Motion to Dismiss will be granted in part regarding claims accruing on or before June 15, 2015, and it will be denied in part in all other regards.

**V.**

Defendant contends that Plaintiffs lack standing under Article III of the United States Constitution. *See generally* ECF No. 17 at PageID.591–94.

Three elements of constitutional standing "serve as its irreducible minimum in all cases." *Miller v. City of Wickliffe*, 852 F.3d 497, 502 (6th Cir. 2017). "First, the plaintiff must have suffered

---

[6] Six years is 2,190 days. Six years from June 15, 2015, is June 13, 2021, because 2016 and 2020 were leap years, cutting two days. June 13, 2021 is a Sunday. So, the cutoff date gets bumped to Monday, June 14, 2021. FED. R. CIV. P. 6(a)(1)(C); *see also Freeman v. Rewerts*, No. 18-11549, 2019 WL 4511657, at *3 & n.2 (E.D. Mich. Sept. 19, 2019) (computing the same way).

an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual and imminent, not conjectural or hypothetical." *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "Second, a plaintiff must demonstrate causation—*i.e.*, that her injury is 'fairly traceable to the challenged action of the defendant, and not the result of independent action of some third party not before the court.'" *Id.* (quoting *Lujan*, 504 U.S. at 560). "Lastly, the plaintiff must prove that it is likely, rather than merely speculative, that a favorable decision could redress the injury." *Id.* (citing *Lujan*, 504 U.S. at 561).

Defendant's argument is a strawman. Defendant essentially contends that if § 600.5805(2), which covers "injury to a person or property," does not apply to Plaintiffs' claim, then Plaintiffs lack an injury in fact necessary to establish Article III standing. Indeed, in its own words, Defendant argues that if "Plaintiffs assert purely statutory violations, without reference to rights in the common law," then they are precluded "from establishing Article III standing." ECF No. 17 at PageID.591. In other words, Defendant argues that if § 600.5813's six-year statute of limitations for "all other personal actions" applies to the PPPA, then claims brought under the PPPA have no constitutional standing in federal courts. To that end, Defendant heavily relies on *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021). *See* ECF No. 17 at PageID.593–94.

### A.

As a threshold matter, § 600.5813 has no effect on Article III standing or jurisdiction. It is well settled that "[s]tatutes of limitations and other filing deadlines 'ordinarily are not jurisdictional.'" *Musacchio v. United States*, 577 U.S. 237, 246 (2016) (quoting *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 154 (2013)); *Chesterfield Mkt., Inc. v. United States*, 469 F. Supp. 2d 485, 487 (E.D. Mich. 2007) ("The failure to abide by a statute of limitations does not affect the court's power to adjudicate a matter. Similarly, the failure to state a claim, although fatal to a

plaintiff's case, does not deprive the court of subject matter jurisdiction." (citing *Intermodal Techs., Inc. v. Mineta*, 413 F.Supp.2d 834, 838 (E.D. Mich. 2006))); *see also United States v. Del Percio*, 870 F.2d 1090, 1093 (6th Cir. 1989) ("[E]very circuit court of appeals to address the issue has held that criminal statutes of limitations are waivable affirmative defenses that do not affect the subject matter jurisdiction of the courts.") (collecting cases).

For a statute of limitations to be jurisdictional, the legislature must have "clearly stated" it is jurisdictional. *Musacchio*, 577 U.S. at 237; *see, e.g.*, *Henderson v. Shinseki*, 562 U.S. 428, 436 (2011) (requiring a "clear indication" that a statute is jurisdictional).

Nothing in the "text, context, and relevant historical treatment" of § 600.5813 indicates that it imposes a jurisdictional limit. MICH. COMP. LAWS § 600.5813 ("All other personal actions shall be commenced within the period of 6 years after the claims accrue and not afterwards unless a different period is stated in the statutes."); *see Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010).

For these reasons, contrary to Defendant's assertion, a statutory cause of action does not lack Article III standing simply because Michigan Compiled Laws § 600.5813 applies to it.

**B.**

Moreover, it is well established that a properly alleged PPPA claim confers Article III standing.

The Sixth Circuit held that PPPA claims grant Article III standing in *Coulter-Owens v. Time Inc.*, 695 F. App'x 117, 121 (6th Cir. 2017). To that end, the *Coulter-Owens* panel reasoned that a violation of the PPPA necessarily arises from the nonconsensual dissemination of information that reflects a plaintiff's personal reading choices, which acutely invades a statutorily protected right to privacy in such matters and, thus, inflicts harm in a concrete and particularized

way—albeit intangibly. *Id.* ("In short, given that the [PPPA] contains an express private right to sue, it confers statutory standing on a person whose information was disclosed in violation of it. Moreover, the disclosure of that information is a cognizable injury in fact for purposes of Article III standing.").

