## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

| | |
|---|---|
| RICHARD PRATT and LARRY JONES, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KSE SPORTSMAN MEDIA, INC. D/B/A OUTDOOR SPORTSMAN GROUP,<br><br>Defendant. | Case No. 21-cv-11404-TLL-PTM<br><br>Honorable Thomas L. Ludington |

## PLAINTIFFS' MOTION TO COMPEL

Plaintiffs Richard Pratt and Larry Jones ("Plaintiffs"), individually and on behalf of all others similarly situated, hereby move to overrule Defendant KSE Sportsman Media, Inc. d/b/a Outdoor Sportsman Group ("Defendant" or "KSE")'s "General Objections" Nos. 5 and 9 and to compel Defendant to: (i) produce all responsive documents to Plaintiffs' Requests for Production Nos. 1-3, 6-10, 12-16, 23-25, 29-31, 34; (ii) respond to Plaintiffs' First Set of Interrogatories Nos. 1-2, 4-7, 15-18; and (iii) produce all documents and communications pertaining to Defendant's relationship with Acxiom or any other entity, including but not limited to data mining, data aggregation, data cooperative, marketing and publishing companies, that pertain to the transmission of KSE magazine subscriber data during the relevant time period.

Plaintiffs, for their Motion, rely upon the arguments and authorities set forth in the Brief in Support of this Motion.

Pursuant to L.R. 7.1(a), Plaintiffs requested concurrence from Defendant's counsel in the relief requested by this Motion, making continued efforts to do so, including on August 5, 2022, and despite efforts to obtain concurrence, concurrence was not obtained.

Dated: August 5, 2022

Respectfully submitted,

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
THE MILLER LAW FIRM, P.C.

950 W. University Drive, Suite 300
Rochester, MI 48307
Tel: 248-841-2200
epm@millerlawpc.com
ssa@millerlawpc.com

Joseph I. Marchese (P85862)
Philip L. Fraietta (P85228)
BURSOR & FISHER, P.A.
888 Seventh Avenue
New York, New York 10019
Tel: 646.837.7150
Fax: 212.989.9163
jmarchese@bursor.com
pfraietta@bursor.com

Frank S. Hedin
David W. Hall
HEDIN HALL LLP
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: 305.357.2107
Fax: 305.200.8801
fhedin@hedinhall.com
dhall@hedinhall.com

*Counsel for Plaintiffs and the Putative Class*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION**

| | |
|---|---|
| RICHARD PRATT and LARRY JONES, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KSE SPORTSMAN MEDIA, INC. D/B/A OUTDOOR SPORTSMAN GROUP,<br><br>Defendant. | Case No. 21-cv-11404-TLL-PTM<br><br>Honorable Thomas L. Ludington |

## <u>PLAINTIFFS' BRIEF IN SUPPORT OF MOTION TO COMPEL</u>

## <u>STATEMENT OF ISSUES PRESENTED</u>

1. Should the Court overrule Defendant's "General Objections" Nos. 5 and 9 to Plaintiffs' Requests for Production?

   **Plaintiffs Answer:      Yes.**

2. Should the Court compel Defendant to: (i) produce all responsive documents to Plaintiffs' Requests for Production Nos. 1-3, 6-10, 12-16, 23-25, 29-31, 34; (ii) respond to Plaintiffs' First Set of Interrogatories Nos. 1-2, 4-7, 15-18; and (iii) produce all documents and communications pertaining to Defendant's relationship with Acxiom or any other entity, including but not limited to data mining, data aggregation, data cooperative, marketing and publishing companies, that pertain to the transmission of KSE magazine subscriber data during the relevant time period?

   **Plaintiffs Answer:      Yes.**

## <u>CONTROLLING AND MOST IMPORTANT AUTHORITIES</u>

*Boelter v. Hearst Commc'ns, Inc.*, 269. F. Supp. 3d 172 (S.D.N.Y. 2017)

*Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410 (6th Cir. 1998)

Fed. R. Civ. P. 26(b)(1)

# TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED.................................................................. i

