UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN NORTHERN DIVISION

RICHARD PRATT and LARRY JONES,
individually and on behalf of all others
similarly situated,

    Plaintiffs,    Case No. 21-cv-11404-TLL-PTM

 v.    Honorable Thomas L. Ludington
    Honorable Patricia T. Morris

KSE SPORTSMAN MEDIA, INC.,
d/b/a OUTDOOR SPORTSMAN GROUP,
INC.,

    Defendant.

**DEFENDANT'S REPLY BRIEF IN FURTHER SUPPORT OF ITS
MOTION FOR JUDGMENT ON THE PLEADINGS**

## ARGUMENTS AND AUTHORITIES

I. **The Complaint Should Be Dismissed Because the PPPA is a Special Law**

Noticeably missing from Plaintiffs'[1] Response in Opposition to Defendant's Motion ("Opposition" or "Opp'n") is an attempt to provide any basis for the Michigan legislature's decision to treat retailers of media differently than retailers of other goods and services. Rather, Plaintiffs recount Michigan jurisprudence on special laws and the alleged uphill battle in invalidating the PPPA on this basis. *See* Opp'n at 4-10. While laws may treat similarly situated persons differently, it is well established that there must be a *rational basis* for doing so. *See* Mot. at 10-11. In every case Plaintiffs cite in which there was a special law challenge, the court found: (i) that the at-issue statute did not treat differently other persons who were similarly situated; or (ii) there was a reason for the at-issue legislative classification.[2] There

---

[1] Terms previously defined in the Motion for Judgment on the Pleadings, ECF No. 44 ("Motion" or "Mot."), are used with the same definition herein.

[2] *See, e.g., Irishman's Lot, Inc. v. Cleary*, 62 N.W.2d 668 (Mich. 1954) (Opp'n at 4, 5) (holding that statute prohibiting the sale of used vehicles on Sundays, except for "counties have a population under 130,000" was not arbitrary because the classification applied to locations in which "most of the sales are made and competition keenest"); *Lundstrom v. Ellsworth Twp.*, 162 N.W. 990 (Mich. 1917) (Opp'n at 4) (holding that statute that provided that townships were not liable for any damages sustained by a bridge collapse "by any steam engine or stream vehicle weighing more than six tons" was not arbitrary because "larger, and perhaps wealthier governmental units" would be better able to maintain bridges that could safely withstand heavy loads and differences existed "between vehicles propelled by steam and others"); *Tribbett v. Vill. of Marcellus*, 293 N.W. 872 (Mich. 1940) (Opp'n at 5) (holding that statute that permitted land situated within a city to be

is no reason to treat retailers differently when it comes to alleged privacy violations, and Plaintiffs' lack of explanation as to why media retailers should be subject to penalties when others are not provides all the Court needs to rule in KSE's favor. Mot. at 14-17.

Additionally, Plaintiffs seem to contend, by taking select quotes from *Rohan v. Detroit Racing Ass'n,* 22 N.W.2d 433 (1946), that a law is not special so long as it operates equally upon those within the particular class it is designed to regulate. *See* Opp'n at 6. In *Rohan,* the plaintiffs argued that the statute was special because it only permitted pari-mutual betting at race tracks. *Id.* at 441. The Michigan Supreme Court held:

---

"disconnected from such city" if it met certain qualifications, but not for cities of less than 500 or more than 7,000, was not arbitrary because there was good reason to disallow disconnection in big cities because such land might be needed for "future development" and in small villages because they might need "to retain the land as taxpaying support . . . because of the few sources from which village taxes could be raised"); *Straus v. Elless Co.*, 222 N.W. 752 (Mich. 1929) (Opp'n at 5-6) (holding that a statute which denied the defense of usury for commercial paper investments was not arbitrary because there was a rational basis to treat interest rates approved by the State differently than those that were not); *Miller v. Detroit Sav. Bank*, 286 N.W. 803 (Mich. 1939) (Opp'n at 6) (holding that statute which exempted homesteads from forced sale on execution was not arbitrary because homesteads implicated the "welfare of the family, the community, and the state"); *Houston v. Governor*, 810 N.W.2d 255 (2012) (Opp'n at 7) (statute which reduced the number of members on a county board based upon population criteria was not arbitrary because the "overall purpose [of the statute was] to limit the number of districts a county may apportion, and the population criteria . . . seem a reasonable means of achieving that purpose"); *Gen. Motors Corp. v. Dep't. of Treasury*, 803 N.W.2d 698 (Mich. App. 2010) (Opp'n at 7) (statute that concerned tax exemptions on vehicles was not arbitrary because it did not engage in any classification).

