## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| RICHARD PRATT and LARRY JONES, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> KSE SPORTSMAN MEDIA, INC., <br><br> Defendant. | Case No. 21-cv-11404-TLL-PTM <br><br> Hon. Thomas L. Ludington <br><br> Mag. Judge Patricia T. Morris |

## PLAINTIFFS' UNOPPOSED MOTION FOR
## PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

The undersigned counsel certifies that counsel communicated with opposing counsel, via email on August 15, 2023, explaining the nature of the relief to be sought by way of this motion and seeking concurrence in the relief; Defendant's counsel does not oppose this motion and the relief requested herein.

For the reasons set forth in Plaintiffs' Brief in Support of their Unopposed Motion for Preliminary Approval of Class Action Settlement, Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the Settlement Agreement; (2) provisionally certify the settlement class under Fed. R. Civ. P. 23(b)(3) in connection with the settlement process; (3) appoint E. Powell Miller of The Miller Law Firm, P.C., Joseph I. Marchese and Philip L. Fraietta of Bursor & Fisher, P.A., and Frank S. Hedin and Arun G. Ravindran of Hedin Hall LLP as Class Counsel; (4) appoint Richard Pratt and Larry Jones as the Class Representatives for the Settlement Class; and (5) approve the Notice Plan for the Settlement described in the Settlement Agreement and its Exhibits, as well as the specific Notice of Class Action and Proposed Settlement (the "Proposed Notice") and direct distribution of the Proposed Notice.[1]

---

[1]     The Settlement Agreement and its exhibits are included in the accompanying Supporting Brief.

Dated: August 17, 2023          Respectfully submitted,

By: */s/ E. Powell Miller*
E. Powell Miller (P39487)
**THE MILLER LAW FIRM, P.C.**
950 W. University Drive, Suite 300
Rochester, MI 48307
Tel: 248.841.2200
epm@millerlawpc.com

Joseph I. Marchese (P85862)
jmarchese@bursor.com
Philip L. Fraietta (P85228)
pfraietta@bursor.com
**BURSOR & FISHER, P.A.**
1330 Avenue of the Americas, 32nd Floor
New York, New York 10019
Tel: 646.837.7150

Frank S. Hedin
fhedin@hedinhall.com
Arun G. Ravindran
aravindran@hedinhall.com
**HEDIN HALL LLP**
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: 305.357.2107

*Proposed Class Counsel*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| RICHARD PRATT and LARRY JONES, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KSE SPORTSMAN MEDIA, INC.,<br><br>Defendant. | Case No. 21-cv-11404-TLL-PTM<br><br>Hon. Thomas L. Ludington<br><br>Mag. Judge Patricia T. Morris |

## BRIEF IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## STATEMENT OF ISSUES PRESENTED

1.     Does the proposed Settlement Class meet Fed. R. Civ. P. 23's requirements for class certification for settlement purposes?

**Plaintiffs' Answer: Yes.**

2.     Should Plaintiffs' Counsel be appointed as Class Counsel?

**Plaintiffs' Answer: Yes.**

3.     Should Plaintiffs Richard Pratt and Larry Jones be appointed as the Class Representatives for the Settlement Class?

**Plaintiffs' Answer: Yes.**

4.     Based on an initial evaluation, does the proposed Settlement appear fair, adequate, and reasonable, such that notice of the Settlement should be disseminated to the proposed Settlement Class?

**Plaintiffs' Answer: Yes.**

5.     Does the proposed Notice Plan satisfy the requirements of Fed. R. Civ. P. 23 and Due Process?

**Plaintiffs' Answer: Yes.**

## CONTROLLING AND MOST APPROPRIATE AUTHORITIES

- Fed. R. Civ. P. 23

- *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)

- *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S. Ct. 1884 (2013)

- *Coulter-Owens v. Time, Inc.*, 308 F.R.D 524 (E.D. Mich. 2015)

- *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013)

- *UAW v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)

- *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)

## TABLE OF CONTENTS

I.     INTRODUCTION.....................................................................................1

II.    BACKGROUND......................................................................................3

       A.    Michigan's Preservation of Personal Privacy Act....................3

       B.    Pre-Filing Investigation ...........................................................4

       C.    History of the Litigation and Settlement Negotiations..............5

III.   KEY TERMS OF THE SETTLEMENT.................................................6

IV.    THE PROPOSED CLASS IS APPROPRIATE FOR
       CERTIFICATION FOR SETTLEMENT PURPOSES ........................8

       A.    The Numerosity Requirement Is Satisfied.................................9

       B.    The Commonality Requirement Is Satisfied............................10

       C.    The Typicality Requirement Is Satisfied .................................11

       D.    The Adequacy Requirement Is Satisfied .................................12

       E.    The Proposed Settlement Class Meets Rule 23(b)(3)
             Requirements ...........................................................................14

             1.    Common Questions Predominate ...................................15

             2.    A Class Action Is a Superior Mechanism.......................16

V.     PLAINTIFFS' COUNSEL SHOULD BE APPOINTED CLASS
       COUNSEL……………….. ........................................................17

VI.    PRELIMINARY SETTLEMENT APPROVAL IS APPROPRIATE.17

       A.    The Rule 23(e)(2) Factors Weigh in Favor of Preliminary
             Approval...................................................................................18

B.    The Sixth Circuit's *UAW* Factors Weight in Favor of Preliminary Approval ............................................................ 19

    1.    There is No Risk of Fraud of Collusion ......................... 19

    2.    Litigation Through Trial Would be Complex, Costly, and Long ................................................................................ 20

    3.    Discovery Has Allowed the Parties to Resolve the Case Responsibly ..................................................................... 20

    4.    Plaintiffs Would Face Real Risks if the Case Proceeded ........................................................................................ 21

