# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| RICHARD PRATT and LARRY JONES, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> KSE SPORTSMAN MEDIA, INC., <br><br> Defendant. | Case No. 21-cv-11404-TLL-PTM <br><br> Hon. Thomas L. Ludington <br><br> Mag. Judge Patricia T. Morris |

## DECLARATION OF E. POWELL MILLER IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

I, E. Powell Miller, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am the Founding Partner of The Miller Law Firm, P.C., located in Rochester and Detroit, Michigan, counsel of record for Plaintiffs Richard Pratt and Larry Jones ("Plaintiffs") in this action. I am a member in good standing of the Michigan Bar and am a member of the bar of this Court. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would testify competently thereto.

2.      I make this declaration in support of Plaintiffs' unopposed motion for preliminary approval of class action settlement filed herewith.

1

3.      Attached hereto as **Exhibit 1** is a true and correct copy of the Parties'

Class Action Settlement Agreement, and the exhibits attached thereto.

4.      On June 15, 2021, Plaintiffs initiated this action with the Class Action

Complaint. ECF No. 1.

5.      Prior to the filing of the Complaint, Plaintiffs' counsel conducted

comprehensive pre-filing investigations concerning every aspect of the factual and

legal issues underlying this action. These extensive pre-filing efforts included:

a. Researching the nature of Defendant's business, its practices of selling magazines, consumer-privacy policies, and public statements concerning the same;

b. Interviewing numerous individuals in Michigan who subscribed to Defendant's publications in 2015 and 2016, including about their process of purchasing a subscription and any disclosures they received or agreed to during the purchase process;

c. Researching and analyzing Defendant's list rental and other disclosure practices, including data cards and other public information available online concerning the practices during the relevant 2015-2016 timeframe;

d. Analyzing versions of Defendant's Privacy Policy, Terms of Service, and other public documents on its websites during the relevant time period;

e. Researching the relevant law and assessing the merits of a potential PPPA claim against Defendant and defenses that Defendant might assert thereto;

f. Investigating Defendant's financial condition to assess the likelihood of ultimately recovering a class-wide statutory damages award from it; and

g. Performed extensive legal research and analysis concerning the applicable limitation period for a PPPA claim, and analyzing the arguments both for and against a six-year period.

6.     As a result of this thorough pre-filing investigation, Plaintiffs' counsel was able to develop a viable theory of liability for a PPPA claim against Defendant and prepare a thorough Complaint against Defendant.

7.     From the outset of the case, as part of their obligation under Rule 26, the Parties engaged in direct communication and agreed to engage in mediative efforts. The Parties went through an extensive settlement process involving several mediations with different mediators.

8.     Throughout the mediation process, Defendant produced information to Plaintiffs' counsel concerning class size, Defendant's financial condition, and Defendant's ability to withstand a class-wide judgment. The Parties also engaged in written and document discovery, which included the production of thousands of pages of documents, numerous third-party subpoenas, and a motion to compel (ECF No. 40). The aforementioned information was then subjected to a detailed analysis by a forensic accountant hired by Class Counsel.

9.     Ultimately, the Parties, with the assistance of Judges Rosen and Holderman, reached agreement on a framework for a class-wide resolution of the case, which they memorialized into a term sheet on April 26, 2023.

10.     In the months following, the Parties negotiated and finalized the full-

3

form Settlement Agreement (attached as Exhibit 1), conducted a competitive bidding process and selected a proposed Settlement Administrator, and worked together to finalize the Settlement Class List, which included the assistance of Plaintiffs' database management expert.

11.    The resulting $9,500,000 Proposed Settlement secures the best-ever per-class member recovery in a PPPA case for the Settlement Class. Based on the records obtained in discovery, the proposed Settlement Class includes 14,503 direct purchasers whose information was included on the lists obtained in discovery that were transmitted to third parties between June 16, 2015 and July 30, 2016, and, thus, have standing. With a $9,500,000 non-reversionary Settlement Fund, each Class Member who does not exclude himself or herself from the Settlement will automatically receive a *pro rata* cash payment of approximately $420. Prior to this settlement, the best per-class member recovery in a PPPA case was in *Kain v. The Economist Newspaper NA, Inc.*, Case No. 4:21-cv-11807-MFL-CI (E.D. Mich.), where the Parties reached a $9,500,000 settlement for a settlement class that included 22,987 persons and paid each class member approximately $261. Thus, the Proposed Settlement represents a recovery that exceeds the next best PPPA settlement by more than 50% per class member.

12.    Moreover, the Proposed Settlement also provides robust prospective relief as Defendant has agreed to refrain, in perpetuity, from disclosing to any third

party the subscription information of any subscribers to any of its publications who reside in Michigan. Settlement Agreement ¶ 2.2.

13.     From the outset of the case, Plaintiffs and proposed Class Counsel (E. Powell Miller of The Miller Law Firm, P.C.; Joseph I. Marchese and Philip L. Fraietta of Bursor & Fisher, P.A.; and Frank S. Hedin and Arun G. Ravindran of Hedin Hall LLP), working collaboratively in roughly equal measure throughout the case, recognized that the case presented a substantial and novel litigation risk pertaining to the statute of limitations. Specifically, at the time of filing, no court had ever adjudicated the proper statute of limitations for a PPPA claim. Defendant advocates for a three-year statute of limitations pursuant to M.C.L. § 600.5805(2), while Plaintiffs advocate for a six-year statute of limitations pursuant to M.C.L. § 600.5813. Because the case was filed more than three years after the alleged unlawful disclosures, if the Court (or an appellate court) ultimately sided with Defendant, the case would have been time-barred and the Settlement Class would have recovered nothing at all.

14.     My firm, The Miller Law Firm, P.C. ("Miller Law"), has significant experience in litigating class actions of similar size, scope, and complexity to the instant action. Miller Law is the leading class action firm in Michigan with more than $3 billion in settlements. Personally, I was the first and only class action attorney in Michigan to be elected by the judges of the Eastern District of Michigan

to receive the Cook-Friedman Civility Award, which is given to one attorney per year. In 2020 and, just recently, in 2023 as well, I was recognized by Super Lawyers as the number one ranked attorney in Michigan, and have been honored to have been selected in the Top 10 every year since 2009. (*See* Firm Resume of The Miller Law Firm, P.C., a true and accurate copy of which is attached hereto as **Exhibit 2**). I have been appointed as class counsel in numerous cases in this District, *see, e.g.*, *In Re: Ford Motor Co. F-150 and Ranger Truck Fuel Economy Marketing and Sales Practices Litigation*, (E.D. Mich. No. 22, 2019) (No. 2:19-md-02901 PageID.1158) ("The Court concludes that E. Powell Miller with the Miller Law Firm is the applicant best able to represent the interests of the putative class based upon: E. Powell Miller and the Miller Law Firm's prior experience in handling class actions and other complex litigation, counsel's knowledge of the applicable law, the work that E. Powell Miller and the Miller Law Firm have done in identifying and investigating the potential claims in this action, and the resources that counsel will commit to representing the putative class. The Court also notes that half of the motions it reviewed explicitly recognized E. Powell Miller's qualifications and fitness for the position of interim counsel.")

15. My co-counsel, Bursor & Fisher, P.A., has significant experience in litigating class actions of similar size, scope, and complexity to the instant action. (*See* Firm Resume of Bursor & Fisher, P.A., a true and accurate copy of which is

attached hereto as **Exhibit 3**). The firm regularly engages in major complex litigation involving consumer privacy, including PPPA cases such as *Moeller v. American Media, Inc.*, No. 16-cv-11367 (E.D. Mich.); *Edwards v. Hearst Communications, Inc.*, No. 15-cv-09279 (S.D.N.Y.); *Moeller v. Advance Magazine Publishers, Inc. d/b/a Condé Nast*, No. 15-cv-05671 (S.D.N.Y.); *Ruppel v. Consumers Union of United States, Inc.*, No. 16-cv-02444, (S.D.N.Y.); and *Taylor v. Trusted Media Brands, Inc.*, No. 16-cv-01812 (S.D.N.Y.), has the resources necessary to conduct litigation of this nature, and has frequently been appointed lead class counsel by courts throughout the country. The firm has also been recognized by courts across the country for its expertise. *See* Exhibit 3; *see also Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 566 (S.D.N.Y. Feb. 25, 2014) ("Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims . . . The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five [now six] class action jury trials since 2008."); *In re Michaels Stores Pin Pad Litigation*, Case No. 11-cv-03350, Dkt. 22 (N.D. Ill. June 8, 2011) (appointing Bursor & Fisher class counsel to represent a putative nationwide class of consumers who made in-store purchases at Michaels using a debit or credit card and had their private financial information stolen as a result).

16.    My co-counsel, Hedin Hall LLP, also has significant experience in

7

litigating class actions of similar size, scope, and complexity to the instant action. (*See* Firm Resume of Hedin Hall LLP, a true and accurate copy of which is attached hereto as **Exhibit 4**). The firm has been appointed class counsel by courts throughout the country, including in consumer protection class actions. *See Luczak v. Nat'l Beverage Corp.*, 2018 WL 9847842, at *2 (S.D. Fla. Oct. 12, 2018) ("Hedin Hall LLP has extensive experience in class actions."); *Groover v. Prisoner Transportation Servs., LLC*, 2019 WL 3974143, at *2 (S.D. Fla. Aug. 22, 2019) ("Counsel [at Hedin Hall LLP] provided excellent and thorough representation in a case that was exceptionally time-consuming.").

17.    The Parties agreed to the terms of the Settlement through experienced counsel who possessed all the information necessary to evaluate the case, determine all the contours of the proposed class, and reach a fair and reasonable compromise after negotiating the terms of the Settlement at arm's length and with the assistance of neutral mediators.

18.    Plaintiffs and proposed Class Counsel recognize that despite our belief in the strength of Plaintiffs' claims, and Plaintiffs' and the Class's ability to ultimately each secure a $5,000 statutory award under the PPPA, the expense, duration, and complexity of protracted litigation would be substantial and the outcome uncertain.

19.    Plaintiffs and proposed Class Counsel are also mindful that absent a

settlement, the success of Defendant's various defenses in this case could deprive Plaintiffs and the Settlement Class Members of any potential relief whatsoever. Defendant is represented by highly experienced attorneys who have made clear that absent a settlement, they were prepared to continue their vigorous defense of this case. Plaintiffs and proposed Class Counsel are also aware that Defendant would continue to challenge liability, as well as assert a number of defenses. Defendant had indicated that it would continue to assert numerous defenses on the merits. More specifically, Plaintiffs are aware that Defendant would assert that the PPPA does not prohibit the disclosure of the subscription information at issue (because the third-party recipients of the disclosures are Defendant's agents), that Defendant also provided appropriate notice of its practices so as to make the alleged disclosures permissible under the PPPA, and that the PPPA is an impermissible special law. Plaintiffs and proposed Class Counsel are also aware that Defendant would oppose class certification vigorously, and that Defendant would prepare a competent defense at trial. Looking beyond trial, Plaintiffs are also aware that Defendant could appeal the merits of any adverse decision, and that in light of the statutory damages in play, it would argue—in both the trial and appellate courts—that the award of any statutory damages is not warranted or for a reduction of damages based on due process concerns. *See, e.g.*, *Rogers v. BNSF Railway Co.*, 2023 WL 4297654, at *13 (N.D. Ill. June 30, 2023) (vacating jury's statutory damages award in statutory

privacy class action and ordering a new trial on damages); *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1125 (9th Cir. 2022) (vacating and remanding district court's denial of post-trial motion challenging the constitutionality of statutory damages award in statutory privacy class action and ordering the district court to reassess the question with new appellate guidance). Moreover, as aforementioned, Defendant's financial ability to withstand a classwide judgment was lacking.

20.     Plaintiffs and proposed Class Counsel believe that the relief provided by the settlement weighs heavily in favor of a finding that the settlement is fair, reasonable, and adequate, and well within the range of approval.

21.     In this litigation, Plaintiffs contributed substantial effort to advance the interests of the Settlement Class. Specifically, Plaintiffs worked with proposed Class Counsel to detail their subscription purchase history, including how they subscribed to the publications at issue; to inform proposed Class Counsel that they did not agree in writing or otherwise to allow Defendant to sell or disclose their Personal Reading Information; that they did not receive notice of such disclosures, nor were they aware of them at all. Moreover, Plaintiffs worked with proposed Class Counsel to prepare the Complaint and carefully reviewed the Complaint for accuracy and approved it before it was filed.

22.     Moreover, Plaintiffs filed this case knowing it would invariably reveal their statutorily-protected status as subscribers to Defendant's publications, and kept

in regular contact with proposed Class Counsel, including on matters of strategy, discovery, mediation, and the prospects of settlement.

23.    Plaintiffs also coordinated with proposed Class Counsel to respond to formal discovery, including searching for documents such as records pertaining to their magazine subscriptions, and were prepared to testify at deposition and trial, if necessary.

24.    I am of the opinion that Plaintiffs' active involvement in this case was critical to its ultimate resolution. They took their role as class representatives seriously, devoting time and effort to protecting the interests of the class. Without their willingness to assume the risks and responsibilities of serving as class representative, I do not believe such a strong result could have been achieved.

I declare under penalty of perjury that the above and foregoing is true and accurate. Executed this 17th day of August, 2023 at Rochester, Michigan.

*/s E. Powell Miller*
E. Powell Miller

### <u>Index of Exhibits to Exhibit A (Declaration of E. Powell Miller)</u>

Exhibit 1- Settlement Agreement

Exhibit 2- Firm Resume of The Miller Law Firm, P.C.

Exhibit 3- Firm Resume of Bursor & Fisher, P.A.

Exhibit 4- Firm Resume of Hedin Hall LLP

# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| RICHARD PRATT and LARRY JONES, individually and on behalf of all others similarly situated,<br><br>                              Plaintiffs,<br><br>       v.<br><br>KSE SPORTSMAN MEDIA, INC. d/b/a OUTDOOR SPORTSMAN GROUP,<br><br>                              Defendant. | Case No. 21-cv-11404-TLL-PTM |

## CLASS ACTION SETTLEMENT AGREEMENT

This Agreement ("Agreement" or "Settlement Agreement") is entered into by and among (i) Plaintiffs, Richard Pratt and Larry Jones ("Plaintiffs"); (ii) the Settlement Class (as defined herein); and (iii) Defendant, KSE Sportsman Media, Inc. d/b/a Outdoor Sportsman Group ("Defendant" or "KSE").  The Settlement Class and Plaintiffs are collectively referred to as the "Plaintiffs" unless otherwise noted.  The Plaintiffs and the Defendant are collectively referred to herein as the "Parties."  This Agreement is intended by the Parties to fully, finally and forever resolve, discharge, and settle the Released Claims (as defined herein), upon and subject to the terms and conditions of this Agreement, and subject to the final approval of the Court.

## RECITALS

A.      On June 15, 2021, Plaintiffs filed a putative class action in the United States District Court for the Eastern District of Michigan.  The material allegations of the complaint centered on Defendant's alleged disclosure of its customers' personal information and magazine choices to third parties before July 30, 2016, which Plaintiffs claimed was without permission and in violation of Michigan's Preservation of Personal Privacy Act, H.B. 5331, 84th Leg. Reg.

Sess., P.A. No. 378 §§ 1-4, *id.* § 5, added by H.B. 4694, 85th Leg. Reg. Sess., P.A. No. 206, § 1 (Mich. 1989) (the "PPPA"). (Dkt. 1.)

      B.      On October 28, 2021, before Defendant responded to the Complaint, the Parties participated in a mediation with The Honorable Wayne R. Andersen (Ret.), formerly of the Northern District of Illinois and now a neutral with JAMS Chicago.  While the mediation was conducted at arm's-length, the Parties were unable to reach an agreement to resolve the case.

      C.      On November 24, 2021, Defendant filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), arguing, *inter alia*, that Plaintiffs' claims were time-barred by a three-year statute of limitations and that Plaintiffs lack Article III standing to pursue their claims. (Dkt. 17).

      D.      On February 15, 2022, after full briefing, the Court denied Defendant's motion to dismiss in its entirety. (Dkt. 24).

      E.      On March 1, 2022, Defendant filed an Answer to the Complaint asserting 17 affirmative defenses. (Dkt. 26).

      F.      Thereafter, the Parties engaged in written and document discovery, which included the production of thousands of pages of documents, numerous third-party subpoenas, and a motion to compel (Dkt. 40).

      G.      On August 19, 2022, Defendant filed a Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c), arguing that Plaintiffs' claims were barred because the PPPA is a special law and any alleged disclosures by KSE met the direct marketing exception to the PPPA. (Dkt. 44).

      H.      From the outset of the case, the Parties engaged in direct communication, and as part of their obligation under Fed. R. Civ. P. 26, discussed the prospect of resolution.  To that

end, the Parties agreed to participate in a mediation with The Honorable James F. Holderman (Ret.), former Chief Judge of the Northern District of Illinois and now a neutral with JAMS Chicago.

I.     In preparation for the mediation, the Parties conducted an analysis of the size and parameters of the potential class, which included analysis by a database management expert hired by Class Counsel, as well as the strengths and weaknesses of their respective cases.

J.     The mediation with Judge Holderman took place on December 14, 2022 and lasted the entire day. During and in the months following that mediation, the Parties exchanged and analyzed information on Defendant's financial condition and its ability to withstand a classwide judgment, which included analysis by a forensic accountant hired by Class Counsel.

K.     Thereafter, on April 14, 2023, the Parties conducted another mediation, this time with The Honorable Gerald E. Rosen (Ret.), former Chief Judge of the Eastern District of Michigan and now a neutral with JAMS Detroit and with Judge Holderman. The mediation lasted the entire day and at the conclusion of the mediation the Parties, with the assistance of Judges Rosen and Holderman, reached agreement on a framework for a classwide resolution of the case, which they memorialized into a term sheet on April 26, 2023.

L.     Based on the information obtained during discovery and exchanged in advance of the mediations, the Parties understand that the Settlement Class includes 14,503 persons.

M.     At all times, Defendant has denied and continues to deny any wrongdoing whatsoever and has denied and continues to deny that it committed, or threatened or attempted to commit, any wrongful act or violation of law or duty alleged in the Action and has opposed certification of a litigation class. Defendant believes that the claims asserted in the Action against it do not have merit and that it would have prevailed at summary judgment, at class

certification, and/or at trial. Nonetheless, taking into account the uncertainty and risks inherent in any litigation, Defendant has concluded it is desirable and beneficial that the Action be fully and finally settled and terminated in the manner and upon the terms and conditions set forth in this Agreement. This Agreement is a compromise, and the Agreement, any related documents, and any negotiations resulting in it shall not be construed as or deemed to be evidence of or an admission or concession of liability or wrongdoing on the part of Defendant, or any of the Released Parties (defined below), with respect to any claim of any fault or liability or wrongdoing or damage whatsoever or with respect to the certifiability of a litigation class.

N.      Plaintiffs believe that the claims asserted in the Action against Defendant have merit and that they would have prevailed at summary judgment and/or trial. Nonetheless, Plaintiffs and Class Counsel recognize that Defendant has raised factual and legal defenses that present a risk that Plaintiffs may not prevail. Plaintiffs and Class Counsel also recognize the expense and delay associated with continued prosecution of the Action against Defendant through a motion for summary judgment, discovery, class certification, trial, and any subsequent appeals. Plaintiffs and Class Counsel also have taken into account the uncertain outcome and risks of litigation, especially in complex class actions, as well as the difficulties inherent in such litigation. Therefore, Plaintiffs believe it is desirable that the Released Claims be fully and finally compromised, settled, and resolved with prejudice. Based on its evaluation, Class Counsel has concluded that the terms and conditions of this Agreement are fair, reasonable, and adequate to the Settlement Class, and that it is in the best interests of the Settlement Class to settle the claims raised in the Action pursuant to the terms and provisions of this Agreement.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Plaintiffs, the Settlement Class, and each of them, and Defendant, by and through its undersigned

counsel that, subject to final approval of the Court after a hearing or hearings as provided for in this Settlement Agreement, in consideration of the benefits flowing to the Parties from the Agreement set forth herein, that the Action and the Released Claims shall be finally and fully compromised, settled, and released, and the Action shall be dismissed with prejudice, upon and subject to the terms and conditions of this Agreement.

## **AGREEMENT**

1.      **DEFINITIONS**.

As used in this Settlement Agreement, the following terms have the meanings specified below:

1.1      "**Action**" means *Pratt v. KSE Sportsman Media, Inc. d/b/a Outdoor Sportsman Group*, Case No. 1:21-cv-11404-TLL-PTM, pending in the United States District Court for the Eastern District of Michigan.

1.2      "**Alternate Judgment**" means a form of final judgment that may be entered by the Court herein but in a form other than the form of Judgment provided for in this Agreement and where none of the Parties elects to terminate this Settlement by reason of such variance.

1.3      "**Cash Award**" means the cash compensation, payable by the Settlement Administrator from funds provided by Defendant on a pro rata basis, that each Settlement Class Member who has not opted-out of the Settlement shall be entitled to receive, which estimated amount shall be specified in the Notice.  Settlement Class Members shall have the option to elect to receive their Cash Awards via check, PayPal, or Venmo, provided however that the default payment method shall be check.

1.4      "**Claim Deadline**" means 11:59 p.m., Eastern Time, on the date by which Unidentified Class Members must submit Claim Forms (either electronically on the Settlement

Website or by mailing in a paper Claim Form) to be eligible for the benefits described herein, which date and time shall be specified in the Notice.

1.5    "**Claim Form**" means the claim form attached hereto as Exhibit E, or its substantially similar form, as approved by the Court, that any Unidentified Class Members must complete and submit on or before the Claim Deadline to be eligible for the benefits described herein, which document shall be submitted to the Court when preliminary approval of the Settlement is sought.

1.6    "**Class Counsel**" means E. Powell Miller of The Miller Law Firm, P.C., Joseph I. Marchese and Philip L. Fraietta of Bursor & Fisher, P.A., and Frank S. Hedin and Arun G. Ravindran of Hedin Hall LLP.

1.7    "**Class List**" means an electronic list or lists from Defendant's available records that includes the names, last known U.S. Mail addresses, and email addresses, to the extent available, belonging to Persons within the Settlement Class, which is attached hereto as Exhibit A, and which shall be provided to the Settlement Administrator with a copy to Class Counsel in accordance with Paragraph 4.1(a).

1.8    "**Class Representative**" means the named Plaintiffs in this Action, Richard Pratt and Larry Jones.

1.9    "**Court**" means the United States District Court for the Eastern District Michigan, the Honorable Thomas L. Ludington presiding, or any judge who shall succeed him as the Judge in this Action.

1.10    "**Defendant**" means KSE Sportsman Media, Inc. d/b/a Outdoor Sportsman Group.

**1.11**     "**Defendant's Counsel**" means Mary Quinn Cooper, Kathy R. Neal, and Katie G. Crane of McAfee & Taft, P.C.

**1.12**     "**Effective Date**" means the date ten (10) days after which all of the events and conditions specified in Paragraph 9.1 have been met and have occurred.

**1.13**     "**Escrow Account**" means the separate, interest-bearing escrow account to be established by the Settlement Administrator under terms acceptable to all Parties at a depository institution insured by the Federal Deposit Insurance Corporation.  The Settlement Fund shall be deposited by Defendant into the Escrow Account in accordance with the terms of this Agreement and the money in the Escrow Account shall be invested in the following types of accounts and/or instruments and no other: (i) demand deposit accounts and/or (ii) time deposit accounts and certificates of deposit, in either case with maturities of forty-five (45) days or less.  The costs of establishing and maintaining the Escrow Account shall be paid from the Settlement Fund.

**1.14**     "**Fee Award**" means the amount of attorneys' fees, costs, and reimbursement of expenses awarded by the Court to Class Counsel, which will be paid out of the Settlement Fund.

**1.15**     "**Final**" means one business day following the latest of the following events: (i) the date upon which the time expires for filing or noticing any appeal of the Court's Final Judgment approving the Settlement Agreement; (ii) if there is an appeal or appeals, other than an appeal or appeals solely with respect to the Fee Award, the date of completion, in a manner that finally affirms and leaves in place the Final Judgment without any material modification, of all proceedings arising out of the appeal or appeals (including, but not limited to, the expiration of all deadlines for motions for reconsideration or petitions for review and/or *certiorari*, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal or

7

appeals following decisions on remand); or (iii) the date of final dismissal of any appeal or the final dismissal of any proceeding on *certiorari*.

      **1.16**    "**Final Approval Hearing**" means the hearing before the Court where the Parties will request the Final Judgment to be entered by the Court approving the Settlement Agreement, the Fee Award, and the service award to the Class Representative.

      **1.17**    "**Final Judgment**" means the Final Judgment and Order to be entered by the Court approving the Agreement after the Final Approval Hearing.

      **1.18**    "**Michigan Subscriber Information**" means the combination of each of a Person's name, address in the State of Michigan and the title(s) and/or interest information derived solely from the title of the KSE publication to which such Person currently subscribes and/or previously subscribed.

      **1.19**    "**Notice**" means the notice of this proposed Class Action Settlement Agreement and Final Approval Hearing, which is to be sent to the Settlement Class substantially in the manner set forth in this Agreement, is consistent with the requirements of Due Process, Rule 23, and is substantially in the form of Exhibits B, C, and D hereto.

      **1.20**    "**Notice Date**" means the date by which the Notice set forth in Paragraph 4.1 is complete, which shall be no later than twenty-eight (28) days after Preliminary Approval.

      **1.21**    "**Objection/Exclusion Deadline**" means the date by which a written objection to this Settlement Agreement or a request for exclusion submitted by a Person within the Settlement Class must be made, which shall be designated as a date no later than forty-five (45) days after the Notice Date and no sooner than fourteen (14) days after papers supporting the Fee Award are filed with the Court and posted to the settlement website listed in Paragraph 4.1(d), or such other date as ordered by the Court.

**1.22**   "**Person**" shall mean, without limitation, any individual, corporation, partnership, limited partnership, limited liability company, association, joint stock company, estate, legal representative, trust, unincorporated association, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, or assigns.

**1.23**   "**Plaintiffs**" means Richard Pratt, Larry Jones, and the Settlement Class Members.

**1.24**   "**Preliminary Approval**" means the Court's certification of the Settlement Class for settlement purposes, preliminary approval of this Settlement Agreement, and approval of the form and manner of the Notice.

**1.25**   "**Preliminary Approval Order**" means the order preliminarily approving the Settlement Agreement, certifying the Settlement Class for settlement purposes, and directing notice thereof to the Settlement Class, which will be agreed upon by the Parties and submitted to the Court in conjunction with Plaintiffs' motion for preliminary approval of the Agreement.

**1.26**   "**Released Claims**" means any and all actual, potential, filed, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims, demands, liabilities, rights, causes of action, contracts or agreements, extra contractual claims, damages, punitive, exemplary or multiplied damages, expenses, costs, attorneys' fees and or obligations (including "Unknown Claims," as defined below), whether in law or in equity, accrued or un-accrued, direct, individual or representative, of every nature and description whatsoever, whether based on the PPPA or other state, federal, local, statutory or common law or any other law, rule or regulation, against the Released Parties, or any of them, arising out of any facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures to act regarding the alleged disclosure of the Settlement Class Members' personal information or Michigan Subscriber Information, including but not limited to all claims that were brought or

could have been brought in the Action relating to any and all Releasing Parties.

1.27   **"Released Parties"** means KSE Sportsman Media, Inc. d/b/a Outdoor Sportsman Group, Inc., as well as any and all of its respective present or past heirs, executors, estates, administrators, predecessors, successors, assigns, parent companies, subsidiaries, licensors, licensees, associates, affiliates, employers, agents, consultants, independent contractors, including without limitation employees of the foregoing, owners, directors, managing directors, officers, partners, principals, members, attorneys, accountants, financial and other advisors, underwriters, shareholders, lenders, auditors, investment advisors, legal representatives, successors in interest, assigns and companies, firms, trusts, and corporations.

1.28   **"Releasing Parties"** means Plaintiffs, those Settlement Class Members who do not timely opt out of the Settlement Class, and all of their respective present or past heirs, executors, estates, administrators, predecessors, successors, assigns, parent companies, subsidiaries, associates, affiliates, employers, employees, agents, consultants, independent contractors,  directors, managing directors, officers, partners, principals, members, attorneys, accountants, financial and other advisors, underwriters, shareholders, lenders, auditors, investment advisors, legal representatives, successors in interest, assigns and companies, firms, trusts, and corporations.

1.29   **"Settlement Administration Expenses"** means the expenses incurred by the Settlement Administrator in providing Notice (including CAFA notice), processing claims, responding to inquiries from members of the Settlement Class, mailing checks, and related services, paying taxes and tax expenses related to the Settlement Fund (including all federal, state or local taxes of any kind and interest or penalties thereon, as well as expenses incurred in connection with determining the amount of and paying any taxes owed and expenses related to

any tax attorneys and accountants), as well as all expenses related to the resolution of any disputed claims by Judge Rosen (as described below in Paragraph 5.3).

