UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RICHARD PRATT and LARRY JONES,
Individually and on behalf of all others
similarly situated,

                Plaintiffs,                    Case No. 1:21-cv-11404

v.                                      Honorable Thomas L. Ludington
                                      United States District Judge

KSE SPORTSMAN MEDIA, INC.,
d/b/a
OUTDOOR SPORTSMAN GROUP, INC.,

                Defendant.

_____/

**OPINION AND ORDER (1) GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT (2) CERTIFYING SETTLEMENT CLASS, (3) APPOINTING CLASS REPRESENTATIVES, (4) APPOINITNG CLASS COUNSEL, (5) APPROVING NOTICE PLAN, (6) APPOINITNG SETTLEMENT ADMINSITRATOR, (7) DIRECTING PUBLICATION OF NOTICE, AND (8) SETTING SCHEDULING ORDER**

Plaintiffs Richard Pratt and Larry Jones brought this data disclosure class action against Defendant KSE Sportsman Media, Inc., doing business as Outdoor Sportsman Group, Inc., alleging that Defendant "rented, exchanged, and/or otherwise disclosed" customer information without consent or notice, in violation of Michigan's Preservation of Personal Privacy Act (PPPA),[1] MICH. COMP. LAWS § 445.1711 *et seq*. *See* ECF No. 1 at PageID.22–25.

After successful settlement negotiations and mediation, Plaintiffs filed an unopposed motion for (1) preliminary approval of the Parties' Settlement Agreement; (2) certification of a

---

[1] Plaintiffs' Complaint refers to the statute as the "Michigan Video Rental Privacy Act (VRPA)." ECF No. 1 at PageID.22–25. But, as explained in this Court's February 2022 Order, "the Michigan Supreme Court has referred to [the law] as the Preservation of Personal Privacy Act (PPPA), which will be used herein." ECF No. 24 at PageID.647 n.1; *See also Deacon v. Pandora Media, Inc.*, 885 N.W.2d 628, 629 n.1 (Mich. 2016).

Settlement Class; (3) appointment of Class Counsel; (4) appointment of Plaintiffs as Settlement Class Representatives; (5) approval of the Proposed Notice Plan; (6) appointment of JND Legal Administration as Settlement Administrator; (7) directed distribution of the Proposed Notice Plan; and (8) scheduling a final fairness hearing. ECF No. 79.

## I.

Defendant KSE Sportsman Media, Inc. is a Colorado corporation with its headquarters and principal place of business in New York, New York. ECF No.1 at PageID.7. Doing business as Outdoor Sportsman Group, Inc., Defendant publishes subscription magazines including *Guns & Ammo*, *Rifleshooter*, *Handguns*, *Firearm News*, *Shooting Times*, *Hunting*, *In-Fisherman*, and *Game & Fish*. *See id.* at PageID.7–8.

On June 15, 2021, Plaintiffs Richard Pratt and Larry Jones—both Michigan citizens and subscribers of Defendant's publications—filed a class-action Complaint against Defendant for alleged violations of the PPPA. ECF No. 1. In their Complaint, Plaintiffs defined the putative class as "all Michigan residents who, at any point during the relevant pre-July 30, 2016 time period, had their Private Reading Information disclosed to third parties by [Defendant] without consent." *Id.* at PageID.20.

Plaintiffs alleged Defendant violated the PPPA when it, without customer consent or notice, "rented, exchanged, and/or otherwise disclosed detailed information about [subscribers] to data aggregators, data appenders, data cooperatives, and list brokers" which, in turn "disclosed [customer] information to aggressive advertisers, political organizations, and non-profit companies." *See id.* at PageID.1–2. Plaintiffs alleged Defendant disclosed both customers' "Private Reading Information"—defined as including full names, publication subscriptions, and

home addresses—and demographic information such as age, gender, income, marital status, occupation, and hunting license status. ECF No. 1 at PageID.4, 18.

Plaintiffs alleged Defendants handsomely profited from the unauthorized disclosure, noting that, because Defendant does not sell exclusive rights to the collected customer information, Defendant "is able to disclose the information time and time again to countless third parties." *Id.* at PageID.4. However, Plaintiffs claimed, these handsome profits came at the expense of customer safety and privacy. Plaintiffs claimed Defendant's disclosure was "dangerous because it allow[ed] for the targeting of particularly vulnerable members of society [and] for the identification of individuals who are likely to possess firearms and the addresses where they reside (and where their guns would be stored)." *Id.* at PageID.5.