"Federal district courts in Michigan have consistently come to the same conclusion." *Lin v. Crain Commc'ns Inc.*, No. 19-11889, 2020 WL 248445, at *6 (E.D. Mich. Jan. 16, 2020) (collecting cases); *accord Boelter v. Hearst Commc'ns, Inc.*, 269 F. Supp. 3d 172, 185 (S.D.N.Y. 2017) ("[E]very court to consider the issue of standing under the [PPPA] has concluded that such a violation constitutes a concrete injury in and of itself."); *see also Raden v. Martha Stewart Living Omnimedia, Inc.*, No. 16-12808, 2017 WL 3085371, at *3 (E.D. Mich. July 20, 2017) ("The PPPA gives Plaintiffs a legally protected interest in the privacy of their reading choices."); *Perlin v. Time Inc.*, 237 F. Supp. 3d at 627–28 (E.D. Mich. 2017) (same); *Kinder v. Meredith Corp.*, No. 14-CV-11284, 2014 WL 4209575, at *4 (E.D. Mich. Aug. 26, 2014) ("The [PPPA] grants standing to plaintiffs who suffer a statutory violation and does not require actual damages."); *Halaburda v. Bauer Publ'g Co.*, 2013 WL 4012827, at *3–5 (E.D. Mich. Aug. 6, 2013) (granting Article III standing to a claim brought under the PPPA); *cf.* Jackson Erpenbach, Note, *A Post*-Spokeo *Taxonomy of Intangible Harms*, 118 MICH. L. REV. 471, 484–85 (2019) (explaining that courts consistency confer standing under the VPPA due to its "historical corollary" to violations of the right to privacy, which "have long been actionable at common law." (quoting *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017)).

Inexplicably, Defendant does not address *Coulter-Owens* or any of the numerous other federal decisions, including this Court's decision in *Kinder*, which all conclude that an alleged violation of the PPPA confers Article III standing.

For these reasons, contrary to Defendant's assertion, even if § 600.5813 applies to the PPPA, claims brought under the PPPA have Article III standing.

## C.

Defendant's reliance on *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) is misplaced. In *TransUnion*, the Supreme Court considered whether two groups of class members bringing claims under the Fair Credit Reporting Act suffered a concrete injury in fact under Article III. *Id.* at 2208–2213. The first group of class members had a misleading credit report "disseminated to third parties." *Id.* at 2208–09. The second group merely had a misleading remark on their credit files that was not disseminated to a third party. *Id.* at 2209. The *TransUnion* Court held that the first group suffered a concrete injury in fact under Article III. *Id.* ("In short, the 1,853 class members whose reports were disseminated to third parties suffered a concrete injury in fact under Article III.").

Likewise, Plaintiffs allege that their "Private Reading Information" was disclosed to third parties without their consent. *See* ECF No. 1 at PageID.1–2, 5–6. In this way, *TransUnion* reinforces that Plaintiffs' PPPA claims have Article III standing.

Yet again Defendant appears to conflate a personal injury giving rise to an action for "damages" with the "injury in fact" required for Plaintiffs' dispute to be justiciable in federal court. An action for damages could trigger the limitation period provided in § 600.5805(1) and (2), but that is not the case under the PPPA. Indeed, Article III's injury-in-fact requirement is not limited to an "injury to a person" necessary to trigger § 600.5805(2)'s limitation period. Erpenbach, *supra* Section V.B, at 483 (categorizing intangible yet concrete injuries lower courts have recognized post-*Spokeo*, including "[p]rivacy harms, both those resulting from distribution of plaintiffs' personal information to third parties as well as claims of intrusion upon seclusion and breach of

confidence when third parties are absent," and "[r]isks of harm that plaintiffs may suffer from a statutory violation, especially identity theft or potentially fraudulent debt collection").

Accordingly, though Plaintiffs' PPPA claim does not arise from a personal injury or any actual damages, Defendant's violation of the PPPA, assumed true, violated Plaintiffs' statutorily conferred right to privacy in their reading habits—an intangible harm presenting ample constitutional mooring for Article III purposes. *See Kinder*, 2014 WL 4209575, at *2 (rejecting the defendant's argument that "a statutory violation of [the PPPA], without actual damages, is insufficient to confer standing" before noting that "every single court to consider this interpretation has rejected [defendant's] argument").

In sum, as the Sixth Circuit so aptly put it, "the violation at issue here is not a bare procedural violation; it is a violation of the PPPA's most basic substantive protection, the privacy in one's reading materials." *Coulter-Owens*, 695 F. App'x at 121 (internal quotations omitted); *see also Perlin*, 237 F. Supp. at 640–42 (same); *Kinder*, 2014 WL 4209575, at *4 (same); *Cain*, 981 F. Supp. 2d at 681–84 (same). The facts here do not compel a departure from that wisdom.

For these reasons, Plaintiffs' PPPA claim confers Article III standing. Consequently, Defendant's Motion to Dismiss will be denied regarding Plaintiffs' Article III standing and regarding all claims accruing on or after June 16, 2015, and Defendant's Motion will be granted regarding all claims accruing on June 15, 2015. *See* discussion *supra* Section IV.D.

## VI.

Accordingly, it is **ORDERED** that Defendant's Motion to Dismiss, ECF No. 17, is **GRANTED AND DENIED IN PART**. Defendant's Motion is denied regarding Plaintiffs' Article III standing and all claims accruing on or after June 16, 2015. Defendant's Motion is granted

regarding all claims accruing on June 15, 2015, which are time-barred.

Dated: February 15, 2022                                    s/Thomas L. Ludington
                                                            THOMAS L. LUDINGTON
                                                            United States District Judge