CONTROLLING AND MOST IMPORTANT AUTHORITIES ........................... ii

TABLE OF CONTENTS....................................................................................... iii

TABLE OF AUTHORITIES ................................................................................ iv

BACKGROUND ...................................................................................................1

LEGAL STANDARD...........................................................................................5

ARGUMENT .......................................................................................................6

I.   Defendant Has Unilaterally Decided to Limit Discovery to the Merits of
     Plaintiffs' Individual Claims, and Has Refused to Produce any Responsive
     Documents Other Than Those Limited Pertaining Exclusively to the Named
     Plaintiffs..........................................................................................................6

II.  Discovery Is Not Limited to Guns & Ammo, Shooting Times, and
     Rifleshooter..................................................................................................10

III. Defendant Must Produce All Documents and Communications That Relate
     to Its Relationship With Acxiom ................................................................14

CONCLUSION ..................................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*B&P Littleford, LLC v. Prescott Mach., LLC*,
   2022 WL 625069 (E.D. Mich. Mar. 3, 2022) ......................................5
*Boelter v. Hearst Commc'ns, Inc.*,
   269. F. Supp. 3d 172 (S.D.N.Y. 2017) ........................................ *passim*
*Coulter-Owens v. Time Inc.*,
   695 F. App'x 117 (6th Cir. 2017) ...........................................16
*Coulter-Owens v. Time, Inc.*,
   308 F.R.D. 524 (E.D. Mich. 2015) ............................... 7, 8, 9
*Edwards v. Hearst Communications, Inc.*,
   Case No. 15-cv-09279 (S.D.N.Y.)................................. 12, 13
*Fallick v. Nationwide Mut. Ins. Co.*,
   162 F.3d 410 (6th Cir. 1998) ................................... 10, 11
*Harco Nat. Ins. Co. v. Sleegers Engineering, Inc.*,
   2014 WL 5421237 (E.D. Mich. Oct. 22, 2014).........................5
*Lee v. Cincinnati Capital Corp.*,
   2020 WL 4040652 (E.D. Mich. July 17, 2020).................6, 7
*Lin v. Crain Communications, Inc.*,
   Case No. 2:19-cv-11889 (E.D. Mich. Dec. 29, 2020) ................. 16, 17

**Statutes**

M.C.L.A. § 445.1712 ...........................................................7

**Other Authorities**

12 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND
   PROCEDURE § 2008 (3d ed. 2021)............................................5

**Rules**

Fed. R. Civ. P. 12(b)(1).......................................................1
Fed. R. Civ. P. 12(b)(6).......................................................1
Fed. R. Civ. P. 34(b)(2)(C) .................................................6
Fed. R. Civ. P. 26(b) .......................................................5, 6

Plaintiffs Richard Pratt and Larry Jones ("Plaintiffs"), individually and on behalf of all others similarly situated, hereby move to overrule Defendant KSE Sportsman Media, Inc. d/b/a Outdoor Sportsman Group ("Defendant" or "KSE")'s "General Objections" Nos. 5 and 9 and to compel Defendant to: (i) produce all responsive documents to Plaintiffs' Requests for Production Nos. 1-3, 6-10, 12-16, 23-25, 29-31, 34; (ii) respond to Plaintiffs' First Set of Interrogatories Nos. 1-2, 4-7, 15-18; and (iii) produce all documents and communications pertaining to Defendant's relationship with Acxiom or any other entity, including but not limited to data mining, data aggregation, data cooperative, marketing and publishing companies, that pertain to the transmission of KSE magazine subscriber data during the relevant time period.

## **BACKGROUND**

On June 15, 2021, Plaintiffs filed this action alleging that Defendant violated the Michigan Preservation of Personal Privacy Act ("PPPA") by disclosing, without their consent, information that identified them as subscribers to Defendant's magazines.  ECF No. 1.  On November 24, 2021, Defendant responded to the Complaint with a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  ECF No. 17.  On February 15, 2022, after full briefing, the Court issued an Opinion and Order Granting and Denying in Part Defendant's Motion to Dismiss. ECF No. 24.  Thereafter, the Court ordered the Parties to submit a proposed

scheduling order by March 18, 2022 (ECF No. 25), and on April 19, 2022, the Court conducted a Rule 16 scheduling conference by telephone. ECF No. 30. On April 20, 2022, the Court adopted the Parties' proposed scheduling order – which did not bifurcate or limit discovery in any fashion – and issued a Case Management and Scheduling Order setting a discovery completion date of November 18, 2022. *Id.*