2

> Parimutuel machines are only permitted at licensed race tracks where supervision, regulation and police inspection and control is a very simple matter. These machines are mechanical devices in which the odds are determined with mathematical certainty and pay–offs to the lucky are assured. On the other hand bookmaking establishments were conducted in any place where the operators might believe patrons would collect. Odds were established by the bookmakers and any reasonable police supervision was difficult.

*Id.* at 442. The Court thus found that the statute was general because it treated all those that it classified equally *and* because the classification it imposed was rational. Applying that reasoning here, even if the PPPA operates equally upon all media retailers, there still must be a reason why only those retailers fall within its orbit. Given that data sharing by a media retailer is not more harmful than data sharing by another retailer, unlike unregulated pari-mutuel betting, which is more harmful than regulated pari-mutuel betting, the PPPA's classification is special.

Plaintiffs also argue that the Court in *Rohan* didn't invalidate the betting statute because there were other types of gambling just as harmful as pari-mutuel betting, the argument presumably being that this Court shouldn't invalidate the PPPA because there is similarly harmful other data sharing. Opp'n at 11-12. But that ignores the first step of the special law analysis, which requires a showing that the at-issue statute treat similarly situated parties differently. *See* Mot. at 11-13. In *Rohan,* the entities treated differently were similarly situated because they allowed pari-mutuel betting. Entities that allowed other types of betting, like lottery ticket

3

sales, were not similarly situated, and thus, not at issue. Here, retailers are similarly situated because they sell goods and participate in data sharing. *See* Mot. at 11-13. The question isn't whether, hypothetically, dissimilarly situated entities also engage in allegedly harmful privacy violations. The question is whether those that are similarly situated are subject to classification without reason.

Plaintiffs argue that shifting technology does not provide support for KSE's arguments because the constitutionality of laws cannot rest on anticipating developments. Opp'n at 13-14. Such an argument is a red herring. The PPPA is unconstitutionally special because it treats media retailers differently than other retailers without a rational basis. In the late 1980s, that classification was demonstrably arbitrary because it punished a video rental store for disclosing to a journalist that a consumer rented a documentary about fishing, but didn't punish a retailer of fishing poles for a similarly-revealing disclosure. Today, the classification is more glaringly arbitrary because data sharing is widespread. Instead of addressing what it was meant to—public disclosures of private information—the PPPA is being utilized to punish routine business-to-business information sharing. Changing technology highlights the inequities of the classification. *See* Mot. at 1-2.

Michigan law is definitive: there must be a rational basis for a legislative classification, and Plaintiffs' failure to articulate *any* basis for why media retailers

4

should be regulated where non-media retailers aren't mandates dismissal of the Complaint.

II. **The Complaint Should Be Dismissed Because It Alleges that KSE's Alleged Disclosures Meet the Direct Marketing Exception to the PPPA**