    5.    Proposed Class Counsel and Class Representative Support the Settlement ...................................................... 22

    6.    The Reaction of Absent Class Members ........................ 22

    7.    The Settlement Serves the Public Interest ...................... 23

VII.    THE NOTICE PLAN SHOULD BE APPROVED IN FORM AND SUBSTANCE ....................................................................... 24

VIII.    CONCLUSION ................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................ passim

*Amgen Inc. v. Conn. Retirement Plans and Trust Funds*,
  133 S. Ct. 1184 (2013) .........................................................9

*Beattie v. CenturyTel, Inc.*,
  511 F.3d 554 (6th Cir. 2007).................................................12

*Boelter v. Hearst Commc'ns, Inc.*,
  192 F. Supp. 3d 427 (S.D.N.Y. 2016)...................................4

*Borcea v. Carnival Corp.*,
  238 F.R.D. 664 (S.D. Fla. 2006) ..........................................20

*Coulter-Owens v. Time, Inc.*,
  308 F.R.D 524 (E.D. Mich. 2015) ..................... 9, 10, 11, 16

*Curry v. SBC Commc'ns, Inc.*,
  250 F.R.D 301 (E.D. Mich. 2008) .........................................9

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974).............................................................24

*Gascho v. Global Fitness Holdings, LLC*,
  2013 WL 12354005 (S.D. Ohio Sept. 30, 2013) .................13

*Gilkey v. Central Clearing Co.*,
  202 F.R.D. 515 (E.D. Mich. 2001) ......................................11

*Horton v. GameStop, Corp.*,
  380 F. Supp. 3d 679 (W.D. Mich. 2018) ...............................4

*In re Am. Med. Sys., Inc.*,
  75 F.3d 1069 (6th Cir. 1996)..............................................9, 11

*In re Cardizem CD Antitrust Litigation*,
  218 F.R.D. 508 (E.D. Mich. 2003) ......................................23

*In re Flint Water Cases*,
  63 F.4th 486 (6th Cir. 2023) ................................................13

*In re Packaged Ice Antitrust Litig.*,
  2010 WL 3070161 (E.D. Mich. Aug. 2, 2010)....................17

*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*,
  722 F.3d 838 (6th Cir. 2013)........................... 9, 10, 16

*Int'l Union v. Ford Motor Co.*,
  2006 WL 1984363 (E.D. Mich. July 13, 2006)...................12

*Kain v. Economist Newspaper NA, Inc.*,
  No. 4:21-cv-11807-MFL-CI (E.D. Mich.)...........................14

*Leonhardt v. AvrinMeritor, Inc.*,
  581 F. Supp. 2d 818 (E.D. Mich. 2008)...............................................................19
*Loftus v. Outside Integrated Media, LLC*,
  No. 2:21-cv-11809-MAG-DRG (E.D. Mich.) .....................................................14
*Machesney v. Lar-Bev of Howell, Inc.*,
  317 F.R.D. 47 (E.D. Mich. 2016) ........................................................................15
*Merenda v. VHS of Michigan, Inc.*,
  296 F.R.D. 528 (E.D. Mich. 2013) ......................................................................14
*Moeller v. The Week Publications, Inc.*,
  -- F. Supp. 3d. --, 2023 WL 119648 (E.D. Mich. Jan. 6, 2023)............................8
*Parker v. Time Warner Ent. Co., L.P.*,
  239 F.R.D. 318 (E.D.N.Y. 2007) .........................................................................10
*Powers v. Hamilton Cty. Pub. Def. Comm'n*,
  501 F.3d 592 (6th Cir. 2007)................................................................................15
*Sheick v. Auto. Component Carrier, LLC*,
  2010 WL 3070130 (E.D. Mich. Aug. 2, 2010).....................................................19
*Strano v. Kiplinger Washington Eds., Inc.*,
  -- F. Supp. 3d --, 2023 WL 119647 (E.D. Mich. Jan. 6, 2023).................... passim
*UAW v. Gen. Motors Corp.*,
  497 F.3d 615 (6th Cir. 2007)......................................................................... passim
*Vassalle v. Midland Funding LLC*,
  708 F.3d 747 (6th Cir. 2013)................................................................................12
*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ................................................................................. 10, 15
*Young v. Nationwide Mut. Ins. Co.*,
  693 F.3d 532 (6th Cir. 2010)................................................................................16

## Statutes

M.C.L. § 445.1712 ........................................................................................3
M.C.L. § 445.1715 ........................................................................................3
Michigan Preservation of Personal Privacy Act ............................................1
28 U.S.C. § 1715 ..........................................................................................25

## Rules

Fed. R. Civ. P. 12(b) .....................................................................................5
Fed. R. Civ. P. 23 ........................................................................................24
Fed. R. Civ. P. 23(a) ......................................................................... 9, 14, 15
Fed. R. Civ. P. 23(a)(1) .................................................................................9
Fed. R. Civ. P. 23(a)(2) ...............................................................................10
Fed. R. Civ. P. 23(a)(3) ...............................................................................11
Fed. R. Civ. P. 23(a)(4) ...............................................................................12
Fed. R. Civ. P. 23(b) ...................................................................................14
Fed. R. Civ. P. 23(b)(3) .......................................................................passim
Fed. R. Civ. P. 23(c)(2)(B) ..........................................................................24
Fed. R. Civ. P. 23(e)(1)(B) ..........................................................................24
Fed. R. Civ. P. 23(e)(2) ...............................................................................18
Fed. R. Civ. P. 23(f) ....................................................................................22
Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv) ..............................................................17
Fed. R. Civ. P. 23(g)(1)(B) ..........................................................................17
Fed. R. Civ. P. 26 .................................................................................. 5, 6, 7