1.30    "**Settlement Administrator**" means JND Legal Administration, or such other reputable administration company that has been selected jointly by the Parties and approved by the Court to perform the duties set forth in this Agreement, including but not limited to serving as Escrow Agent for the Settlement Fund, overseeing the distribution of Notice, as well as the processing and payments to the Settlement Class as set forth in this Agreement, handing all approved payments out of the Settlement Fund, and handling the determination, payment and filing of forms related to all federal, state and/or local taxes of any kind (including any interest or penalties thereon) that may be owed on any income earned by the Settlement Fund.  Class Counsel's assent to this Agreement shall constitute consent on behalf of each and every member of the Settlement Class as defined herein to disclose all information required by the Settlement Administrator to perform the duties and functions ascribed to it herein, consistent with the written consent provisions of the PPPA.

1.31    "**Settlement Class**" means the 14,503 direct purchasers whose information was included on the lists obtained in discovery that were transmitted to third parties between June 16, 2015 and July 30, 2016, and thus that have standing, which are reflected on the Class List, attached hereto as Exhibit A.  Excluded from the Settlement Class are (1) any Judge or Magistrate presiding over this Action and members of their families; (2) the Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely

request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded persons.

**1.32** "**Settlement Class Member**" means a Person who falls within the definition of the Settlement Class as set forth above and who has not submitted a valid request for exclusion.

**1.33** "**Settlement Fund**" means the non-reversionary cash fund that shall be established by Defendant in the total amount of nine million five hundred thousand dollars ($9,500,000.00 USD) to be deposited into the Escrow Account, according to the schedule set forth herein, plus all interest earned thereon.  From the Settlement Fund, the Settlement Administrator shall pay all Cash Awards to Settlement Class Members, Settlement Administration Expenses, any service awards to the Class Representatives, any Fee Award to Class Counsel, and any other costs, fees or expenses approved by the Court.  The Settlement Fund shall be kept in the Escrow Account with permissions granted to the Settlement Administrator to access said funds until such time as the listed payments are made.  The Settlement Fund includes all interest that shall accrue on the sums deposited in the Escrow Account.  The Settlement Administrator shall be responsible for all tax filings with respect to any earnings on the Settlement Fund and the payment of all taxes that may be due on such earnings. The Settlement Fund represents the total extent of Defendant's monetary obligations under this Agreement.  The payment of the Settlement Amount by Defendant fully discharges the Defendant and the other Released Parties' financial obligations (if any) in connection with the Settlement, meaning that no Released Party shall have any other obligation to make any payment into the Escrow Account or to any Class Member, or any other Person, under this Agreement. The total monetary obligation with respect to this Agreement shall not exceed nine million five hundred thousand dollars ($9,500,000.00 USD).

**1.34**　　"**Settlement Website**" means the dedicated website created and maintained by the Settlement Administrator, which will contain relevant documents and information about the Settlement, including the Settlement Agreement, the long-form Notice and the Claim Form, as well as web-based forms for Settlement Class Members and Unidentified Class Members to submit electronic Claim Forms, requests for exclusion from the Settlement, elections to receive Cash Awards by PayPal or Venmo, or updated postal addresses to which Cash Awards should be sent after the Settlement becomes Final.

**1.35**　　"**Unidentified Class Member**" means a member of the Settlement Class for whom the Settlement Administrator has *not* been able to identify a postal address that it determines is reasonably likely to be the current place of residence for such member of the Settlement Class.

**1.36**　　"**Unknown Claims**" means claims that could have been raised in the Action and that any or all of the Releasing Parties do not know or suspect to exist, which, if known by him or her, might affect his or her agreement to release the Released Parties or the Released Claims or might affect his or her decision to agree, object or not to object to the Settlement.  Upon the Effective Date, the Releasing Parties shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of § 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Upon the Effective Date, the Releasing Parties also shall be deemed to have, and shall have, waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, or the law of any jurisdiction outside of the

United States, which is similar, comparable or equivalent to § 1542 of the California Civil Code. The Releasing Parties acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of this release, but that it is their intention to finally and forever settle and release the Released Claims, notwithstanding any Unknown Claims they may have, as that term is defined in this Paragraph.

2.     **SETTLEMENT RELIEF**.

    2.1     **Payments to Settlement Class Members**.

        **(a)**     Defendant shall pay into the Escrow Account the amount of the Settlement Fund ($9,500,000.00), specified in Paragraph 1.33 of this Agreement, according to the following schedule:

        i.     Two hundred thousand dollars ($200,000.00) to be paid into the Escrow Account within fourteen (14) days after Preliminary Approval to cover the initial hard costs included in the Settlement Administration Expenses of the Settlement Administrator associated with providing Notice to the class, including payment of postage fees;

        ii.     The remaining nine million three hundred thousand dollars ($9,300,000.00) to be paid within fourteen (14) days of the District Court's order granting final approval to this Settlement.

        **(b)**     Each Settlement Class Member shall receive as a Cash Award a *pro rata* portion of the Settlement Fund, calculated by the Settlement Administrator, after deducting all Settlement Administration Expenses, any Fee Award to Class Counsel, any service awards to the Class Representatives, and any other costs, fees, or expenses approved by the Court, unless the Settlement Class Member excludes himself or herself from the Settlement.

(c)      Except for any Settlement Class Member for whom the Settlement

Administrator is unable to identify a postal address or e-mail address that it determines is

reasonably likely to be the current place of residence (or an active e-mail address) for such

Settlement Class Member, after taking measures reasonably necessary to identify such an

address (as detailed further in Paragraph 4.1(b)), each Settlement Class Member will be sent via

U.S. postal mail (and/or e-mail to the extent a postal address is unavailable for a Settlement Class

Member) a copy of the Class Notice, which will also indicate the estimated amount of the Cash

Award that the Settlement Class Member will be paid upon final approval of the Settlement

unless the Settlement Class Member opts out of the Settlement.

(d)      *Payments to Identified Settlement Class Members.* After final approval of

the Settlement, a direct payment by check will be made to each Settlement Class Member who

did not exclude himself or herself and for whom at least one postal address has been identified

by the Settlement Administrator that the Settlement Administrator concludes is reasonably likely

to reflect the current residence of such Settlement Class Member, after taking measures

reasonably necessary to identify such an address, as set forth more fully in Paragraph 4.1(b); to

the extent multiple such postal addresses are identified by the Settlement Administrator for a

particular Settlement Class Member, such check shall be sent to the address that the Settlement

Administrator concludes is the most likely among such multiple addresses to reflect the current

residence of such Settlement Class Member.  The foregoing direct payment procedure shall

apply for all Settlement Class Members for whom a postal address has been identified unless: (i)

the Settlement Class Member submits an updated address to which their check should be sent on

a web-based form on the Settlement Website, in which case such check will be sent to the

updated address that was provided, or (ii) the Settlement Class Members elects to receive

15

payment by PayPal or Venmo by following the procedures on the Settlement Website to make such a request.

(e)     *Payments to Unidentified Class Members.* To the extent the Settlement Administrator is unable to identify at least one postal address for any Settlement Class Member that the Settlement Administrator concludes is reasonably likely to reflect the current residence of such Settlement Class Member, then in that event, and only in that event, shall any such Settlement Class Member be required to submit, as clearly explained in the website Notice and the e-mail Notice(s) that the Settlement Administrator will have attempted to send such Settlement Class Member, a qualifying claim form that will include their (1) name; (2) postal address at which they subscribed to a KSE publication; (3) postal address to which their check shall be sent or instructions for payment via PayPal or Venmo; and (4) a telephone number and/or email address at which the Settlement Administrator may contact him or her to obtain any additional information that may be required to verify such Person's claim.

(f)     Each check issued will state on its face that the check will expire and become null and void unless cashed within 180 Days of the date of issuance.  To the extent that a check issued to a Settlement Class Member is not cashed within 180 Days after the date of issuance (which issuance shall be no sooner than 5 Days prior to such check's mailing), the check will be void.  Payments to all Settlement Class Members who do not exclude themselves from the Settlement shall be made within twenty-eight (28) days after Final Judgment.

(g)     To the extent that any checks issued to a Settlement Class Member are not cashed within one-hundred eighty (180) days after the date of issuance, such uncashed check funds shall be redistributed on a *pro rata* basis (after first deducting any necessary settlement administration expenses from such uncashed check funds) to all Settlement Class Members who

cashed checks during the initial distribution, but only to the extent each Settlement Class Member would receive at least $5.00 in any such secondary distribution and if otherwise feasible.  To the extent each Settlement Class Member would receive less than $5.00 in any such secondary distribution or if a secondary distribution would be otherwise infeasible, any uncashed check funds shall, subject to Court approval, revert to the Michigan Bar Foundation's Access to Justice Fund, a non-sectarian, not-for-profit organization, or another non-sectarian, not-for-profit organization(s) recommended by Class Counsel and approved by the Court.

       **(h)**     Subject to the provisions pertaining to the termination or cancellation of the Settlement, as set forth in Paragraph 9, no portion of the Settlement Fund shall revert back to Defendant.

       **2.2**    **Prospective Relief.**  As part of the Settlement, Defendant agrees to refrain, in perpetuity, from disclosing to any third party the subscription information of any subscribers to any of its publications who reside in Michigan.

**3.**    **RELEASE**.

       **3.1**    The obligations incurred pursuant to this Settlement Agreement shall be a full and final disposition of the Action and any and all Released Claims, as against all Released Parties.

       **3.2**    Upon the Effective Date, the Releasing Parties, and each of them, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Parties, and each of them.

**4.**    **NOTICE TO THE CLASS**.

       **4.1**    The Notice Plan shall consist of the following:

       **(a)**    *Settlement Class List*.  No later than twenty-eight (28) days after the execution of this Agreement, Defendant shall, to the best of its ability, produce an electronic list or lists from its available records that includes the names, last known U.S. Mail addresses, and

email addresses, to the extent available, belonging to Persons within the Settlement Class.  Class

Counsel's assent to this Agreement shall constitute consent on behalf of each and every member

of the Settlement Class as defined herein to disclose this information as stated in this paragraph,

consistent with the written consent provisions of the PPPA.  This electronic document shall be

called the "Class List," and shall be provided to the Settlement Administrator with a copy to

Class Counsel.

          **(b)**     *Method for Providing Notice.*

          **i.**     The Notice shall provide information to each Settlement Class

Member regarding (a) the specific amount of the Cash Award that will be paid to each

Settlement Class Member upon final approval; (b) the requirements for the filing of Claim Forms

by any Unidentified Settlement Class Members; (c) the amount of the Service Award and the Fee

Award to be requested by Plaintiffs and Class Counsel; (d) the Objection/Exclusion Deadline

and the requirements and process for filing an objection to or a request for exclusion from the

Settlement; and (e) the URL of the Settlement Website, where additional information and

documents concerning the Settlement may be obtained.

          **ii.**     For every Settlement Class Member for whom the Settlement

Administrator has been able to identify a postal address that it concludes has a reasonable

likelihood of reflecting the current residence of such Settlement Class Member, as identified by

the Settlement Administrator after taking measures reasonably necessary to identify such an

address, the Settlement Administrator shall send the Notice to the Settlement Class Member at

such address via postal mail.

          **iii.**     To the extent multiple postal addresses are identified by the

Settlement Administrator as having a reasonable likelihood of reflecting the current residence of

a particular Settlement Class Member, Notice shall be sent to all such postal addresses, and each such Notice shall indicate the address to which the Settlement Class Member's Cash Award check will be sent by check at the conclusion of the Settlement administration process; such address shall be  the one that the Settlement Administrator concludes is the most likely among such multiple addresses to reflect the current residence of such Settlement Class Member.

        **iv.**     For any Settlement Class Member for whom the Settlement Administrator is unable to identify at least one postal address that it concludes has a reasonable likelihood of reflecting the current residence of such Settlement Class Member, the Notice will be delivered to any and all e-mail addresses specified in the Class List or otherwise identified by the Settlement Administrator as being reasonably likely to belong to such Settlement Class Member (after taking measures reasonably necessary to identify such e-mail address(es)).

        **v.**     If any Notice sent to a Settlement Class Member is returned as undeliverable, the Settlement Administrator shall redeliver the Notice to any alternative postal address(es) identified by the Settlement Administrator as having a reasonable likelihood of being the current place of residence for such Settlement Class Member (or, if none is available, to any e-mail address(es) believed to belong to the Settlement Class Member), after taking measures reasonably necessary to locate such addresses.

        **(c)**     *Settlement Website.*  Within ten (10) days from entry of the Preliminary Approval Order, Notice shall be provided on a website at an available settlement URL (such as, for example, www.ksemagazinesettlement.com) which shall be obtained, administered and maintained by the Settlement Administrator and shall include the ability to file Claim Forms on-line, provided that such Claim Forms, if signed electronically, will be binding for purposes of

applicable law and contain a statement to that effect.  The Notice provided on the Settlement Website shall be substantially in the form of Exhibit D hereto.

   **(d)** *CAFA Notice.*  Pursuant to 28 U.S.C. § 1715, not later than ten (10) days after the Agreement is filed with the Court, the Settlement Administrator shall cause to be served upon the Attorney General of the United States, and any other required government officials, notice of the proposed settlement as required by law, subject to Paragraph 5.1 below.

   **(e)** *KSE Statement.*  The documents referenced in 4.1(b), (c), and (d) shall contain the following statement from KSE in a format/typeface designed to give it prominence within each said document: While KSE believes that its practices were in compliance with Michigan law, KSE chose to settle this case, without admitting liability, to focus time, effort and resources on continuing to provide valued content to its readers, and not on additional legal fees and the uncertainty of litigation.

  **4.2** The Notice shall advise the Settlement Class of their rights, including the right to be excluded from, comment upon, and/or object to the Settlement Agreement or any of its terms. The Notice shall specify that any objection to the Settlement Agreement, and any papers submitted in support of said objection, shall be considered by the Court at the Final Approval Hearing only if, on or before the Objection/Exclusion Deadline approved by the Court and specified in the Notice, the Person making the objection files notice of an intention to do so and at the same time (a) files copies of such papers he or she proposes to be submitted at the Final Approval Hearing with the Clerk of the Court, or alternatively, if the objection is from a Class Member represented by counsel, files any objection through the Court's CM/ECF system, and (b) sends copies of such papers by mail, hand, or overnight delivery service to Class Counsel and Defendant's Counsel.

**4.3**     Any Settlement Class Member who intends to object to this Agreement must present on a timely basis pursuant to the Court's anticipated Order preliminarily approving the settlement the objection in writing, which must be personally signed by the objector, and must include:  (1) the objector's name and address; (2) an explanation of the basis upon which the objector claims to be a Settlement Class Member, including the title of the publication to which he or she is or was a subscriber; (3) all grounds for the objection, including all citations to legal authority and evidence supporting the objection; (4) the name and contact information of any and all attorneys representing, advising, or in any way assisting the objector in connection with the preparation or submission of the objection or who may profit from the pursuit of the objection (the "Objecting Attorneys"); and (5) a statement indicating whether the objector intends to appear at the Final Approval Hearing (either personally or through counsel who files an appearance with the Court in accordance with the Local Rules).

**4.4**     If a Settlement Class Member or any of the Objecting Attorneys has objected to any class action settlement where the objector or the Objecting Attorneys asked for or received any payment in exchange for dismissal of the objection, or any related appeal, without any modification to the settlement, then the objection must include a statement identifying each such case by full case caption and amount of payment received.

**4.5**     A Settlement Class Member may request to be excluded from the Settlement Class by sending a timely written request postmarked on or before the Objection/Exclusion Deadline approved by the Court and specified in the Notice.  To exercise the right to be excluded, a Person in the Settlement Class must timely send a written request for exclusion to the Settlement Administrator providing (1) his/her name and address; (2) the title of the publication to which he or she is a subscriber; (3) a signature; (4) the name and number of the case; (5) and a

statement that he or she wishes to be excluded from the Settlement Class for purposes of this

Settlement.  A request to be excluded that does not include all of this information, or that is sent

to an address other than that designated in the Notice, or that is not postmarked within the time

specified, shall be invalid, and the Person(s) serving such a request shall be a member(s) of the

Settlement Class and shall be bound as a Settlement Class Member by this Agreement, if

approved.  Any member of the Settlement Class who validly elects to be excluded from this

Agreement shall not:  (i) be bound by any orders or the Final Judgment; (ii) be entitled to relief

under this Settlement Agreement; (iii) gain any rights by virtue of this Agreement; or (iv) be

entitled to object to any aspect of this Agreement.  The request for exclusion must be personally

signed by each Person requesting exclusion.  So-called "mass" or "class" opt-outs shall not be

allowed.  To be valid, a request for exclusion must be postmarked or received by the date

specified in the Notice.

     **4.6**     The Final Approval Hearing shall be no earlier than ninety (90) days after the

Notice described in Paragraph 4.1 is provided.

     **4.7**     Any Settlement Class Member who does not, in accordance with the terms and

conditions of this Agreement, seek exclusion from the Settlement Class or timely file a valid

Claim Form when such Claim Form is required shall not be entitled to receive any payment or

benefits pursuant to this Agreement, but will otherwise be bound by all of the terms of this

Agreement, including the terms of the Final Judgment to be entered in the Action and the

Releases provided for in the Agreement, and will be barred from bringing any action against any

of the Released Parties concerning the Released Claims.

**5.**    **SETTLEMENT ADMINISTRATION**.

     **5.1**     The Settlement Administrator shall, under the supervision of the Court, administer

the relief provided by this Settlement Agreement by processing Claim Forms submitted by

Unidentified Class Members, processing requests for exclusion from the Settlement, and disbursing funds from the Settlement Fund in a rational, responsive, cost effective, and timely manner.   The terms of this Agreement, upon approval by the Court, shall at all times govern the scope of the services to be provided by the Settlement Administrator to administer the Settlement.  The Settlement Administrator shall maintain reasonably detailed records of its activities under this Agreement.  The Settlement Administrator shall maintain all such records as are required by applicable law in accordance with its normal business practices and such records will be made available to Class Counsel and Defendant's Counsel upon request.  The Settlement Administrator shall also provide reports and other information to the Court as the Court may require.  The Settlement Administrator shall provide Class Counsel and Defendant's Counsel with regular reports at weekly intervals containing information concerning Notice, administration, and implementation of the Settlement Agreement.  Should the Court request, the Parties shall submit a timely report to the Court summarizing the work performed by the Settlement Administrator, including a report of all amounts from the Settlement Fund paid to Settlement Class Members on account of Approved Claims.  Without limiting the foregoing, the Settlement Administrator shall:

(a)     Forward to Defendant's Counsel, with copies to Class Counsel, all original documents and other materials received in connection with the administration of the Settlement, and all copies thereof, within thirty (30) days after the date on which all Claim Forms have been finally approved or disallowed in accordance with the terms of this Agreement;

(b)     Provide Class Counsel and Defendant's Counsel with drafts of all administration related documents, including but not limited to CAFA Notices, follow-up class notices or communications with Settlement Class Members, telephone scripts, website postings

or language or other communications with the Settlement Class, at least five (5) business days

before the Settlement Administrator is required to or intends to publish or use such

communications, unless Class Counsel and Defendant's Counsel agree to waive this requirement

in writing on case by case basis;

      **(c)**     Receive Claim Forms from Unidentified Class Members and promptly

provide to Class Counsel and Defendant's counsel copies thereof. If the Settlement

Administrator receives any Claim Forms after the Claim Deadline, the Settlement Administrator

shall promptly provide copies thereof to Class Counsel and Defendant's Counsel;

      **(d)**     Receive requests to be excluded from the Settlement Class and other

requests and promptly provide to Class Counsel and Defendant's Counsel copies thereof, along

with a weekly report of the number of such requests received.  If the Settlement Administrator

receives any exclusion forms or other requests after the deadline for the submission of such

forms and requests, the Settlement Administrator shall promptly provide copies thereof to Class

Counsel and Defendant's Counsel and await guidance from Counsel as to treatment thereof;

      **(e)**     Provide weekly reports to Class Counsel and Defendant's Counsel,

including without limitation, reports regarding the number of Claim Forms received, the number

approved by the Settlement Administrator, and the categorization and description of Claim

Forms rejected, in whole or in part, by the Settlement Administrator; and

      **(f)**     Make available for inspection by Class Counsel or Defendant's Counsel

the Claim Forms received by the Settlement Administrator at any time upon reasonable notice.

      **5.2**     The Settlement Administrator shall be obliged to employ reasonable procedures to

screen claims for abuse or fraud and deny Claim Forms where there is evidence of abuse or

fraud.  The Settlement Administrator shall determine whether a Claim Form submitted by a

Settlement Class Member is an Approved Claim by determining if the Person is on the Class List and shall reject Claim Forms that fail to (a) comply with the instructions on the Claim Form or the terms of this Agreement, or (b) provide full and complete information as requested on the Claim Form.  In the event a Person submits a timely Claim Form by the Claims Deadline where the Person appears on the Class List but the Claim Form is not otherwise complete, then the Settlement Administrator shall give such Person one (1) reasonable opportunity to provide any requested missing information, which information must be received by the Settlement Administrator no later than thirty (30) calendar days after the Claims Deadline.  In the event the Settlement Administrator receives such information more than thirty (30) days after the Claims Deadline, then any such claim shall be denied.  The Settlement Administrator may contact any Person who has submitted a Claim Form to obtain additional information necessary to verify the Claim Form.

**5.3**     Defendant's Counsel and Class Counsel shall have the right to challenge the acceptance or rejection of a Claim Form submitted by an Unidentified Settlement Class Member, as well as any request for exclusion.  The Settlement Administrator shall follow any agreed decisions of Class Counsel and Defendant's Counsel as to the validity of any disputed submitted Claim Form or request for exclusion.  To the extent Class Counsel and Defendant's Counsel are not able to agree on the disposition of a challenge, the disputed claim shall be submitted to The Honorable Gerald E. Rosen (Ret.) of JAMS Detroit for a binding determination.  Judge Rosen will charge his JAMS hourly rate for providing such services to the Settlement Class, and all expenses related thereto will be paid by the Settlement Administrator from the Settlement Fund.

**5.4**     In the exercise of its duties outlined in this Agreement, the Settlement Administrator shall have the right to reasonably request additional information from the Parties or any Settlement Class Member.

**5.5**     Defendant, the Released Parties, and Defendant's Counsel shall have no responsibility for, interest in, or liability whatsoever with respect to: (i) any act, omission, or determination by Class Counsel, or the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment, or distribution of the Settlement Fund; (iii) the allocation of Settlement Funds to Settlement Class Members or the implementation, administration, or interpretation thereof; (iv) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in value of, the Settlement Fund; or (vi) the payment or withholding of any Taxes, Tax Expenses, or costs incurred in connection with the taxation of the Settlement Fund or the filing of any federal, state, or local returns.

**5.6**     All taxes and tax expenses shall be paid out of the Settlement Fund and shall be timely paid by the Settlement Administrator pursuant to this Agreement and without further order of the Court.  Any tax returns prepared for the Settlement Fund (as well as the election set forth therein) shall be consistent with this Agreement and in all events shall reflect that all taxes on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.  The Released Parties shall have no responsibility or liability for the acts or omissions of the Settlement Administrator or its agents with respect to the payment of taxes or tax expenses.

6.      **TERMINATION OF SETTLEMENT**.

**6.1**      Subject to Paragraphs 9.1-9.3 below, Defendant or the Class Representatives on behalf of the Settlement Class, shall have the right to terminate this Agreement by providing written notice of the election to do so ("Termination Notice") to all other Parties hereto within twenty-one (21) days of any of the following events: (i) the Court's refusal to grant Preliminary Approval of this Agreement in any material respect; (ii) the Court's refusal to grant final approval of this Agreement in any material respect; (iii) the Court's refusal to enter the Final Judgment in this Action in any material respect; (iv) the date upon which the Final Judgment is modified or reversed in any material respect by an Appellate Court or the Supreme Court; or (v) the date upon which an Alternate Judgment, as defined in Paragraph 9.1(d) of this Agreement is modified or reversed in any material respect by the Court of Appeals or the Supreme Court.

7.      **PRELIMINARY APPROVAL ORDER AND FINAL APPROVAL ORDER**.

**7.1**      Promptly after the execution of this Settlement Agreement, Class Counsel shall submit this Agreement together with its Exhibits to the Court and shall move the Court for Preliminary Approval of the settlement set forth in this Agreement; certification of the Settlement Class for settlement purposes only; appointment of Class Counsel and the Class Representatives; and entry of a Preliminary Approval Order, which order shall set a Final Approval Hearing date and approve the Notice and Claim Form for dissemination substantially in the form of Exhibits C, C, D, and E hereto.  The Preliminary Approval Order shall also authorize the Parties, without further approval from the Court, to agree to and adopt such amendments, modifications and expansions of the Settlement Agreement and its implementing documents (including all exhibits to this Agreement) so long as they are consistent in all material

respects with the terms of the Settlement Agreement and do not limit or impair the rights of the

Settlement Class or materially expand the obligations of Defendant.

**7.2**     At the time of the submission of this Agreement to the Court as described above,

Class Counsel shall request that, after Notice is given, the Court hold a Final Approval Hearing

and approve the settlement of the Action as set forth herein.

**7.3**     After Notice is given, the Parties shall request and seek to obtain from the Court a

Final Judgment, which will among other things:

    **(a)**     find that the Court has personal jurisdiction over all Settlement Class

Members and that the Court has subject matter jurisdiction to approve the Agreement, including

all exhibits thereto;

    **(b)**     approve the Settlement Agreement and the proposed settlement as fair,

reasonable, and adequate as to, and in the best interests of, the Settlement Class Members; direct

the Parties and their counsel to implement and consummate the Agreement according to its terms

and provisions; and declare the Agreement to be binding on, and have *res judicata* and

preclusive effect in all pending and future lawsuits or other proceedings maintained by or on

behalf of Plaintiffs and Releasing Parties;

    **(c)**     find that the Notice implemented pursuant to the Agreement (1)

constitutes the best practicable notice under the circumstances; (2) constitutes notice that is

reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency

of the Action, their right to object to or exclude themselves from the proposed Agreement, and to

appear at the Final Approval Hearing; (3) is reasonable and constitutes due, adequate, and

sufficient notice to all persons entitled to receive notice; and (4) meets all applicable

requirements of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution, and the rules of the Court;

     **(d)**     find that the Class Representatives and Class Counsel adequately represent the Settlement Class for purposes of entering into and implementing the Agreement;

     **(e)**     dismiss the Action (including all individual claims and Settlement Class Claims presented thereby) on the merits and with prejudice, without fees or costs to any party except as provided in the Settlement Agreement;

     **(f)**     incorporate the Release set forth above, make the Release effective as of the date of the Effective Date, and forever discharge the Released Parties as set forth herein;

     **(g)**     permanently bar and enjoin all Settlement Class Members who have not been properly excluded from the Settlement Class from filing, commencing, prosecuting, intervening in, or participating (as class members or otherwise) in, any lawsuit or other action in any jurisdiction based on the Released Claims;

     **(h)**     without affecting the finality of the Final Judgment for purposes of appeal, retain jurisdiction as to all matters relating to administration, consummation, enforcement, and interpretation of the Settlement Agreement and the Final Judgment, and for any other necessary purpose; and

     **(i)**     incorporate any other provisions, as the Court deems necessary and just or appropriate to effectuate the terms and conditions of the Settlement Agreement.

## 8. CLASS COUNSEL'S ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; SERVICE AWARD.

     **8.1**     Defendant agrees that Class Counsel may receive from the Settlement Fund, subject to Court approval, attorneys' fees, costs, and expenses not to exceed 35% of the Settlement Fund (or $3,325,000 USD). Plaintiffs will petition the Court for an award of such

attorneys' fees, costs, and expenses, and Defendant agrees not to object to or otherwise challenge, directly or indirectly, Class Counsel's petition for attorneys' fees, costs, and expenses if limited to this amount.  Class Counsel, in turn, agrees to seek no more than this amount from the Court in attorneys' fees, costs, and expenses.  Payment of the Fee Award shall be made from the Settlement Fund and should the Court award less than the amount sought by Class Counsel, the difference in the amount sought and the amount ultimately awarded pursuant to this Paragraph shall remain in the Settlement Fund.