In November 2021, Defendant filed a Motion to Dismiss, arguing Plaintiffs' claims were time-barred under a three year statute of limitations and, alternatively, Plaintiffs lacked Article III standing. ECF No. 17. Three months later, this Court partially granted Defendant's Motion to Dismiss on timeliness grounds, holding that Plaintiff's claims "accruing on or before June 15, 2015" were barred by the applicable statute of limitations but that Plaintiffs had live claims between June 16, 2015 and July 30, 2016. ECF No. 24.

In September 2022, the Parties stipulated to stay the class action pending mediation. *See* ECF No. 59 at PageID.1542 (granting Parties' Stipulated Stay). As a result of mediation, the Parties agreed on a framework for class-wide resolution, which was memorialized in a term sheet on April 26, 2023. ECF No. 79 at PageID.1611. Since then, the Parties have selected a proposed Settlement Administrator, worked together to finalize the Settlement Class list, and negotiated and finalized a Settlement Agreement (the Agreement). ECF No. 79-2.

The Agreement provides for payments to the members of the proposed settlement class (the Class), releases Defendant of claims, describes class-notice procedures in detail, outlines attorney's fees and class representative service awards, and discusses the appointment of class counsel. *See generally id.*

## II.

The claims of "a class proposed to be certified for purposes of settlement[] may be settled, voluntarily dismissed, or compromised only with the court's approval." FED. R. CIV. P. 23(e). The question at the preliminary-approval stage is "simply whether the settlement is fair enough" to begin the class-notice process. *Garner Props. & Mgmt. v. City of Inkster*, 333 F.R.D. 614, 626 (E.D. Mich. 2020). At the preliminary-approval stage, Civil Rule 23(e) requires the parties to "provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." FED. R. CIV. P. 23(e)(1)(A). "The court must direct notice" of a proposed settlement "to all class members who would be bound" by it if "the court will likely be able to approve the proposal under Rule 23(e)(2)[] and certify the class for purposes of judgment on the proposal." FED. R. CIV. P. 23(e)(1)(B).

After preliminary approval, notice, and time for objections, final approval of the proposed settlement may occur "only after a hearing and only on finding that it is fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2).

## III.

### A.  RULE 23 CLASS CERTIFICATION

Plaintiffs define the Class as "[t]he 14,503 direct purchasers whose information was included on the lists obtained in discovery that were transmitted to third parties between June 16,

2015 and July 30, 2016, and thus that have standing." ECF Nos. 79 at PageID.1611–12; 79-2 at PageID.1658.

The Class excludes "(1) any Judge or Magistrate presiding over this Action and members of their families; (2) the Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded persons." ECF No. 79-2 at PageID.1658–59.

As explained below, the Class will be certified under Civil Rules 23(a) and (b).

### 1. Civil Rule 23(a) Requirements

#### i. Numerosity

The Class must be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). Although "there is no strict numerical test, 'substantial' numbers usually satisfy the numerosity requirement." *Daffin v. Ford. Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006).

The Class satisfies numerosity. It includes 14,503 individual subscribers of Defendant's publications who the Parties have identified were subject to Defendant's unauthorized data disclosure. *See* ECF Nos. 79 at PageID.1611–12; 79-2 at PageID.1658. This "sheer" volume satisfies numerosity. See *Barry v. Corrigan*, 79 F. Supp. 3d 712, 731 (E.D. Mich. 2015) (holding that "sheer number of" 4,562 people independently satisfied numerosity, even though the "number of potential class members is not dispositive*"), aff'd sub nom. Barry v. Lyon*, 834 F.3d 706 (6th Cir. 2016).

### ii. Commonality

The Class must share common questions of law or fact. Fed. R. Civ. P. 23(a)(2). Commonality requires "a common contention" that, if resolved, would resolve claims of all class members "in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). A common question of law or fact exists if all the Class's members suffered the same injury. *Id*. at 349–50.

Plaintiffs assert two common questions, "one factual and one legal: (1) whether Defendant disclosed its customers' protected personal reading information to third parties between 6/16/15 and 7/30/16; and (2) whether such disclosures violated the PPPA." ECF No. 79 at PageID.1615. Both questions are common to all members of the Class and can be answered on a class-wide basis with common proof which will drive the litigation forward, satisfying commonality. See *Coulter-Owens v. Time, Inc.*, 308 F.R.D. 524, 533–34 (E.D. Mich. 2015) (finding commonality is satisfied if "the litigation is driven by issues that are common to the entire putative class").