On April 19, 2022, immediately after the Rule 16 scheduling conference was completed, Plaintiffs served their First Requests for Production of Documents and First Set of Interrogatories. **Exhibit A**, Declaration of Philip L. Fraietta ("Fraietta Decl.") ¶ 3. On May 3, 2022, Plaintiffs were informed that Defendant would be switching its counsel. *Id.* ¶ 4. On May 5, 2022, Plaintiffs' counsel and new counsel for Defendant had an introductory call and, as a professional courtesy, Plaintiffs' counsel agreed to extend Defendant's deadline to produce initial Rule 26 disclosures until May 23, 2022, and extend its deadline to respond to Plaintiffs' first set of discovery requests until June 9, 2022, to allow Defendant's new counsel adequate time to familiarize themselves with the matter. *Id.* ¶ 5. On May 23, 2022, Defendant served its initial Rule 26 disclosures, which identified the data companies Chilcutt Direct Marketing, Inc., CDS Global, Inc., Wiland, Inc., and Epsilon Data Management, LLC as potential relevant third parties in this action. *Id.* ¶ 6. On May 31, 2022, Plaintiffs served subpoenas on those entities seeking, among other documents, copies of contracts with KSE and copies of transmission files of

2

customer information from or on behalf of KSE. *Id.* ¶ 7.

On June 9, 2022, Defendant's counsel requested a second extension of the deadline to respond to Plaintiffs' discovery requests, until June 16, 2022. *Id.* ¶ 8. Plaintiffs' counsel agreed to that request as another professional courtesy. *Id.*

On June 16, 2022, Defendant served its Responses and Objections to Plaintiffs' First Set of Requests for Production (attached to the Fraietta Decl. as Exhibit 1) and its Responses and Objections to Plaintiffs' First Set of Interrogatories (attached to the Fraietta Decl. as Exhibit 2). *Id.* ¶ 9. Defendant also produced 303 pages of documents. *Id.* On June 27, 2022, after analyzing the Responses and Objections and the document production, Plaintiffs' counsel emailed Defendant's counsel to schedule a Local Rule 37.1 meet-and-confer teleconference. *Id.* ¶ 10. Due to illness of Defendant's counsel, that meet-and-confer teleconference was not conducted until July 8, 2022. *Id.* ¶ 11. On the teleconference, Plaintiffs' counsel argued that Defendant's "General Objections" were improper under Rule 34, and specifically that its General Objections Nos. 5 and 9 – purporting to limit discovery to "Plaintiffs' individual claim" or to the "magazines to which the named Plaintiffs subscribed" – were improper. *Id.* ¶ 12. Plaintiffs' counsel requested that Defendant's counsel supplement the Responses and Objections to make clear if documents were being withheld based on these General Objections, and Defendant's counsel agreed to endeavor do so by July 15, 2022. *Id.* On the call, Defendant's

3

counsel also conceded that KSE transmitted customer data to Wiland and Epsilon during the relevant time period.  *Id.* ¶ 13.

On July 19, 2022, Defendant produced an additional 74 pages of documents and provided a letter summarizing its positions on the outstanding discovery disputes.  *Id.* ¶ 14, Ex. 3.  In its letter, Defendant states that it "will withhold, any discovery that seeks identification of all Michigan subscribers to all KSE publications" and that it "will withhold, any discovery that concerns KSE publications to which the Named Plaintiffs did not subscribe."  *Id.* Ex. 3 at 3.  The letter also for the first time identifies an additional relevant third party, "Acxiom," who "enhances KSE's data."  *Id.* Ex. 3 at 2, 4.[1]  On July 21, 2022, and on July 26, 2022, Plaintiffs' counsel and Defendant's counsel conducted additional meet-and-confer teleconferences in an attempt to narrow their disputes, but those discussions were unsuccessful.  *Id.* ¶ 15.  On July 29, 2022, Defendant's counsel provided a letter