Plaintiffs first argue that KSE waived application of the direct marketing exception because KSE's Answer doesn't delineate with specificity the PPPA exceptions KSE claims as defenses. Opp'n at 14-15. Besides the fact that Plaintiffs cite no authority for the proposition that in order to make a Rule 12(c) motion on a statutory exception, the pleading party must have specifically delineated subsections of any statutory exceptions claimed, Sixth Circuit precedent is clear: "[A] defense is not necessarily waived if it is raised by motion, the plaintiff has the opportunity to respond, and no prejudice results." *See Love v. United States*, 530 F. App'x 564, 565 (6th Cir. 2013) (citing *Smith v. Sushka,* 117 F.3d 965, 969 (6th Cir.1997)). What's more, KSE's Answer states: "The complained of disclosures, if any, meet the VRPAs or Amended VRPA's exceptions." ECF No. 36 at 36, ¶ 11. Such pleading put Plaintiffs on notice that KSE's defenses might include the direct marketing exception. *See generally* MICH. COMP. LAW § 445.1713. Plaintiffs' arguments are thus nonstarters, and there is no basis for waiver of the Motion because of alleged pleading deficiencies (of which there are none) in the Answer.

Plaintiffs next argue that because the Complaint alleges that Plaintiffs did not receive notice that they could opt out of any disclosures by KSE, the Complaint

5

should not be dismissed. *See* Opp'n at 15-16. Such an argument ignores the language of the PPPA, as *actual* notice is not what the exception requires. To meet the direct marketing exception, the discloser "shall inform the customer by written notice" of the ability to opt-out. MICH. COMP. LAW § 445.1713(d). "Inform" means "to communicate knowledge to." *Inform*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/inform (last visited Feb. 6, 2023). Whether or not Plaintiffs knew it, KSE communicated to them that they could opt-out, which is all the exception requires. *See* Mot. at Exs. 5-7, ECF Nos. 44.5-44.7.

Plaintiffs argue that the Complaint demonstrates that KSE disclosed subscriber information for purposes other than marketing. In short, Plaintiffs' argument seems to be that direct marketing exception applies only if the marketing strategy employed has the word "marketing" in it, *i.e.,* the Complaint alleges that KSE disclosed to data aggregators to enhance its data, not to "market." Opp'n at 18-19. But, marketing is an abstract concept made reality by action. A head of marketing doesn't send emails to consumers titled: "Marketing." Instead, she uses a variety of strategies and actions to sell her goods and services, like branding, partnerships, and/or advertising. While the Complaint doesn't use the word "marketing" to describe the reasons KSE was allegedly making disclosures, all of motivations alleged in the Complaint are strategies and actions to sell more magazines. Ignoring the fact that the Complaint alleges KSE would only enhance

6

data to better market to existing customers in favor of a nonsensical strict approach requiring the use of the word "marketing," which would result in a meaningless exception, is not consistent with the statutory language in MICH. COMP. LAW § 445.1713(d) or definition of "marketing." *See* Mot. at 19-20.

Finally, contrary to Plaintiffs' arguments, the Sixth Circuit has never held that disclosures to data aggregators and cooperatives do not fall within the direct marketing exception. The quote on page 20 of the Opposition is the Sixth Circuit's summary of the plaintiff's argument in *Coulter-Owens*. What's more, that very quote lends support to KSE's argument here, as the Sixth Circuit stated in dicta that list rentals "*would fall within the 'direct marketing exception*[.]'" *Coulter-Owens v. Time, Inc.,* 695 F. App'x 117, 120 (6th Cir. 2017) (emphasis added).

## CONCLUSION

For the foregoing reasons, and those detailed in the Motion, KSE requests that the Court grant its Motion for Judgment on the Pleadings.

Dated: February 6, 2023  Respectfully submitted,

*/s/ Jonathan E. Lauderbach*
Jonathan E. Lauderbach (P51313)
WARNER NORCROSS + JUDD LLP
715 East Main Street, Suite 110
Midland MI  48640
(989) 698-3701
jlauderbach@wnj.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 6, 2023, I electronically filed the foregoing documents using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings.

        Respectfully submitted,

        */s/ Jonathan E. Lauderbach*
        Jonathan E. Lauderbach (P51313)
        WARNER NORCROSS + JUDD LLP
        715 East Main Street, Suite 110
        Midland MI  48640
        (989) 698-3701
        jlauderbach@wnj.com