## I. INTRODUCTION

The Settlement negotiated here by Plaintiffs and proposed Class Counsel ("Class Counsel") represents the best per-class member recovery ever achieved at settlement in a case brought under the Michigan Preservation of Personal Privacy Act (the "PPPA"),[1] by a wide margin. Pursuant to the Settlement Agreement (the "SA," a copy of which is attached as **Exhibit 1** to **Exhibit A** here), Defendant has agreed to pay $9,500,000 to establish an all-cash, non-reversionary Settlement Fund ("SF"), equating to a per-Class Member aggregate recovery of $655. After all Court-approved fees and expenses are paid to the Settlement Administrator, Class Counsel, and the Class Representatives from the Settlement Fund, every Settlement Class Member ("SCM") (except for those who request for exclusion from the Settlement) will <u>automatically</u> receive (i.e., without having to file a claim form) a *pro rata* cash payment of approximately $420 if the Settlement obtains final approval by the Court. The Settlement also provides meaningful prospective relief by requiring Defendant to refrain, in perpetuity, from disclosing to any third party the subscription information of any of the Michigan-based subscribers to any of its publications. Thus, if approved, the Settlement will provide meaningful monetary and non-monetary relief to all SCMs, in a timely and streamlined manner.

---

[1] The version of the PPPA at issue in this case is found at H.B. 5331, 84th Leg. Reg. Sess., P.A. No. 378, §§ 1-4 (Mich. 1988), *id.* § 5, added by H.B. 4694, 85th Leg. Reg. Sess., P.A. No. 206, § 1 (Mich. 1989).

The Settlement is the product of extensive litigation and contentious arm's-length negotiations between the Parties (including all-day mediation sessions overseen by former federal judges: the Hon. Wayne R. Andersen (Ret.), the Hon. James F. Holderman (Ret.), and the Hon. Gerald E. Rosen (Ret.)).

On a dollars-per-class-member basis, the Settlement outperforms all prior PPPA settlements by a wide margin. Moreover, unlike many prior PPPA settlements, the Settlement here does not require SCMs to submit claim forms, and instead provides <u>automatic</u> cash payments to all 14,503 SCMs[2] (except for any who choose to exclude themselves); thus, upon final approval, each SCM will receive a cash payment of approximately $420, far exceeding the per-class member recovery in previous PPPA settlements. The automatic relief secured by the Settlement—with the monetary relief paid entirely by Defendant, without any contributing insurance coverage—provides fair, reasonable, and adequate relief to the Settlement Class, and its terms and notice procedures readily satisfy due process and the procedural requisites of Rule 23.

Accordingly, the Court should have no hesitation granting preliminary approval here, and Plaintiffs respectfully request that the Court (1) grant preliminary approval of the Settlement Agreement; (2) provisionally certify the Settlement Class

---

[2]     Plaintiffs can submit the full list of Class members for an in-camera review upon request of the Court.

under Rule 23(b)(3); (3) appoint E. Powell Miller of The Miller Law Firm, P.C., Joseph I. Marchese and Philip L. Fraietta of Bursor & Fisher, P.A., and Frank S. Hedin and Arun G. Ravindran of Hedin Hall LLP as Class Counsel; (4) appoint Richard Pratt and Larry Jones as Class Representatives for the Settlement Class; (5) approve the Settlement's Notice Plan, described in the Settlement Agreement and its Exhibits, as well as the specific Notice of Class Action and Proposed Settlement ("Proposed Notice"),[3] and direct distribution of the Proposed Notice; and (6) schedule a final Fairness Hearing for the Court to hear any objections to the Settlement and determine whether the Settlement warrants final approval.

## II. BACKGROUND

### A. Michigan's Preservation of Personal Privacy Act

The Michigan legislature passed the PPPA to preserve personal "privacy with respect to the purchase, rental, or borrowing of written materials." Complaint (ECF No. 1) ("Compl."). As such, the PPPA (as it existed until 7/30/16) provides that:

> a person, or an employee or agent of the person, engaged in the business of selling at retail . . . books or other written materials . . . shall not disclose to any person, other than the customer, a record or information concerning the purchase . . . of those materials by a customer that indicates the identity of the customer.

M.C.L. § 445.1712. It authorizes civil actions and provides for statutory damages of $5,000, plus costs and reasonable attorney fees. *See* M.C.L. § 445.1715.

---

[3]     These are attached as Exhibits B–D to the Settlement Agreement.

In May 2016, the Michigan legislature amended the PPPA effective 7/31/16, but this does not apply retroactively to claims accruing prior to the effective date. *See Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427, 439–41 (S.D.N.Y. 2016) ("[T]he amendment to the [PPPA] does not apply to Plaintiffs' claims, and the Court will assess the sufficiency of those claims under the law as it was when Plaintiffs' claims accrued.") (citations omitted herein unless noted). Because the claims alleged herein accrued, and thus vested, prior to the 7/31/16 effective date of the amended version of the PPPA, the pre-amendment version of the PPPA applies in this case. *See Horton v. GameStop, Corp.*, 380 F. Supp. 3d 679, 683 (W.D. Mich. 2018).

## B. Pre-Filing Investigation

Plaintiffs' counsel conducted pre-filing investigations concerning every aspect of the factual and legal issues here—these extensive efforts included:

- Researching the nature of Defendant's business, its practices of selling magazines, consumer-privacy policies, and public statements concerning the same;

- Interviewing numerous individuals in Michigan who subscribed to Defendant's publications in 2015 and 2016, including about their process of purchasing a subscription and any disclosures they received or agreed to during the purchase process;

- Researching and analyzing Defendant's list rental and other disclosure practices, including data cards and other public information available online concerning the practices during the relevant 2015-2016 timeframe;

- Analyzing versions of Defendant's Privacy Policy, Terms of Service, and other public documents on its websites during the relevant time period;

- Researching the relevant law and assessing the merits of a potential PPPA claim against Defendant and defenses that Defendant might assert thereto;

- Investigating Defendant's financial condition to assess the likelihood of ultimately recovering a class-wide statutory damages award from it; and

- Performed extensive legal research and analysis concerning the applicable limitation period for a PPPA claim, and analyzing the arguments both for and against a six-year period.