      **8.2**      The Fee Award shall be payable by the Settlement Administrator within ten (10) days after entry of the Court's Final Judgment, subject to Class Counsel executing the Undertaking Regarding Attorneys' Fees and Costs (the "Undertaking") attached hereto as Exhibits F-1, F-2, and F-3, and providing all payment routing information and tax I.D. numbers for Class Counsel.  Payment of the Fee Award shall be made from the Settlement Fund by wire transfer to Class Counsel, in accordance with the instructions to be jointly provided by Class Counsel, after completion of necessary forms by Class Counsel, including but not limited to W-9 forms.  Notwithstanding the foregoing, if for any reason the Final Approval Order is reversed or rendered void as a result of an appeal(s) then any persons or firms who shall have received such funds shall be severally liable for payments made pursuant to this subparagraph, and shall return such funds to the Defendant, based upon written instructions provided by Defendant's Counsel. To effectuate this provision, The Miller Law Firm, P.C., Bursor & Fisher, P.A., and Hedin Hall LLP, shall each execute a guarantee of repayment in the forms attached hereto as Exhibits F-1, F-2, and F-3.  Additionally, should any parties to the Undertaking dissolve, merge, declare bankruptcy, become insolvent, or cease to exit prior to the final payment to Class Members,

those parties shall execute a new undertaking guaranteeing repayment of funds within fourteen (14) days of such an occurrence.

      **8.3**     Defendant agrees that, subject to Court approval, the Settlement Administrator may pay service awards to the Class Representatives from the Settlement Fund, in addition to any settlement payment as a result of a Cash Award pursuant to this Agreement, and in recognition of their efforts on behalf of the Settlement Class, in the amount of one thousand five hundred dollars ($1,500.00 USD) each.  Defendant shall not object to or otherwise challenge, directly or indirectly, Class Counsel's application for the service awards to the Class Representatives if limited to this amount.  Class Counsel, in turn, agrees to seek no more than this amount from the Court as the service awards for the Class Representatives.  Should the Court award less than this amount, the difference in the amount sought and the amount ultimately awarded pursuant to this Paragraph shall remain in the Settlement Fund.  Such award shall be paid from the Settlement Fund (in the form of a check to the Class Representatives that is sent to the care of Class Counsel), within five (5) business days after entry of the Final Judgment if there have been no objections to the Settlement Agreement, and, if there have been such objections, within five (5) business days after the Effective Date.

## 9.   CONDITIONS OF SETTLEMENT, EFFECT OF DISAPPROVAL, CANCELLATION OR TERMINATION.

      **9.1**     The Effective Date of this Settlement Agreement shall not occur unless and until each of the following events occurs and shall be the date upon which the last (in time) of the following events occurs:

        **(a)**     The Parties and their counsel have executed this Agreement;

        **(b)**     The Court has entered the Preliminary Approval Order;

     **(c)**     The Court has entered an order finally approving the Agreement, following Notice to the Settlement Class and a Final Approval Hearing, as provided in the Federal Rules of Civil Procedure, and has entered the Final Judgment, or a judgment consistent with this Agreement in all material respects; and

     **(d)**     The Final Judgment has become Final, as defined above, or, in the event that the Court enters an Alternate Judgment, such Alternate Judgment becomes Final.

     **9.2**     If some or all of the conditions specified in Paragraph 9.1 are not met, or in the event that this Agreement is not approved by the Court, or the settlement set forth in this Agreement is terminated or fails to become effective in accordance with its terms, then this Settlement Agreement shall be canceled and terminated subject to Paragraph 6.1 unless Class Counsel and Defendant's Counsel mutually agree in writing to proceed with this Agreement.  If any Party is in material breach of the terms hereof, any other Party, provided that it is in substantial compliance with the terms of this Agreement, may terminate this Agreement on notice to all of the Settling Parties.  Notwithstanding anything herein, the Parties agree that the Court's failure to approve, in whole or in part, the attorneys' fees payment to Class Counsel and/or the service award set forth in Paragraph 8 above shall not prevent the Agreement from becoming effective, nor shall it be grounds for termination.

     **9.3**     If this Agreement is terminated or fails to become effective for the reasons set forth in Paragraphs 6.1 and 9.1-9.2 above, the Parties shall be restored to their respective positions in the Action as of the date of the signing of this Agreement, unless Class Counsel and Defendant's Counsel mutually agree in writing to proceed with the Agreement.  In such event, any Final Judgment or other order entered by the Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc*, and the Parties shall be returned to the

*status quo ante* with respect to the Action as if this Agreement had never been entered into. Within five (5) business days after written notification of termination as provided in this Agreement is sent to the other Parties, the Settlement Fund (including accrued interest thereon), less any Settlement Administration costs actually incurred, paid or payable and less any taxes and tax expenses paid, due or owing, shall be refunded by the Settlement Administrator to Defendant based upon written instructions provided by Defendant's Counsel.  In the event that the Final Settlement Order and Judgment or any part of it is vacated, overturned, reversed, or rendered void as a result of an appeal, or the Settlement Agreement is voided, rescinded, or otherwise terminated for any other reason, Class Counsel shall, within thirty (30) days repay to Defendant based upon written instructions provided by Defendant's Counsel, the full amount of the attorneys' fees and costs paid to Class Counsel from the Settlement Fund, including any accrued interest.  In the event the attorney fees and costs awarded by the Court or any part of them are vacated, modified, reversed, or rendered void as a result of an appeal, Class Counsel shall within thirty (30) days repay to Defendant based upon written instructions provided by Defendant's Counsel, the attorneys' fees and costs paid to Class Counsel and/or Representative Plaintiff from the Settlement Fund, in the amount vacated or modified, including any accrued interest.

## 10.    MISCELLANEOUS PROVISIONS.

**10.1**    The Parties (a) acknowledge that it is their intent to consummate this Settlement Agreement; and (b) agree, subject to their fiduciary and other legal obligations, to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Agreement, to exercise their reasonable best efforts to accomplish the foregoing terms and conditions of this Agreement, to secure final approval, and to defend the Final Judgment through any and all appeals.  Class Counsel and Defendant's Counsel agree to cooperate with one another

in seeking Court approval of the Settlement Agreement, entry of the Preliminary Approval Order, and the Final Judgment, and promptly to agree upon and execute all such other documentation as may be reasonably required to obtain final approval of the Agreement.

     **10.2**    The Parties intend this Settlement Agreement to be a final and complete resolution of all disputes between them with respect to the Released Claims by Plaintiffs, the Settlement Class and each or any of them, on the one hand, against the Released Parties, and each or any of the Released Parties, on the other hand.  Accordingly, the Parties agree not to assert in any forum that the Action was brought by Plaintiffs or defended by Defendant, or each or any of them, in bad faith or without a reasonable basis.  Nothing herein, however, shall be construed to prevent any employee of Defendant or any Released Party, or any independent contractor working in a reporting or newsgathering capacity for Defendant or any Released Party, from reporting on the Action or this Settlement.

     **10.3**    The Parties have relied upon the advice and representation of counsel, selected by them, concerning their respective legal liability for the claims hereby released.  The Parties have read and understand fully the above and foregoing agreement and have been fully advised as to the legal effect thereof by counsel of their own selection and intend to be legally bound by the same.

     **10.4**    Whether or not the Effective Date occurs or the Settlement Agreement is terminated, neither this Agreement nor the settlement contained herein or any term, provision or definition therein, nor any act or communication performed or document executed in the course of negotiating, implementing or seeking approval pursuant to or in furtherance of this Agreement or the settlement:

**(a)**      is, may be deemed, or shall be used, offered or received in any civil, criminal or administrative proceeding in any court, administrative agency, arbitral proceeding or other tribunal against the Released Parties, or each or any of them, as an admission, concession or evidence of, the validity of any Released Claims, the truth of any fact alleged by the Plaintiffs, the deficiency of any defense that has been or could have been asserted in the Action, the violation of any law or statute, the definition or scope of any term or provision, the reasonableness of the settlement amount or the Fee Award, or of any alleged wrongdoing, liability, negligence, or fault of the Released Parties, or any of them;

**(b)**      is, may be deemed, or shall be used, offered or received against any Released Party, as an admission, concession or evidence of any fault, misrepresentation or omission with respect to any statement or written document approved or made by the Released Parties, or any of them;

**(c)**      is, may be deemed, or shall be used, offered or received against the Released Parties, or each or any of them, as an admission or concession with respect to any liability, negligence, fault or wrongdoing or statutory meaning (including but not limited to the definitions of Michigan Subscriber Information and Settlement Class) as against any Released Parties, or supporting the certification of a litigation class, in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal.  However, the settlement, this Agreement, and any acts performed and/or documents executed in furtherance of or pursuant to this Agreement and/or Settlement may be used in any proceedings as may be necessary to effectuate the provisions of this Agreement.  Further, if this Settlement Agreement is approved by the Court, any Party or any of the Released Parties may file this Agreement and/or the Final Judgment in any action that may be brought against such Party or Parties in order to support a

defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim;

(d)      is, may be deemed, or shall be construed against Plaintiffs, the Settlement Class, the Releasing Parties, or each or any of them, or against the Released Parties, or each or any of them, as an admission or concession that the consideration to be given hereunder represents an amount equal to, less than or greater than that amount that could have or would have been recovered after trial; and

(e)      is, may be deemed, or shall be construed as or received in evidence as an admission or concession against Plaintiffs, the Settlement Class, the Releasing Parties, or each and any of them, or against the Released Parties, or each or any of them, that any of Plaintiffs' claims are with or without merit or that damages recoverable in the Action would have exceeded or would have been less than any particular amount.

**10.5**    The Parties acknowledge that (a) any certification of the Settlement Class as set forth in this Agreement, including certification of the Settlement Class for settlement purposes in the context of Preliminary Approval, shall not be deemed a concession that certification of a litigation class is appropriate, or that the Settlement Class definition would be appropriate for a litigation class, nor would Defendant be precluded from challenging class certification in further proceedings in the Action or in any other action if the Settlement Agreement is not finalized or finally approved; (b) if the Settlement Agreement is not finally approved by the Court for any reason whatsoever, then any certification of the Settlement Class will be void, the Parties and the Action shall be restored to the status quo ante, and no doctrine of waiver, estoppel or preclusion will be asserted in any litigated certification proceedings in the Action or in any other action; and

(c) no agreements made by or entered into by Defendant in connection with the Settlement may be used by Plaintiffs, any person in the Settlement Class, or any other person to establish any of the elements of class certification in any litigated certification proceedings, whether in the Action or any other judicial proceeding.

10.6    No person or entity shall have any claim against the Class Representatives, Class Counsel, the Settlement Administrator or any other agent designated by Class Counsel, or the Released Parties and/or their counsel, arising from distributions made substantially in accordance with this Agreement.  The Parties and their respective counsel, and all other Released Parties shall have no liability whatsoever for the investment or distribution of the Settlement Fund or the determination, administration, calculation, or payment of any claim or nonperformance of the Settlement Administrator, the payment or withholding of taxes (including interest and penalties) owed by the Settlement Fund, or any losses incurred in connection therewith.

10.7    All proceedings with respect to the administration, processing and determination of Claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court.

10.8    The headings used herein are used for the purpose of convenience only and are not meant to have legal effect.

10.9    The waiver by one Party of any breach of this Agreement by any other Party shall not be deemed as a waiver of any other prior or subsequent breaches of this Agreement.

10.10   All of the Exhibits to this Agreement are material and integral parts thereof and are fully incorporated herein by this reference.

**10.11**   This Agreement and its Exhibits set forth the entire agreement and understanding of the Parties with respect to the matters set forth herein, and supersede all prior negotiations, agreements, arrangements and undertakings with respect to the matters set forth herein.  No representations, warranties or inducements have been made to any Party concerning this Settlement Agreement or its Exhibits other than the representations, warranties and covenants contained and memorialized in such documents.  This Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

**10.12**   Except as otherwise provided herein, each Party shall bear its own costs.

**10.13**   Plaintiffs represent and warrant that they have not assigned any claim or right or interest therein as against the Released Parties to any other Person or Party and that they are fully entitled to release the same.

**10.14**   Each counsel or other Person executing this Settlement Agreement, any of its Exhibits, or any related settlement documents on behalf of any Party hereto, hereby warrants and represents that such Person has the full authority to do so and has the authority to take appropriate action required or permitted to be taken pursuant to the Agreement to effectuate its terms.

**10.15**   This Agreement may be executed in one or more counterparts.  Signature by digital means, facsimile, or in PDF format will constitute sufficient execution of this Agreement. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court if the Court so requests.

**10.16**   This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto and the Released Parties.

**10.17**   The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Agreement, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in this Agreement.

**10.18**   This Settlement Agreement shall be governed by and construed in accordance with the laws of the State of Michigan.

**10.19**   This Agreement is deemed to have been prepared by counsel for all Parties, as a result of arm's-length negotiations among the Parties.  Because all Parties have contributed substantially and materially to the preparation of this Agreement, it shall not be construed more strictly against one Party than another.

**10.20**   Where this Agreement requires notice to the Parties, such notice shall be sent to the undersigned counsel:  E. Powell Miller, The Miller Law Firm, P.C., 950 W. University Drive, Suite 300, Rochester, MI 48307; Kathy R. Neal, McAfee & Taft, P.C., Williams Center Tower II, Two West Second Street, Suite 1100, Tulsa, OK 74103.

**[REMAINDER OF THE PAGE INTENTIONALLY LEFT BLANK, SIGNATURE PAGE(S) TO FOLLOW]**

**IT IS SO AGREED TO BY THE PARTIES**:

Dated: ___May 26, 2023___     **RICHARD PRATT**

                              *Richard Pratt*
                         By:___Richard Pratt (May 26, 2023 14:16 EDT)___

                         Richard Pratt, individually and as representative of
                         the Class


Dated: _____     **LARRY JONES**


                         By:_____

                         Larry Jones, individually and as representative of
                         the Class


Dated: _____     **KSE SPORTSMAN MEDIA, INC. D/B/A OUTDOOR
                              SPORTSMAN GROUP**


                         By:_____

                         Name
                         Its:
                         KSE Sportsman Media, Inc. d/b/a Outdoor
                         Sportsman Group


**IT IS SO STIPULATED BY COUNSEL:**


Dated: _____     **THE MILLER LAW FIRM, P.C.**


                         By: _____

                         E. Powell Miller
                         epm@millerlawpc.com
                         THE MILLER LAW FIRM, P.C.
                         950 W. University Drive, Suite 300

**IT IS SO AGREED TO BY THE PARTIES**:

Dated: _____          **RICHARD PRATT**


By:_____

Richard Pratt, individually and as representative of
the Class


Dated: May 26, 2023                 **LARRY JONES**
                                                       *Larry J. Jones*

By:   <small>Larry J Jones (May 26, 2023 14:38 EDT)</small>_____

Larry Jones, individually and as representative of
the Class


Dated: _____          **KSE SPORTSMAN MEDIA, INC. d/b/a OUTDOOR
SPORTSMAN GROUP**


By:_____

Name
Its:
KSE Sportsman Media, Inc. d/b/a Outdoor
Sportsman Group


**IT IS SO STIPULATED BY COUNSEL:**


Dated: _____          **THE MILLER LAW FIRM, P.C.**


By: _____

E. Powell Miller
epm@millerlawpc.com
THE MILLER LAW FIRM, P.C.
950 W. University Drive, Suite 300

DocuSign Envelope ID: F8078AG0-54E5-48BE-959C-BE1D2D7B18D3

**IT IS SO AGREED TO BY THE PARTIES**:

Dated: _____        **RICHARD PRATT**

                                    By:_____

                                    Richard Pratt, individually and as representative of
                                    the Class


Dated: _____        **LARRY JONES**

                                    By:_____

                                    Larry Jones, individually and as representative of
                                    the Class


Dated: 5/26/2023                    **KSE SPORTSMAN MEDIA, INC. d/b/a OUTDOOR**
_____               **SPORTSMAN GROUP**

                                    By:_ *Matthew M. Hutchings* _____
                                         8A10A5EBC72C417...
                                         Matthew M. Hutchings
                                    Name
                                    Its: EVP & COO
                                    KSE Sportsman Media, Inc. d/b/a Outdoor
                                    Sportsman Group


**IT IS SO STIPULATED BY COUNSEL:**


Dated: _____        **THE MILLER LAW FIRM, P.C.**

                                    By: _____

                                    E. Powell Miller
                                    epm@millerlawpc.com
                                    THE MILLER LAW FIRM, P.C.
                                    950 W. University Drive, Suite 300

**IT IS SO AGREED TO BY THE PARTIES**:

Dated: _____          **RICHARD PRATT**


                                    By:_____

                                    Richard Pratt, individually and as representative of
                                    the Class


Dated: _____          **LARRY JONES**


                                    By:_____

                                    Larry Jones, individually and as representative of
                                    the Class


Dated: _____          **KSE SPORTSMAN MEDIA, INC. D/B/A OUTDOOR
                                    SPORTSMAN GROUP**


                                    By:_____

                                    Name
                                    Its:
                                    KSE Sportsman Media, Inc. d/b/a Outdoor
                                    Sportsman Group


**IT IS SO STIPULATED BY COUNSEL:**

Dated: _5-26-23_____          **THE MILLER LAW FIRM, P.C.**

                                    By:_____

                                    E. Powell Miller
                                    epm@millerlawpc.com
                                    THE MILLER LAW FIRM, P.C.
                                    950 W. University Drive, Suite 300

Rochester, MI 48307
Tel:  (248) 841-2200

Dated:  May 26, 2023

**BURSOR & FISHER, PA**

By: _____

Joseph I. Marchese
jmarchese@bursor.com
Philip L. Fraietta
pfraietta@bursor.com
BURSOR & FISHER, PA
1330 Avenue of the Americas, 32nd Floor
New York, New York 10019
Tel:  (646) 837-7150
Fax:  (212) 989-9163

Dated:  May 26, 2023

**HEDIN HALL LLP**


By: _____

Frank S. Hedin
fhedin@hedinhall.com
Arun G. Ravindran
aravindran@hedinhall.com
HEDIN HALL LLP
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel:  (305) 357-2107
Fax:  (305) 200-8801

*Attorneys for Class Representatives and the
Settlement Class*

Dated:  _____

**MCAFEE & TAFT, P.C.**


By:_____

Mary Quinn Cooper
maryquinn.cooper@mcafeetaft.com
Kathy R. Neal
kathy.neal@mcafeetaft.com
Katie G. Crane

Rochester, MI 48307
Tel:  (248) 841-2200

Dated: _____          **BURSOR & FISHER, PA**


By: _____

Joseph I. Marchese
jmarchese@bursor.com
Philip L. Fraietta
pfraietta@bursor.com
BURSOR & FISHER, PA
1330 Avenue of the Americas, 32nd Floor
New York, New York 10019
Tel:  (646) 837-7150
Fax:  (212) 989-9163

Dated: _____          **HEDIN HALL LLP**


By: _____

Frank S. Hedin
fhedin@hedinhall.com
Arun G. Ravindran
aravindran@hedinhall.com
HEDIN HALL LLP
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel:  (305) 357-2107
Fax:  (305) 200-8801

*Attorneys for Class Representatives and the
Settlement Class*

Dated: *MAY 26, 2023*          **MCAFEE & TAFT, P.C.**


By: *KATHY NEAL (w/ PERMISSION by Tim Spencer)*

Mary Quinn Cooper
maryquinn.cooper@mcafeetaft.com
Kathy R. Neal
kathy.neal@mcafeetaft.com
Katie G. Crane

41

katie.crane@mcafeetaft.com
MCAFEE & TAFT, P.C.
Williams Center Tower II
Two West Second Street, Suite 1100
Tulsa, Oklahoma 74103
Tel:  (918) 587-0000
Fax : (918) 599-9317

*Attorney for Defendant KSE Sportsman Media, Inc.
d/b/a Outdoor Sportsman Group*

**EXHIBIT A**

# CLASS LIST - AVAILABLE FOR IN-CAMERA REVIEW

**EXHIBIT B**

From: KSEMagazineSettlement@KSEMagazinesettlement.com
To: JonQClassMember@domain.com
Re: Legal Notice of Class Action Settlement

**NOTICE OF PROPOSED CLASS ACTION SETTLEMENT**
*Pratt v. KSE Sportsman Media, Inc. d/b/a Outdoor Sportsman Group*,
Case No. 1:21-cv-11404-TLL-PTM
(United States District Court for the Eastern District of Michigan)

This notice is to inform you of the settlement of a class action lawsuit with publisher KSE Sportsman Media, Inc. d/b/a Outdoor Sportsman Group ("KSE"), the Defendant in this case. Plaintiffs Richard Pratt and Larry Jones allege that Defendant disclosed its customers' subscription information to third parties which is alleged to violate Michigan privacy law. **While KSE believes that its practices were in compliance with Michigan law, KSE chose to settle this case, without admitting liability, to focus time, effort and resources on continuing to provide valued content to its readers, and not on additional legal fees and the uncertainty of litigation.**

**Am I a Class Member?** Yes. Our records indicate you are a Class Member. Class Members are direct purchasers whose information was included on the lists obtained in discovery that were transmitted to third parties between June 16, 2015 and July 30, 2016, and thus that have standing, which are reflected on the Class List, which can be found [hyperlink]. Excluded from the Settlement Class are (1) any Judge or Magistrate presiding over this Action and members of their families; (2) the Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded persons.

**What Can I Get?** A Settlement Fund of $9,500,000 has been established to pay all cash awards to the Settlement Class, together with notice and administration expenses, approved attorneys' fees and costs to Class Counsel, and service awards to the Plaintiffs. If you received a postcard Notice, you do not need to submit a Claim Form to receive payment, and you will receive a *pro rata* share of the Settlement Fund, which Class Counsel estimates to will be for approximately $420 per class member. The exact amount of the share of the Settlement Fund that you will receive depends on the number of requests for exclusion that are received. If you **did not receive a postcard Notice** concerning the Settlement sent to you by postal mail, you **must submit a Claim Form** (see instructions below) in order to receive a share of the Settlement Fund as described above. Additionally, as part of the Settlement, KSE has agreed to refrain, in perpetuity, from disclosing to any third party the subscription information of any subscribers to any of its publications who reside in Michigan.

**How Do I Get a Payment?** Unless you received a postcard Notice concerning the Settlement sent to you by postal mail, you **must** complete and submit a Claim Form to receive a *pro rata* share of the Settlement Fund, which Class Counsel estimates will be approximately $420. You may submit a Claim Form either electronically on the Settlement Website by clicking here [insert hyperlink], or by printing and mailing in a paper Claim Form, copies of which are available for download here

[insert hyperlink].   Claim Forms must be submitted online by 11:59 p.m. EST on [date] or postmarked and mailed by [date].

**What are My Other Options?** You may exclude yourself from the Class by sending a letter to the settlement administrator postmarked no later than [**objection/exclusion deadline**]. If you exclude yourself, you cannot get a settlement payment, but you keep any rights you may have to sue the Defendant over the legal issues in the lawsuit. You and/or your lawyer have the right to appear before the Court and/or object to the proposed settlement. Your written objection must be filed no later than [**objection/exclusion deadline**]. Specific instructions about how to object to, or exclude yourself from, the Settlement are available at [www.KSEMagazineSettlement.com].  If you do nothing, and the Court approves the Settlement, you will be bound by all of the Court's orders and judgments. In addition, your claims relating to the alleged disclosure of subscriber information in this case against the Defendant will be released.

**Who Represents Me?** The Court has appointed E. Powell Miller of The Miller Law Firm, P.C., Joseph I. Marchese and Philip L. Fraietta of Bursor & Fisher, P.A., and Frank S. Hedin and Arun G. Ravindran of Hedin Hall LLP to represent the class.  These attorneys are called Class Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer in this case, you may hire one at your expense.

**When Will the Court Consider the Proposed Settlement?** The Court will hold the Final Approval Hearing at [time] on [date] at the United States Post Office Building, 1000 Washington Avenue, Room 214, Bay City, MI 48708.  At that hearing, the Court will: hear any objections concerning the fairness of the settlement; determine the fairness of the settlement; decide whether to approve Class Counsel's request for attorneys' fees and costs; and decide whether to award the Class Representatives $1,500 each from the Settlement Fund for their services in helping to bring and settle this case. Defendant has agreed that Class Counsel may be paid reasonable attorneys' fees from the Settlement Fund in an amount to be determined by the Court.  Class Counsel is entitled to seek no more than 35% of the Settlement Fund, but the Court may award less than this amount.

**How Do I Get More Information?** For more information, including a more detailed Notice, a copy of the Settlement Agreement and other documents, go to www.KSEMagazineSettlement.com, contact the settlement administrator by calling (800) 000-000 or by writing to KSE Magazine Settlement Administrator, [address], or contact Class Counsel by calling [insert phone number].

**EXHIBIT C**

COURT AUTHORIZED NOTICE OF CLASS
ACTION AND PROPOSED SETTLEMENT

# OUR RECORDS INDICATE YOU HAVE SUBSCRIBED TO A KSE PUBLICATION AND MAY BE ENTITLED TO A PAYMENT FROM A CLASS ACTION SETTLEMENT.

KSE Magazine Settlement
Settlement Administrator
P.O. Box 0000
City, ST 00000-0000

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

Postal Service: Please do not mark barcode

XXX—«ClaimID»     «MailRec»

«First1» «Last1»
«C/O»
«Addr1»  «Addr2»
«City», «St»  «Zip» «Country»

By Order of the Court Dated: [date]

## KSE MAGAZINE SETTLEMENT

A settlement has been reached in a class action lawsuit claiming that Defendant, publisher KSE Sportsman Media, Inc. d/b/a Outdoor Sportsman Group ("KSE"), disclosed its customers' subscription information to third parties, which is alleged to violate Michigan privacy law. **While KSE believes that its practices were in compliance with Michigan law, KSE chose to settle this case, without admitting liability, to focus time, effort and resources on continuing to provide valued content to its readers, and not on additional legal fees and the uncertainty of litigation.**

**Am I a Class Member?** Our records indicate you are a Class Member. Class Members are direct purchasers whose information was included on the lists obtained in discovery that were transmitted to third parties between June 16, 2015 and July 30, 2016, and thus that have standing, which are reflected on the Class List, which can be found [hyperlink].

**What Can I Get?** If approved by the Court, a Settlement Fund of $9,500,000.00 has been established to pay all cash awards to the Settlement Class, together with notice and administration expenses, approved attorneys' fees and costs to Class Counsel, and a service award to the Plaintiffs.  Once the Settlement becomes Final, you will receive a *pro rata* share of the Settlement Fund, which Class Counsel estimates will be approximately $420 per class member, although the final amount you receive will also depend on the number of requests for exclusion submitted.  Additionally, as part of the Settlement, KSE has agreed to refrain, in perpetuity, from disclosing to any third party the subscription information of any subscribers to any of its publications who reside in Michigan.

**How Do I Get a Payment?** If you are a Class Member, you will automatically receive a *pro rata* share of the Settlement Fund, so long as you do not request to be excluded from the Settlement Class.  Your payment will come by check, sent to the following address: [insert Settlement Class Member's address to which check will be sent].  If you no longer reside at this address or are planning to change addresses prior to [insert date 28 days after final approval hearing date], please complete and submit a change of address form accessible on the Settlement Website so that your check is sent to the correct address.  If you wish to receive your payment via PayPal or Venmo, you may do so by submitting an Election Form on the Settlement Website.

**What are My Other Options?** You may exclude yourself from the Class by submitting an online form on the Settlement Website no later than 11:59 p.m. on [objection/exclusion deadline] or by sending a letter to the settlement administrator postmarked no later than [objection/exclusion deadline]. If you exclude yourself, you cannot get a settlement payment, but you keep any rights you may have to sue the Defendant over the legal issues in the lawsuit. You and/or your lawyer have the right to appear before the Court and/or object to the proposed settlement. Any written objection must be filed no later than [objection/exclusion deadline]. Specific instructions about how to object to, or exclude yourself from, the Settlement are available at www.KSEMagazineSettlement.com.  If you do nothing, and the Court approves the Settlement, you will be bound by all of the Court's orders and judgments. In addition, your claims relating to the alleged disclosure of subscriber information in this case against the Defendant and others will be released.

**Who Represents Me?** The Court has appointed E. Powell Miller of The Miller Law Firm, P.C., Joseph I. Marchese and Philip L. Fraietta of Bursor & Fisher, P.A., and Frank S. Hedin and Arun G. Ravindran of Hedin Hall LLP to represent the class. These attorneys are called Class Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer in this case, you may hire one at your expense.

**When Will the Court Consider the Proposed Settlement?** The Court will hold the Final Approval Hearing at [time] on [date] at the United States Post Office Building, 1000 Washington Avenue, Room 214, Bay City, MI 48708. At that hearing, the Court will: hear any objections concerning the fairness of the settlement; determine the fairness of the settlement; decide whether to approve Class Counsel's request for attorneys' fees and costs; and decide whether to award the Class Representatives $1,500 each from the Settlement Fund for their services in helping to bring and settle this case. Defendant has agreed to pay Class Counsel reasonable attorneys' fees in an amount to be determined by the Court. Class Counsel is entitled to seek no more than 35% of the Settlement Fund, but the Court may award less than this amount.