### iii. Typicality

"[T]he claims or defenses of the representative parties [must be] typical of the claims and defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is satisfied if the representative's claim "arises from the same [transaction or occurrence as] the claims of other class members, and [they] are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007).

The claims of Plaintiffs and the Class arise from the same conduct of Defendant and resulted in the same disclosure of "Private Reading Information" and demographic data. *See* ECF No. 79 at PageID.1616. Thus, resolving Plaintiffs' claims would necessarily advance the interests and claims of the Class, satisfying typicality. *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) ("[A]s goes the claim of the named plaintiff, so go the claims of the class.").

<u>iv. Adequacy of Representation</u>

Finally, "the representative parties [must] fairly and adequately protect the interest of the class." FED. R. CIV. P. 23(a)(4). Adequacy is governed by two criteria: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996).

The Class satisfies both criteria. Plaintiffs have the same claims as the Class: that their "Private Reading Information" and demographic data was disclosed by Defendant without consent or notice, in violation of the PPPA. *See* ECF No. 79 at PageID.1617. Indeed, "Plaintiffs have the exact same interest in recovering the statutory damages to which they are entitled under the PPPA" as members of the Class. *Id.* Plaintiffs have also actively participated in the case since its inception over two years ago. *See generally* ECF No. 1.

Additionally, the proposed lead-plaintiff incentive award of $1,500 does not misalign the interests of Plaintiffs and the Class. ECF No. 79 at PageID.1612–13; *see also Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) (expressing a "sensibl[e] fear that incentive awards may lead named plaintiffs to expect a bounty for bringing suit or to compromise the interest of the class for personal gain"). As Plaintiffs note, this proposed incentive award is "proportional to those preliminarily approved by this Court in other PPPA cases" ECF No. 79 at PageID.1613; *see also Strano v. Kiplinger Washington Eds., Inc.*, No. 1:21-CV-12987, 2023 WL 119647, at *10 (E.D. Mich. Jan. 6, 2023) (preliminarily approving $1,000 award when each settlement class member was to receive roughly $248); *Moeller v. Wk. Publications, Inc.*, No. 1:22-CV-10666, 2022 WL 17718416 (E.D. Mich. Dec. 15, 2022).

## 2. Civil Rule 23(b) Requirements

The Class must also satisfy one of the three requirements of Rule 23(b). *Dukes*, 564 U.S. at 345. Plaintiffs contend the Class satisfies Civil Rule 23(b)(3), which permits class actions if (1) the common questions of law and fact predominate over any questions affecting only individuals and (2) the class-action mechanism is superior to the other available methods for the fair and efficient adjudication of the controversy. FED. R. CIV. P. 23(b)(3).

### i. Predominance

Predominance is satisfied if the Class's individual questions of law or fact "are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v. Windsor*, 521 U.S. 591 623 (1997).

Here, the injury of each member of the Class—the unauthorized disclosure of "Private Reading Information" and demographic data to third parties—was the result of Defendant's alleged "common" course of conduct. ECF No. 79 at PageID.1621. In this way, all claims of the entire Class involve the same questions of law and fact, satisfying predominance. *See Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) ("Cases alleging a single course of wrongful conduct are particularly well-suited to class certification." (citation omitted)).

### ii. Superiority

Superiority "is met if the class action is a better way than individual litigation to adjudicate a claim." *Calloway v. Caraco Pharm. Lab'ys*, 287 F.R.D. 402, 407 (E.D. Mich. 2012) (citing *Daffin*, 458 F.3d at 554). A class action is superior if it would "vindicate[] 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'" *See Amchem*, 521 U.S. at 617 (citation omitted).

A class action is the best way to vindicate the Class's rights under these circumstances. Because the unauthorized disclosure issues predominate and "all questions necessary to determine violation of the PPPA are common to all [Class members]," ECF No. 79 at PageID.1621, it would be impractical for all 14,503 members of the Class to individually sue Defendant for such disclosure. *See In re Sonic Corp. Customer Data Breach Litig.*, No. 1:17-MD-02807-JSG, 2020 WL 6701992, at *6 (N.D. Ohio Nov. 13, 2020) (finding that class action was superior because all class members suffered same injury from same data breach). For these reasons, superiority is satisfied.