---

[1]     Defendant also improperly asserts General Objections 7 and 8, which object to the term "DISCLOSE" and "DISCLOSURE," and limit the terms to "to make (something) known or public" and the "act or process of making something known or public."  Fraietta Decl. Ex. 1 at 3.  Under the PPPA, "a disclosure need not be public to be actionable."  *Boelter v. Hearst Commc'ns, Inc.*, 269. F. Supp. 3d 172, 191 (S.D.N.Y. 2017).  Thus, any attempt to limit discovery to "public" disclosures is improper.  Nonetheless, Defendant's July 19 letter "confirm[s] that no documents were withheld on the basis of KSE's definition of DISCLOSURE (General Objection No. 7) or DISCLOSURE (General Objection No. 8), so Plaintiffs do not challenge them at this time.  Fraietta Decl. Ex. 3 at 1.  However, Plaintiffs reserve the right to challenge those General Objections should documents or information be withheld pursuant to them.

contending that "any transfer of data to Acxiom concerning KSE subscribers did not include any information concerning any publication/s subscribed to," but has still not produced a single document regarding the relationship, including even the contract. *Id.* ¶ 16.  Plaintiffs are filing this motion accordingly.

## **LEGAL STANDARD**

The scope of discovery is governed by Federal Rule of Civil Procedure 26, which provides, in relevant part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).  In general, "relevance is an extremely low bar."  *B&P Littleford, LLC v. Prescott Mach., LLC*, 2022 WL 625069, at *5 (E.D. Mich. Mar. 3, 2022) (internal citation omitted).  Rule 26(b) "is to be liberally interpreted to permit wide-ranging discovery of information, even if that information is not ultimately admitted at trial." *Harco Nat. Ins. Co. v. Sleegers Engineering, Inc.*, 2014 WL 5421237, at *4 (E.D. Mich. Oct. 22, 2014); *see also* 12 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2008 (3d ed. 2021) ("Most courts which have addressed the issue find that the amendments to Rule 26

still contemplate liberal discovery, and that relevancy under Rule 26 is extremely broad.").

## ARGUMENT

**I.  Defendant Has Unilaterally Decided to Limit Discovery to the Merits of Plaintiffs' Individual Claims, and Has Refused to Produce any Responsive Documents Other Than Those Limited Pertaining Exclusively to the Named Plaintiffs**

KSE's General Objection No. 5 "objects to the Discovery Requests to the extent they seek information not relevant to Plaintiffs' individual claim or whether the proposed class should be certified under Rule 23 of the Federal Rules of Civil Procedure." Fraietta Decl. Ex. 1 at 3. Based on that General Objection, Defendant is withholding production of at least its customer database, among potentially other documents. Fraietta Decl. Ex. 3 at 3. That Objection must be overruled.[2]

The Court's April 20, 2022 Case Management and Scheduling Order sensibly declined to bifurcate or limit discovery in any fashion.[3] ECF No. 30. The Order

---

[2] As an initial matter, General Objections are not proper under Rule 34, which requires that each "objection must state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C). The General Objections should be overruled on that basis alone.

[3] This approach makes a lot of practical sense because class discovery is invariably intertwined with merits discovery in PPPA cases. This is because a PPPA defendant's Michigan-resident customer database and the files containing the data of its Michigan-resident customers that were transmitted to third parties are necessarily comprised of both the Plaintiffs' information in addition to putative Class members' information. *See Lee v. Cincinnati Capital Corp.*, 2020 WL 4040652, at *4 (E.D. Mich. July 17, 2020) ("[B]ifurcation would inevitably lead to

sets a "Discovery Cutoff" of November 18, 2022, with a "Class Certification Motion" and Plaintiffs' "Expert Disclosure" deadline of January 20, 2023. *Id* at PageID.710. The Order also sets a deadline for "Dispositive Motions" of October 17, 2023, thereby clearly indicating that the Court will resolve class certification prior to summary judgment. *Id.* Indeed, the Order states that "[d]iscovery shall be completed on or before November 18, 2022. This Court will not order supplemental discovery to take place subsequent to the discovery cutoff date." *Id.* at PageID.711.

Thus, in this *putative class action lawsuit*, Defendant's position is that Plaintiffs are entitled only to discovery relevant to Plaintiffs' individual claims, and are never entitled to any class discovery (such as, for example, the Michigan-resident customer database). The position is obviously untenable, and the Court should swiftly reject it. Plaintiffs require this discovery both to certify a class and to prove their claims on the merits. As Defendant acknowledges, in order to prove their PPPA claims, "Plaintiffs must show that the Named Plaintiffs purchased 'written materials' from KSE and that such purchase is a question common to the proposed class, the alleged disclosure that is actionable is one that discloses 'a record concerning the purchase . . . of [written material] by a customer that indicates the identity of the customer." Fraietta Decl. Ex. 3 at 3 (quoting M.C.L.A. § 445.1712). As Judge

---

disputes over what is class discovery and what is merits discovery," particularly in a case where "[m]uch of the discovery needed will be available electronically.").