*See* Declaration of E. Powell Miller in Support of Plaintiffs' Unopposed Motion For Preliminary Approval ("Decl.") (**Exhibit A** hereto) ¶ 5. As a result, Plaintiffs' counsel developed a viable theory of liability for a PPPA claim against Defendant and prepared a thorough Complaint against Defendant. *Id.* ¶ 6.

## C. History of the Litigation and Settlement Negotiations

On June 15, 2021, Plaintiffs filed the Class Action Complaint against Defendant. Compl., ECF No. 1. Plaintiffs allege that before July 30, 2016, Defendant disclosed information related to its customers' magazine subscription histories and personal reading habits without their consent in violation of the PPPA. *Id.* ¶¶ 1–2, 5–8, 42–49.

From the start, the Parties engaged in direct communication, and per Rule 26, discussed early resolution. *See* Decl. ¶ 7. To that end, the Parties agreed to engage in mediative efforts.[4] *Id.* The Parties went through an extensive settlement process

---

[4] After an unsuccessful mediation, Defendant filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6), arguing, *inter alia*, that Plaintiffs' claims were time-barred by a three-year statute of limitations and that Plaintiffs lack Article III

involving several mediations with different mediators. *Id.* Throughout the process, Defendant produced information to Plaintiffs' counsel concerning class size, Defendant's financial condition, and Defendant's ability to withstand a class-wide judgment. *Id.* ¶ 8. The Parties also engaged in written and document discovery, which included the production of thousands of pages of documents, numerous third-party subpoenas, and a motion to compel (ECF No. 40). *Id.* The information obtained by Plaintiff was then subjected to a detailed analysis by a forensic accountant hired by Class Counsel. *Id.* Ultimately, the Parties, with the assistance of Judges Rosen and Holderman, reached agreement on a framework for a class-wide resolution of the case, which they memorialized into a term sheet on April 26, 2023. *Id.* ¶ 9. In the months following, the Parties negotiated and finalized the full-form SA (attached to the Decl. as Exhibit 1), conducted a competitive bidding process and selected a proposed Settlement Administrator, and worked together to finalize the Settlement Class List, which included the assistance of Plaintiffs' database management expert. *Id.* ¶ 10.

## III. KEY TERMS OF THE SETTLEMENT

**Class Definition.** The "Settlement Class" is:

> The 14,503 direct purchasers whose information was included on the lists obtained in discovery that were

---

standing to pursue their claims. ECF No. 17 (Nov. 24, 2021). On February 15, 2022, after full briefing, the Court denied Defendant's motion to dismiss in its entirety. ECF No. 24.

> transmitted to third parties between June 16, 2015 and July
> 30, 2016, and thus that have standing.

SA ¶ 1.31 (full exclusion details listed therein). These individuals are reflected on

the Class List, attached to the SA as Exhibit A thereto.

**Monetary Relief.** Defendant shall establish a $9,500,000 non-reversionary

SF from which all SCMs who do not exclude themselves shall automatically receive

a *pro rata* cash payment of roughly $420 after payment of all Court-approved notice

and administrative expenses to the Settlement Administrator, attorneys' fees to

proposed Class Counsel, and service awards to the proposed Class Representatives.

SA ¶¶ 1.33, 2.1. No portion of the SF will revert back to Defendant. *Id.* ¶ 2.1(h).

**Prospective Relief.** As part of the Settlement, Defendant will refrain, in

perpetuity, from disclosing to any third party the subscription information of any of

the Michigan-based subscribers to any of its publications. *Id.* ¶ 2.2.

**Release.** In exchange for the $9,500,000 cash payment, Defendant (and all

"Released Parties" — defined in SA ¶ 1.27) will receive a full release of all claims

arising out of or related to Defendant's disclosure of its Michigan customers'

magazine subscription information. *See* SA ¶¶ 1.26–1.28 for full release language.

**Notice and Administration Expenses.** The SF will be used to pay the cost of

sending the Notice set forth in the SA and any other notice as required by the Court,

as well as all costs of administration of the Settlement. SA ¶¶ 1.30, 1.33.

**Service Award.** In recognition of their efforts on behalf of the Settlement

Class ("SC"), Defendant agrees that Plaintiffs may receive, subject to Court approval, a service award of $1,500 each from the SF, as appropriate compensation for their time, effort, and leadership as class representatives. SA ¶ 8.3; Decl. ¶¶ 21–24 (detailing same).

The requested awards are proportional to those preliminarily approved by this Court in other PPPA cases. *See, e.g., Strano v. Kiplinger Washington Eds., Inc.*, -- F. Supp. 3d --, 2023 WL 119647, at *10 (E.D. Mich. Jan. 6, 2023) (preliminarily approving $1,000 award, each SCM to receive roughly $248); *Moeller v. The Week Publications, Inc.*, -- F. Supp. 3d. --, 2023 WL 119648, at *9 (E.D. Mich. Jan. 6, 2023) (same).

**Attorneys' Fees and Expenses.** As part of the SA, Defendant has agreed that Class Counsel are entitled to reasonable attorneys' fees in an amount to be determined by the Court by petition. Class Counsel has agreed to limit its request for fees, costs, and expenses to 35% of the SF. SA ¶¶ 1.33, 8.1; *see also infra* § VI.A (listing PPPA cases where fee requests of 35% or more were approved).