**How Do I Get More Information?** For more information, including the full Notice, Claim Form, and Settlement Agreement go to www.KSEMagazineSettlement.com, contact the settlement administrator by calling (800) 000-0000 or writing to KSE Magazine Settlement Administrator, [address], or contact Class Counsel by calling [insert phone number].

KSE Magazine Settlement Administrator
c/o [Settlement Administrator]
PO Box 0000
City, ST 00000-0000

XXX

**EXHIBIT D**

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
*Pratt v. KSE Sportsman Media, Inc. d/b/a Outdoor Sportsman Group*,
Case No. 1:21-cv-11404-TLL-PTM

*A court authorized this notice. You are not being sued. This is not a solicitation from a lawyer.*

- A Settlement has been reached in a class action lawsuit against publisher KSE Sportsman Media, Inc. d/b/a Outdoor Sportsman Group ("KSE"). The class action lawsuit involves whether KSE disclosed its customers' subscription information to third parties, which is alleged to violate Michigan privacy law.

- **While KSE believes that its practices were in compliance with Michigan law, KSE chose to settle this case, without admitting liability, to focus time, effort and resources on continuing to provide valued content to its readers, and not on additional legal fees and the uncertainty of litigation.**

- You are included if you are a direct purchaser whose information was included on the lists obtained in discovery that were transmitted to third parties between June 16, 2015 and July 30, 2016, and thus that have standing, which are reflected on the Class List, which can be found [hyperlink]. Excluded from the Settlement Class are (1) any Judge or Magistrate presiding over this Action and members of their families; (2) the Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded persons.

- Those included in the Settlement will be eligible to receive a *pro rata* (meaning equal) portion of the Settlement Fund, which Class Counsel anticipates to be approximately $420.

- Read this notice carefully. Your legal rights are affected whether you act, or don't act.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **DO NOTHING** | You will receive a *pro rata* share of the Settlement benefits – estimated to be approximately $420 – and will give up your rights to sue the Defendant about the claims in this case. |
| **EXCLUDE YOURSELF** | You will receive no benefits, but you will retain any rights you currently have to sue the Defendant about the claims in this case. |
| **OBJECT** | Write to the Court explaining why you don't like the Settlement. |
| **GO TO THE HEARING** | Ask to speak in Court about your opinion of the Settlement. |

These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

QUESTIONS? CALL (800) 000-0000 TOLL FREE, OR VISIT WWW.KSEMAGAZINESETTLEMENT.COM

## BASIC INFORMATION

### 1.  Why was this Notice issued?

A Court authorized this notice because you have a right to know about a proposed Settlement of this class action lawsuit and about all of your options, before the Court decides whether to give final approval to the Settlement. This Notice explains the lawsuit, the Settlement, and your legal rights.

The Honorable Thomas L. Ludington, of the U.S. District Court for the Eastern District of Michigan, is overseeing this case. The case is called *Pratt v. KSE Sportsman Media, Inc. d/b/a Outdoor Sportsman Group*, Case No. 1:21-cv-11404-TLL-PTM.  The people who sued are called the Plaintiffs.  The Defendant is KSE Sportsman Media, Inc. d/b/a Outdoor Sportsman Group.

### 2. What is a class action?

In a class action, one or more people called class representatives (in this case, Richard Pratt and Larry Jones) sue on behalf of a group or a "class" of people who have similar claims.  In a class action, the court resolves the issues for all class members, except for those who exclude themselves from the Class.

### 3. What is this lawsuit about?

This lawsuit claims that Defendant violated Michigan's Preservation of Personal Privacy Act, H.B. 5331, 84th Leg. Reg. Sess., P.A. No. 378 §§ 1-4, *id.* § 5, added by H.B. 4694, 85th Leg. Reg. Sess., P.A. No. 206, § 1 (Mich. 1989) (the "PPPA"), by disclosing information related to its customers' magazine subscriptions to third parties between June 16, 2015 and July 30, 2016. The Defendant denies it violated any law. The Court has not determined who is right.  Rather, the Parties have agreed to settle the lawsuit to avoid the uncertainties and expenses associated with ongoing litigation.

### 4. Why is there a Settlement?

The Court has not decided whether the Plaintiffs or the Defendant should win this case. Instead, both sides agreed to a Settlement.  That way, they avoid the uncertainties and expenses associated with ongoing litigation, and Class Members will get compensation sooner rather than, if at all, after the completion of a trial.

## WHO'S INCLUDED IN THE SETTLEMENT?

### 5. How do I know if I am in the Settlement Class?

The Court decided that everyone who fits the following description is a member of the **Settlement Class**:

The 14,503 direct purchasers whose information was included on the lists obtained in discovery that were transmitted to third parties between June 16, 2015 and July 30, 2016, and thus that have standing, which are reflected on the Class List, attached hereto as Exhibit A [hyperlink].

Excluded from the Settlement Class are (1) any Judge or Magistrate presiding over this Action and members of their families; (2) the Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded persons.

## THE SETTLEMENT BENEFITS

### 6. What does the Settlement provide?

***Monetary Relief***:  A Settlement Fund has been created totaling $9,500,000.00. Class Member payments, the cost to administer the Settlement, the cost to inform people about the Settlement, attorneys' fees (inclusive of litigation costs), and awards to the Class Representatives will also come out of this fund (*see* Question 12).

***Prospective Relief***:  As part of the Settlement, KSE has agreed to refrain, in perpetuity, from disclosing to any third party the subscription information of any subscribers to any of its publications who reside in Michigan.

A detailed description of the settlement benefits can be found in the Settlement Agreement, a copy of which is accessible on the Settlement Website by clicking here. [insert hyperlink]

### 7. How much will my payment be?

The amount of this payment will depend on how many requests for exclusion are submitted.  Each Class Member will receive a proportionate share of the Settlement Fund, which Class Counsel anticipates will be approximately $420.  You can contact Class Counsel at [insert phone number] to inquire as to the number of requests for exclusion that have been received to date.

### 8. When will I get my payment?

The hearing to consider the fairness of the settlement is scheduled for [Final Approval Hearing Date]. If the Court approves the settlement, eligible Class Members will receive their payment 28 days after the Settlement has been finally approved and/or after any appeals process is complete.  The payment will be made in the form of a check, and all checks will expire and become void 180 days after they are issued.  Alternatively, you may request that the payment is issued through PayPal or Venmo (see Question 9 below for further details).

## HOW TO GET BENEFITS

### 9. How do I get a payment?

If you are a Class Member who received a Notice via postcard and you want to get a payment, do nothing and you will automatically receive a *pro rata* share of the Settlement Fund, which Class Counsel anticipates will be approximately $420.  Your check for a *pro rata* share of the Settlement Fund will be sent to the postal address identified in the Notice you received.  If you have changed addresses or are planning to change addresses prior to [insert date 28 days after final approval hearing date], please click here [insert hyperlink] to complete and submit a change of address form on the Settlement Website. If you wish to receive your payment via PayPal or Venmo, you may do so by submitting an Election Form on the Settlement Website.

If you are a Settlement Class Member who did not receive a Notice via postcard and you want to get a payment, you **must** complete and submit a Claim Form.  You may submit a Claim Form either electronically on the Settlement Website by clicking here [insert hyperlink], or by printing and mailing in a paper Claim Form, copies of which are available for download here [insert hyperlink].  Claim Forms must be submitted online by 11:59 p.m. EST on [date] or postmarked and mailed by [date].

## REMAINING IN THE SETTLEMENT

### 10. What am I giving up if I stay in the Class?

If the Settlement becomes final, you will give up your right to sue the Defendant and other Released Parties for the claims being resolved by this Settlement.  The specific claims you are giving up against the Defendant are described in the Settlement Agreement.  You will be "releasing" the Defendant and certain of its affiliates, employees and representatives as described in Section 1.28 of the Settlement Agreement.  Unless you exclude yourself (*see* Question 13), you are "releasing" the claims.  The Settlement Agreement is available through the "court documents" link on the website.

The Settlement Agreement describes the released claims with specific descriptions, so read it carefully.  If you have any questions you can talk to the lawyers listed in

Question 11 for free or you can, of course, talk to your own lawyer if you have questions about what this means.

## THE LAWYERS REPRESENTING YOU

### 11. Do I have a lawyer in the case?

The Court has appointed E. Powell Miller of The Miller Law Firm, P.C., Joseph I. Marchese and Philip L. Fraietta of Bursor & Fisher, P.A., and Frank S. Hedin and Arun G. Ravindran of Hedin Hall LLP to represent the class. They are called "Class Counsel." They believe, after conducting an extensive investigation, that the Settlement Agreement is fair, reasonable, and in the best interests of the Settlement Class. You will not be charged for these lawyers. If you want to be represented by your own lawyer in this case, you may hire one at your expense.

### 12. How will the lawyers be paid?

The Defendant has agreed that Class Counsel attorneys' fees and costs may be paid out of the Settlement Fund in an amount to be determined by the Court. The fee petition will seek no more than 35% of the Settlement Fund, inclusive of reimbursement of their costs and expenses; the Court may award less than this amount. Under the Settlement Agreement, any amount awarded to Class Counsel will be paid out of the Settlement Fund.

Subject to approval by the Court, Defendant has agreed that the Class Representatives may be paid a service award of $1,500 each from the Settlement Fund for their services in helping to bring and resolve this case.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

### 13. How do I get out of the Settlement?

To exclude yourself from the Settlement, you must submit a request for exclusion by 11:59 p.m. EST on [objection/exclusion deadline]. Requests for exclusion may be submitted either on the Settlement Website (via the online form accessible here [insert hyperlink]) or by mailing or otherwise delivering a letter (or request for exclusion) stating that you want to be excluded from the *Pratt v. KSE Sportsman Media, Inc. d/b/a Outdoor Sportsman Group*, Case No. 1:21-cv-11404-TLL-PTM settlement. Your letter or request for exclusion must also include your name, your address, the title of the publication(s) to which you subscribed, your signature, the name and number of this case, and a statement that you wish to be excluded. If you choose to submit a

request for exclusion by mail, you must mail or deliver your exclusion request, postmarked no later than [objection/exclusion deadline], to the following address:

KSE Magazine Settlement
0000 Street
City, ST 00000

**14. If I don't exclude myself, can I sue the Defendant for the same thing later?**

No. Unless you exclude yourself, you give up any right to sue the Defendant for the claims being resolved by this Settlement.

**15. If I exclude myself, can I get anything from this Settlement?**

No. If you exclude yourself, you will not receive a *pro rata* share of the Settlement Fund.

## OBJECTING TO THE SETTLEMENT

**16. How do I object to the Settlement?**

If you are a Class Member, you can object to the Settlement if you don't like any part of it.  You can give reasons why you think the Court should not approve it. The Court will consider your views.  To object, you must file with the Court a letter or brief stating that you object to the Settlement in *Pratt v. KSE Sportsman Media, Inc. d/b/a Outdoor Sportsman Group*, Case No. 1:21-cv-11404-TLL-PTM and identify all your reasons for your objections (including citations and supporting evidence) and attach any materials you rely on for your objections. Your letter or brief must also include your name, your address, the basis upon which you claim to be a Class Member (including the title of the publication(s) which you purchased or to which you subscribed), the name and contact information of any and all attorneys representing, advising, or in any way assisting you in connection with your objection, and your signature. If you, or an attorney assisting you with your objection, have ever objected to any class action settlement where you or the objecting attorney has asked for or received payment in exchange for dismissal of the objection (or any related appeal) without modification to the settlement, you must include a statement in your objection identifying each such case by full case caption. You must also mail or deliver a copy of your letter or brief to Class Counsel and Defendant's Counsel listed below.

Class Counsel will file with the Court and post on this website its request for attorneys' fees by [two weeks prior to objection deadline].

If you want to appear and speak at the Final Approval Hearing to object to the Settlement, with or without a lawyer (explained below in answer to Question Number 20), you must say so in your letter or brief.  File the objection with the Court (or mail the objection to the Court) and mail a copy of the objection to Class Counsel

Defendant's Counsel, at the addresses below, postmarked no later than [**objection deadline**].

| Court | Class Counsel | Defendant's Counsel |
|---|---|---|
| The Honorable Thomas L. Ludington<br>United States District Court for the Eastern District of Michigan<br>1000 Washington Avenue, Room 214, Bay City, MI 48708 | E. Powell Miller<br>The Miller Law Firm, P.C.<br>950 W. University Drive, Suite 300<br>Rochester, MI 48307 | Kathy R. Neal<br>McAfee & Taft, P.C.<br>Williams Center Tower II<br>Two West Second Street, Suite 1100<br>Tulsa, OK 74103 |

### 17. What's the difference between objecting and excluding myself from the Settlement?

Objecting simply means telling the Court that you don't like something about the Settlement. You can object only if you stay in the Class. Excluding yourself from the Class is telling the Court that you don't want to be part of the Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

## THE COURT'S FINAL APPROVAL HEARING

### 18. When and where will the Court decide whether to approve the Settlement?

The Court will hold the Final Approval Hearing at [time] on [date] at the United States Post Office Building, 1000 Washington Avenue, Room 214, Bay City, MI 48708. The purpose of the hearing will be for the Court to determine whether to approve the Settlement as fair, reasonable, adequate, and in the best interests of the Class; to consider the Class Counsel's request for attorneys' fees and expenses; and to consider the request for service awards to the Class Representatives. At that hearing, the Court will be available to hear any objections and arguments concerning the fairness of the Settlement.

The hearing may be postponed to a different date or time without notice, so it is a good idea to check for updates by visiting the Settlement Website at www.KSEMagazineSettlement.com or calling (800) 000-0000. If, however, you timely objected to the Settlement and advised the Court that you intend to appear and speak at the Final Approval Hearing, you will receive notice of any change in the date of the Final Approval Hearing.

### 19. Do I have to come to the hearing?

QUESTIONS? CALL (800) 000-0000 TOLL FREE, OR VISIT WWW.KSEMAGAZINESETTLEMENT.COM

No.  Class Counsel will answer any questions the Court may have.  But, you are welcome to come at your own expense.  If you send an objection or comment, you don't have to come to Court to talk about it.  As long as you filed and mailed your written objection on time, the Court will consider it.  You may also pay another lawyer to attend, but it's not required.

## 20. May I speak at the hearing?

Yes.  You may ask the Court for permission to speak at the Final Approval Hearing. To do so, you must include in your letter or brief objecting to the settlement a statement saying that it is your "Notice of Intent to Appear in *Pratt v. KSE Sportsman Media, Inc. d/b/a Outdoor Sportsman Group*, Case No. 1:21-cv-11404-TLL-PTM."  It must include your name, address, telephone number and signature as well as the name and address of your lawyer, if one is appearing for you.  Your objection and notice of intent to appear must be filed with the Court and postmarked no later than **[objection deadline]**, and be sent to the addresses listed in Question 16.

## GETTING MORE INFORMATION

## 21. Where do I get more information?

This Notice summarizes the Settlement.  More details are in the Settlement Agreement.  You can get a copy of the Settlement Agreement at www.KSEMagazineSettlement.com.  You may also write with questions to KSE Magazine Settlement, P.O. Box 0000, City, ST 00000.  You can call the Settlement Administrator at (800) 000-0000 or Class Counsel at [insert phone number], if you have any questions.  Before doing so, however, please read this full Notice carefully. You may also find additional information elsewhere on the case website.

**EXHIBIT E**

*Pratt v. KSE Sportsman Media, Inc. d/b/a Outdoor Sportsman Group*,
Case No. 1:21-cv-11404-TLL-PTM (E.D. Mich.)

## CLAIM FORM FOR UNIDENTIFIED CLASS MEMBERS

This Claim Form may be submitted online at www.KSEMagazineSettlement.com or completed and mailed to the address below. Submit your completed Claim Form online or mail it so it is postmarked no later than **[DATE]**. If you received a Notice by mail, you do NOT need to submit a Claim Form, and your Cash Award will be sent to you by check at the address identified on the Notice once the Settlement is finally approved. If your address has changed, please submit a change of address form online at www.KSEMagazineSettlement.com to ensure your check is mailed to your current address.

### I.   CLAIMANT INFORMATION (all fields required)

The Settlement Administrator will use this information for communications and payments. If this information changes before settlement payments are issued, contact the Settlement Administrator at the address below.

First Name                                                                M.I.      Last Name

Current Mailing Address, Line 1: Street Address/P.O. Box

Current Mailing Address, Line 2:

City:                                                                    State:        Zip Code:

Preferred Telephone Number

Preferred Email address

### II.   CLAIM INFORMATION

Mailing address at which you received your subscription between June 16, 2015 and July 30, 2016:

Mailing Address, Line 1: Street Address/P.O. Box

Mailing Address, Line 2:

City:                                                                    State:        Zip Code:

### III.   PREFERRED PAYMENT METHOD

___ Check

___ PayPal (Associated Email Address: _____ )

___ Venmo (Associated Email Address: _____ )

### IV.   SIGNATURE: Sign and date the Claim Form below.

Signed: _____        Date: _____

Submit this Claim Form online or mail it to the address below postmarked no later than [**DATE**].

*KSE Magazine Class Action Settlement Administrator*
c/o JND Legal Administration
[address]

**EXHIBIT F-1**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

|  |  |
|---|---|
| RICHARD PRATT and LARRY JONES, individually and on behalf of all others similarly situated,<br><br>                          Plaintiffs,<br>   v.<br><br>KSE SPORTSMAN MEDIA, INC. d/b/a OUTDOOR SPORTSMAN GROUP,<br><br>                          Defendant. | Case No. 21-cv-11404-TLL-PTM |

## STIPULATION REGARDING UNDERTAKING RE: ATTORNEYS' FEES, COSTS, AND EXPENSES

Plaintiffs Richard Pratt and Larry Jones and Defendant KSE Sportsman Media, Inc. d/b/a Outdoor Sportsman Group ("KSE") (collectively, "the Parties"), by and through and including their undersigned counsel, stipulate and agree as follows:

WHEREAS, The Miller Law Firm, P.C. (the "Firm") desires to give an undertaking (the "Undertaking") for repayment of its share of the award of attorneys' fees, costs, and expenses approved by the Court, and

WHEREAS, the Parties agree that this Undertaking is in the interests of all Parties and in service of judicial economy and efficiency.

NOW, THEREFORE, the undersigned counsel, on behalf of himself as individual and as agent for his law firm, hereby submits himself and his law firm to the jurisdiction of the Court for the purpose of enforcing the provisions of this Undertaking.

Capitalized terms used herein without definition have the meanings given to them in the Settlement Agreement.

By receiving any payments pursuant to the Settlement Agreement, the Firm and its shareholders, members, and/or partners submit to the jurisdiction of the United States District Court for the Eastern District of Michigan for the enforcement of and any and all disputes relating to or arising out of the reimbursement obligation set forth herein and the Settlement Agreement.

In the event that the Final Settlement Order and Judgment or any part of it is vacated, overturned, reversed, or rendered void as a result of an appeal, or the Settlement Agreement is voided, rescinded, or otherwise terminated for any other reason, the Firm shall, within thirty (30) days repay to Defendant, based upon written instructions provided by Defendant's Counsel, the full amount of the attorneys' fees and costs paid to the Firm from the Settlement Fund, including any accrued interest.

In the event the Final Settlement Order and Judgment are upheld, but the attorneys' fees, costs, and expenses awarded by the Court or any part of them are vacated, modified, reversed, or rendered void as a result of an appeal, the Firm shall within thirty (30) days repay to the Settlement Fund, based upon written instructions provided by the Settlement Administrator, the attorneys' fees and costs paid to the Firm from the Settlement Fund in the amount vacated or modified, including any accrued interest.

This Undertaking and all obligations set forth herein shall expire upon finality of all direct appeals of the Final Settlement Order and Judgment.

In the event the Firm fails to repay to Defendant or to the Settlement Fund any of attorneys' fees and costs that are owed to either pursuant to this Undertaking, the Court shall, upon application of KSE, and notice to the Firm, summarily issue orders, including but not

limited to judgments and attachment orders against the Firm, and may make appropriate findings for sanctions for contempt of court.

The undersigned stipulate, warrant, and represent that he has both actual and apparent authority to enter into this stipulation, agreement, and undertaking on behalf of the Firm.

This Undertaking may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Signatures by facsimile shall be as effective as original signatures.

The undersigned declare under penalty of perjury under the laws of the United States that they have read and understand the foregoing and that it is true and correct.

IT IS SO STIPULATED THROUGH COUNSEL OF RECORD:


DATED: 5-26 , 2023          THE MILLER LAW FIRM, P.C.

By: E. Powell Miller, on behalf of The Miller Law Firm, P.C.
Attorneys for Plaintiffs Richard Pratt and Larry Jones and Class Counsel


DATED: _____, 2023          MCAFEE & TAFT, P.C.

By: Kathy R. Neal
Attorneys for Defendant KSE Sportsman Media, Inc. d/b/a Outdoor Sportsman Group

3

limited to judgments and attachment orders against the Firm, and may make appropriate findings for sanctions for contempt of court.

The undersigned stipulate, warrant, and represent that he has both actual and apparent authority to enter into this stipulation, agreement, and undertaking on behalf of the Firm.

This Undertaking may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Signatures by facsimile shall be as effective as original signatures.

The undersigned declare under penalty of perjury under the laws of the United States that they have read and understand the foregoing and that it is true and correct.

IT IS SO STIPULATED THROUGH COUNSEL OF RECORD:


DATED: _____, 2023          THE MILLER LAW FIRM, P.C.


                                 _____
                                 By: E. Powell Miller, on behalf of The Miller Law Firm,
                                 P.C.
                                 Attorneys for Plaintiffs Richard Pratt and Larry Jones and
                                 Class Counsel


DATED: _MAY 26_, 2023           MCAFEE & TAFT, P.C.

                                 _KATHY NEAL (w/ PERMISSION By Tim Spencer)_
                                 By: Kathy R. Neal
                                 Attorneys for Defendant KSE Sportsman Media, Inc. d/b/a
                                 Outdoor Sportsman Group


3

**EXHIBIT F-2**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| RICHARD PRATT and LARRY JONES, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> KSE SPORTSMAN MEDIA, INC. d/b/a OUTDOOR SPORTSMAN GROUP, <br><br> Defendant. | Case No. 21-cv-11404-TLL-PTM |

## STIPULATION REGARDING UNDERTAKING RE: ATTORNEYS' FEES, COSTS, AND EXPENSES

Plaintiffs Richard Pratt and Larry Jones and Defendant KSE Sportsman Media, Inc. d/b/a Outdoor Sportsman Group ("KSE") (collectively, "the Parties"), by and through and including their undersigned counsel, stipulate and agree as follows:

WHEREAS, Bursor & Fisher P.A. (the "Firm") desires to give an undertaking (the "Undertaking") for repayment of its share of the award of attorneys' fees, costs, and expenses approved by the Court, and

WHEREAS, the Parties agree that this Undertaking is in the interests of all Parties and in service of judicial economy and efficiency.

NOW, THEREFORE, the undersigned counsel, on behalf of himself as individual and as agent for his law firm, hereby submits himself and his law firm to the jurisdiction of the Court for the purpose of enforcing the provisions of this Undertaking.

Capitalized terms used herein without definition have the meanings given to them in the Settlement Agreement.

By receiving any payments pursuant to the Settlement Agreement, the Firm and its shareholders, members, and/or partners submit to the jurisdiction of the United States District Court for the Eastern District of Michigan for the enforcement of and any and all disputes relating to or arising out of the reimbursement obligation set forth herein and the Settlement Agreement.

In the event that the Final Settlement Order and Judgment or any part of it is vacated, overturned, reversed, or rendered void as a result of an appeal, or the Settlement Agreement is voided, rescinded, or otherwise terminated for any other reason, the Firm shall, within thirty (30) days repay to Defendant, based upon written instructions provided by Defendant's Counsel, the full amount of the attorneys' fees and costs paid to the Firm from the Settlement Fund, including any accrued interest.

In the event the Final Settlement Order and Judgment are upheld, but the attorneys' fees, costs, and expenses awarded by the Court or any part of them are vacated, modified, reversed, or rendered void as a result of an appeal, the Firm shall within thirty (30) days repay to the Settlement Fund, based upon written instructions provided by the Settlement Administrator, the attorneys' fees and costs paid to the Firm from the Settlement Fund in the amount vacated or modified, including any accrued interest.

This Undertaking and all obligations set forth herein shall expire upon finality of all direct appeals of the Final Settlement Order and Judgment.

In the event the Firm fails to repay to Defendant or to the Settlement Fund any of attorneys' fees and costs that are owed to either pursuant to this Undertaking, the Court shall, upon application of KSE, and notice to the Firm, summarily issue orders, including but not

limited to judgments and attachment orders against the Firm, and may make appropriate findings for sanctions for contempt of court.

The undersigned stipulate, warrant, and represent that he has both actual and apparent authority to enter into this stipulation, agreement, and undertaking on behalf of the Firm.

This Undertaking may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Signatures by facsimile shall be as effective as original signatures.

The undersigned declare under penalty of perjury under the laws of the United States that they have read and understand the foregoing and that it is true and correct.

IT IS SO STIPULATED THROUGH COUNSEL OF RECORD:

DATED: _____May 26_____, 2023          BURSOR & FISHER, P.A.

_____
By: Scott A. Bursor, on behalf of Bursor & Fisher, P.A.
Attorneys for Plaintiffs Richard Pratt and Larry Jones and
Class Counsel

DATED: _____, 2023          MCAFEE & TAFT, P.C.

_____
By: Kathy R. Neal
Attorneys for Defendant KSE Sportsman Media, Inc. d/b/a
Outdoor Sportsman Group

3

limited to judgments and attachment orders against the Firm, and may make appropriate findings

for sanctions for contempt of court.

The undersigned stipulate, warrant, and represent that he has both actual and apparent

authority to enter into this stipulation, agreement, and undertaking on behalf of the Firm.

This Undertaking may be executed in one or more counterparts, each of which shall be

deemed an original but all of which together shall constitute one and the same instrument.

Signatures by facsimile shall be as effective as original signatures.

The undersigned declare under penalty of perjury under the laws of the United States that

they have read and understand the foregoing and that it is true and correct.

IT IS SO STIPULATED THROUGH COUNSEL OF RECORD:

DATED: _____, 2023          BURSOR & FISHER, P.A.

_____
By: Scott A. Bursor, on behalf of Bursor & Fisher, P.A.
Attorneys for Plaintiffs Richard Pratt and Larry Jones and
Class Counsel

DATED: *MAY 26*, 2023          MCAFEE & TAFT, P.C.

*KATHY NEAL (w/ PERMISSION BY Tim Spencer)*
By: Kathy R. Neal
Attorneys for Defendant KSE Sportsman Media, Inc. d/b/a
Outdoor Sportsman Group

3

**EXHIBIT F-3**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| RICHARD PRATT and LARRY JONES, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>      v.<br><br>KSE SPORTSMAN MEDIA, INC. d/b/a OUTDOOR SPORTSMAN GROUP,<br><br>                    Defendant. | Case No. 21-cv-11404-TLL-PTM |

## <u>STIPULATION REGARDING UNDERTAKING RE: ATTORNEYS' FEES, COSTS, AND EXPENSES</u>

Plaintiffs Richard Pratt and Larry Jones and Defendant KSE Sportsman Media, Inc. d/b/a Outdoor Sportsman Group ("KSE") (collectively, "the Parties"), by and through and including their undersigned counsel, stipulate and agree as follows:

WHEREAS, Hedin Hall LLP (the "Firm") desires to give an undertaking (the "Undertaking") for repayment of its share of the award of attorneys' fees, costs, and expenses approved by the Court, and

WHEREAS, the Parties agree that this Undertaking is in the interests of all Parties and in service of judicial economy and efficiency.

NOW, THEREFORE, the undersigned counsel, on behalf of himself as individual and as agent for his law firm, hereby submits himself and his law firm to the jurisdiction of the Court for the purpose of enforcing the provisions of this Undertaking.

Capitalized terms used herein without definition have the meanings given to them in the Settlement Agreement.

By receiving any payments pursuant to the Settlement Agreement, the Firm and its shareholders, members, and/or partners submit to the jurisdiction of the United States District Court for the Eastern District of Michigan for the enforcement of and any and all disputes relating to or arising out of the reimbursement obligation set forth herein and the Settlement Agreement.

In the event that the Final Settlement Order and Judgment or any part of it is vacated, overturned, reversed, or rendered void as a result of an appeal, or the Settlement Agreement is voided, rescinded, or otherwise terminated for any other reason, the Firm shall, within thirty (30) days repay to Defendant, based upon written instructions provided by Defendant's Counsel, the full amount of the attorneys' fees and costs paid to the Firm from the Settlement Fund, including any accrued interest.

In the event the Final Settlement Order and Judgment are upheld, but the attorneys' fees, costs, and expenses awarded by the Court or any part of them are vacated, modified, reversed, or rendered void as a result of an appeal, the Firm shall within thirty (30) days repay to the Settlement Fund, based upon written instructions provided by the Settlement Administrator, the attorneys' fees and costs paid to the Firm from the Settlement Fund in the amount vacated or modified, including any accrued interest.