## B. APPOINTMENT OF ATTORNEYS AS CLASS COUNSEL

After certifying a class, the district court must appoint class counsel. FED. R. CIV. P. 23(g)(1). Before appointing class counsel, a court must consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. *Id.*

This Court has held, additionally, that Civil Rule 23(g)(2) requires the appointment of only one firm or attorney to serve as class counsel. FED. R. CIV. P. 23(g)(2); *see also Strano*, 2023 WL 119647, at *5 ("[T]he court must appoint *the* applicant best able to represent the interests of the class."); *D.D. by Next Friend B.N. v. Michigan Dep't of Health & Hum. Servs.*, No. 1:18-CV-11795, 2022 WL 16680727 at *4 (noting that the text of Civil Rule 23(g) requires the appointment of *one* firm or attorney to serve as class counsel).

Plaintiffs propose the following Class Counsel: (1) E. Powell Miller of The Miller Law Firm, P.C., (2) Joseph I. Marchese of Bursor & Fisher, P.A., (3) Philip L. Fraietta of Bursor &

Fisher, P.A., (4) Frank S. Hedin of Hedin Hall LLP, and (5) Arun G. Ravindran of Hedin Hall LLP. ECF No. 79 at PageID.1596. Plaintiffs emphasize all five proposed counsel "have devoted substantial resources to the prosecution of this action by investigating Plaintiffs' claims and that of the [Class], obtaining, reviewing, and analyzing discovery, retaining experts to analyze voluminous data . . . , participating in multiple mediations and, ultimately negotiating a settlement that provides the best ever per-class member recovery in a PPPA case[.]" *Id.* at PageID.1618. Plaintiffs further emphasize that all five proposed counsel have "extensive experience in litigating similar class actions," "regularly engage in consumer privacy cases," "have the resources necessary to prosecute this case," and "have frequently been appointed lead class counsel." *Id.* at PageID.1617. Mindful of this Court's prior holdings, though, Plaintiffs propose E. Powell Miller of the Miller Law Firm, P.C. be appointed as Class Counsel in the event this Court only appoints one, "given his familiarity with Michigan practice and his extensive experience litigating class actions in this District." *Id.* at PageID.1619

This Court agrees that E. Powell Miller of the Miller Law Firm, P.C., could best represent the class. He has invested significant time in the case, has extensive class-action experience, knows the applicable law, and is resourced to represent the class. Accordingly, E. Powell Miller will be appointed Class Counsel.

### C. PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT

There are two steps for approving class settlements: "(1) preliminary approval of the settlement and the content and method of class notice; and (2) final approval after notice and a fairness hearing." *Sheick v. Auto. Component Carrier, LLC*, No. 09-14429, 2010 WL 3070130, at *11 (E.D. Mich. Aug. 2, 2010) (citing *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982)).

At the preliminary-approval stage, the issue is whether the Agreement "is fair enough . . . to expend the effort and costs associated with sending potential class members notice and processing opt-outs and objections." *Garner Props. & Mgmt. v. City of Inkster*, 333 F.R.D. 614, 626 (E.D. Mich. 2020). The Agreement should be preliminarily approved if it "(1) 'does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment to class representatives or of segments of the class, or excessive compensation for attorneys,' and (2) 'appears to fall within the range of possible approval'" at the final-approval stage. *Sheick*, 2010 WL 3070130, at *11 (quoting *In re Inter–Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 350 (N.D. Ohio 2001)).

At the final-approval stage, the Agreement will be approved if it is fair, reasonable, and adequate. FED. R. CIV. P. 23(e)(2). To that end, factors from the Sixth Circuit and the Federal Rules of Civil Procedure guide the analysis.[2]

As explained below, the Agreement is fair, reasonable, and adequate and will be preliminarily approved to begin the notice process and objection period.