Steeh held in granting contested class certification in another PPPA case, Plaintiffs can make the purchaser showing by, *inter alia*, "a comparison of the billing information and the subscriber information," as well as "records show[ing] whether a magazine subscription was purchased as a gift." *Coulter-Owens v. Time, Inc.*, 308 F.R.D. 524, 531 (E.D. Mich. 2015).  But Plaintiffs obviously cannot do so if they are not provided the data for Defendant's Michigan-resident customers.

Moreover, Defendant's General Objection No. 5 is also obstructing third party discovery.  For example, discovery to date has shown that KSE maintained a business relationship with Epsilon Data Management, LLC ("Epsilon") ███

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████ Fraietta Decl. Ex. 5 at ¶ 1.2(a).[4]  Accordingly, Plaintiffs sought production of any transmission files made by or on behalf of KSE to Epsilon during the relevant time period that contained Michigan-resident customer information.  *Id.* ¶ 7.  However, Epsilon has

---

[4] Defendant's counsel confirmed on the July 8, 2022 meet-and-confer call that Defendant transmitted its customer file to Epsilon pursuant to the contract, and documents produced to date by Defendant confirm that Plaintiffs were both active subscribers during the relevant time period.  Fraietta Decl. ¶ 13; *see also* Answer (ECF No. 26) ¶¶ 9-10 (admitting Plaintiffs were subscribers to the magazines).  Thus, based on the terms of the Epsilon contract, Plaintiffs' customer information would have been transmitted to Epsilon (by Defendant or by an intermediary acting at its direction) during the relevant pre-July 31, 2016 time period.

taken the position that while it is "willing to restore data of transmissions from KSE from the relevant time period (August 5, 2015 through July 31, 2016) and search those tapes for transmissions from KSE referring to the named plaintiffs," it will not do so "with respect to other members of the putative class" because "it is inappropriate for Epsilon to be asked to produce documents subject to an unresolved dispute." Fraietta Decl. Ex. 6 at 2.

Defendant has not provided any legitimate basis in support of its General Objection. First, Defendant argues that "the alleged actionable disclosure proves that the individual purchased a KSE publication, and any subscriber list maintained by KSE or any other entity is not reasonably calculated to lead to discovery of admissible evidence." Fraietta Decl. Ex. 3 at 3. But, as Judge Steeh stated, that is wrong as the subscriber database contains the relevant information to show who fits that criteria. *See Coulter-Owens*, 308 F.R.D. at 531. Second, Defendant argues that even if Plaintiffs are "entitled to subscription records, such records need not identify the name, address, telephone number and email address of KSE subscribers." Fraietta Decl. Ex. 3 at 3. That is wrong for two reasons. First, as explained above, the Scheduling Order in this case does not allow for post discovery subsequent to the discovery cutoff date. So under Defendant's position this information would <u>never</u> be made available to Plaintiffs. And second, there is a Confidentiality Agreement and Stipulated Protective Order in place here (ECF No. 37), so any

confidentiality concerns are moot.

In sum, Defendant's General Objection No. 5 is preventing Plaintiffs from obtaining the very records Defendant acknowledges are needed to prove their claims and certify a class: the Michigan-resident customer database and the transmission files. The Court should therefore overrule Defendant's General Objection No. 5 and order it to produce any documents it has withheld pursuant to that General Objection, including, but not limited to, its Michigan-resident customer database and transmission files containing information pertaining to Defendant's Michigan-resident customers from the relevant pre-July 31, 2016 time period.

## II.   Discovery Is Not Limited to Guns & Ammo, Shooting Times, and Rifleshooter

Defendant's General Objection No. 9 "objects to Plaintiffs' definition of 'KSE SPORTSMAN MEDIA MAGAZINES' as 'magazines published by KSE' as overly broad given that the named Plaintiffs did not subscribe to most magazines KSE publishes." Fraietta Decl. Ex. 1 at 3. Instead, "KSE will interpret 'KSE SPORTSMAN MEDIA MAGAZINES' as to mean those magazines to which the named Plaintiffs subscribed, that is, *Guns & Ammo*, *Rifleshooter*, and *Shooting Times* magazines." *Id.* That is improper.