## IV. THE PROPOSED CLASS IS APPROPRIATE FOR CERTIFICATION FOR SETTLEMENT PURPOSES

Before granting preliminary approval of the proposed Settlement, the Court must determine that the proposed settlement class is appropriate for certification. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification is proper if the proposed class satisfies the numerosity, commonality, typicality, and

adequacy of representation requirements. Fed. R. Civ. P. 23(a); *see also Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 460 (2013). Because certification is sought under Rule 23(b)(3), Plaintiffs must demonstrate that common questions of law or fact predominate over individual issues and that a class action is the superior device to adjudicate the claims. *Amchem*, 521 U.S. at 615–16. District courts are given broad discretion to determine whether certification of a class action is appropriate. *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013). As explained below, the proposed Settlement Class satisfies all of the Rule 23(a) and 23(b)(3) prerequisites, and thus, should be certified.

In the only PPPA case to reach decision on a contested class certification motion, Judge Steeh granted certification. *See Coulter-Owens v. Time, Inc.*, 308 F.R.D 524 (E.D. Mich. 2015). And similar classes have been certified for settlement purposes in other PPPA cases. The proposed SC here likewise should be certified.

## A. The Numerosity Requirement Is Satisfied

Numerosity is met when joining a large number of plaintiffs in one case would be impracticable. Fed. R. Civ. P. 23(a)(1); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). Though there is no fixed number determining impracticability, "[i]n most cases, a class in excess of forty members will do." *Curry v. SBC Commc'ns, Inc.*, 250 F.R.D 301, 310 (E.D. Mich. 2008). Only a reasonable estimate is required. *McDonald v. Asset Acceptance LLC*, 296 F.R.D. 513, 520 (E.D. Mich.

9

2013). Here, there are 14,503 persons in the SC. Decl. ¶ 11. Thus, joinder would be impractical and, thus, numerosity is satisfied.

## B. The Commonality Requirement Is Satisfied

Commonality is satisfied under Rule 23(a)(2) when there are questions of law or fact common to the class—the resolution of which will bring a class-wide resolution of the claims. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). And even a single question will do. *See Whirlpool*, 722 F.3d at 582–83.

Here, Plaintiffs allege that all class members' claims hinge on two common questions, one factual and one legal: (1) whether Defendant disclosed its customers' protected personal reading information to third parties between 6/16/15 and 7/30/16; and (2) whether such disclosures violated the PPPA. Plaintiffs contend that both can be answered on a class-wide basis with common proof which will drive the litigation forward. *See, e.g.*, *Parker v. Time Warner Ent. Co., L.P.*, 239 F.R.D. 318, 329 (E.D.N.Y. 2007) (in a case about disclosure of plaintiff's statutorily-protected information without proper notification, commonality found where claims were based on same legal theory and factual question). Numerous courts have certified PPPA, finding commonality satisfied. *See*, *Coulter-Owens*, 308 F.R.D. at 532–34 (litigation found to be "driven by issues that are common" to the entire class).

Given that there are multiple questions of law and fact common to members of the Settlement Class, the commonality requirement is satisfied.

10

## C. The Typicality Requirement Is Satisfied

Typicality requires that a class representative has claims that are typical of those of other class members. Fed. R. Civ. P. 23(a)(3). "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Am. Med. Sys.*, 75 F.3d at 1082. "Typicality may be presumed when the plaintiff's claim arises from the same event or practice or course of conduct that gives rise to the claims of other class members." *Gilkey v. Cent. Clearing Co.*, 202 F.R.D. 515, 524 (E.D. Mich. 2001). In other words, when the basis of the suit is the defendant's systematic business practices towards the named plaintiff and the members of the proposed class, typicality is satisfied.

Plaintiffs allege that Defendant's disclosure of their subscription information was part of its standard business practice of disclosing its customers' subscription information to third parties without consent. Compl. ¶¶ 1–2, 5–8, 42–49. And this was true for that of all SCMs, who had their information disclosed to the same third parties and for the same purpose—and that these practices thus violated the PPPA. And to redress such violations, the PPPA authorizes each SCM to recover the same statutorily-set damages ($5,000). Thus, Plaintiffs' pursuit of their own claims here will necessarily advance the interests of the SC, satisfying the typicality requirement. *See, e.g.*, *Coulter-Owens*, 308 F.R.D. at 534–35; *Strano*, 2023 WL 119647, at *3.

11

### D.  The Adequacy Requirement Is Satisfied

Class representatives under Rule 23(a)(4) must fairly and adequately protect the interests of the class. In order to do so, "(1) the representatives must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Int'l Union v. Ford Motor Co*., 2006 WL 1984363, at *19 (E.D. Mich. July 13, 2006). The representative must be part of the class, possess the same interest, have suffered the same injury, and seek the same type of relief as other class members. *See Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 562 (6th Cir. 2007).

In this case, the Complaint alleges that Plaintiffs—like each SCM—purchased a magazine subscription from Defendant while residing in Michigan and had their subscription information disclosed to third parties without their consent. Compl. ¶¶ 9–10, 42–49. Thus, Plaintiffs and SCMs have the exact same interest in recovering the statutory damages to which they are entitled under the PPPA. As such, Plaintiffs do not have any interest antagonistic to those of the proposed Settlement Class.

Likewise, proposed Class Counsel have extensive experience in litigating similar class actions. Decl. ¶¶ 14–16. They regularly engage in consumer privacy cases, have the resources necessary to prosecute this case, and have frequently been appointed lead class counsel. *Id.*; *see* Firm Resumes (attached to Decl. as Exs. 2–4).