This Undertaking and all obligations set forth herein shall expire upon finality of all direct appeals of the Final Settlement Order and Judgment.

In the event the Firm fails to repay to Defendant or to the Settlement Fund any of attorneys' fees and costs that are owed to either pursuant to this Undertaking, the Court shall, upon application of KSE, and notice to the Firm, summarily issue orders, including but not

limited to judgments and attachment orders against the Firm, and may make appropriate findings for sanctions for contempt of court.

The undersigned stipulate, warrant, and represent that he has both actual and apparent authority to enter into this stipulation, agreement, and undertaking on behalf of the Firm.

This Undertaking may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Signatures by facsimile shall be as effective as original signatures.

The undersigned declare under penalty of perjury under the laws of the United States that they have read and understand the foregoing and that it is true and correct.

IT IS SO STIPULATED THROUGH COUNSEL OF RECORD:

DATED: _May 26_____, 2023          HEDIN HALL LLP

_____
By: Frank S. Hedin, on behalf of Hedin Hall LLP
Attorneys for Plaintiffs Richard Pratt and Larry Jones and
Class Counsel

DATED: _____, 2023          MCAFEE & TAFT, P.C.

_____
By: Kathy R. Neal
Attorneys for Defendant KSE Sportsman Media, Inc. d/b/a
Outdoor Sportsman Group

3

limited to judgments and attachment orders against the Firm, and may make appropriate findings for sanctions for contempt of court.

The undersigned stipulate, warrant, and represent that he has both actual and apparent authority to enter into this stipulation, agreement, and undertaking on behalf of the Firm.

This Undertaking may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Signatures by facsimile shall be as effective as original signatures.

The undersigned declare under penalty of perjury under the laws of the United States that they have read and understand the foregoing and that it is true and correct.

IT IS SO STIPULATED THROUGH COUNSEL OF RECORD:

DATED: _____, 2023          HEDIN HALL LLP

                                  _____
                                  By: Frank S. Hedin, on behalf of Hedin Hall LLP
                                  Attorneys for Plaintiffs Richard Pratt and Larry Jones and
                                  Class Counsel

DATED: _May 26_, 2023             MCAFEE & TAFT, P.C.

                                  _Kathy Neal (w/ permission by Tim Spencer)_
                                  _____
                                  By: Kathy R. Neal
                                  Attorneys for Defendant KSE Sportsman Media, Inc. d/b/a
                                  Outdoor Sportsman Group

3

# EXHIBIT 2

# THE MILLER LAW FIRM

## A Professional Corporation

950 W. University Dr., Ste. 300
Rochester, MI  48307
(248) 841-2200

**www.millerlawpc.com**

# THE MILLER LAW FIRM, P.C. | FIRM RESUME

The Miller Law Firm, P.C. (the "Firm") is one of the premier litigation law firms in the United States and Michigan's leading financial class action firm. A recognized leader in the area of complex commercial litigation, the Firm is ranked Tier 1 in Detroit by *U.S. News-Best Lawyers* "Best Law Firms" for commercial litigation. Since the Firm's founding in 1994, the Firm has developed a national reputation for successfully prosecuting securities fraud and consumer class actions on behalf of its clients. As Lead Counsel or Co-Lead Counsel appointed by judges throughout the United States in some of the country's largest and most complex cases, the Firm has achieved over $3 billion in settlements, recoveries and/or verdicts on behalf of injured class members.

## Highlights of Results Obtained

2023        *Cooper (nee Zimmerman) v. The 3M Company and Wolverine*
(United States District Court, Western District of Michigan)
(Case No. 1:17-cv-01062) (Co-Lead Counsel)

Result: $54 million settlement

*Reynolds v. FCA*
(United States District Court, Eastern District of Michigan)
(Case No. 2:19-cv-11745) (Co-Lead Counsel)

Result: Over $30 million settlement value

*Kain v. The Economist Newspaper NA, Inc.*
(United States District Court, Eastern District of Michigan)
(Case No. 4:21-cv-11807) (Co-Lead Counsel)

Result: $9.5 million settlement

*Thomsen v. Morley*
(United States District Court, Eastern District of Michigan)
(Case No. 1:22-cv-10271) (Plaintiffs' Executive Committee)

Result: $4.3 million settlement

2022        *In re; National Prescription Opiate Litigation (CVS, Walgreens and Walmart retail pharmacy and two manufacturers Allergan and Teva)*
(United States District Court, Northern District Ohio, MDL Court)
(Case No. 1:17-md-2804) (Represented several Michigan counties who were parties to and benefited from the global settlement)

Result: $18.5 billion global settlement plus Narcan or additional cash from Teva

*In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litig.*,
(United States District Court, District of Kansas)
(Case No. 2:17-md-02785) (Plaintiffs' Steering Committee)

Result: $609 million in settlements

*Wood, et al. v. FCA US LLC*
(United States District Court, Eastern District of Michigan)
(Case No. 5:20-cv-11054) (Co-Lead Counsel)

Result: Over $108 million settlement value

*Persad, et al. v. Ford Motor Company*
(United States District Court, Eastern District of Michigan)
(Case No. 2:17-cv-12599) (Co-Lead Counsel)

Result: Over $42 million settlement value

*Loftus v. Outside Integrated Media, LLC*
(United States District Court, Eastern District of Michigan)
(Case No. 2:21-cv-11809) (Co-Lead Counsel)

Result: Approximately $1 million settlement

*Graham, et al. v. University of Michigan, et al.*,
(United States District Court, Eastern District of Michigan)
(Case No. 2:21-cv-11168) (Co-Lead Counsel)

Result: Injunctive relief settlement mandating University reforms to address and prevent sexual misconduct

John Doe MC-1 v. University of Michigan, et. al.
(United States District Court, Eastern District of Michigan)
(Case No. 2:20-cv-10568) (Represented several victims of sexual abuse in private, confidential settlement)

2021     *In re; National Prescription Opiate Litigation (Distributor and Manufacturer Janssen Pharmaceuticals Settlement)*
(United States District Court, Northern District of Ohio, MDL Court)
(Case No. 1:17-md-2804) (Represented several Michigan counties who were parties to and benefited from the global settlement.)

Result: $26 billion global settlement

*Simmons, et al. v. Apple, Inc.*
(Superior Court of the State of California, County of Santa Clara)
(Case No. 17CV312251) (Co-Lead Counsel)

Result:   $9.75 million settlement

*Dougherty v Esperion Therapeutics, Inc., et. Al.*
(United States District Court, Eastern District of Michigan)
(Case No. 2:16-cv-10089) (Local Counsel)

Result:  $18.25 million settlement

*In re Broiler Chicken Antitrust Litigation*
(United States District Court, Northern District of Illinois, Eastern
Division) (Case No. 1:16-cv-08637

Result:  $93.5 million in settlements in 2021

2020  *In re Resistors Antitrust Litigation*
(United States District Court, Northern District of California)
(Case No. 3:15-cv-03820) (Informal member of Steering Committee)

Result:  $33.4 million in settlements in 2020

*In re Capacitors Antitrust Litigation*
(United States District Court, Northern District of California)
(Case No. 03:17-md-02801) (Informal member of Steering
Committee)

Result:  $30.95 million in settlements in 2020

2019  *Carl Palazzolo, et al. Fiat Chrysler Automobiles N.V., et al.*
(United States District Court, Eastern District of Michigan)
(Case No. 16-cv-12803) (Co-Lead Counsel)

Result:   $14.75 million settlement

*Zimmerman v. Diplomat Pharmacy, Inc., et al.*
(United States District Court, Eastern District of Michigan)
(Case No. 2:16-cv-14005) (Liaison Counsel)

Result:   $14.1 million settlement

2018  *In re Freight Forwarders Antitrust Litigation*
(United States District Court, Eastern District of New York)
(Case No. 08-cv-00042) (Counsel for Class Representative)

Result: $1 billion settlement

2017    *Foster v. L3 Communications, EO Tech*
        (United States District Court, Western District of Missouri)
        (Case No. 15-cv-03519) (Co-Lead Counsel)

        Result: $51 million settlement (100% recovery)

2016    *In re Automotive Parts Antitrust Litigation*
        (United States District Court, Eastern District of Michigan)
        (Case No. 12-md-02311) (Liaison Counsel)

        Result: Over $1 billion in settlements

        *GM Securities Class Action/New York Teachers Retirement System v.*
        *General Motors Company*
        (United States District Court, Eastern District of Michigan)
        (Case No. 4:14-cv-11191) (Local Counsel)

        Result: $300 million settlement

        *ERISA Class Action/Davidson v. Henkel Corporation*
        (United Sates District Court, Eastern District of Michigan)
        (Case No. 12-cv-14103) (Lead Counsel)

        Result: $3.35 million settlement (100% Recovery for 41 member class)

        *Pat Cason-Merenda and Jeffrey A. Suhre v. VHS of Michigan, Inc.,*
        *dba Detroit Medical Center (Antitrust)*
        (United States District Court, Eastern District of Michigan)
        (Case No. 2:06-cv-15601) (Special Trial Counsel)

        Result: $42 million settlement

2015    *In re AIG 2008 Securities Litigation*
        (United States District Court, Southern District of New York)
        (Case No. 08-cv-04772) (Co-Lead Counsel)

        Result: $970.5 million settlement

2014    *City of Farmington Hills Employees Retirement System v. Wells*
        *Fargo Bank, N.A.*
        (United States District Court, District of Minnesota)
        (Case No. 10-cv-04372) (Co-Lead Counsel and Primary Trial Counsel)

        Result: $62.5 million settlement approved

*The Shane Group, Inc., et al. v. Blue Cross Blue Shield of Michigan*
(United States District Court, Eastern District of Michigan)
(Case No. 2:10-cv-14360) (Co-Lead Counsel)

Result:  $30 million settlement pending final approval

*In re Refrigerant Compressors Antitrust Litigation*
(United States District Court, Eastern District of Michigan)
(Case No. 09-md-02042) (Co-Lead Counsel)

Result:  $30 million settlement

2013   *The Board of Trustees of the City of Birmingham Employees et. al. v. Comerica Bank et. al.*
(United States District Court, Eastern District of Michigan)
(Case No. 2:09-13201) (Co-Lead Counsel)

Result:  $11 million settlement

*In Re Caraco Pharmaceutical Laboratories, Ltd. Securities Litigation*
(United States District Court, Eastern District of Michigan)
(Case No. 2:09-cv-12830) (Co-Lead Counsel)

Result:  $2.975 million settlement

*In Re TechTeam Global Inc. Shareholder Litigation*
(Oakland County Circuit Court, State of Michigan)
(Case No. 10-114863-CB)  (Liaison Counsel)

Result:  $1.775 million settlement

*General Retirement System of the City of Detroit and Police and Fire Retirement System of the City of Detroit vs. UBS Securities, LLC (Structured Investment Vehicle)*
(United States District Court, Eastern District of Michigan)
(Case No. 2:10-cv-13920) (Lead Counsel)

Result:   Confidential settlement

2010   *Epstein, et al. v. Heartland Industrial Partners, L.P., et al.*
(United States District Court, Eastern District of Michigan)
(Case No. 2:06-CV-13555) (Substantial role)

Result:  $12.2 million settlement

*In Re Skilled Healthcare Group, Inc. Securities Litigation*
(United States District Court, Central District of California)

(Case No. 09-5416) (Substantial role)

Result:  $3 million settlement

2009    *In Re Proquest Company Securities Litigation*
        (United States District Court, Eastern District of Michigan)
        (Case No. 4:06-CV-11579) (Substantial role; argued Motion to Dismiss)

        Result:  $20 million settlement

        *In Re Collins & Aikman Corporation Securities Litigation*
        (United States District Court, Eastern District Michigan)
        (Case No. 03-CV-71173) (Substantial role)

        Result:  $10.8 million settlement

        *In re IT Group Securities Litigation*
        (United States District Court, Western District of Pennsylvania)
        (Civil Action No. 03-288) (Co-Lead Counsel)

        Result:  $3.4 million settlement

2008    *In re Mercury Interactive Securities Litigation*
        (United States District Court, Northern District of California)
        (Civil Action No. 03:05-CV-3395-JF) (Substantial role)

        Result:  $117 million settlement

        *In Re General Motors Corporation Securities and Derivative Litigation*
        (United States District Court, Eastern District of Michigan)
        (Master Case No. 06-MD-1749) (Co-Lead Counsel)

        Status: Obtained major corporate governance reforms to address accounting
        deficiencies

2007    *Wong v. T-Mobile USA, Inc.*
        (United States District Court, Eastern District of Michigan)
        (Case No. 05-CV-73922) (Co-Lead)

        Result:  Settlement for 100% of damages

        *In re CMS Energy Corporation Securities Litigation*
        (United States District Court, Eastern District Michigan)
        (Master File No. 2:02 CV 72004) (Substantial role)

        Result:  $200 million settlement

2005 *In re Comerica Securities Fraud Litigation*
(United States District Court, Eastern District of Michigan)
(Case No. 2:02-CV-60233) (Substantial role)

Result:  $21 million in total settlements

*Street v. Siemens*
(Philadelphia State Court)
(Case No. 03-885) (Co-Lead Counsel)

Result:  $14.4 million (100% recovery)

*Redmer v. Tournament Players Club of Michigan*
(Wayne County Circuit Court) (Case No. 02-224481-CK) (Co-Lead)

Result:  $3.1 million settlement

2004 *Passucci v. Airtouch Communications, Inc.*
(Wayne County Circuit Court) (Case No. 01-131048-CP) (Co-Lead)

Result:  Estimated settlement valued between $30.9 and $40.3 million

*Johnson v. National Western Life Insurance*
(Oakland County Circuit Court)
(Case No. 01-032012-CP) (Substantial role)

Result:  $10.7 million settlement

2003 *Felts v. Starlight*
(United States District Court, Eastern District Michigan)
(Case No. 01-71539) (Co-Lead)

Result: Starlight agrees to stop selling ephedrine as an ingredient in its weight loss dietary supplement product

*In re Lason Securities Litigation*
(United States District Court, Eastern District Michigan)
(Case No. 99-CV-76079) (Co-Lead)

Result: $12.68 million settlement

2001 *Mario Gasperoni, et al. v. Metabolife International, Inc.*
(United States District Court, Eastern District Michigan)
(Case No. 00-71255) (Co-Lead)

Result: Nationwide settlement approved mandating changes in advertising and labeling on millions of bottles of dietary supplement, plus approximately $8.5

million in benefits

1999 *Pop v. Art Van Furniture and Alexander Hamilton Insurance Company*
(Wayne County Circuit Court) (Case No. 97-722003-CP) (Co-Lead)

Result: Changes in sales practices and $9 million in merchandise.

*Schroff v. Bombardier*
(United States District Court, Eastern District Michigan)
(Case No. 99-70327) (Co-Lead)

Result: Recall of more than 20,000 defective Seadoos throughout North America; repair of defect to reduce water ingestion problem; extended warranties; and approximately $4 million in merchandise.

*In re National Techteam Securities Litigation*
(United States District Court, Eastern District Michigan)
(Master File No. 97-74587) (Substantial role)

Result: $11 million settlement

*In Re F&M Distributors, Inc., Securities Litigation*
(United States District Court, Eastern District Michigan)
(Case No. 95-CV-71778-DT) (Minor role)

Result: $20 million settlement

1998 *In Re Michigan National Corporation Securities Litigation*
(United States District Court, Eastern District Michigan)
(Case No 95 CV 70647 DT) (Substantial role)

Result: $13.3 million settlement

1995 *In re Intel Pentium Processor Litigation*
(Superior Court, Santa Clara County, California) (Master File No. 745729) (Substantial role)

Result: Intel agreed to replace millions of defective Pentium chips on demand without any cost to consumers

# SELECTED RESUME



| **ROCHESTER** | **DETROIT** |
|---|---|
| 950 W. UNIVERSITY DR. | 211 WEST FORT ST. |
| SUITE 300 | SUITE 705 |
| ROCHESTER, MI 48307 | DETROIT, MI 48226 |

248-841-2200 | WWW.MILLER.LAW



# E. POWELL MILLER, PARTNER

✉ **EPM@millerlawpc.com**



Powell Miller has been recognized as Michigan's number one ranked attorney by Super Lawyers Magazine for 2020 and 2023. He has also been named one of the Top 10 lawyers in Michigan for fourteen consecutive years, from 2009-present, by Super Lawyers Magazine, and in 2010, 2015, 2019 and 2020 he was the recipient of the Best Lawyers – Lawyer of the Year in the category of Bet-The-Company Litigation. In 2017, Mr. Miller was the recipient of the Judge Friedman and Cook Civility Award, which is awarded to only one lawyer each year. He has been named as one of the Best Lawyers in America every year since 2005. Mr. Miller has earned Martindale-Hubbell's highest rating, AV® Preeminent™ 5/5.0 for legal ethics and ability and a 10/10 from AVVO a public rating system. Mr. Miller is also ranked as only one of nine in Michigan to receive the highest Band 1 rating by Chambers USA, describing Mr. Miller as a "Superb trial lawyer" who "routinely acts for high-profile clients based across the [United] states."

Mr. Miller focuses his practice on all aspects of litigation. He has been retained by many Fortune 500 and other clients to represent them in litigation throughout the United States, including in Michigan, New York, New Jersey, Pennsylvania, Arkansas, Florida, Texas, Kentucky, Ohio, California, Colorado, Indiana, and Illinois.

Mr. Miller recently won an arbitration against Jimmy Johns in the amount of $4.8 million including a $1 million attorney fee award. He has never lost a trial, including verdicts in excess of $5 million, $10 million and $23 million and a split verdict on a Rule 23(c)(4) issue trial. Mr. Miller has also obtained in excess of $3 billion in settlements. These settlements are regularly among the top ten in Michigan each year, including a high-profile verdict in May, 2016 for 100% liability.

In October, 2019 Mr. Miller defended a consumer goods manufacturer against Plaintiffs asserting complex price discrimination and antitrust claims, and alleging millions of dollars in damages. Following a 3-week trial and seven hours of deliberations, a California jury returned a unanimous verdict in favor of his client, rejecting all of Plaintiffs' claims.

Mr. Miller has previously served as Co-President of the Detroit Chapter of the Federal Bar Association Antitrust and Securities Committees. He also serves on the Executive Committee for the Wayne State University Law School Board of Visitors and has served a Co-Chair of the American Bar Association Procedures Subcommittee on class actions and multi-district litigation. He lectures regularly on securities litigation at the University of Michigan School of Law. He has also served as an Adjunct Professor at the University of Detroit Law School teaching trial practice. In addition, Mr. Miller regularly speaks at continuing legal education seminars on securities fraud class actions. Mr. Miller also serves as a Master member of The Oakland County Bar Association Inns of Court.

Mr. Miller graduated third in his class from Wayne State University Law School, magna cum laude, in 1986. He was named to the honor society, Order of the Coif and he was an Editor of the Wayne Law Review. In 1986, Mr. Miller joined the Detroit law firm of Honigman Miller Schwartz and Cohn, where he was elected partner in 1990. In 1994, he formed his own firm.



Mr. Miller has been recognized as a top debater in the United States. He won first place at the Harvard University National Debate Tournament as a freshman at Georgetown University. He also represented Georgetown in a special international debating exhibition against the Oxford Debating Union of Great Britain.

Mr. Miller is a proud supporter of the Detroit Urban Debate League, a nonprofit that supports the creation of debate programs in under-served high schools; the University of Detroit Jesuit High School and Academy; The Joe Niekro Foundation, which is committed to aiding in the research and treatment of aneurysm patients and families; and Charlotte's Wings, a nonprofit that is dedicated to supporting ailing children in Southeast Michigan through donations of new books to the children and their families in hospital and hospice care.

**<u>EDUCATION:</u>**

**UNIVERSITY OF DETROIT JESUIT HIGH SCHOOL, 1979**

**GEORGETOWN UNIVERSITY, B.A., 1983**

**WAYNE STATE UNIVERSITY LAW SCHOOL, J.D., 1986**



# EXHIBIT 3

# BURSOR & FISHER
### P.A.

www.bursor.com

**701 BRICKELL AVENUE**   **1330 AVENUE OF THE AMERICAS**   **1990 NORTH CALIFORNIA BLVD.**
**MIAMI, FL 33131**   **NEW YORK, NY 10019**   **WALNUT CREEK, CA 94596**

## <u>FIRM RESUME</u>

With offices in Florida, New York, and California, BURSOR & FISHER lawyers have represented both plaintiffs and defendants in state and federal courts throughout the country.

The lawyers at our firm have an active civil trial practice, having won multi-million-dollar verdicts or recoveries in six of six class action jury trials since 2008.  Our most recent class action trial victory came in May 2019 in *Perez v. Rash Curtis & Associates*, in which Mr. Bursor served as lead trial counsel and won a $267 million jury verdict against a debt collector found to have violated the Telephone Consumer Protection Act.  During the pendency of the defendant's appeal, the case settled for $75.6 million, the largest settlement in the history of the Telephone Consumer Protection Act.

In August 2013 in *Ayyad v. Sprint Spectrum L.P.*, in which Mr. Bursor served as lead trial counsel, we won a jury verdict defeating Sprint's $1.06 billion counterclaim and securing the class's recovery of more than $275 million in cash and debt relief.

In *Thomas v. Global Vision Products, Inc. (II)*, we obtained a $50 million jury verdict in favor of a certified class of 150,000 purchasers of the Avacor Hair Regrowth System.  The legal trade publication VerdictSearch reported that this was the second largest jury verdict in California in 2009, and the largest in any class action.

The lawyers at our firm have an active class action practice and have won numerous appointments as class counsel to represent millions of class members, including customers of Honda, Verizon Wireless, AT&T Wireless, Sprint, Haier America, and Michaels Stores as well as purchasers of Avacor™, Hydroxycut, and Sensa™ products.  Bursor & Fisher lawyers have been court-appointed Class Counsel or Interim Class Counsel in:

1. *O'Brien v. LG Electronics USA, Inc.* (D.N.J. Dec. 16, 2010) to represent a certified nationwide class of purchasers of LG French-door refrigerators,

2. *Ramundo v. Michaels Stores, Inc.* (N.D. Ill. June 8, 2011) to represent a certified nationwide class of consumers who made in-store purchases at Michaels Stores using a debit or credit card and had their private financial information stolen as a result,

3. *In re Haier Freezer Consumer Litig.* (N.D. Cal. Aug. 17, 2011) to represent a certified class of purchasers of mislabeled freezers from Haier America Trading, LLC,

4. *Rodriguez v. CitiMortgage, Inc.* (S.D.N.Y. Nov. 14, 2011) to represent a certified nationwide class of military personnel against CitiMortgage for illegal foreclosures,

5. *Rossi v. The Procter & Gamble Co.* (D.N.J. Jan. 31, 2012) to represent a certified nationwide class of purchasers of Crest Sensitivity Treatment & Protection toothpaste,

6. *Dzielak v. Whirlpool Corp. et al.* (D.N.J. Feb. 21, 2012) to represent a proposed nationwide class of purchasers of mislabeled Maytag Centennial washing machines from Whirlpool Corp., Sears, and other retailers,

7. *In re Sensa Weight Loss Litig.* (N.D. Cal. Mar. 2, 2012) to represent a certified nationwide class of purchasers of Sensa weight loss products,

8. *In re Sinus Buster Products Consumer Litig.* (E.D.N.Y. Dec. 17, 2012) to represent a certified nationwide class of purchasers,

9. *Ebin v. Kangadis Food Inc.* (S.D.N.Y. Feb. 25, 2014) to represent a certified nationwide class of purchasers of Capatriti 100% Pure Olive Oil,

10. *Forcellati v. Hyland's, Inc.* (C.D. Cal. Apr. 9, 2014) to represent a certified nationwide class of purchasers of children's homeopathic cold and flu remedies,

11. *Ebin v. Kangadis Family Management LLC, et al.* (S.D.N.Y. Sept. 18, 2014) to represent a certified nationwide class of purchasers of Capatriti 100% Pure Olive Oil,

12. *In re Scotts EZ Seed Litig.* (S.D.N.Y. Jan. 26, 2015) to represent a certified class of purchasers of Scotts Turf Builder EZ Seed,

13. *Dei Rossi v. Whirlpool Corp., et al.* (E.D. Cal. Apr. 28, 2015) to represent a certified class of purchasers of mislabeled KitchenAid refrigerators from Whirlpool Corp., Best Buy, and other retailers,

14. *Hendricks v. StarKist Co.* (N.D. Cal. July 23, 2015) to represent a certified nationwide class of purchasers of StarKist tuna products,

15. *In re NVIDIA GTX 970 Graphics Card Litig.* (N.D. Cal. May 8, 2015) to represent a proposed nationwide class of purchasers of NVIDIA GTX 970 graphics cards,

16. *Melgar v. Zicam LLC, et al.* (E.D. Cal. March 30, 2016) to represent a certified ten-jurisdiction class of purchasers of Zicam Pre-Cold products,

17. *In re Trader Joe's Tuna Litigation* (C.D. Cal. December 21, 2016) to represent purchaser of allegedly underfilled Trader Joe's canned tuna.

18. *In re Welspun Litigation* (S.D.N.Y. January 26, 2017) to represent a proposed nationwide class of purchasers of Welspun Egyptian cotton bedding products,

19. *Retta v. Millennium Products, Inc.* (C.D. Cal. January 31, 2017) to represent a certified nationwide class of Millennium kombucha beverages,

20. *Moeller v. American Media, Inc.*, (E.D. Mich. June 8, 2017) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

21. *Hart v. BHH, LLC* (S.D.N.Y. July 7, 2017) to represent a nationwide class of purchasers of Bell & Howell ultrasonic pest repellers,

22. *McMillion v. Rash Curtis & Associates* (N.D. Cal. September 6, 2017) to represent a certified nationwide class of individuals who received calls from Rash Curtis & Associates,

23. *Lucero v. Solarcity Corp.* (N.D. Cal. September 15, 2017) to represent a certified nationwide class of individuals who received telemarketing calls from Solarcity Corp.,

24. *Taylor v. Trusted Media Brands, Inc.* (S.D.N.Y. Oct. 17, 2017) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

25. *Gasser v. Kiss My Face, LLC* (N.D. Cal. Oct. 23, 2017) to represent a proposed nationwide class of purchasers of cosmetic products,

26. *Gastelum v. Frontier California Inc.* (S.F. Superior Court February 21, 2018) to represent a certified California class of Frontier landline telephone customers who were charged late fees,

27. *Williams v. Facebook, Inc.* (N.D. Cal. June 26, 2018) to represent a proposed nationwide class of Facebook users for alleged privacy violations,

28. *Ruppel v. Consumers Union of United States, Inc.* (S.D.N.Y. July 27, 2018) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

29. *Bayol v. Health-Ade* (N.D. Cal. August 23, 2018) to represent a proposed nationwide class of Health-Ade kombucha beverage purchasers,

30. *West v. California Service Bureau* (N.D. Cal. September 12, 2018) to represent a certified nationwide class of individuals who received calls from California Service Bureau,

31. *Gregorio v. Premier Nutrition Corporation* (S.D.N.Y. Sept. 14, 2018) to represent a nationwide class of purchasers of protein shake products,

32. *Moeller v. Advance Magazine Publishers, Inc. d/b/a Condé Nast* (S.D.N.Y. Oct. 24, 2018) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

33. *Bakov v. Consolidated World Travel Inc. d/b/a Holiday Cruise Line* (N.D. Ill. Mar. 21, 2019) to represent a certified class of individuals who received calls from Holiday Cruise Line,

34. *Martinelli v. Johnson & Johnson* (E.D. Cal. March 29, 2019) to represent a certified class of purchasers of Benecol spreads labeled with the representation "No Trans Fat,"

35. *Edwards v. Hearst Communications, Inc.* (S.D.N.Y. April 24, 2019) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

36. *Galvan v. Smashburger* (C.D. Cal. June 25, 2019) to represent a proposed class of purchasers of Smashburger's "Triple Double" burger,

37. *Kokoszki v. Playboy Enterprises, Inc.* (E.D. Mich. Feb. 7, 2020) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

38. *Russett v. The Northwestern Mutual Life Insurance Co.* (S.D.N.Y. May 28, 2020) to represent a class of insurance policyholders that were allegedly charged unlawful paper billing fees,

39. *In re: Metformin Marketing and Sales Practices Litigation* (D.N.J. June 3, 2020) to represent a proposed nationwide class of purchasers of generic diabetes medications that were contaminated with a cancer-causing carcinogen,

40. *Hill v. Spirit Airlines, Inc.* (S.D. Fla. July 21, 2020) to represent a proposed nationwide class of passengers whose flights were cancelled by Spirit Airlines due to the novel coronavirus, COVID-19, and whose tickets were not refunded,

41. *Kramer v. Alterra Mountain Co.* (D. Colo. July 31, 2020) to represent a proposed nationwide class of purchasers to recoup the unused value of their Ikon ski passes after Alterra suspended operations at its ski resorts due to the novel coronavirus, COVID-19,

42. *Qureshi v. American University* (D.D.C. July 31, 2020) to represent a proposed nationwide class of students for tuition and fee refunds after their classes were moved online by American University due to the novel coronavirus, COVID-19,

43. *Hufford v. Maxim Inc.* (S.D.N.Y. Aug. 13, 2020) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

44. *Desai v. Carnegie Mellon University* (W.D. Pa. Aug. 26, 2020) to represent a proposed nationwide class of students for tuition and fee refunds after their classes were moved online by Carnegie Mellon University due to the novel coronavirus, COVID-19,

45. *Heigl v. Waste Management of New York, LLC* (E.D.N.Y. Aug. 27, 2020) to represent a class of waste collection customers that were allegedly charged unlawful paper billing fees,

46. *Stellato v. Hofstra University* (E.D.N.Y. Sept. 18, 2020) to represent a proposed nationwide class of students for tuition and fee refunds after their classes were moved online by Hofstra University due to the novel coronavirus, COVID-19,

47. *Kaupelis v. Harbor Freight Tools USA, Inc.* (C.D. Cal. Sept. 23, 2020), to represent consumers who purchased defective chainsaws,

48. *Soo v. Lorex Corporation* (N.D. Cal. Sept. 23, 2020), to represent consumers whose security cameras were intentionally rendered non-functional by manufacturer,

49. *Miranda v. Golden Entertainment (NV), Inc.* (D. Nev. Dec. 17, 2020), to represent consumers and employees whose personal information was exposed in a data breach,

50. *Benbow v. SmileDirectClub, Inc.* (Cir. Ct. Cook Cnty. Feb. 4, 2021), to represent a certified nationwide class of individuals who received text messages from SmileDirectClub, in alleged violation of the Telephone Consumer Protection Act,

51. *Suren v. DSV Solutions, LLC* (Cir. Ct. DuPage Cnty. Apr. 8, 2021), to represent a certified class of employees who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act,

52. *De Lacour v. Colgate-Palmolive Co.* (S.D.N.Y. Apr. 23, 2021), to represent a certified class of consumers who purchased allegedly "natural" Tom's of Maine products,

53. *Wright v. Southern New Hampshire University* (D.N.H. Apr. 26, 2021), to represent a certified nationwide class of students for tuition and fee refunds after their classes were moved online by Southern New Hampshire University due to the novel coronavirus, COVID-19,

54. *Sahlin v. Hospital Housekeeping Systems, LLC* (Cir. Ct. Williamson Cnty. May 21, 2021), to represent a certified class of employees who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act,

55. *Landreth v. Verano Holdings LLC, et al.* (Cir. Ct. Cook Cnty. June 2, 2021), to represent a certified class of employees who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act.