### 1. Rule 23(e) Factors

Four factors govern whether the Agreement is "fair, reasonable, and adequate": (1) whether the class representatives and class counsel have adequately represented the class; (2) whether the proposal was negotiated at arm's length; (3) whether the relief provided for the class is adequate;

---

[2] In 2007, the Sixth Circuit developed seven factors for settlement approval. *See Int'l Union, United Auto., Aerospace & Agric. Implement Workers v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). But the Federal Rules of Civil Procedure were amended in 2018 to include four factors for approving settlement agreements. *See* FED. R. CIV. P. 23(e). However, the advisory committee made clear that the 2018 amendment did not replace any factors developed by the Sixth Circuit. *See* FED. R. CIV. P. 23 advisory committee's note to 2018 amendment ("The goal of this amendment is not to displace any factor [a circuit provided], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.").

and  (4) whether the proposal treats class members equitably relative to each other.  FED. R. CIV.
P. 23(e).

i. Adequate representation

The named Plaintiffs and Class Counsel have adequately represented the Class. *See*
discussion *supra*  Section III.A.1.iv; *see also* 4 *Newberg and Rubenstein on Class Actions* § 13:48
(6th ed.), Westlaw (database updated June 2022) (noting that the first Civil Rule 23(e) factor is
"redundant of the requirements of Rule 23(a)(4) and Rule 23(g), respectively").

ii. Arm's length negotiation of settlement

The Parties negotiated the Agreement at arm's length, as evidenced by their participation
in mediation with neutral mediators after conducting discovery. During discovery, "Defendant
produced information to Plaintiffs' counsel concerning class size, Defendant's financial condition,
and Defendant's ability to withstand a class-wide judgment. The Parties also engaged in written
and document discovery, which included the production of thousands of pages of documents,
numerous third-party subpoenas, and a motion to compel." ECF No. 79-2 at PageID.1637.
Discovered information was analyzed by a forensic accountant. *Id.* "Ultimately, the Parties, with
the assistance of Judges Rosen and Holderman, reached agreement on a framework for a class-
wide resolution" which, after further negotiation, materialized in the Agreement. *See id.* at
PageID.1637–38. Further, there is no evidence of fraud or collusion. *See* ECF Nos. 79 at
PageID.1607, 1611, 1618; 79-2 at PageID.1636–38.

Therefore, the second factor is satisfied. *See Hilson v. Kelly Servs. Inc.*, No. 2:15-CV-
10803, 207 WL 279814, at *6 (E.D. Mich. Jan. 23, 2017) (finding that settlement agreement was
negotiated at arm's length because procedural history reflected noncollusive negotiations, informal
and formal discovery, and multiple mediation sessions).

<u>iii. Adequate relief</u>

The adequacy of relief considers: (1) the costs, risks, and delay of trial and appeal; (2) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (3) the terms of any proposed attorney's fees, including timing of payment; and (4) any agreement required to be identified under Rule 23(e)(2). FED. R. CIV. P. 23(e)(2)(C).

The relief sought is adequate. Plaintiffs acknowledge that more litigation in lieu of settlement would be "complex, costly, and long." ECF No. 79 at PageID.1625. If the Agreement is approved, however, Defendants will establish a $9,500,000 non-reversionary settlement fund from which each class member will *automatically* receive, after costs and fees, approximately $420.00 without having to file a claim form. ECF Nos. 79 at PageID.1612, 1624; 79-2 at PageID.1638. Plaintiffs emphasize this is "best-ever per-class member recovery in a PPPA case." ECF No. 79-2 at PageID.1638. Aside from economic relief, the Class also receives injunctive relief in the form of Defendant's agreement to perpetually refrain from "disclosing to any third party the subscription information of any subscribers to any of its publications who reside in Michigan." *Id.* at PageID.1638–39

Additionally, although the Parties will petition this Court for the specific attorney fee award, "Class Counsel has agreed to limit its request for fees, costs, and expenses to 35% of the [Settlement Fund]." ECF Nos. 79 at PageID.1613; 79-2 at PageID.1676. This is adequate. *See Garner Props. & Mgmt. v. City of Inkster*, 2020 WL 4726938, No. 17-cv-13960, at *10 (E.D. Mich. Aug. 14, 2020) (finding that 33% attorney's fees were reasonable). Finally, other than the Agreement, no other agreements must be identified under Rule 23(e)(2)(iv).

### iv. Equal treatment of class members

The Agreement must treat the members of the Class as relatively equal. The Agreement does so.

Each Class member will automatically "receive an identical *pro ratta* cash payment under the Settlement." ECF No. 79 at PageID.1624 Additionally, as discussed, each lead Plaintiff's incentive award is only $1,500.00, *id.* at PageID.1612–13; *see also* discussion *supra* Section III.A.1.iv, so there are no concerns about the incentive award creating a misalignment of interests or inequality. *See Green v. FCA US LLC*, No. 2013079, 2022 WL 3153777, at \*2 (E.D. Mich. Aug. 8, 2022) (noting that lead-plaintiff incentive awards can "create[] a misalignment of the interests of the class and the representatives").