In the Sixth Circuit, "[o]nce [the named plaintiffs'] standing has been established, whether a plaintiff will be able to represent the putative class, including absent class members, depends solely on whether he is able to meet the additional

10

criteria encompassed in Rule 23 of the Federal Rules of Civil Procedure." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998).  And contrary to Defendant's position on this dispute, Rule 23 does not require that unnamed class members be identically situated to a named plaintiff, but rather explicitly contemplates a named plaintiff proceeding on behalf of others *similarly* situated.  For instance, the Sixth Circuit has held in an analogous context that "an individual in one ERISA benefit plan can represent a class of participants in numerous plans other than his own, if the gravamen of the plaintiff's challenge is to the general practices which affect all of the plans." *Fallick*, 162 F.3d at 422.

Here, the Court has already determined that the Named Plaintiffs have standing to pursue their claims.  *See* ECF No. 24, PageID.664 ("Plaintiffs' PPPA claim confers Article III standing.").  And similar to *Fallick*, Plaintiffs in this case are properly seeking to represent a class comprised of, generally speaking, all Michigan residents whose personal reading information – i.e., information pertaining to a purchase of *any publication* from KSE (including purchases of publications "other than [Plaintiffs'] own") – was disclosed to a third party pursuant to the same "general practices" of the Defendant (including in the same disclosure file).  *See* Fallick, 162 F.3d at 422.  This is appropriate because there is plainly no material distinction between Defendant's disclosure of information concerning a purchase of one of its publications versus a purchase of another of its publications –

11

especially since, as the Complaint alleges (and documents in Plaintiffs' possession show), Defendant sold, rented, and otherwise disclosed to third parties lists containing the information of *all* of the Michigan-resident purchasers of all of its publications. *See, e.g.*, Complaint ¶¶ 2, 6-8; 42-49 (alleging that Defendant uniformly disclosed its customers' Personal Reading Information across all of its publications without consent); Complaint Ex. A (datacard titled "OUTDOOR SPORTSMAN GROUP INC. MASTERFILE Mailing List" and including "[a] combined and unduplicated masterfile of active subscribers of Outdoor Sportsman Group Inc. 15 outdoor titles …").  Indeed, discovery to date has already confirmed that is the case.  *See* Fraietta Decl. Ex. 7 █████████████████

████████████████████████████████████████

████████████████████████████████; Ex. 8 ██████

████████████████████████████████████████

██████████████████████████████████████.

Accordingly, Plaintiffs should not be restricted to obtaining discovery concerning only *Guns & Ammo*, *Rifleshooter*, and *Shooting Times* magazines, but rather must be permitted to seek discovery concerning all of Defendant's publications from the relevant time period, including the Michigan-resident customer files and transmission-related data (exchanged with any third parties) pertaining to purchases of any of Defendant's publications.

12

Analogous discovery disputes have been resolved in Plaintiffs' favor in other PPPA putative class actions against magazine publishers.  For example, in *Edwards v. Hearst Communications, Inc.*, Case No. 15-cv-09279-AT-JLC (S.D.N.Y.), the defendant had allegedly made unlawful disclosures of the plaintiff's and the putative class's personal reading information to a variety of third-party data companies.  *See Hearst*, 269 F. Supp. 3d at 180-83.  The named plaintiff prevailed on summary judgment regarding the disclosures to some of the third-party data companies, while the defendant prevailed on others.  *See id.* at 201-02 (plaintiff prevailed on disclosures to Experian); *id.* at 202-04 (defendant prevailed on disclosures to "Company 1"); *id.* at 204-05 (defendant prevailed on disclosures to "Company 2"); *id.* at 206-07 (plaintiff prevailed on disclosures to "Company 3").[5]  In Phase II discovery, the defendant objected to plaintiff's discovery requests related to Company 1 and Company 2, but the Court overruled that objection.  *See* **Exhibit B**, 10/26/17 Hearing Tr.; 1:15-cv-09279, ECF No. 261 at 20:8-23.  As the Court held, "the issue is whether the harm that the plaintiff suffered from disclosure to Experian