12

Class Counsel have devoted substantial resources to the prosecution of this action by investigating Plaintiffs' claims and that of the SC, obtaining, reviewing and analyzing discovery, retaining experts to analyze the voluminous data in this case and to analyze Defendant's financial condition, participating in multiple mediations, and ultimately, negotiating a settlement that provides the best ever per-class member recovery in a PPPA case, despite the substantial litigation risks that were present. Decl. ¶¶ 4–13. In sum, proposed Class Counsel have vigorously prosecuted this action and will continue to work diligently on behalf of the SC throughout the settlement administration process. *Id.*

Plaintiffs and proposed Class Counsel are mindful that this Court has previously held that Rule 23(g) requires the appointment of only one firm or attorney to serve as class counsel. *See, e.g.*, *Strano*, 2023 WL 119647, at *5. Plaintiffs and proposed Class Counsel respectfully submit that the Court may appoint multiple firms to serve as Class Counsel. Although it appears that the Sixth Circuit has not directly addressed this question, it has affirmed class certification orders, including in the settlement context, appointing multiple firms to serve as class counsel. *See, e.g.*, *Gascho v. Global Fitness Holdings, LLC*, 2013 WL 12354005, at *2 (S.D. Ohio Sept. 30, 2013) (appointing multiple firms as class counsel at preliminary approval), *aff'd*, 822 F.3d 269 (6th Cir. 2016) (affirming final approval); *In re Flint Water Cases*, 63 F.4th 486, 491 (6th Cir. 2023) (affirming fee award where "the district

court appointed Co-Lead Class Counsel"). And in this case in particular, where each of the proposed Class Counsel's law firms expended roughly the same amount of time developing, litigating, and resolving this case, *see* Decl. ¶ 13, appointment of all of the proposed Class Counsel to represent the SC for settlement purposes is warranted. *See, e.g.*, *Kain v. Economist Newspaper NA, Inc.*, No. 4:21-cv-11807-MFL-CI (E.D. Mich.) (proposed Class Counsel here all appointed as class counsel in PPPA case); *Loftus v. Outside Integrated Media, LLC*, No. 2:21-cv-11809-MAG-DRG (E.D. Mich.) (same). Nonetheless, should the Court prefer to appoint one firm as Class Counsel, Plaintiffs and their counsel respectfully submit that E. Powell Miller of The Miller Law Firm, P.C. should be selected given his familiarity with Michigan practice and his extensive experience litigating class actions in this District.

Because Plaintiffs and proposed Class Counsel have demonstrated their commitment to representing the Settlement Class and neither have interests antagonistic to the Settlement Class, the adequacy requirement is satisfied.

### E.  The Proposed Settlement Class Meets Rule 23(b)(3) Requirements

After meeting the prerequisites of Rule 23(a), a plaintiff seeking class certification must also show that the action qualifies under at least one of the categories outlined in Rule 23(b). Fed. R. Civ. P. 23(b); *see also Merenda v. VHS of Michigan, Inc.*, 296 F.R.D. 528, 536 (E.D. Mich. 2013). Here, Plaintiffs seek

certification under Rule 23(b)(3), which requires that (i) common questions of law and fact predominate over individualized ones, and that (ii) a class action is superior to the other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). As explained below, the proposed Settlement Class meets these requirements.

### 1. Common Questions Predominate

Rule 23(b)(3)'s predominance requirement focuses on whether the defendant's liability is common enough to be resolved on a class basis, *Dukes*, 564 U.S. at 349–60, and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The Rule 23(b)(3) predominance requirement is akin to the commonality requirement Rule 23(a) "in that both require that common questions exist, but [Rule 23](b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues." *Machesney v. Lar-Bev of Howell, Inc.*, 317 F.R.D. 47, 61 (E.D. Mich. 2016). In other words, where commonality is satisfied when there is a single factual or legal question common to the class, the "predominance requirement is met if this common question is at the heart of the litigation." *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). As such, "cases alleging a single course of wrongful conduct are particularly well-suited to class certification." *Id.*

Here, Defendant's alleged common course of conduct presents multiple

questions of law and fact that are central to liability, predominating over any issues affecting individual class members. Thus, courts have regularly found common questions to predominate over individual issues in the course of approving PPPA settlements. *See, e.g.*, *Coulter-Owens*, 308 F.R.D. at 536. Defendant engaged in a single course of conduct with respect to all members of the SC, so their claims "will prevail or fail in unison"—thus, predominance is met. *Whirlpool*, 722 F.3d at 859.

## 2. A Class Action Is a Superior Mechanism

A class action is also the superior means of adjudicating this case because it "achieve[s] economies of time, effort and expense and promote[s] . . . uniformity of decision as to persons similarly situated." *Amchem*, 521 U.S. at 615. A class action is preferred over small individual suits because it provides a mechanism through which individuals who may not otherwise have the opportunity to seek redress through litigation. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 545 (6th Cir. 2012). Claims alleging a standard course of conduct are particularly well-suited for class certification because they facilitate efficiency and uniformity. *Id*. As held in *Coulter-Owens*, "it makes sense to proceed as a class action and address the issues one time rather than [in] potentially hundreds of separate cases." 308 F.R.D. at 537.

Here, all questions necessary to determine violation of the PPPA are common to all SCMs. As such, a "class action is the best way to vindicate the Class's rights" and "superiority is satisfied." *Strano*, 2023 WL 119647, at *4.

16

## V. PLAINTIFFS' COUNSEL SHOULD BE APPOINTED CLASS COUNSEL

Under Rule 23(g)(1)(B), "a court that certifies a class must appoint counsel … [to] fairly and adequately represent the interests of the class." The Court considers proposed class counsel's: (1) work in identifying or investigating the potential claim, (2) experience in handling class actions, other complex litigation, and the types of claims asserted in the action, (3) knowledge of the applicable law, and (4) resources that it will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv).