56. *Rocchio v. Rutgers, The State University of New Jersey*, (Sup. Ct., Middlesex Cnty. October 27, 201), to represent a certified nationwide class of students for fee refunds after their classes were moved online by Rutgers due to the novel coronavirus, COVID-19,

57. *Malone v. Western Digital Corp.*, (N.D. Cal. Dec. 22, 2021), to represent a class of consumers who purchased hard drives that were allegedly deceptively advertised,

58. *Jenkins v. Charles Industries, LLC*, (Cir. Ct. DuPage Cnty. Dec. 21, 2021) to represent a certified class of employees who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act,

59. *Frederick v. Examsoft Worldwide, Inc.*, (Cir. Ct. DuPage Cnty. Jan. 6, 2022) to represent a certified class of exam takers who used virtual exam proctoring software, in alleged violation of the Illinois Biometric Information Privacy Act,

60. *Isaacson v. Liqui-Box Flexibles, LLC, et al.*, (Cir. Ct. Will Cnty. Jan. 18, 2022) to represent a certified class of employees who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act,

61. *Goldstein et al. v. Henkel Corp.*, (D. Conn. Mar. 3, 2022) to represent a proposed class of purchasers of Right Guard-brand antiperspirants that were allegedly contaminated with benzene,

62. *McCall v. Hercules Corp.*, (N.Y. Sup. Ct., Westchester Cnty. Mar. 14, 2022) to represent a certified class of who laundry card purchasers who were allegedly subjected to deceptive practices by being denied cash refunds,

63. *Lewis v. Trident Manufacturing, Inc.*, (Cir. Ct. Kane Cnty. Mar. 16, 2022) to represent a certified class of workers who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act,

64. *Croft v. Spinx Games Limited, et al.*, (W.D. Wash. Mar. 31, 2022) to represent a certified class of Washington residents who lost money playing mobile applications games that allegedly constituted illegal gambling under Washington law,

65. *Fischer v. Instant Checkmate LLC*, (N.D. Ill. Mar. 31, 2022) to represent a certified class of Illinois residents whose identities were allegedly used without their consent in alleged violation of the Illinois Right of Publicity Act,

66. *Rivera v. Google LLC*, (Cir. Ct. Cook Cnty. Apr. 25, 2022) to represent a certified class of Illinois residents who appeared in a photograph in Google Photos, in alleged violation of the Illinois Biometric Information Privacy Act,

67. *Loftus v. Outside Integrated Media, LLC*, (E.D. Mich. May 5, 2022) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

68. *D'Amario v. The University of Tampa*, (S.D.N.Y. June 3, 2022) to represent a certified nationwide class of students for tuition and fee refunds after their classes were moved online by The University of Tampa due to the novel coronavirus, COVID-19,

69. *Fittipaldi v. Monmouth University*, (D.N.J. Sept. 22, 2022) to represent a certified nationwide class of students for tuition and fee refunds after their classes were moved online by Monmouth University due to the novel coronavirus, COVID-19,

70. *Armstead v. VGW Malta Ltd. et al.* (Cir. Ct. Henderson Cnty. Oct. 3, 2022) to present a certified class of Kentucky residents who lost money playing mobile applications games that allegedly constituted illegal gambling under Kentucky law,

71. *Cruz v. The Connor Group, A Real Estate Investment Firm, LLC*, (N.D. Ill. Oct. 26, 2022) to represent a certified class of workers who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act;

72. *Delcid et al. v. TCP HOT Acquisitions LLC et al.* (S.D.N.Y. Oct. 28, 2022) to represent a certified nationwide class of purchasers of Sure and Brut-brand antiperspirants that were allegedly contaminated with benzene,

73. *Kain v. The Economist Newspaper NA, Inc.* (E.D. Mich. Dec. 15, 2022) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

74. *Strano v. Kiplinger Washington Editors, Inc.* (E.D. Mich. Jan. 6, 2023) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

75. *Moeller v. The Week Publications, Inc.* (E.D. Mich. Jan. 6, 2023) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act.

76. *In re: Apple Data Privacy Litigation*, (N.D. Cal. July 5, 2023) to represent a putative nationwide class of all persons who turned off permissions for data tracking and whose mobile app activity was still tracked on iPhone mobile devices.

## **SCOTT A. BURSOR**

Mr. Bursor has an active civil trial practice, having won multi-million verdicts or recoveries in six of six civil jury trials since 2008. Mr. Bursor's most recent victory came in May 2019 in *Perez v. Rash Curtis & Associates*, in which Mr. Bursor served as lead trial counsel and won a $267 million jury verdict against a debt collector for violations of the Telephone Consumer Protection Act (TCPA).

In *Ayyad v. Sprint Spectrum L.P.* (2013), where Mr. Bursor served as lead trial counsel, the jury returned a verdict defeating Sprint's $1.06 billion counterclaim and securing the class's recovery of more than $275 million in cash and debt relief.

In *Thomas v. Global Vision Products, Inc.* (2009), the jury returned a $50 million verdict in favor of the plaintiff and class represented by Mr. Bursor. The legal trade publication VerdictSearch reported that this was the second largest jury verdict in California in 2009.

Class actions are rarely tried to verdict.  Other than Mr. Bursor and his partner Mr. Fisher, we know of no lawyer that has tried more than one class action to a jury.  Mr. Bursor's perfect record of six wins in six class action jury trials, with recoveries ranging from $21 million to $299 million, is unmatched by any other lawyer.  Each of these victories was hard-fought against top trial lawyers from the biggest law firms in the United States.

Mr. Bursor graduated from the University of Texas Law School in 1996.  He served as Articles Editor of the Texas Law Review, and was a member of the Board of Advocates and Order of the Coif.  Prior to starting his own practice, Mr. Bursor was a litigation associate at a large New York based law firm where he represented telecommunications, pharmaceutical, and technology companies in commercial litigation.

Mr. Bursor is a member of the state bars of New York, Florida, and California, as well as the bars of the United States Court of Appeals for the Second, Third, Fourth, Sixth, Ninth and Eleventh Circuits, and the bars of the United States District Courts for the Southern and Eastern Districts of New York, the Northern, Central, Southern and Eastern Districts of California, the Southern and Middle Districts of Florida, and the Eastern District of Michigan.

### *Representative Cases*

Mr. Bursor was appointed lead or co-lead class counsel to the largest, 2nd largest, and 3rd largest classes ever certified.  Mr. Bursor has represented classes including more than 160 million class members, roughly 1 of every 2 Americans.  Listed below are recent cases that are representative of Mr. Bursor's practice:

Mr. Bursor negotiated and obtained court-approval for two landmark settlements in *Nguyen v. Verizon Wireless* and *Zill v. Sprint Spectrum* (the largest and 2nd largest classes ever certified).  These settlements required Verizon and Sprint to open their wireless networks to third-party devices and applications.  These settlements are believed to be the most significant legal development affecting the telecommunications industry since 1968, when the FCC's Carterfone decision similarly opened up AT&T's wireline telephone network.

Mr. Bursor was the lead trial lawyer in *Ayyad v. Sprint Spectrum, L.P.* representing a class of approximately 2 million California consumers who were charged an early termination fee under a Sprint cellphone contract, asserting claims that such fees were unlawful liquidated damages under the California Civil Code, as well as other statutory and common law claims.  After a five-week combined bench-and-jury trial, the jury returned a verdict in June 2008 and the Court issued a Statement of Decision in December 2008 awarding the plaintiffs $299 million in cash and debt cancellation.  Mr. Bursor served as lead trial counsel for this class again in 2013 during a month-long jury trial in which Sprint asserted a $1.06 billion counterclaim against the class.  Mr. Bursor secured a verdict awarding Sprint only $18.4 million, the exact amount calculated by the class's damages expert.  This award was less than 2% of the damages Sprint sought, less than 6% of the amount of the illegal termination fees Sprint charged to class members.  In December 2016, after more than 13 years of litigation, the case was settled for $304 million, including $79 million in cash payments plus $225 million in debt cancellation.

Mr. Bursor was the lead trial lawyer in *White v. Cellco Partnership d/b/a Verizon Wireless* representing a class of approximately 1.4 million California consumers who were charged an early termination fee under a Verizon cellphone contract, asserting claims that such fees were unlawful liquidated damages under the California Civil Code, as well as other statutory and common law claims.  In July 2008, after Mr. Bursor presented plaintiffs' case-in-chief, rested, then cross-examined Verizon's principal trial witness, Verizon agreed to settle the case for a $21 million cash payment and an injunction restricting Verizon's ability to impose early termination fees in future subscriber agreements.

Mr. Bursor was the lead trial lawyer in *Thomas v. Global Visions Products Inc.*  Mr. Bursor represented a class of approximately 150,000 California consumers who had purchased the Avacor® hair regrowth system.  In January 2008, after a four-week combined bench-and-jury trial. Mr. Bursor obtained a $37 million verdict for the class, which the Court later increased to $40 million.

Mr. Bursor was appointed class counsel and was elected chair of the Official Creditors' Committee in *In re Nutraquest Inc.*, a Chapter 11 bankruptcy case before Chief Judge Garrett E. Brown, Jr. (D.N.J.) involving 390 ephedra-related personal injury and/or wrongful death claims, two consumer class actions, four enforcement actions by governmental agencies, and multiple adversary proceedings related to the Chapter 11 case.  Working closely with counsel for all parties and with two mediators, Judge Nicholas Politan (Ret.) and Judge Marina Corodemus (Ret.), the committee chaired by Mr. Bursor was able to settle or otherwise resolve every claim and reach a fully consensual Chapter 11 plan of reorganization, which Chief Judge Brown approved in late 2006.  This settlement included a $12.8 million recovery to a nationwide class of consumers who alleged they were defrauded in connection with the purchase of Xenadrine® dietary supplement products.

Mr. Bursor was the lead trial lawyer in *In re: Pacific Bell Late Fee Litigation*.  After filing the first class action challenging Pac Bell's late fees in April 2010, winning a contested motion to certify a statewide California class in January 2012, and defeating Pac Bell's motion for summary judgment in February 2013, Mr. Bursor obtained final approval of the $38 million class settlement.  The settlement, which Mr. Bursor negotiated the night before opening statements were scheduled to commence, included a $20 million cash payment to provide refunds to California customers who paid late fees on their Pac Bell wireline telephone accounts, and an injunction that reduced other late fee charges by $18.6 million.

## L. TIMOTHY FISHER

L. Timothy Fisher has an active practice in consumer class actions and complex business litigation and has also successfully handled a large number of civil appeals.

Mr. Fisher has been actively involved in numerous cases that resulted in multi-million dollar recoveries for consumers and investors. Mr. Fisher has handled cases involving a wide range of issues including nutritional labeling, health care, telecommunications, corporate governance, unfair business practices and consumer fraud. With his partner Scott A. Bursor, Mr. Fisher has tried five class action jury trials, all of which produced successful results. In *Thomas v. Global Vision Products*, Mr. Fisher obtained a jury award of $50,024,611 — the largest class

action award in California in 2009 and the second-largest jury award of any kind. In 2019, Mr. Fisher served as trial counsel with Mr. Bursor and his partner Yeremey Krivoshey in *Perez. v. Rash Curtis & Associates*, where the jury returned a verdict for $267 million in statutory damages under the Telephone Consumer Protection Act.

Mr. Fisher was admitted to the State Bar of California in 1997. He is also a member of the bars of the United States Court of Appeals for the Ninth Circuit, the United States District Courts for the Northern, Central, Southern and Eastern Districts of California, the Northern District of Illinois, the Eastern District of Michigan, and the Eastern District of Missouri. Mr. Fisher taught appellate advocacy at John F. Kennedy University School of Law in 2003 and 2004. In 2010, he contributed jury instructions, a verdict form and comments to the consumer protection chapter of Justice Elizabeth A. Baron's *California Civil Jury Instruction Companion Handbook* (West 2010). In January 2014, Chief Judge Claudia Wilken of the United States District Court for the Northern District of California appointed Mr. Fisher to a four-year term as a member of the Court's Standing Committee on Professional Conduct.

Mr. Fisher received his Juris Doctor from Boalt Hall at the University of California at Berkeley in 1997. While in law school, he was an active member of the Moot Court Board and participated in moot court competitions throughout the United States. In 1994, Mr. Fisher received an award for Best Oral Argument in the first-year moot court competition.

In 1992, Mr. Fisher graduated with highest honors from the University of California at Berkeley and received a degree in political science. Prior to graduation, he authored an honors thesis for Professor Bruce Cain entitled "The Role of Minorities on the Los Angeles City Council." He is also a member of Phi Beta Kappa.

### *Representative Cases*

*Thomas v. Global Vision Products, Inc.* (Alameda County Superior Court). Mr. Fisher litigated claims against Global Vision Products, Inc. and other individuals in connection with the sale and marketing of a purported hair loss remedy known as Avacor. The case lasted more than seven years and involved two trials. The first trial resulted in a verdict for plaintiff and the class in the amount of $40,000,000. The second trial resulted in a jury verdict of $50,024,611, which led to a $30 million settlement for the class.

*In re Cellphone Termination Fee Cases* - Handset Locking Actions (Alameda County Superior Court). Mr. Fisher actively worked on five coordinated cases challenging the secret locking of cell phone handsets by major wireless carriers to prevent consumers from activating them on competitive carriers' systems. Settlements have been approved in all five cases on terms that require the cell phone carriers to disclose their handset locks to consumers and to provide unlocking codes nationwide on reasonable terms and conditions. The settlements fundamentally changed the landscape for cell phone consumers regarding the locking and unlocking of cell phone handsets.

*In re Cellphone Termination Fee Cases* - Early Termination Fee Cases (Alameda County Superior Court and Federal Communications Commission). In separate cases that are a part of the same coordinated litigation as the Handset Locking Actions, Mr. Fisher actively worked on

claims challenging the validity under California law of early termination fees imposed by national cell phone carriers. In one of those cases, against Verizon Wireless, a nationwide settlement was reached after three weeks of trial in the amount of $21 million. In a second case, which was tried to verdict, the Court held after trial that the $73 million of flat early termination fees that Sprint had collected from California consumers over an eight-year period were void and unenforceable.

### *Selected Published Decisions*

*Melgar v. Zicam LLC*, 2016 WL 1267870 (E.D. Cal. Mar. 30, 2016) (certifying 10-jurisdiction class of purchasers of cold remedies, denying motion for summary judgment, and denying motions to exclude plaintiff's expert witnesses).

*Salazar v. Honest Tea, Inc.*, 2015 WL 7017050 (E.D. Cal. Nov. 12. 2015) (denying motion for summary judgment).

*Dei Rossi v. Whirlpool Corp.*, 2015 WL 1932484 (E.D. Cal. Apr. 27, 2015) (certifying California class of purchasers of refrigerators that were mislabeled as Energy Star qualified).

*Bayol v. Zipcar, Inc.*, 78 F.Supp.3d 1252 (N.D. Cal. 2015) (denying motion to dismiss claims alleging unlawful late fees under California Civil Code § 1671).

*Forcellati v. Hyland's, Inc.*, 2015 WL 9685557 (C.D. Cal. Jan. 12, 2015) (denying motion for summary judgment in case alleging false advertising of homeopathic cold and flu remedies for children).

*Bayol v. Zipcar, Inc.*, 2014 WL 4793935 (N.D. Cal. Sept. 25, 2014) (denying motion to transfer venue pursuant to a forum selection clause).

*Forcellati v. Hyland's Inc.*, 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) (certifying nationwide class of purchasers of homeopathic cold and flu remedies for children).

*Hendricks v. StarKist Co.*, 30 F.Supp.3d 917 (N.D. Cal. 2014) (denying motion to dismiss in case alleging underfilling of 5-ounce cans of tuna).

*Dei Rossi v. Whirlpool Corp.*, 2013 WL 5781673 (E.D. Cal. October 25, 2013) (denying motion to dismiss in case alleging that certain KitchenAid refrigerators were misrepresented as Energy Star qualified).

*Forcellati v. Hyland's Inc.*, 876 F.Supp.2d 1155 (C.D. Cal. 2012) (denying motion to dismiss complaint alleging false advertising regarding homeopathic cold and flu remedies for children).

*Clerkin v. MyLife.com*, 2011 WL 3809912 (N.D. Cal. August 29, 2011) (denying defendants' motion to dismiss in case alleging false and misleading advertising by a social networking company).

*In re Cellphone Termination Fee Cases*, 186 Cal.App.4th 1380 (2010) (affirming order approving $21 million class action settlement).

*Gatton v. T-Mobile USA, Inc.*, 152 Cal.App.4th 571 (2007) (affirming order denying motion to compel arbitration).

### *Selected Class Settlements*

*Melgar v. Zicam* (Eastern District of California) - $16 million class settlement of claims alleging

cold medicine was ineffective.

*Gastelum v. Frontier California Inc.* (San Francisco Superior Court) - $10.9 million class action settlement of claims alleging that a residential landline service provider charged unlawful late fees.

*West v. California Service Bureau*, *Inc.* (Northern District of California) - $4.1 million class settlement of claims under the Telephone Consumer Protection Act.

*Gregorio v. Premier Nutrition Corp.* (Southern District of New York) - $9 million class settlement of false advertising claims against protein shake manufacturer.

*Morris v. SolarCity Corp.* (Northern District of California) - $15 million class settlement of claims under the Telephone Consumer Protection Act.

*Retta v. Millennium Products, Inc.* (Central District of California) - $8.25 million settlement to resolve claims of bottled tea purchasers for alleged false advertising.

*Forcellati v. Hyland's* (Central District of California) – nationwide class action settlement providing full refunds to purchasers of homeopathic cold and flu remedies for children.

*Dei Rossi v. Whirlpool* (Eastern District of California) – class action settlement providing $55 cash payments to purchasers of certain KitchenAid refrigerators that allegedly mislabeled as Energy Star qualified.

*In Re NVIDIA GTX 970 Graphics Chip Litigation* (Northern District of California) - $4.5 million class action settlement of claims alleging that a computer graphics card was sold with false and misleading representations concerning its specifications and performance.

*Hendricks v. StarKist Co.* (Northern District of California) – $12 million class action settlement of claims alleging that 5-ounce cans of tuna were underfilled.

*In re Zakskorn v. American Honda Motor Co.* Honda (Eastern District of California) – nationwide settlement providing for brake pad replacement and reimbursement of out-of-pocket expenses in case alleging defective brake pads on Honda Civic vehicles manufactured between 2006 and 2011.

*Correa v. Sensa Products, LLC* (Los Angeles Superior Court) - $9 million settlement on behalf of purchasers of the Sensa weight loss product.

*In re Pacific Bell Late Fee Litigation* (Contra Costa County Superior Court) - $38.6 million settlement on behalf of Pac Bell customers who paid an allegedly unlawful late payment charge.

*In re Haier Freezer Consumer Litigation* (Northern District of California) - $4 million settlement, which provided for cash payments of between $50 and $325.80 to class members who purchased the Haier HNCM070E chest freezer.

*Thomas v. Global Vision Products, Inc.* (Alameda County Superior Court) - $30 million settlement on behalf of a class of purchasers of a hair loss remedy.

*Guyette v. Viacom, Inc.* (Alameda County Superior Court) - $13 million settlement for a class of cable television subscribers who alleged that the defendant had improperly failed to share certain tax refunds with its subscribers.

## <u>JOSEPH I. MARCHESE</u>

Joseph I. Marchese is a Partner with Bursor & Fisher, P.A.  Joe focuses his practice on consumer class actions, employment law disputes, and commercial litigation.  He has represented corporate and individual clients in a wide array of civil litigation, and has substantial trial and appellate experience.

Joe has diverse experience in litigating and resolving consumer class actions involving claims of mislabeling, false or misleading advertising, privacy violations, data breach claims, and violations of the Servicemembers Civil Relief Act.

Joe also has significant experience in multidistrict litigation proceedings.  Recently, he served on the Plaintiffs' Executive Committee in *In Re:  Blue Buffalo Company, Ltd. Marketing And Sales Practices Litigation*, MDL No. 2562, which resulted in a $32 million consumer class settlement.  Currently, he serves on the Plaintiffs' Steering Committee for Economic Reimbursement in *In Re: Valsartan Products Liability Litigation*, MDL. No. 2875.

Joe is admitted to the State Bar of New York and is a member of the bars of the United States District Courts for the Southern District of New York, the Eastern District of New York, and the Eastern District of Michigan, as well as the United States Court of Appeals for the Second Circuit.

Joe graduated from Boston University School of Law in 2002 where he was a member of The Public Interest Law Journal.  In 1998, Joe graduated with honors from Bucknell University.

### *<u>Selected Published Decisions:</u>*

*Boelter v. Hearst Communications, Inc.*, 269 F. Supp. 3d 172 (S.D.N.Y. Sept. 7, 2017), granting plaintiff's motion for partial summary judgment on state privacy law violations in putative class action.

*Boelter v. Hearst Communications, Inc.*, 192 F. Supp. 3d 427 (S.D.N.Y. June 17, 2016), denying publisher's motion to dismiss its subscriber's allegations of state privacy law violations in putative class action.

*In re Scotts EZ Seed Litigation*, 304 F.R.D. 397 (S.D.N.Y. 2015), granting class certification of false advertising and other claims brought by New York and California purchasers of grass seed product.

*Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014), granting nationwide class certification of false advertising and other claims brought by purchasers of purported "100% Pure Olive Oil" product.

*In re Michaels Stores Pin Pad Litigation*, 830 F. Supp. 2d 518 (N.D. Ill. 2011), denying retailer's motion to dismiss its customers' state law consumer protection and privacy claims in data breach putative class action.

### ***Selected Class Settlements:***

*Edwards v. Hearst Communications, Inc.*, Case No. 15-cv-09279-AT (S.D.N.Y. 2019) – final approval granted for $50 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*Moeller v. Advance Magazine Publishers, Inc. d/b/a Condé Nast*, Case No. 15-cv-05671-NRB (S.D.N.Y. 2019) – final approval granted for $13.75 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

In *re Scotts EZ Seed Litigation*, Case No. 12-cv-4727-VB (S.D.N.Y. 2018) – final approval granted for $47 million class settlement to resolve false advertising claims of purchasers of combination grass seed product.

*In Re:  Blue Buffalo Marketing And Sales Practices Litigation*, Case No. 14-MD-2562-RWS (E.D. Mo. 2016) – final approval granted for $32 million class settlement to resolve claims of pet owners for alleged false advertising of pet foods.

*Rodriguez v. Citimortgage, Inc.*, Case No. 11-cv-4718-PGG (S.D.N.Y. 2015) – final approval granted for $38 million class settlement to resolve claims of military servicemembers for alleged foreclosure violations of the Servicemembers Civil Relief Act, where each class member was entitled to $116,785 plus lost equity in the foreclosed property and interest thereon.

*O'Brien v. LG Electronics USA, Inc., et al.*, Case No. 10-cv-3733-DMC (D.N.J. 2011) – final approval granted for $23 million class settlement to resolve claims of Energy Star refrigerator purchasers for alleged false advertising of the appliances' Energy Star qualification.

## SARAH N. WESTCOT

Sarah N. Westcot is the Managing Partner of Bursor & Fisher's Miami office. She focuses her practice on consumer class actions, complex business litigation, and mass torts.

She has represented clients in a wide array of civil litigation, and has substantial trial and appellate experience.  Sarah served as trial counsel in *Ayyad v. Sprint Spectrum L.P.*, where Bursor & Fisher won a jury verdict defeating Sprint's $1.06 billion counterclaim and securing the class's recovery of more than $275 million in cash and debt relief.

Sarah also has significant experience in high-profile, multi-district litigations.  She currently serves on the Plaintiffs' Steering Committee in *In re Zantac (Ranitidine) Products Liability Litigation*, MDL No. 2924 (S.D. Florida). She also serves on the Plaintiffs' Executive Committee in *In re Apple Inc. App Store Simulated Casino-Style Games Litigation*, MDL No. 2985 (N.D. Cal.) and *In Re: Google Play Store Simulated Casino-Style Games Litigation*, MDL No. 3001 (N.D. Cal.).

Sarah is admitted to the State Bars of California and Florida, and is a member of the bars of the United States District Courts for the Northern, Central, Southern, and Eastern Districts of California, the United States District Courts for the Southern and Middle Districts of Florida, and the bars of the United States Courts of Appeals for the Second, Eighth, and Ninth Circuits.

Sarah received her Juris Doctor from the University of Notre Dame Law School in 2009. During law school, she was a law clerk with the Cook County State's Attorney's Office in Chicago and the Santa Clara County District Attorney's Office in San Jose, CA, gaining early trial experience in both roles. She graduated with honors from the University of Florida in 2005.

Sarah is a member of The National Trial Lawyers Top 100 Civil Plaintiff Lawyers, and was selected to The National Trial Lawyers Top 40 Under 40 Civil Plaintiff Lawyers for 2022.

### JOSHUA D. ARISOHN

Joshua D. Arisohn is a Partner with Bursor & Fisher, P.A. Josh has litigated precedent-setting cases in the areas of consumer class actions and terrorism. He participated in the first ever trial to take place under the Anti-Terrorism Act, a statute that affords U.S. citizens the right to assert federal claims for injuries arising out of acts of international terrorism. Josh's practice continues to focus on terrorism-related matters as well as class actions.

Josh is admitted to the State Bar of New York and is a member of the bars of the United States District Courts for the Southern District of New York, the Eastern District of New York, the District Court for the District of Columbia, and the United States Courts of Appeals for the Second and Ninth Circuits.

Josh previously practiced at Dewey & LeBoeuf LLP and DLA Piper LLP. He graduated from Columbia University School of Law in 2006, where he was a Harlan Fiske Stone Scholar, and received his B.A. from Cornell University in 2002. Josh has been honored as a 2015, 2016 and 2017 Super Lawyer Rising Star.

### Selected Published Decisions:

*Fields v. Syrian Arab Republic*, Civil Case No. 18-1437 (RJL), entering a judgment of approximately $850 million in favor of the family members of victims of terrorist attacks carried out by ISIS with the material support of Syria.