### 2. Sixth Circuit Factors

The Sixth Circuit provides seven factors to determine whether a class settlement is fair, reasonable, and adequate:

    (1) the risk of fraud or collusion;
    (2) the complexity, expense, and likely duration of the litigation;
    (3) the amount of discovery engaged in by the parties;
    (4) the likelihood of success on the merits;
    (5) the opinions of class counsel and class representatives;
    (6) the reaction of absent class members; and
    (7) the public interest.

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

### i. The risk of fraud or collusion

"Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008) (citing *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006)).

- 14 -

No evidence of fraud or collusion exists here. On the contrary, the parties settled with neutral mediators, *see* ECF Nos. 79 at PageID.1607, 1611, 1618; 79-2 at PageID.1636–38, so this factor favors approval. *See Bert v. AK Steel Corp.*, No. 1:02-CV-467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) ("The participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties.").

### ii. The complexity, expense, and likely duration of litigation

Courts must also consider the complexity, expense, and likely duration of litigation because "the costs, delays[,] and multitudes of other problems" can outweigh the value of the plaintiff's claims. *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 497 (E.D. Mich. 2008).

Plaintiffs acknowledge that continued litigation would be "complex, costly, and long." ECF No. 79 at PageID.1625. So this factor also favors approval.

### iii. The amount of discovery engaged in by the parties

A settlement is "more likely to be fair and reasonable under the circumstances" if the parties have conducted discovery. *Green v. Platinum Rests. Mid-Am. LLC*, No. 3:14-CV-439, 2022 WL 1240432, at *5 (W.D. Ky. Apr. 27, 2022) (citing *O'Bryant v. ABC Phones of N.C., Inc.*, No. 19-CV-02378-SHM-TMP, 2020 WL 7634780, at *14 (W.D. Tenn. Dec. 22, 2020)).

The Parties have conducted sufficient discovery to "adequately assess their case and the desirability of the proposed settlement." *Kritzer v. Safelite Sols., LLC*, 2012 WL 1945144, at *7 (S.D. Ohio May 30, 2012); *see also Int'l Union, United Auto., Aerospace & Agric. Implement Workers v. Gen. Motors Corp.*, No. 07-CV-14074-DT, 2008 WL 2968408, at *26 (E.D. Mich. July 31, 2008) (noting that even informal discovery is adequate for class counsel to make an informed

decision about the adequacy of a proposed settlement). As discussed *supra* Section III.C.1.iii,

"Defendant produced information to Plaintiffs' counsel concerning class size, Defendant's

financial condition, and Defendant's ability to withstand a class-wide judgment. The Parties also

engaged in written and document discovery, which included the production of thousands of pages

of documents, numerous third-party subpoenas, and a motion to compel." ECF No. 79-2 at

PageID.1637. This factor favors approval.

<u>iv. The likelihood of success on the merits</u>

The likelihood of success on the merits "provides a gauge from which the benefits of the

settlement must be measured." *Poplar Creek Dev. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d

235, 245 (6th Cir. 2011).

Plaintiffs acknowledge that absent settlement, "further discovery, dispositive motions, and

depositions would follow. Defendant indicated that it would continue to assert numerous defenses

to both class certification and the merits, including that the PPPA does not prohibit Defendant's

conduct as alleged and is an impermissible special law. Class Counsel is also aware that Defendant

would prepare a competent defense at trial and would appeal any adverse result at trial (and any

order certifying a class). This would be lengthy and expensive litigation." ECF No. 79 at

PageID.1625 (internal citation omitted).

Plaintiffs further noted "Defendant has made clear that, absent a settlement, it will defend

the case vigorously and move for summary judgment and contest class certification . . . . Defendant

would likely argue that individual questions preclude class certification, that a class action is not

a superior method, and that a trial would not be manageable." *Id.* at PageID.1626–27. Plaintiff

emphasizes, even if the Court certified a class, "Defendant would likely challenge certification

through a Rule 23(f) application and then move to decertify. Moreover, even if Plaintiffs survived all of those obstacles, they faced significant risk in recovering a classwide judgment." *Id.*

As Plaintiffs note, "[t]he risks of losing on the merits, of losing class certification, of maintaining certification through trial, and of collecting on any classwide judgment, were all significant hurdles to obtaining classwide relief in this case. The Settlement eliminates this risk[.]" *Id.* Therefore, this factor favors approval.