---

[5] Discovery in the *Hearst* case was phased such that Phase I discovery was limited to the claims of the named plaintiffs, and Phase II concerned the claims of the putative class.  *See* **Exhibit C**, *Edwards*, ECF No. 40 ¶ 5.  At the conclusion of Phase I discovery, both parties made motions for summary judgment, and Phase II discovery commenced after the Court rendered a decision on those motions.  *See Hearst*, 269 F. Supp. 3d at 207. Numerous discovery disputes arose during Phase I discovery concerning whether particular discovery requested by the plaintiffs was in fact Phase I discovery or was actually Phase II discovery – a result that will be avoided in this case due to the Court's sensible decision not to bifurcate discovery.

is the same as the harm that some other class member suffered from disclosure to company 1 or company 2 or company 3.  And by the way, company 4, 5, 6 and 7, same thing.  It doesn't matter who the recipient is.  What matters is, are they within the class as we pled it?"  *Id.* at 20:10-16; *see also id.* at 13:10-18 ("THE COURT: That's a Rule 23 argument.  That's not a Rule 26 argument. . . . [Y]ou want me to tie the plaintiff's hands behind their back in order for them to try and make the arguments that they want to make, and I'm disinclined to do that.").

The same logic applies here.  Whether Plaintiffs may ultimately represent class members who subscribed to all of Defendant's publications, or just *Guns & Ammo*, *Rifleshooter*, and *Shooting Times*, is a Rule 23 issue, not a Rule 26 issue.  Accordingly, Plaintiffs are entitled to discovery regarding all of Defendant's publications, not just *Guns & Ammo*, *Rifleshooter*, and *Shooting Times* magazines, and the Court should overrule Defendant's General Objection No. 9, and order it to produce all documents, communications, and ESI it has withheld pursuant to that General Objection, including, but not limited to, its Michigan-resident customer database and the transmission files containing Michigan-resident customer information from the relevant time period.

## III.   Defendant Must Produce All Documents and Communications That Relate to Its Relationship With Acxiom

Plaintiffs' Request for Production No. 3 requests:

> All documents and communications that refer to, reflect or relate to YOUR DISCLOSURE, during the CLASS PERIOD, of the PERSONAL READING INFORMATION of any individual who subscribed at any point in time to any KSE SPORTSMAN MEDIA MAGAZINES, including but not limited to all contracts and other agreements between YOU and any other entity, including but not limited to, data mining, data aggregation, data cooperative, marketing, and publishing companies, including but not limited to . . . Acxiom Corporation.

Fraietta Decl. Ex. 1 at 5.  Nonetheless, inexplicably, Defendant only identified a relationship with Acxiom in its July 19, 2022 letter in response to further inquiry from Plaintiffs' counsel on the July 8, 2022 meet-and-confer teleconference.  Worse yet, Defendant still has not produced any documents pertaining to that relationship.  Defendant's letter does not provide any reason for withholding these documents, nor has Defendant's counsel articulated one in the various meet-and-confer teleconferences.

Documents and communications pertaining to Defendant's relationship with Acxiom is of critical importance in this case.  From its July 19 letter, Plaintiffs know that "Acxiom enhances KSE's data."  This so-called "enhancement" facilities a process known as "enhanced list rental."  Enhanced list rental allows for the renter to filter the data by various demographic, lifestyle, and/or geographic categories.  *See* ECF No. 1, PageID.2-3 (¶ 2) (listing "selects" such as "home owner," "income," "lifestyle," and "marital status"), *id*. at PageID.23 (¶ 64) (describing process).  Because these demographic, lifestyle, and/or geographic categories of information

are not collected during the subscription process, Defendant contracts with Acxiom, a data aggregator, to append these various categories of information to its individual customer files.

This exact type of business arrangement was found to violate the PPPA in *Hearst*.   There, Hearst contracted with Experian Marketing Solutions, Inc. to perform the data enhancement.  *Hearst*, 269 F. Supp. 3d at 180-81.  Pursuant to the arrangement, Hearst "would send approximately 14 to 20 million records of current and former subscribers a year to Experian and Experian would 'overlay' additional data about these subscribers, such as political affiliation or demographic information." *Id.* at 180.  Discovery in that case showed that "[i]n 2011, 2012, 2013, and 2014, [Hearst] sent Experian data regarding Plaintiff." *Id.*  The Court concluded that those disclosures constituted "a record concerning the purchase of a magazine subscription that indicates the customer's – Plaintiff's – identity" and therefore "violated the [PPPA]." *Id.* at 202.