As discussed, proposed Class Counsel have extensive experience in prosecuting consumer class actions in general, and privacy class actions specifically. *See* § IV.D, *supra*. And as a result of their zealous efforts in this case, they secured the best-ever per class member recovery in this PPPA case. Thus, the Court should formally appoint proposed Class Counsel as Class Counsel.

## VI. PRELIMINARY SETTLEMENT APPROVAL IS APPROPRIATE

Settlement of class action suits is favored. *Newberg on Class Actions* § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). The first step is a "preliminary, pre-notification hearing to determine whether the proposed settlement is within the range of possible approval." *In re Packaged Ice Antitrust Litig.*, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010). A court makes an "initial evaluation" of the fairness of the proposed settlement. *Manual for Complex Litigation* § 21.632 (4th ed. 2004).

Rule 23(e)(2) provides factors for the Court to determine if a settlement is "fair, reasonable, and adequate," examining whether: (A) class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, reviewing: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the processing of class-member claims; (iii) the terms of any proposed attorney's fee, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(2); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

In addition, the Sixth Circuit has laid out its own factors to consider. *See UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). They are: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Id.*

## A.  The Rule 23(e)(2) Factors Weigh in Favor of Preliminary Approval

This Settlement easily satisfies the Rule 23(e)(2) factors.

<u>First</u>, Plaintiffs and Class Counsel have adequately represented the class, securing the best-ever per-class member recovery. *See* Introduction, *supra*.

Second, the Settlement was negotiated at arm's-length through multiple former federal judges, including former Chief Judge Rosen, as mediator after exchanging information sufficient to assess the strengths and weaknesses. *See supra*.

Third, the relief is adequate. The SA provides for the receipt of cash payments of roughly $420 for SCMs without even filing a claim form as well as robust prospective relief. SA ¶¶ 2.1–2.2. Attorneys' fees and costs are consistent with other PPPA settlements in this District. *See supra*.

Fourth, the proposed Settlement treats SCMs equitably to each other as every SCM will receive an identical *pro rata* cash payment under the Settlement. SA ¶ 2.1.

Finally, all terms affecting the SC are contained within the SA.

## B. The Sixth Circuit's *UAW* Factors Weigh in Favor of Preliminary Approval

All seven *UAW* factors favor approval or, at least, are neutral.

### 1. There Is No Risk of Fraud or Collusion.

The first *UAW* factor is "the risk of fraud or collusion." *UAW*, 497 F.3d at 631. "Courts presume the absence of fraud or collusion in class action settlements." *Leonhardt v. AvrinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008). Here, a non-collusive settlement was reached through arm's-length negotiations via multiple neutrals. *See Sheick v. Auto. Component Carrier, LLC*, 2010 WL 3070130, at *13 (E.D. Mich. Aug. 2, 2010) ("[N]egotiations of the Settlement Agreement were conducted at arm's-length by adversarial parties and experienced counsel, which

itself is indicative of fairness, reasonableness, and adequacy.").

### 2. Litigation Through Trial Would Be Complex, Costly, and Long.

The second *UAW* factor is "the complexity, expense and likely duration of the litigation." *UAW*, 497 F.3d at 631. Most class actions are inherently risky, and thus "[t]he obvious costs and uncertainty of such lengthy and complex litigation weigh in favor of settlement." *UAW*, 2006 WL 891151, at *17.

Here, the Parties engaged in dispositive motion practice, discovery, and held multiple private mediations. Decl. ¶¶ 7–9. Absent a settlement, further discovery, dispositive motions, and depositions would follow. Defendant indicated that it would continue to assert numerous defenses to both class certification and the merits, including that the PPPA does not prohibit its conduct as alleged and is an impermissible special law. Class Counsel is also aware that Defendant would prepare a competent defense at trial and would appeal any adverse result at trial (and any order certifying a class). *Id.* ¶ 19. This would be lengthy and expensive litigation.

Rather than pursuing protracted and uncertain litigation, Plaintiffs and their counsel negotiated a SA that provides immediate, certain, and meaningful relief. The second factor weighs in favor of finding the Settlement fair, reasonable, and adequate. *See Borcea v. Carnival Corp.*, 238 F.R.D. 664, 674 (S.D. Fla. 2006).

### 3. Discovery Has Allowed the Parties to Resolve the Case Responsibly.

The third factor is "the amount of discovery engaged in by the parties." *UAW*,

497 F.3d at 631. Prior to filing, Plaintiffs' counsel conducted a wide-ranging investigation into Defendant's practices, described *supra*, and obtained several key documents evidencing those practices. *See* Decl. ¶ 5. Moreover, during formal discovery and in settlement negotiations, Plaintiffs obtained wide-ranging discovery from Defendant and third parties on issues pertaining to class certification, the merits, and Defendant's ability to withstand a classwide judgment. *Id*. ¶¶ 7–9.

This information and material enabled Plaintiffs and their counsel to properly assess the strengths and weaknesses of the claims and defenses and to negotiate a Settlement that is fair, reasonable, and adequate. *Id.* ¶¶ 8–20. Class Counsel's experience in similar cases, and the efforts made by counsel on both sides, confirms that they are sufficiently well apprised of the facts here and the viability of their respective cases to make an intelligent analysis of the proposed settlement. Accordingly, the third factor weighs in favor of finding the Settlement fair, reasonable and adequate.

### 4. Plaintiffs Would Face Real Risks if the Case Proceeded.

The fourth *UAW* factor is "the likelihood of success on the merits." *UAW*, 497 F.3d at 631. Although Plaintiffs believe their case is strong, it is not without risk. Defendant has made clear that, absent a settlement, it will defend the case vigorously and move for summary judgment and contest class certification. *See* § VI.B.2, *supra*. The Court has not yet certified the proposed Class and the Parties anticipate that such

a determination would only be reached after lengthy briefing. Defendant would likely argue that individual questions preclude class certification, that a class action is not a superior method, and that a trial would not be manageable. And even if the Court certified a class, Defendant would likely challenge certification through a Rule 23(f) application and then move to decertify. Moreover, even if Plaintiffs survived all of those obstacles, they faced significant risk in recovering a classwide judgment.