*Farwell v. Google LLC*, 2022 WL 1568361 (C.D. Ill. Mar. 31, 2022), denying social media defendant's motion to dismiss BIPA claims brought on behalf of Illinois school students using Google's Workspace for Education platform on laptop computers.

*Weiman v. Miami University*, Case No. 2020-00614JD (Oh. Ct. Claims), certifying a class of students alleging a breach of contract based on their school's failure to provide a full semester of in-person classes.

*Smith v. The Ohio State University*, Case No. 2020-00321JD (Oh. Ct. Claims), certifying a class of students alleging a breach of contract based on their school's failure to provide a full semester of in-person classes.

*Waitt v. Kent State University*, Case No. 2020-00392JD (Oh. Ct. Claims), certifying a class of students alleging a breach of contract based on their school's failure to provide a full semester of in-person classes.

*Duke v. Ohio University*, Case No. 2021-00036JD (Oh. Ct. Claims), certifying a class of students alleging a breach of contract based on their school's failure to provide a full semester of in-person classes.

*Keba v. Bowling Green State University*, Case No. 2020-00639JD (Oh. Ct. Claims), certifying a class of students alleging a breach of contract based on their school's failure to provide a full semester of in-person classes.

*Kirkbride v. The Kroger Co.*, Case No. 2:21-cv-00022-ALM-EPD, denying motion to dismiss claims based on the allegation that defendant overstated its usual and customary prices and thereby overcharged customers for generic drugs.

## *Selected Class Settlements:*

*Morris v. SolarCity Corp.*, Case No. 3:15-cv-05107-RS (N.D. Cal.) - final approval granted for $15 million class settlement to resolve claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*

*Marquez v. Google LLC*, Case No. 2021-CH-1460 (Cir. Ct. Cook Cnty. 2022) – final approval granted for $100 million class settlement to resolve alleged BIPA violations of Illinois residents appearing in photos on the Google Photos platform.

## JOEL D. SMITH

Joel D. Smith is a Partner with Bursor & Fisher, P.A.  Joel is a trial attorney who has practiced in lower court and appeals courts across the country, as well as the U.S. Supreme Court.

Prior to joining Bursor & Fisher, Joel was a litigator at Crowell & Moring, where he represented Fortune 500 companies, privately held businesses, and public entities in a wide variety of commercial, environmental, and class action matters.  Among other matters, Joel served as defense counsel for AT&T, Enterprise-Rent-A-Car, Flowers Foods, and other major U.S. businesses in consumer class actions, including a class action seeking to hold U.S. energy companies accountable for global warming.  Joel represented four major U.S. retailers in a case arising from a devastating arson fire and ensuing state of emergency in Roseville, California, which settled on the eve of a trial that was expected to last several months and involve several dozen witnesses.  Joel also was part of the trial team in a widely publicized trial over the death of a contestant who died after participating in a Sacramento radio station's water drinking contest.

BURSOR&FISHER
P.A.

More recently, Joel's practice focuses on consumer class actions involving automotive and other product defects, financial misconduct, false advertising, and privacy violations.

Joel received both his undergraduate and law degrees from the University of California at Berkeley.  While at Berkeley School of Law, he was a member of the California Law Review, received several academic honors, externed for the California Attorney General's office and published an article on climate change policy and litigation.

Joel is admitted to the State Bar of California, as well as the United States Courts of Appeals for the Second, Third and Ninth Circuits; all California district courts; the Eastern District of Michigan; and the Northern District of Illinois.

### ***Selected Published Decisions:***

*Javier v. Assurance IQ, LLC*, --- Fed App'x --- 2022 WL 1744107 (9th Cir. May 31, 2022), reversing dismissal in a class action alleging surreptitious monitoring of internet communications.

*Revitch v. DIRECTV, LLC*, 977 F.3d 713 (9th Cir. 2020), affirming denial of motion to compel arbitration in putative class action alleging unlawful calls under the Telephone Consumer Protection Act.

*Kaupelis v. Harbor Freight Tools USA, Inc.*, 2020 WL 5901116 (C.D. Cal. Sept. 23, 2020), granting class certification of consumer protection claims brought by purchasers of defective chainsaws.

### ***Selected Class Settlements:***

*Recinos et al. v. The Regents of the University of California,* Superior Court for the State of California, County of Alameda, Case No. RG19038659 – final approval granted for a settlement providing debt relief and refunds to University of California students who were charged late fees.

*Crandell et al. v. Volkswagen Group of America*, Case No. 2:18-cv-13377-JSA (D.N.J.)  – final approval granted for a settlement providing relief for Volkswagen Touareg owners to resolve allegations that defects in Touareg vehicles caused the engines to ingest water when driving in the rain.

*Isley et al. v. BMW of N. America, LLC*, Case No. 2:19-cv-12680-ESK (D.N.J.) – final approval granted for settlement providing BMW owners with reimbursements and credit vouchers to resolve allegations that defects in the BMW N63TU engine caused excessive oil consumption.

*Kaupelis v. Harbor Freight Tools USA, Inc.*, 8:19-cv-01203-JVS-DFM (C.D. Cal.) – final approval granted for a settlement valued up to $40 million to resolve allegations that Harbor Freight sold chainsaws with a defective power switch that could prevent the chainsaws from turning off.

*Morris v. SolarCity Corp.*, Case No. 3:15-cv-05107-RS (N.D. Cal.) - final approval granted for $15 million class settlement to resolve claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*

## NEAL J. DECKANT

Neal J. Deckant is a Partner with Bursor & Fisher, P.A., where he serves as the firm's Head of Information & e-Discovery.  Neal focuses his practice on complex business litigation and consumer class actions.  Prior to joining Bursor & Fisher, Neal counseled low-income homeowners facing foreclosure in East Boston.

Neal is admitted to the State Bars of California and New York, and is a member of the bars of the United States District Court for the Northern District of California, the United States District Court for the Eastern District of California, the United States District Court for the Central District of California, the United States District Court for the Southern District of California, the United States District Court for the Southern District of New York, the United States District Court for the Eastern District of New York, and the bars of the United States Courts of Appeals for the Second and Ninth Circuits.

Neal received his Juris Doctor from Boston University School of Law in 2011, graduating cum laude with two Dean's Awards.  During law school, Neal served as a Senior Articles Editor for the Review of Banking and Financial Law, where he authored two published articles about securitization reforms, both of which were cited by the New York Court of Appeals, the highest court in the state.  Neal was also awarded Best Oral Argument in his moot court section, and he served as a Research Assistant for his Securities Regulation professor.  Neal has also been honored as a 2014, 2015, 2016, and 2017 Super Lawyers Rising Star.  In 2007, Neal graduated with Honors from Brown University with a dual major in East Asian Studies and Philosophy.

### *Selected Published Decisions:*

*Martinelli v. Johnson & Johnson*, 2019 WL 1429653 (N.D. Cal. Mar. 29, 2019), granting class certification of false advertising and other claims brought by purchasers of Benecol spreads labeled with the representation "No Trans Fats."

*Dzielak v. Whirlpool Corp.*, 2017 WL 6513347 (D.N.J. Dec. 20, 2017), granting class certification of consumer protection claims brought by purchasers of Maytag Centennial washing machines marked with the "Energy Star" logo.

*Duran v. Obesity Research Institute*, LLC, 204 Cal. Rptr. 3d 896 (Cal. Ct. App. 2016), reversing and remanding final approval of a class action settlement on appeal, regarding allegedly mislabeled dietary supplements, in connection with a meritorious objection.

*Marchuk v. Faruqi & Faruqi, LLP*, et al., 100 F. Supp. 3d 302 (S.D.N.Y. 2015), granting individual and law firm defendants' motion for judgment as a matter of law on plaintiff's claims for retaliation and defamation, as well as for all claims against law firm partners, Nadeem and Lubna Faruqi.

*Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014), granting nationwide class certification of false advertising and other claims brought by purchasers of purported "100% Pure Olive Oil" product.

*Ebin v. Kangadis Food Inc.*, 2014 WL 737878 (S.D.N.Y. Feb. 25, 2014), denying distributor's motion for summary judgment against nationwide class of purchasers of purported "100% Pure Olive Oil" product.

## *Selected Class Settlements:*

*In Re NVIDIA GTX 970 Graphics Chip Litigation*, Case No. 15-cv-00760-PJH (N.D. Cal. Dec. 7, 2016) – final approval granted for $4.5 million class action settlement to resolve claims that a computer graphics card was allegedly sold with false and misleading representations concerning its specifications and performance.

*Hendricks v. StarKist Co.*, 2016 WL 5462423 (N.D. Cal. Sept. 29, 2016) – final approval granted for $12 million class action settlement to resolve claims that 5-ounce cans of tuna were allegedly underfilled.

*In re: Kangadis Food Inc.*, Case No. 8-14-72649 (Bankr. E.D.N.Y. Dec. 17, 2014) – class action claims resolved for $2 million as part of a Chapter 11 plan of reorganization, after a corporate defendant filed for bankruptcy, following claims that its olive oil was allegedly sold with false and misleading representations.

## *Selected Publications:*

Neal Deckant, *X. Reforms of Collateralized Debt Obligations: Enforcement, Accounting and Regulatory Proposals*, 29 Rev. Banking & Fin. L. 79 (2009) (cited in *Quadrant Structured Products Co., Ltd. v. Vertin*, 16 N.E.3d 1165, 1169 n.8 (N.Y. 2014)).

Neal Deckant, *Criticisms of Collateralized Debt Obligations in the Wake of the Goldman Sachs Scandal*, 30 Rev. Banking & Fin. L. 407 (2010) (cited in *Quadrant Structured Products Co., Ltd. v. Vertin*, 16 N.E.3d 1165, 1169 n.8 (N.Y. 2014); *Lyon Village Venetia, LLC v. CSE Mortgage LLC*, 2016 WL 476694, at *1 n.1 (Md. Ct. Spec. App. Feb. 4, 2016); Ivan Ascher, Portfolio Society: On the Capitalist Mode of Prediction, at 141, 153, 175 (Zone Books / The MIT Press 2016); Devon J. Steinmeyer, *Does State National Bank of Big Spring v. Geithner Stand a Fighting Chance?*, 89 Chi.-Kent. L. Rev. 471, 473 n.13 (2014)).

## YITZCHAK KOPEL

Yitzchak Kopel is a Partner with Bursor & Fisher, P.A. Yitz focuses his practice on consumer class actions and complex business litigation.  He has represented corporate and individual clients before federal and state courts, as well as in arbitration proceedings.

Yitz has substantial experience in successfully litigating and resolving consumer class actions involving claims of consumer fraud, data breaches, and violations of the telephone consumer protection act.  Since 2014, Yitz has obtained class certification on behalf of his clients

five times, three of which were certified as nationwide class actions.  Bursor & Fisher was appointed as class counsel to represent the certified classes in each of the cases.

Yitz is admitted to the State Bars of New York and New Jersey, the bar of the United States Court of Appeals for the Second, Eleventh, and Ninth Circuits, and the bars of the United States District Courts for the Southern District of New York, Eastern District of New York, Eastern District of Missouri, Eastern District of Wisconsin, Northern District of Illinois, and District of New Jersey.

Yitz received his Juris Doctorate from Brooklyn Law School in 2012, graduating *cum laude* with two Dean's Awards. During law school, Yitz served as an Articles Editor for the Brooklyn Law Review and worked as a Law Clerk at Shearman & Sterling. In 2009, Yitz graduated *cum laude* from Queens College with a B.A. in Accounting.

### ***Selected Published Decisions:***

*Bassaw v. United Industries Corp.,* --- F. Supp. 3d ---, 2020 WL 5117916 (S.D.N.Y. Aug. 31, 2020), denying motion to dismiss claims in putative class action concerning insect foggers.

*Poppiti v. United Industries Corp.*, 2020 WL 1433642 (E.D. Mo. Mar. 24, 2020), denying motion to dismiss claims in putative class action concerning citronella candles.

*Bakov v. Consolidated World Travel, Inc.*, 2019 WL 6699188 (N.D. Ill. Dec. 9, 2019), granting summary judgment on behalf of certified class in robocall class action.

*Krumm v. Kittrich Corp.*, 2019 WL 6876059 (E.D. Mo. Dec. 17, 2019), denying motion to dismiss claims in putative class action concerning mosquito repellent.

*Crespo v. S.C. Johnson & Son, Inc.*, 394 F. Supp. 3d 260 (S.D.N.Y. 2019), denying defendant's motion to dismiss fraud and consumer protection claims in putative class action regarding Raid insect fogger.

*Bakov v. Consolidated World Travel, Inc.*, 2019 WL 1294659 (N.D. Ill. Mar. 21, 2019), certifying a class of persons who received robocalls in the state of Illinois.

*Bourbia v. S.C. Johnson & Son, Inc.*, 375 F. Supp. 3d 454 (S.D.N.Y. 2019), denying defendant's motion to dismiss fraud and consumer protection claims in putative class action regarding mosquito repellent.

*Hart v. BHH, LLC*, 323 F. Supp. 3d 560 (S.D.N.Y. 2018), denying defendants' motion for summary judgment in certified class action involving the sale of ultrasonic pest repellers.

*Hart v. BHH, LLC*, 2018 WL 3471813 (S.D.N.Y. July 19, 2018), denying defendants' motion to exclude plaintiffs' expert in certified class action involving the sale of ultrasonic pest repellers.

*Penrose v. Buffalo Trace Distillery, Inc.*, 2018 WL 2334983 (E.D. Mo. Feb. 5, 2018), denying bourbon producers' motion to dismiss fraud and consumer protection claims in putative class action.

*West v. California Service Bureau*, *Inc.*, 323 F.R.D. 295 (N.D. Cal. 2017), certifying a nationwide class of "wrong-number" robocall recipients.

*Hart v. BHH, LLC*, 2017 WL 2912519 (S.D.N.Y. July 7, 2017), certifying nationwide class of purchasers of ultrasonic pest repellers.

*Browning v. Unilever United States, Inc.*, 2017 WL 7660643 (C.D. Cal. Apr. 26, 2017), denying motion to dismiss fraud and warranty claims in putative class action concerning facial scrub product.

*Brenner v. Procter & Gamble Co.*, 2016 WL 8192946 (C.D. Cal. Oct. 20, 2016), denying motion to dismiss warranty and consumer protection claims in putative class action concerning baby wipes.

*Hewlett v. Consolidated World Travel, Inc.*, 2016 WL 4466536 (E.D. Cal. Aug. 23, 2016), denying telemarketer's motion to dismiss TCPA claims in putative class action.

*Bailey v. KIND, LLC*, 2016 WL 3456981 (C.D. Cal. June 16, 2016), denying motion to dismiss fraud and warranty claims in putative class action concerning snack bars.

*Hart v. BHH, LLC*, 2016 WL 2642228 (S.D.N.Y. May 5, 2016) denying motion to dismiss warranty and consumer protection claims in putative class action concerning ultrasonic pest repellers.

*Marchuk v. Faruqi & Faruqi, LLP, et al.*, 100 F. Supp. 3d 302 (S.D.N.Y. 2015), granting clients' motion for judgment as a matter of law on claims for retaliation and defamation in employment action.

*In re Scotts EZ Seed Litigation*, 304 F.R.D. 397 (S.D.N.Y. 2015), granting class certification of false advertising and other claims brought by New York and California purchasers of grass seed product.

*Brady v. Basic Research, L.L.C.*, 101 F. Supp. 3d 217 (E.D.N.Y. 2015), denying diet pill manufacturers' motion to dismiss its purchasers' allegations for breach of express warranty in putative class action.

*Ward v. TheLadders.com, Inc.*, 3 F. Supp. 3d 151 (S.D.N.Y. 2014), denying online job board's motion to dismiss its subscribers' allegations of consumer protection law violations in putative class action.

*Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014), granting nationwide class certification of false advertising and other claims brought by purchasers of purported "100% Pure Olive Oil" product.

*Ebin v. Kangadis Food Inc.*, 2014 WL 737878 (S.D.N.Y. Feb. 25, 2014), denying distributor's motion for summary judgment against nationwide class of purchasers of purported "100% Pure Olive Oil" product.

### *Selected Class Settlements:*

*Hart v. BHH, LLC*, Case No. 1:15-cv-04804 (S.D.N.Y. Sept. 22, 2020), resolving class action claims regarding ultrasonic pest repellers.

*In re: Kangadis Food Inc.*, Case No. 8-14-72649 (Bankr. E.D.N.Y. Dec. 17, 2014), resolving class action claims for $2 million as part of a Chapter 11 plan of reorganization, after a corporate defendant filed for bankruptcy following the certification of nationwide claims alleging that its olive oil was sold with false and misleading representations.

*West v. California Service Bureau*, Case No. 4:16-cv-03124-YGR (N.D. Cal. Jan. 23, 2019), resolving class action claims against debt-collector for wrong-number robocalls for $4.1 million.

## FREDERICK J. KLORCZYK III

Frederick J. Klorczyk III is a Partner with Bursor & Fisher, P.A. Fred focuses his practice on complex business litigation and consumer class actions.

Fred has substantial experience in successfully litigating and resolving consumer class actions involving claims of mislabeling, false or misleading advertising, and privacy violations. In 2019, Fred certified both a California and a 10-state express warranty class on behalf of purchasers of a butter substitute. In 2014, Fred served on the litigation team in *Ebin v. Kangadis Food Inc.* At class certification, Judge Rakoff adopted Fred's choice of law fraud analysis and research directly into his published decision certifying a nationwide fraud class.

Fred is admitted to the State Bars of California, New York, and New Jersey, and is a member of the bars of the United States District Courts for the Northern, Central, Eastern, and Southern Districts of California, the Southern, Eastern, and Northern Districts of New York, the District of New Jersey, the Northern District of Illinois, the Eastern District of Missouri, the Eastern District of Wisconsin, and the Eastern District of Michigan, as well as the bars of the United States Court of Appeals for the Second and Ninth Circuits.

Fred received his Juris Doctor from Brooklyn Law School in 2013, graduating m*agna cum laude* with two CALI Awards for the highest grade in his classes on conflict of laws and criminal law. During law school, Fred served as an Associate Managing Editor for the Brooklyn Journal of Corporate, Financial and Commercial Law and as an intern to the Honorable Alison J. Nathan of the United States District Court for the Southern District of New York and the Honorable Janet Bond Arterton of the United States District Court for the District of Connecticut. In 2010, Fred graduated from the University of Connecticut with a B.S. in Finance.

**BURSOR & FISHER**
P.A.

### *Selected Published Decisions:*

*Revitch v. New Moosejaw, LLC*, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019), denying defendants' motions to dismiss consumer's allegations of state privacy law violations in putative class action.

*In re Welspun Litigation*, 2019 WL 2174089 (S.D.N.Y. May 20, 2019), denying retailers' and textile manufacturer's motion to dismiss consumers' allegations of false advertising relating to purported "100% Egyptian Cotton" linen products.

*Martinelli v. Johnson & Johnson*, 2019 WL 1429653 (E.D. Cal. Mar. 29, 2019), granting class certification of California false advertising claims and multi-state express warranty claims brought by purchasers of a butter substitute.

*Porter v. NBTY, Inc.*, 2016 WL 6948379 (N.D. Ill. Nov. 28, 2016), denying supplement manufacturer's motion to dismiss consumers' allegations of false advertising relating to whey protein content.

*Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d. 282 (S.D.N.Y. 2015), denying supplement manufacturer's motion to dismiss consumers' allegations of false advertising relating to a homeopathic cold product.

*In re Scotts EZ Seed Litigation*, 304 F.R.D. 397 (S.D.N.Y. 2015), granting class certification of false advertising and other claims brought by New York and California purchasers of grass seed product.

*Marchuk v. Faruqi & Faruqi, LLP, et al.*, 100 F. Supp. 3d 302 (S.D.N.Y. 2015), granting individual and law firm defendants' motion for judgment as a matter of law on plaintiff's claims for retaliation and defamation, as well as for all claims against law firm partners, Nadeem and Lubna Faruqi.

*Ebin v. Kangadis Food Inc.*, Case No. 13-4775 (2d Cir. Apr. 15, 2015), denying olive oil manufacturer's Rule 23(f) appeal following grant of nationwide class certification.

*Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014), granting nationwide class certification of false advertising and other claims brought by purchasers of purported "100% Pure Olive Oil" product.

*Ebin v. Kangadis Food Inc.*, 2014 WL 737878 (S.D.N.Y. Feb. 25, 2014), denying distributor's motion for summary judgment against nationwide class of purchasers of purported "100% Pure Olive Oil" product.

### *Selected Class Settlements:*

*Gregorio v. Premier Nutrition Corp.*, Case No. 17-cv-05987-AT (S.D.N.Y. 2019) – final approval granted for $9 million class settlement to resolve claims of protein shake purchasers for alleged false advertising.

*Ruppel v. Consumers Union of United States, Inc.*, Case No. 16-cv-02444-KMK (S.D.N.Y. 2018) – final approval granted for $16.375 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*In Re: Blue Buffalo Marketing And Sales Practices Litigation*, Case No. 14-MD-2562-RWS (E.D. Mo. 2016) –final approval granted for $32 million class settlement to resolve claims of pet owners for alleged false advertising of pet foods.

*In re: Kangadis Food Inc.*, Case No. 8-14-72649 (Bankr. E.D.N.Y. Dec. 17, 2014) – resolved class action claims for $2 million as part of a Chapter 11 plan of reorganization, after a corporate defendant filed for bankruptcy following the certification of nationwide claims alleging that its olive oil was sold with false and misleading representations.

## **YEREMEY O. KRIVOSHEY**

Yeremey O. Krivoshey is a Partner with Bursor & Fisher, P.A.  Mr. Krivoshey has particular expertise in COVID-19 related consumer litigation, unlawful fees and liquidated damages in consumer contracts, TCPA cases, product recall cases, and fraud and false advertising litigation.  He has represented clients in a wide array of civil litigation, including appeals before the Ninth Circuit.

Mr. Krivoshey served as trial counsel with Mr. Bursor in *Perez. v. Rash Curtis & Associates*, where, in May 2019, the jury returned a verdict for $267 million in statutory damages under the Telephone Consumer Protection Act.  Since 2017, Mr. Krivoshey has secured over $200 million for class members in consumer class settlements.  Mr. Krivoshey has been honored multiple times as a Super Lawyers Rising Star.

Mr. Krivoshey is admitted to the State Bar of California.  He is also a member of the bars of the United States Court of Appeals for the Ninth Circuit and the United States District Courts for the Northern, Central, Southern, and Eastern Districts of California, as well as the District of Colorado.

Mr. Krivoshey graduated from New York University School of Law in 2013, where he was a Samuel A. Herzog Scholar.  Prior to Bursor & Fisher, P.A., Mr. Krivoshey worked as a Law Clerk at Vladeck, Waldman, Elias & Engelhard, P.C, focusing on employment discrimination and wage and hour disputes.  In law school, he has also interned at the American Civil Liberties Union and the United States Department of Justice.  In 2010, Mr. Krivoshey graduated *cum laude* from Vanderbilt University.

### *Representative Cases:*

*Perez v. Rash Curtis & Associates*, Case No. 16-cv-03396-YGR (N.D. Cal. May 13, 2019).  Mr. Krivoshey litigated claims against a national health-care debt collection agency on behalf of people that received autodialed calls on their cellular telephones without their prior express consent.  Mr. Krivoshey successfully obtained nationwide class certification, defeated the defendant's motion for summary judgment, won summary judgment as to the issue of prior express consent and the use of automatic telephone dialing systems, and navigated the case

towards trial.  With his partner, Scott Bursor, Mr. Krivoshey obtained a jury verdict finding that the defendant violated the Telephone Consumer Protection Act ("TCPA") 534,712 times.  Under the TCPA, class members are entitled to $500 per each call made in violation of the TCPA – in this case, $267 million for 534,712 unlawful calls.

### *Selected Published Decisions:*

*Goodrich, et al. v. Alterra Mountain Co., et al.,* 2021 WL 2633326 (D. Col. June 25, 2021), denying ski pass company's motion to dismiss its customers' allegations concerning refunds owed due to cancellation of ski season due to COVID-19.

*Bayol v. Zipcar, Inc*., 2014 WL 4793935 (N.D. Cal. Sept. 25, 2014), denying enforcement of forum selection clause based on public policy grounds.

*Bayol v. Zipcar, Inc*., 78 F. Supp. 3d 1252 (N.D. Cal. Jan. 29, 2015), denying car-rental company's motion to dismiss its subscriber's allegations of unlawful late fees.

*Brown v. Comcast Corp*., 2016 WL 9109112 (C.D. Cal. Aug. 12, 2016), denying internet service provider's motion to compel arbitration of claims alleged under the Telephone Consumer Protection Act.

*Chaisson, et al. v. University of Southern California* (Cal. Sup. Ct. Mar. 25, 2021), denying university's demurrer as to its students' allegations of unfair and unlawful late fees.

*Choi v. Kimberly-Clark Worldwide, Inc*., 2019 WL 4894120 (C.D. Cal. Aug. 28, 2019), denying tampon manufacturer's motion to dismiss its customer's design defect claims.

*Horanzy v. Vemma Nutrition Co*., Case No. 15-cv-298-PHX-JJT (D. Ariz. Apr. 16, 2016), denying multi-level marketer's and its chief scientific officer's motion to dismiss their customer's fraud claims.

*McMillion, et al. v. Rash Curtis & Associates*, 2017 WL 3895764 (N.D. Cal. Sept. 6, 2017), granting nationwide class certification of Telephone Consumer Protection Act claims by persons receiving autodialed and prerecorded calls without consent.

*McMillion, et al. v. Rash Curtis & Associates*, 2018 WL 692105 (N.D. Cal. Feb. 2, 2018), granting plaintiffs' motion for partial summary judgment on Telephone Consumer Protection Act violations in certified class action.

*Perez v. Indian Harbor Ins. Co*., 2020 WL 2322996 (N.D. Cal. May 11, 2020), denying insurance company's motion to dismiss or stay assigned claims of bad faith and fair dealing arising out of $267 million trial judgment.

*Perez v. Rash Curtis & Associates*, 2020 WL 1904533 (N.D. Cal. Apr. 17, 2020), upholding constitutionality of $267 million class trial judgment award.

*Salazar v. Honest Tea, Inc*., 2015 WL 7017050 (E.D. Cal. Nov. 12. 2015), denying manufacturer's motion for summary judgment as to customer's false advertising claims.

*Sholopa v. Turk Hava Yollari A.O., Inc. (d/b/a Turkish Airlines)*, 2022 WL 976825 (S.D.N.Y. Mar. 31, 2022), denying airline's motion to dismiss its customers claims for failure to refund flights cancelled due to COVID-19.

## *Selected Class Settlements:*

*Perez v. Rash Curtis & Associates*, Case No. 16-cv-03396-YGR (N.D. Cal. Oct. 1, 2021) granting final approval to a $75.6 million non-reversionary cash common fund settlement, the largest ever consumer class action settlement stemming from a violation of the Telephone Consumer Protection Act.

*Strassburger v. Six Flags Theme Parks Inc., et al.* (Ill. Cir. Ct. 2022) granting final approval to $83.6 million settlement to resolve claims of theme park members for alleged wrongful charging of fees during the COVID-19 pandemic.

*Juarez-Segura, et al. v. Western Dental Services, Inc*. (Cal. Sup. Ct. Aug. 9, 2021) granting final approval to $35 million settlement to resolve claims of dental customers for alleged unlawful late fees.

*Moore v. Kimberly-Clark Worldwide, Inc*. (Ill. Cir. Ct. July 22, 2020) granting final approval to $11.2 million settlement to resolve claims of tampon purchasers for alleged defective products.

*Retta v. Millennium Prods., Inc*., 2017 WL 5479637 (C.D. Cal. Aug. 22, 2017) granting final approval to $8.25 million settlement to resolve claims of kombucha purchasers for alleged false advertising.

*Cortes v. National Credit Adjusters, L.L.C.* (E.D. Cal. Dec. 7, 2020) granting final approval to $6.8 million settlement to resolve claims of persons who received alleged autodialed calls without prior consent in violation of the TCPA.

*Bayol et al. v. Health-Ade LLC, et al.* (N.D. Cal. Oct. 11, 2019) – granting final approval to $3,997,500 settlement to resolve claims of kombucha purchasers for alleged false advertising.

## **PHILIP L. FRAIETTA**

Philip L. Fraietta is a Partner with Bursor & Fisher, P.A. Phil focuses his practice on data privacy, complex business litigation, consumer class actions, and employment law disputes. Phil has been named a "Rising Star" in the New York Metro Area by Super Lawyers® every year since 2019.

Phil has significant experience in litigating consumer class actions, particularly those involving privacy claims under statutes such as the Michigan Preservation of Personal Privacy Act, the Illinois Biometric Information Privacy Act, and Right of Publicity statutes. Since 2016, Phil has recovered over $100 million for class members in privacy class action settlements. In addition to privacy claims, Phil has significant experience in litigating and settling class action claims involving false or misleading advertising.