### v. The opinions of class counsel and class representatives

"The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement." *UAW v. Ford Motor Co.*, No. 07-CV-14845, 2008 WL 4104329, at *26 (E.D. Mich. Aug. 29, 2008).

Here, both Class Counsel and Class Representatives support the settlement. ECF No. 79 at PageID.1627. So this factor favors settlement approval, too.

### vi. The reaction of absent class members

This factor is neutral because the proposed settlement is in the prenotice stage and, at this time, no absent class members exist. *See id.* at PageID.1627–28; *see also Green*, WL 1240432, at *5 (W.D. Ky. Apr. 27, 2022) (finding that a court cannot evaluate this factor before notice).

### vii. The public interest

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (quoting *Granada Invs. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992)).

Settling this 14,503-person class action would further the public interest by providing relief for the entire Class, conserving judicial resources, and furthering policy goals of the PPPA. *See* ECF No. 79 at PageID.1628. Therefore, this factor favors approval.

**3.**

Because the factors score 10–0–1, the Agreement is fair, reasonable, and adequate and will therefore be preliminarily approved.

**D. APPROVAL OF PROPOSED NOTICE PLAN**

After preliminarily approving a settlement, the district court must direct notice of the proposed settlement to all class members who would be bound by the proposal. FED. R. CIV. P. 23(e)(1)(B). Because the Class is being certified under Rule 23(b)(3), notice must be "the best notice practicable" and include "individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B). Notice must also include the following in "plain, easily understood language":

(1) The nature of the action;
(2) The definition of the class certified;
(3) The class claims, issues, or defenses;
(4) That a class member may enter an appearance through an attorney if the member so desires;
(5) That the court will exclude from the class any member who requests exclusion;
 (6) The time and manner for requesting exclusion; and
(7) The binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*

The Parties selected JND Legal Administration as the Settlement Administrator, ECF No. 79–2 at PageID.1658, and proposed a multi-part notice plan in Section 4 of the Agreement, ECF No. 79-2 at PageID.1664–69.  First, the Settlement Administrator will "send direct notice by U.S. mail to all [Class members] for whom the Administrator has been able to identify a postal address

which it concludes has a reasonable likelihood of reflecting the current residence of such [member]. ECF No. 79 at PageID.1629. If a member has more than one address, notice will be mailed to each. *See id.* at PageID.1629–30. Second, for any class member "for whom the Administrator is unable to identify at least one postal address, the Administrator will send notice via email." *Id.* at PageID.1630. Third, "the administrator will establish a Settlement Website that shall contain the 'long form notice' as well as access to important Court documents, upcoming deadlines, and the ability to file claim forms online (if needed for any unidentified class members), or an updated postal address." *Id.* (internal citations omitted). Finally, the Administrator "will also provide the notice of the Settlement to the appropriate state and federal officials as required by CAFA, 28 U.S.C. § 1715." *Id.*

The proposed notice plan is the most practicable way under the circumstances to provide individual notice to the Class. It directs the Claims Administrator to mail notice to the members of the Class and provides detailed procedures if a member does not have an identified postal address. It also establishes a settlement website that any member of the Class, both identified and unidentified, can access.

Plaintiffs also appended proposed notice materials to their Motion for Preliminary Class Settlement Approval, ECF No. 79-2 at PageID1697–714. These materials satisfy the requirements of Rule 23 and due process. The Proposed Notice states that this is a class-action lawsuit against Defendant involving the unauthorized disclosure of customer information to third parties between June 16, 205 and July 30, 2016. *Id.* at PageID.1697. It defines the Class and discusses the claims and issues of the Class to the extent relevant for settlement notice. *See id*. The Proposed Notice also defines the Settlement's terms, notes that each Class member will receive approximately $420.00 in compensation, and explains the steps a Class member must take to receive this relief.