Moreover, the Sixth Circuit has explained that transmitting "order information (name, address, and magazine choice) into Acxiom's . . . giant stew of personal information," may "violate[] the PPPA." *Coulter-Owens v. Time Inc.*, 695 F. App'x 117, 120 (6th Cir. 2017).  And production of documents and communications pertaining to publisher defendants' relationships with companies like Acxiom has been compelled in PPPA cases accordingly. *See, e.g., Lin v. Crain Communications,*

*Inc.*, Case No. 2:19-cv-11889 ECF No. 50, PageID.1040 (Dec. 29, 2020) ("Plaintiffs' motion to compel production of documents responsive to Request for Production No. 2 is GRANTED. Defendant must produce all contracts and other agreements entered into between it and any other entity, including but not limited to data mining, data aggregation, data cooperative, marketing and publishing companies, including but not limited to Specialists Marketing Services, Inc., Acxiom Corporation, Experian Marketing Solutions, Inc., Wiland, Inc., Epsilon Data Management, LLC d/b/a Abacus Alliance, Dataline, Inc., Dunn Data Company, Direct Access Marketing Services, i-Behavior, Inc., Blue Hill Marketing Solutions d/b/a LiftEngine, and NextAction Cooperative, that pertain to the transmission of [] magazine subscriber data during the [relevant] time period.").

Defendant's July 29 letter stating that "any transfer of data to Acxiom concerning KSE subscribers did not include any information concerning any publication/s subscribed to" is of no consequence. The rules of discovery do not permit Defendant to unilaterally decide what disclosures may or may not violate the PPPA. Defendant's contracts with Acxiom will delineate exactly what information was to be provided and from there the parties will make their arguments as to whether the information provided was enough to violate the PPPA. Moreover, these contracts are likely, at most, only a few dozen pages, so the burden of producing them is minimal.

Accordingly, the Court should compel Defendant to immediately produce all documents and communications pertaining to Defendant's relationship with Acxiom or any other entity, including but not limited to data mining, data aggregation, data cooperative, and marketing and publishing companies that pertain to the transmission of KSE magazine subscriber data during the relevant time period.

## **CONCLUSION**

For the foregoing reasons, the Court should overrule Defendant's General Objections Nos. 5 and 9 and compel Defendant to: (i) produce all responsive documents to Plaintiffs' Requests for Production Nos. 1-3, 6-10, 12-16, 23-25, 29-31, 34; (ii) respond to Plaintiffs' First Set of Interrogatories Nos. 1-2, 4-7, 15-18; and (iii) produce all documents and communications pertaining to Defendant's relationship with Acxiom or any other entity, including but not limited to data mining, data aggregation, data cooperative, marketing and publishing companies, that pertain to the transmission of KSE magazine subscriber data during the relevant time period.

Dated:  August 5, 2022                    Respectfully submitted,

                                          */s/ E. Powell Miller*
                                          E. Powell Miller (P39487)
                                          Sharon S. Almonrode (P33938)
                                          THE MILLER LAW FIRM, P.C.
                                          950 W. University Drive, Suite 300
                                          Rochester, MI 48307
                                          Tel: 248-841-2200
                                          epm@millerlawpc.com
                                          ssa@millerlawpc.com

Joseph I. Marchese (P85862)
Philip L. Fraietta (P85228)
BURSOR & FISHER, P.A.
888 Seventh Avenue
New York, New York 10019
Tel: 646.837.7150
Fax: 212.989.9163
jmarchese@bursor.com
pfraietta@bursor.com

Frank S. Hedin
David W. Hall
HEDIN HALL LLP
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: 305.357.2107
Fax: 305.200.8801
fhedin@hedinhall.com
dhall@hedinhall.com

*Counsel for Plaintiffs and the Putative Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 5, 2022, I electronically filed the foregoing documents using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings.

<u>*/s/ E. Powell Miller*</u>
E. Powell Miller (P39487)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste. 300
Rochester, MI 48307
Tel: (248) 841-2200
epm@millerlawpc.com

1