The risks of losing on the merits, of losing class certification, of maintaining certification through trial, and of collecting on any classwide judgment, were all significant hurdles to obtaining classwide relief in this case. The Settlement eliminates this risk, as well as the attendant expense and delay. Accordingly, the fourth factor also favors preliminary approval.

### 5. Proposed Class Counsel and Class Representative Support the Settlement

The fifth *UAW* factor is "the opinions of class counsel and class representatives." *UAW*, 497 F.3d at 631. "The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement." *UAW*, 2008 WL 4104329, at *26. Here, both proposed Class Counsel and the Class Representatives support the Settlement. *See* Decl. ¶¶ 18, 20. This *UAW* factor, therefore, favors preliminary approval.

### 6. The Reaction of Absent Class Members.

The sixth *UAW* factor is "the reaction of absent class members." *UAW*, 497

F.3d at 631. Notice has not yet been disseminated, and the SC has accordingly not yet had an opportunity to voice any opposition to (or support for) the Settlement. Nonetheless, Plaintiffs and Class Counsel strongly support the Settlement, which they believe is fair, reasonable, and adequate and in the best interest of the SC. Accordingly, the sixth factor weighs in favor of preliminary approval.

### 7. The Settlement Serves the Public Interest.

The seventh and final *UAW* factor is "the public interest." *UAW*, 497 F.3d at 631. Settlements may serve the public interest by advancing a statute's goals or by conserving judicial resources. *See In re Cardizem CD Antitrust Litigation*, 218 F.R.D. 508, 530 (E.D. Mich. 2003). The Settlement here accomplishes both.

First, "[t]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *Id.* "Settling this [14,503]-person class action would further the public interest by providing relief for the entire Class and conserving judicial resources." *Strano*, 2023 WL 119647, at *8.

Second, the "Settlement also serves the public interest by furthering the objectives of the Michigan legislature in enacting the PPPA." *Id.*

Thus, all of the *UAW* factors weigh in favor of approval. Because the settlement on its face is fair, reasonable, and adequate, and not a product of collusion, the Court should grant preliminary approval.

## VII.  THE NOTICE PLAN SHOULD BE APPROVED IN FORM AND SUBSTANCE

"For any class certified under Rule 23(b)(3) . . . the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Further, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). The substance of the notice to the settlement class must describe in plain language the nature of the action, the definition of the class to be certified, the class claims and defenses at issue, that class members may enter an appearance through counsel if so desired, that class members may request to be excluded from the settlement class, and that the effect of a class judgment shall be binding on all class members. *See* Fed. R. Civ. P. 23(c)(2)(B). Notice is "adequate if it may be understood by the average class member." *Newberg*, § 11:53 at 167.

Here, the Parties have agreed upon a multi-part notice plan that easily satisfies the requirements of both Rule 23 and Due Process. First, the Settlement Administrator ("Administrator") will send direct notice by U.S. mail to all SCMs for whom the Administrator has been able to identify a postal address which it concludes has a reasonable likelihood of reflecting the current residence of such SCM. SA ¶ 4.1(b)(ii); Ex. B to SA. If more than one address is identified, the Administrator will

24

send the notice by U.S. mail to both postal addresses, and each notice will indicate the address to which the SCM's cash award check will be sent. *Id.* ¶ 4.1(b)(iii). Next, for any SCM for whom the Administrator is unable to identify at least one postal address, the Administrator will send notice via email. *Id.* ¶ 4.1(b)(iv); Ex. A to SA. Further, the Administrator will establish a Settlement Website that shall contain the "long form notice" (Ex. C to SA), as well as access to important Court documents, upcoming deadlines, and the ability to file claim forms online (if needed for any unidentified class members), or an updated postal address. *Id.* ¶ 4.1(c). Finally, the Administrator will also provide notice of the Settlement to the appropriate state and federal officials as required by CAFA, 28 U.S.C. § 1715. *Id.* ¶ 4.1(d).

## VIII. CONCLUSION

Based on the above, Plaintiffs respectfully request that the Court grant their Unopposed Motion for Preliminary Approval of the Settlement. A Proposed Order granting preliminary approval, certifying the Settlement Class, appointing Class Counsel, and approving the Proposed Notice of Settlement is filed herewith (**Ex. B**).

Dated: August 17, 2023              Respectfully submitted,

By: */s/ E. Powell Miller*
E. Powell Miller (P39487)
epm@millerlawpc.com
**THE MILLER LAW FIRM, P.C.**
950 W. University Drive, Suite 300
Rochester, MI 48307
Tel: 248.841.2200

Joseph I. Marchese (P85862)
jmarchese@bursor.com
Philip L. Fraietta (P85228)
pfraietta@bursor.com
**BURSOR & FISHER, P.A.**
1330 Avenue of the Americas, 32nd Floor
New York, New York 10019
Tel: 646.837.7150

Frank S. Hedin
fhedin@hedinhall.com
Arun G. Ravindran
aravindran@hedinhall.com
**HEDIN HALL LLP**
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: 305.357.2107

*Proposed Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I, E. Powell Miller, an attorney, hereby certify that on August 17, 2023, I served the above and foregoing *Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement* on all counsel of record by filing it electronically with the Clerk of the Court using the CM/ECF filing system.

*/s/ E. Powell Miller*
E. Powell Miller
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste 300
Rochester, MI 48307
Tel: 248.841.2200