Phil is admitted to the State Bars of New York, New Jersey, Illinois, and Michigan, the bars of the United States District Courts for the Southern District of New York, the Eastern District of New York, the Western District of New York, the Northern District of New York, the District of New Jersey, the Eastern District of Michigan, the Western District of Michigan, the Northern District of Illinois, the Central District of Illinois, and the United States Court of Appeals for the Second, Third, and Ninth Circuits. Phil was a Summer Associate with Bursor & Fisher prior to joining the firm.

Phil received his Juris Doctor from Fordham University School of Law in 2014, graduating cum laude. During law school, Phil served as an Articles & Notes Editor for the Fordham Law Review, and published two articles.  In 2011, Phil graduated cum laude from Fordham University with a B.A. in Economics.

### *Selected Published Decisions:*

*Fischer v. Instant Checkmate LLC*, 2022 WL 971479 (N.D. Ill. Mar. 31, 2022), certifying class of Illinois residents for alleged violations of Illinois' Right of Publicity Act by background reporting website.

*Kolebuck-Utz v. Whitepages Inc.,* 2021 WL 157219 (W.D. Wash. Apr. 22, 2021), denying defendant's motion to dismiss for alleged violations of Ohio's Right to Publicity Law.

*Bergeron v. Rochester Institute of Technology,* 2020 WL 7486682 (W.D.N.Y. Dec. 18, 2020), denying university's motion to dismiss for failure to refund tuition and fees for the Spring 2020 semester in light of the COVID-19 pandemic.

*Porter v. NBTY, Inc.,* 2019 WL 5694312 (N.D. Ill. Nov. 4, 2019), denying supplement manufacturer's motion for summary judgment on consumers' allegations of false advertising relating to whey protein content.

*Boelter v. Hearst Communications, Inc.*, 269 F. Supp. 3d 172 (S.D.N.Y. 2017), granting plaintiff's motion for partial summary judgment on state privacy law violations in putative class action.

### *Selected Class Settlements:*

*Edwards v. Hearst Communications, Inc.*, Case No. 15-cv-09279-AT (S.D.N.Y. 2019) – final approval granted for $50 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*Ruppel v. Consumers Union of United States, Inc.*, Case No. 16-cv-02444-KMK (S.D.N.Y. 2018) – final approval granted for $16.375 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*Moeller v. Advance Magazine Publishers, Inc. d/b/a Condé Nast*, Case No. 15-cv-05671-NRB (S.D.N.Y. 2019) – final approval granted for $13.75 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*Benbow v. SmileDirectClub, LLC*, Case No. 2020-CH-07269 (Cir. Ct. Cook Cnty. 2021) – final approval granted for $11.5 million class settlement to resolve claims for alleged TCPA violations.

*Gregorio v. Premier Nutrition Corp.*, Case No. 17-cv-05987-AT (S.D.N.Y. 2019) – final approval granted for $9 million class settlement to resolve claims of protein shake purchasers for alleged false advertising.

*Taylor v. Trusted Media Brands, Inc.*, Case No. 16-cv-01812-KMK (S.D.N.Y. 2018) – final approval granted for $8.225 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*Moeller v. American Media, Inc.*, Case No. 16-cv-11367-JEL (E.D. Mich. 2017) – final approval granted for $7.6 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*Rocchio v. Rutgers, The State University of New Jersey*, Case No. MID-L-003039-20 (Sup. Ct. Middlesex Cnty. 2022) – final approval granted for $5 million class settlement to resolve claims for failure to refund mandatory fees for the Spring 2020 semester in light of the COVID-19 pandemic.

*Heigl v. Waste Management of New York, LLC*, Case No. 19-cv-05487-WFK-ST (E.D.N.Y. 2021) – final approval granted for $2.7 million class settlement to resolve claims for charging allegedly unlawful fees pertaining to paper billing.

*Frederick v. Examsoft Worldwide, Inc.*, Case No. 2021L001116 (Cir. Ct. DuPage Cnty. 2022) – final approval granted for $2.25 million class settlement to resolve claims for alleged BIPA violations.

## ALEC M. LESLIE

Alec Leslie is a Partner with Bursor & Fisher, P.A.  He focuses his practice on consumer class actions, employment law disputes, and complex business litigation.

Alec is admitted to the State Bar of New York and is a member of the bar of the United States District Courts for the Southern and Eastern Districts of New York.  Alec was a Summer Associate with Bursor & Fisher prior to joining the firm.

Alec received his Juris Doctor from Brooklyn Law School in 2016, graduating *cum laude*.  During law school, Alec served as an Articles Editor for Brooklyn Law Review.  In addition, Alec served as an intern to the Honorable James C. Francis for the Southern District of New York and the Honorable Vincent Del Giudice, Supreme Court, Kings County.  Alec graduated from the University of Colorado with a B.A. in Philosophy in 2012.

### *Selected Class Settlements:*

*Gregorio v. Premier Nutrition Corp.*, Case No. 17-cv-05987-AT (S.D.N.Y. 2019) – final

approval granted for class settlement to resolve claims of protein shake purchasers for alleged false advertising.

*Wright v. Southern New Hampshire Univ.*, Case No. 1:20-cv-00609-LM (D.N.H. 2021) – final approval granted for class settlement to resolve claims over COVID-19 tuition and fee refunds to students.

*Mendoza et al. v. United Industries Corp.*, Case No. 21PH-CV00670 (Phelps Cnty. Mo. 2021) – final approval granted for class settlement to resolve false advertising claims on insect repellent products.

*Kaupelis v. Harbor Freight Tools USA, Inc.*, Case No. 8:19-cv-01203-JVS-DFM (C.D. Cal. 2021) – final approval granted for class settlement involving allegedly defective and dangerous chainsaws.

*Rocchio v. Rutgers Univ.*, Case No. MID-L-003039-20 (Middlesex Cnty. N.J. 2021) – final approval granted for class settlement to resolve claims over COVID-19 fee refunds to students.

*Malone v. Western Digital Corporation*, Case No. 5:20-cv-03584-NC (N.D. Cal.) – final approval granted for class settlement to resolve false advertising claims on hard drive products.

*Frederick et al. v. ExamSoft Worldwide, Inc.*, Case No. 2021L001116 (DuPage Cnty. Ill. 2021) – final approval granted for class settlement to resolve claims over alleged BIPA violations with respect to exam proctoring software.

## STEPHEN BECK

Stephen is an Associate with Bursor & Fisher, P.A. Stephen focuses his practice on complex civil litigation and class actions.

Stephen is admitted to the State Bar of Florida and is a member of the bars of the United States District Courts for the Southern and Middle Districts of Florida.

Stephen received his Juris Doctor from the University of Miami School of Law in 2018. During law school, Stephen received an Honors distinction in the Litigation Skills Program and was awarded the Honorable Theodore Klein Memorial Scholarship for excellence in written and oral advocacy. Stephen also received the CALI Award in Legislation for earning the highest grade on the final examination. Stephen graduated from the University of North Florida with a B.A. in Philosophy in 2015.

## STEFAN BOGDANOVICH

Stefan Bogdanovich is an Associate with Bursor & Fisher, P.A. Stefan litigates complex civil and class actions typically involving privacy, intellectual property, entertainment, and false advertising law.

Prior to working at Bursor & Fisher, Stefan practiced at two national law firms in Los Angeles. He helped represent various companies in false advertising and IP infringement cases, media companies in defamation cases, and motion picture producers in royalty disputes. He also advised corporations and public figures on complying with various privacy and advertising laws and regulations.

Stefan is admitted to the State Bar of California and all of the California Federal District Courts. He is also a Certified Information Privacy Professional.

Stefan received his Juris Doctor from the University of Southern California Gould School of Law in 2018, where he was a member of the Hale Moot Court Honors Program and the Trial Team. He received the highest grade in his class in three subjects, including First Amendment Law.

### BRITTANY SCOTT

Brittany Scott is an Associate with Bursor & Fisher, P.A. Brittany focuses her practice on data privacy, complex civil litigation, and consumer class actions. Brittany was an intern with Bursor & Fisher prior to joining the firm.

Brittany has substantial experience litigating consumer class actions, including those involving data privacy claims under statutes such as the Illinois Biometric Information Privacy Act, the Fair Credit Reporting Act, and the Michigan Preservation of Personal Privacy Act. In addition to data privacy claims, Brittany has significant experience in litigating class action claims involving false and misleading advertising.

Brittany is admitted the State Bar of California and is a member of the bars of the United States District Courts for the Northern, Central, Southern, and Eastern Districts of California, the Eastern District of Wisconsin, and the Northern District of Illinois.

Brittany received her Juris Doctor from the University of California, Hastings College of the Law in 2019, graduating cum laude. During law school, Brittany was a member of the Constitutional Law Quarterly, for which she was the Executive Notes Editor. Brittany published a note in the Constitutional Law Quarterly entitled "Waiving Goodbye to First Amendment Protections: First Amendment Waiver by Contract." Brittany also served as a judicial extern to the Honorable Andrew Y.S. Cheng for the San Francisco Superior Court. In 2016, Brittany graduated from the University of California Berkeley with a B.A. in Political Science.

### *Selected Class Settlements:*

*Morrissey v. Tula Life, Inc.,* Case No. 2021L0000646 (Cir. Ct. DuPage Cnty. 2021) – final approval granted for $4 million class settlement to resolve claims of cosmetics purchasers for alleged false advertising.

*Clarke et al. v. Lemonade Inc.*, Case No. 2022LA000308 (Cir. Ct. DuPage Cnty. 2022) – final approval granted for $4 million class settlement to resolve claims for alleged BIPA violations.

*Whitlock v. Jabil Inc.*, Case No. 2021CH00626 (Cir. Ct. Cook Cnty. 2022) – final approval granted for $995,000 class settlement to resolve claims for alleged BIPA violations.

## MAX S. ROBERTS

Max Roberts is an Associate in Bursor & Fisher's New York office. Max focuses his practice on class actions concerning data privacy and consumer protection. Max was a Summer Associate with Bursor & Fisher prior to joining the firm and is now Co-Chair of the firm's Appellate Practice Group.

Max received his Juris Doctor from Fordham University School of Law in 2019, graduating *cum laude.* During law school, Max was a member of Fordham's Moot Court Board, the Brennan Moore Trial Advocates, and the Fordham Urban Law Journal, for which he published a note entitled *Weaning Drug Manufacturers Off Their Painkiller: Creating an Exception to the Learned Intermediary Doctrine in Light of the Opioid Crisis.* In addition, Max served as an intern to the Honorable Vincent L. Briccetti of the Southern District of New York and the Fordham Criminal Defense Clinic. Max graduated from Johns Hopkins University in 2015 with a B.A. in Political Science.

Outside of the law, Max is an avid triathlete.

### *Selected Published Decisions:*

*Jackson v. Amazon.com, Inc.*, --- F.4th ---, 2023 WL 2997031 (9th Cir. Apr. 19, 2023), affirming district court's denial of motion to compel arbitration. Max personally argued the appeal before the Ninth Circuit, which can be viewed here.

*Javier v. Assurance IQ, LLC*, 2022 WL 1744107 (9th Cir. May 31, 2022), reversing district court and holding that Section 631 of the California Invasion of Privacy Act requires prior consent to wiretapping. Max personally argued the appeal before the Ninth Circuit, which can be viewed here.

*Mora v. J&M Plating, Inc.*, --- N.E.3d ---, 2022 WL 17335861 (Ill. App. Ct. 2d Dist. Nov. 30, 2022), reversing circuit court and holding that Section 15(a) of Illinois' Biometric Information Privacy Act requires an entity to establish a retention and deletion schedule for biometric data at the first moment of possession. Max personally argued the appeal before the Second District, which can be listened to here.

*Cristostomo v. New Balance Athletics, Inc.*, 2022 WL 17904394 (D. Mass. Dec. 23, 2022), denying motion to dismiss and motion to strike class allegations in case involving sneakers marketed as "Made in the USA."

*Carroll v. Myriad Genetics, Inc.*, 2022 WL 16860013 (N.D. Cal. Nov. 9, 2022), denying in part motion to dismiss in case involving non-invasive prenatal testing product.

*Louth v. NFL Enterprises LLC*, 2022 WL 4130866 (D.R.I. Sept. 12, 2022), denying motion to dismiss alleged violations of the Video Privacy Protection Act.

*Sholopa v. Turk Hava Yollari A.O., Inc. d/b/a Turkish Airlines*, 2022 WL 976825 (S.D.N.Y. Mar. 31, 2022), denying motion to dismiss passenger's allegations that airline committed a breach of contract by failing to refund passengers for cancelled flights during the COVID-19 pandemic.

*Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503 (C.D. Cal. 2021), denying in part motion to dismiss alleged violations of California Invasion of Privacy Act.

*Soo v. Lorex Corp.*, 2020 WL 5408117 (N.D. Cal. Sept. 9, 2020), denying defendants' motion to compel arbitration and denying in part motion dismiss consumer protection claims in putative class action concerning security cameras.

### *Selected Class Settlements:*

*Miranda v. Golden Entertainment (NV), Inc.*, Case No. 2:20-cv-534-AT (D. Nev. 2021) – final approval granted for class settlement valued at over $4.5 million to resolve claims of customers and employees of casino company stemming from data breach.

*Malone v. Western Digital Corp.*, Case No. 5:20-cv-3584-NC (N.D. Cal. 2021) – final approval granted for class settlement valued at $5.7 million to resolve claims of hard drive purchasers for alleged false advertised.

*Frederick v. ExamSoft Worldwide, Inc.*, Case No. 2021-L-001116 (18th Judicial Circuit Court DuPage County, Illinois 2021) – final approval granted for $2.25 million class settlement to resolve claims of Illinois students for alleged violations of the Illinois Biometric Information Privacy Act.

### *Bar Admissions*

- New York State
- Southern District of New York
- Eastern District of New York
- Northern District of New York
- Northern District of Illinois
- Central District of Illinois
- Eastern District of Michigan
- District of Colorado
- Ninth Circuit Court of Appeals
- Seventh Circuit Court of Appeals

## CHRISTOPHER R. REILLY

Chris Reilly is an Associate with Bursor & Fisher, P.A. Chris focuses his practice on consumer class actions and complex business litigation.

Chris is admitted to the State Bar of Florida and is a member of the bar of the United States District Courts for the Southern and Middle Districts of Florida.

BURSOR&FISHER
P.A.

Chris received his Juris Doctor from Georgetown University Law Center in 2020. During law school, Chris clerked for the Senate Judiciary Committee, where he worked on antitrust and food and drug law matters under Senator Richard Blumenthal.  He has also clerked for the Mecklenburg County District Attorney's Office, the ACLU Prison Project, and the Pennsylvania General Counsel's Office.  Chris served as Senior Editor of Georgetown's Journal of Law and Public Policy.  In 2017, Chris graduated from the University of Florida with a B.A. in Political Science.

## JULIA K. VENDITTI

Julia Venditti is an Associate with Bursor & Fisher, P.A.  Julia focuses her practice on complex civil litigation and class actions.  Julia was a Summer Associate with Bursor & Fisher prior to joining the firm.

Julia is admitted to the State Bar of California and is a member of the bars of the United States District Courts for the Northern, Eastern, Central, and Southern Districts of California.

Julia received her Juris Doctor in 2020 from the University of California, Hastings College of the Law, where she graduated *cum laude* with two CALI Awards for the highest grade in her Evidence and California Community Property classes.  During law school, Julia was a member of the UC Hastings Moot Court team and competed at the Evans Constitutional Law Moot Court Competition, where she finished as a national quarterfinalist and received a best brief award.  Julia was also inducted into the UC Hastings Honors Society and was awarded Best Brief and an Honorable Mention for Best Oral Argument in her First-Year Moot Court section. In addition, Julia served as a Research Assistant for her Constitutional Law professor, as a Teaching Assistant for Legal Writing & Research, and as a Law Clerk at the San Francisco Public Defender's Office.  In 2017, Julia graduated *magna cum laude* from Baruch College/CUNY, Weissman School of Arts and Sciences, with a B.A. in Political Science.

## JULIAN DIAMOND

Julian Diamond is an Associate with Bursor & Fisher, P.A.  Julian focuses his practice on privacy law and class actions.  Julian was a Summer Associate with Bursor & Fisher prior to joining the firm.

Julian received his Juris Doctor from Columbia Law School, where he was a Harlan Fiske Stone Scholar.  During law school, Julian was Articles Editor for the Columbia Journal of Environmental Law.  Prior to law school, Julian worked in education.  Julian graduated from California State University, Fullerton with a B.A. in History and a single subject social science teaching credential.

## MATTHEW GIRARDI

Matt Girardi is an Associate with Bursor & Fisher, P.A.  Matt focuses his practice on complex civil litigation and class actions, and has focused specifically on consumer class actions involving product defects, financial misconduct, false advertising, and privacy violations.  Matt was a Summer Associate with Bursor & Fisher prior to joining the firm.

Matt is admitted to the State Bar of New York, and is a member of the bars of the United States District Courts for the Southern District of New York, the Eastern District of New York, and the Eastern District of Michigan

Matt received his Juris Doctor from Columbia Law School in 2020, where he was a Harlan Fiske Stone Scholar.  During law school, Matt was the Commentary Editor for the Columbia Journal of Tax Law, and represented fledgling businesses for Columbia's Entrepreneurship and Community Development Clinic.  In addition, Matt worked as an Honors Intern in the Division of Enforcement at the U.S. Securities and Exchange Commission.  Prior to law school, Matt graduated from Brown University in 2016 with a B.A. in Economics, and worked as a Paralegal Specialist at the U.S. Department of Justice in the Antitrust Division.

## JENNA GAVENMAN

Jenna Gavenman is an Associate with Bursor & Fisher, P.A.  Jenna focuses her practice on complex civil litigation and consumer class actions.  Jenna was a Summer Associate and a part-time intern with Bursor & Fisher prior to joining the firm as a full-time Associate in September 2022.

Jenna is admitted to the State Bar of California and is a member of the bars of the United States District Courts for the Northern, Eastern, Central, and Southern Districts of California.

Jenna received her Juris Doctor in 2022 from the University of California, Hastings College of the Law (now named UC Law SF).  During law school, she was awarded an Honorable Mention for Best Oral Argument in her First-Year Moot Court section.  Jenna also participated in both the Medical Legal Partnership for Seniors (MLPS) and the Lawyering for Children Practicum at Legal Services for Children—two of UC Hastings's nationally renowned clinical programs.  Jenna was awarded the Clinic Award for Outstanding Performance in MLPS for her contributions to the clinic.  In addition, Jenna volunteered with her law school's Legal Advice and Referral Clinic and as a LevelBar Mentor.

In 2018, Jenna graduated *cum laude* from Villanova University with a B.A. in Sociology and Spanish (double major).  Jenna was a Division I athlete, competing on the Villanova Women's Water Polo varsity team for four consecutive years.

**BURSOR & FISHER**
P.A.

### EMILY HORNE

Emily Horne is an Associate with Bursor & Fisher, P.A.  Emily focuses her practice on complex civil litigation and consumer class actions.  Emily was a Summer Associate with Bursor & Fisher prior to joining the firm.

Emily is admitted to the State Bar of California.

Emily received her Juris Doctor from the University of California, Hastings College of the Law in 2022 (now UC, Law SF).  During law school, Emily served as Editor-in-Chief for the UC Hastings Communications and Entertainment Law Journal, and she competed on the Moot Court team.  Emily also served as a judicial extern in the Northern District of California and as a Teaching Assistant for Legal Writing & Research.  In 2015, Emily graduated from Scripps College with a B.A. in Sociology.

### IRA ROSENBERG

Ira Rosenberg is an Associate with Bursor & Fisher, P.A.  Ira focuses his practice on complex civil litigation and class actions.

Ira received his Juris Doctor in 2022 from Columbia Law School. During law school, Ira served as a Student Honors Legal Intern with Division of Enforcement at the U.S. Securities and Exchange Commission.  Ira also interned during law school in the Criminal Division at the United States Attorney's Office for the Southern District of New York and with the Investor Protection Bureau at the Office of the New York State Attorney General.  Ira graduated in 2018 from Beth Medrash Govoha with a B.A. in Talmudic Studies.

### LUKE SIRONSKI-WHITE

Luke Sironski-White is an Associate with Bursor & Fisher, P.A., focusing on complex civil litigation and consumer class actions.  Luke joined the firm as a full-time Associate in August 2022.

Luke is admitted to the State Bar of California.

Luke received his Juris Doctor in 2022 from the University of California, Berkeley School of Law.   During law school, Luke was on the board of the Consumer Advocacy and Protection Society (CAPS), edited for the Berkeley Journal of Employment and Labor Law, and volunteered with the Prisoner Advocacy Network.

In 2017, Luke graduated from the University of Chicago with a B.A. in Anthropology. Before entering the field of law Luke was a professional photographer and filmmaker.

**BURSOR&FISHER**
P.A.

## JONATHAN L. WOLLOCH

Jonathan L. Wolloch is an Associate with Bursor & Fisher, P.A. Jonathan focuses his practice on complex civil litigation and class actions. Jonathan was a Summer Associate with Bursor & Fisher prior to joining the firm.

Jonathan is admitted to the State Bar of Florida and the bars of the United States District Courts for the Southern and Middle Districts of Florida.

Jonathan received his Juris Doctor from the University of Miami School of Law in 2022, graduating magna cum laude. During law school, Jonathan served as a judicial intern to the Honorable Beth Bloom for the Southern District of Florida. He received two CALI Awards for earning the highest grade in his Trusts & Estates and Substantive Criminal Law courses, and he was elected to the Order of the Coif. Jonathan was also selected for participation in a semester long externship at the Florida Supreme Court, where he served as a judicial extern to the Honorable John D. Couriel. In 2018, Jonathan graduated from the University of Michigan with a B.A. in Political Science.

# EXHIBIT 4

# HEDIN HALL LLP

**FIRM RÉSUMÉ**

With offices in Miami, Florida and San Francisco, California, Hedin Hall LLP represents consumers and shareholders in data-privacy, financial services, and securities class actions in state and federal courts nationwide.

Our firm prosecutes difficult cases aimed at redressing injuries suffered by large, diverse groups of people.  Over the past decade alone, our work has helped secure billions of dollars in relief for consumers and investors and facilitated important changes in business practices across a wide range of industries.

## Representative Matters

Notable examples of our work include:

### Consumer & Data-Privacy Matters

- *Owens, et al. v. Bank of America, N.A., et al.*, No. 19-CV-20614-MGC (S.D. Fla.) (class counsel in overdraft fee class action, non-reversionary $4.95 million settlement pending final approval);

- *Liggio v. Apple Federal Credit Union*, No. 18-cv-1059-LO (E.D. Va.) (class counsel in overdraft fee class action, non-reversionary $2.7 million settlement granted final approval);

- *Olsen, et al. v. ContextLogic Inc.,* No. 2019CH06737 (Ill. Cir. Ct. Jan. 7, 2020) (class counsel in action alleging violation of Telephone Consumer Protection Act ("TCPA"), non-reversionary $16 million settlement finally approved);

- *In re Everi Holdings, Inc. FACTA Litigation*, No. 18CH15419 (Ill. Cir. Ct. Jan. 7, 2020) (class counsel in 14 related actions alleging violations of Fair and Accurate Credit Transactions Act against various casino entities and common payment processor, $14 million non-reversionary class settlement recently reached);

- *Chimeno-Buzzi v. Hollister Co.* (S.D. Fla.) (class counsel in action alleging violation of TCPA, non-reversionary $10 million settlement finally approved);

- *Farnham v. Caribou Coffee Co., Inc.* (W.D. Wisc.) (class counsel in action alleging violation of TCPA, non-reversionary $8.5 million settlement finally approved);

# HEDIN HALL LLP

- *Lin v. Crain Communications, Inc.*, No. 2:19-cv-11889-VAR-APP (E.D. Mich.) (counsel for putative nationwide class in action alleging violation of Michigan's Personal Privacy Preservation Act against Michigan-based publishing conglomerate);

- *Norberg v. Shutterfly, Inc.* (N.D. Ill.) (putative class action alleging the collection of individuals' immutable "scans of face geometry" in violation of Illinois' Biometric Information Privacy Act ("BIPA"));

- *Rivera v. Google, Inc.* (N.D. Ill.) (putative class action arising from Google's alleged collection of individuals' immutable "scans of face geometry" in violation of BIPA);

- *In re Facebook Biometric Privacy Litig.* (N.D. Cal.) (first-of-its-kind data privacy class action arising from Facebook's alleged collection of individuals' immutable "scans of face geometry" in violation of BIPA);

- *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litig.* (N.D. Cal.) (class action alleging claims in connection with the Volkswagen diesel-cheating scandal, resulting in over $17 billion recovery).

## Securities Matters

- *City of Sterling Heights General Employees' Retirement System v. Prudential Financial, Inc.* (D. N.J.) ($33 million settlement for class of aggrieved investors);

- *Louisiana Municipal Police Employees' Pension Fund v. KPMG, LLP, et al.* (N.D. Ohio) ($32.6 million settlement for class of aggrieved investors);

- *Cyan v. Beaver County Employees Retirement Fund*, (U.S. Supreme Court) (contributed to *certiorari*, merits, and *amici* briefing in 9-0 plaintiffs' victory on issues of first impression pertaining to concurrent jurisdiction and dual sovereignty, the PSLRA and SLUSA, and the Securities Act removal bar);

- *Wiley v. Envivio, Inc., et al.* (Cal. Sup. Ct., San Mateo Cnty.) ($8.5 million settlement for class of aggrieved investors);

- *In re MobileIron Shareholder Litig.* (Cal. Sup. Ct., Santa Clara Cnty.) ($7.5 million settlement for class of aggrieved investors);

- *In re Model N Shareholder Litig.* (Cal. Sup. Ct., San Mateo Cnty.) ($8.55 million settlement for class of aggrieved investors);

- *Silverman v. Motorola, et al.* (N.D. Ill.) ($200 million settlement for class of aggrieved investors);

- *United Food and Commercial Workers Union Local 880 v. Chesapeake Energy Corp., et al.* (W.D. Okla.) (obtained multiple favorable precedent-setting decisions related to

# HEDIN HALL LLP

typicality, tracing, adequacy, materiality, and negative causation under the Securities Act of 1933);

- *Xiang v. Inovalon Holdings, Inc., et al.* (S.D.N.Y.) (obtained favorable precedent-setting decisions related to statute of limitations, falsity, causation, and materiality under the Securities Act of 1933);

- *Buelow v. Alibaba Group Holding Ltd., et al.* (Cal. Sup. Ct., San Mateo Cnty.) ($75 million settlement, obtained several favorable precedent-setting decisions related to statute of limitations, the relation-back doctrine, falsity, causation, and materiality under the Securities Act of 1933);

- *In re Herald, Primeo, and Thema Funds Sec. Litig.* (S.D.N.Y.) ($62.5 million settlement for victims of Madoff Ponzi scheme).

**Biographies of Principal Attorneys**

<u>Frank S. Hedin</u>

Frank S. Hedin manages the firm's Miami office.  He is a member in good standing of the Florida Bar and the State Bar of California.  Mr. Hedin received his Bachelor of Arts from University of Michigan and his Juris Doctor, *magna cum laude*, from Syracuse University College of Law.  After graduating from law school, he served for fifteen months as law clerk to the Honorable William Q. Hayes, United States District Judge for the Southern District of California.  Prior to establishing Hedin Hall LLP, Mr. Hedin was a partner at a litigation boutique in Miami, Florida, where he represented both plaintiffs and defendants in consumer and data-privacy class actions, employment-related collective actions, and patent and trademark litigation, and served as head of the firm's class action practice.

<u>David W. Hall</u>

David W. Hall manages the firm's San Francisco office.  Before founding Hedin Hall LLP, Mr. Hall managed cases for one of the largest plaintiffs' firm in the United States, where he pioneered and developed, inter alia, the firm's state court Securities Act and data privacy

# Hedin Hall llp

practices. Earlier in his legal career, he served as judicial law clerk to the Honorable Irma E. Gonzalez, United States District Judge for the Southern District of California.  Mr. Hall is a graduate of the University of California, Hastings College of the Law, *cum laude*, and the New England Conservatory of Music.  At Hastings College of the Law, he served as Staff Editor of the Hastings Business Law Journal, teaching assistant in the Legal Writing & Research Department, and extern to the Honorable Joyce L. Kennard of the California Supreme Court.

**Firm Offices**

<u>Miami, Florida</u>

Frank S. Hedin
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131

Telephone:     (305) 357-2107
Facsimile:     (305) 200-8801
E-Mail:        fhedin@hedinhall.com

<u>San Francisco, California</u>

David W. Hall
Four Embarcadero Center, Suite 1400
San Francisco, California 94104

Telephone:     (415) 766-3534
Facsimile:     (415) 402-0058
E-Mail:        dhall@hedinhall.com