- 19 -

*Id.* The Proposed Notice also contains the hyperlink to the Settlement Website, which Plaintiffs assert will house relevant court information and deadlines. *Id.*; *see also* ECF No. 79 at PageID.1630. Importantly, the Proposed Notice also informs the members of the Class that they may enter an appearance with an attorney and conspicuously alerts the members of the Class that they may opt-out or object. ECF No. 79-2 at PageID.1698. PageID.1773–74. Although the Proposed Notice does not yet include relevant deadlines, it includes spaces to input such information, which will be provided in this Order. *See generally id.* at PageID.1697–98. Finally, the Proposed Notice informs the members of the Class that they are bound by the terms of the Agreement unless they opt out. *Id.* at PageID.1698.

Aside from the Proposed Notice, Plaintiffs also append an example of a post-card style mail insert, *Id.* at PageID.1700–02, and a claim form for unidentified class members, *Id.* at PageID.1713–14.

Accordingly, the notice plan will be approved and the parties will be directed to begin the Notice Program according to the Agreement "no later than twenty-eight (28) days after" this Order. *Id.* at PageID.1664. As reflected in the Agreement, any member of the Class who wishes to opt-out of the Agreement after receiving notice must send a written request to the designated post-office box established by the Settlement Administrator, which must be postmarked on or before October 30, 2023. Any member of the Class who does not properly and timely opt out will be bound by the terms of the Agreement upon final approval by this Court.

**IV.**

Accordingly, it is **ORDERED** that Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement, ECF No. 79, is **GRANTED**.

Further, it is **ORDERED** that the Class is **CERTIFIED** for settlement purposes only.

Further, it is **ORDERED** that the Class is **DEFINED** as the 14,503 direct purchasers whose information was included on the lists obtained in discovery that were transmitted to third parties between June 16, 2015 and July 30, 2016, and thus that have standing.

Further, it is **ORDERED** that the Class definition exclude (1) any Judge or Magistrate presiding over this Action and members of their families; (2) Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded persons

Further it is **ORDERED** that Plaintiffs RICHARD PRATT and LARRY JONES are **APPOINTED AS CLASS REPRESENTATIVES** for settlement purposes only.

Further, it is **ORDERED** that Attorney that E. POWELL MILLER of the Miller Law Firm, P.C., is **APPOINTED AS CLASS COUNSEL** for settlement purposes only.

Further, it is **ORDERED** that the Proposed Settlement Agreement, ECF No. 79-2, is **PRELIMINARILY APPROVED**.

Further, it is **ORDERED** that the Proposed Settlement Notice Plan, including all appended proposed notice materials, is **APPROVED**.

Further, it is **ORDERED** that JND Legal Administration is **APPOINTED AS SETTLEMENT ADMINISTRATOR**.

Further, it is **ORDERED** that the Claim Administrator is **DIRECTED** to publish notice according to the Proposed Settlement Notice Plan.

Further, it is **ORDERED** that any member of the Class who wishes to opt out of the Agreement must send a written request to the designated post-office box established by the Claims Administrator, **on or before November 17, 2023**.

Further, it is **ORDERED** that any member of the Class who does not properly and timely opt out of the Agreement is, upon entry of a final order and judgment approving the Agreement, **BOUND** by all it terms and provisions.

Further, it is **ORDERED** that the following schedule is **ADOPTED**:

| | |
|---|---|
| Notice Program Commences on or before: | **September 22, 2023** |
| Compliance with CAFA Waiting Period under 28 U.S.C. § 1715(d): | **90 days after appropriate government officials are served with CAFA notice** |
| Deadline to File Plaintiffs' Motion for Final Approval of the Settlement Agreement and Motion for Attorney's Fees, Expenses, and Service Awards: | **October 17, 2023** |
| Postmark Deadline for Exclusion, Opt-Out, and Objections: | **November 17, 2023** |
| Deadline for Defendant to File a Response to Class Counsel's Motion for Final Approval of the Settlement Agreement and Motion for Attorney's Fees, Expenses, and Service Awards | **November 17, 2023** |
| Deadline for Class Counsel to File a Reply to Defendant's Response to Class Counsel's Motion for Final Approval, Attorney's Fees, Expenses, and Service Awards | **November 17, 2023** |
| Deadline for Settlement Administrator to File or Cause to be Filed, if Necessary, a Supplemental Declaration with this Court: | **December 15, 2023** |
| Deadline for the Parties to File any Response to Objections | **December 15, 2023** |
| Final Settlement Approval Hearing: | **January 4, 2024 at 10:00 AM EST** |

Dated: August 25, 2023            s/Thomas L. Ludington
                                  THOMAS L. LUDINGTON
                                  United States District Judge