# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| RICHARD PRATT and LARRY JONES, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> KSE SPORTSMAN MEDIA, INC., <br><br> Defendant. | Case No. 21-cv-11404-TLL-PTM <br><br> Hon. Thomas L. Ludington <br><br> Mag. Judge Patricia T. Morris |

## PLAINTIFFS' UNOPPOSED MOTION FOR
## ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARDS

The undersigned counsel certifies that Plaintiffs' Counsel communicated with Counsel for Defendant via email and telephonic discussion on October 16 and 17, 2023, explaining the nature of the relief to be sought by way of this Motion and seeking concurrence in the relief; Defendant's Counsel answered that it does not oppose the relief requested herein.

Plaintiffs, pursuant to the Court's Order Granting Plaintiffs' Motion for Preliminary Approval in which the Court set October 17, 2023 as the deadline for Plaintiffs' Motion for Attorney's Fees, Expenses, and Service Awards (ECF No. 80, PageID.1820), files this Motion and Plaintiffs respectfully request that the Court (1) approve attorneys' fees, costs, and expenses in the amount of 35% of the settlement fund of $9,500,000, or $3,325,000; (2) grant Mr. Pratt and Mr. Jones a service award of $1,500 each in recognition of their efforts on behalf of the class; and (3) award such other and further relief as the Court deems reasonable and just.

Dated: October 16, 2023                     Respectfully submitted,

                                            By: */s/ E. Powell Miller*
                                            E. Powell Miller (P39487)
                                            **THE MILLER LAW FIRM, P.C.**
                                            950 W. University Drive, Suite 300
                                            Rochester, MI 48307
                                            Tel: 248.841.2200
                                            epm@millerlawpc.com

                                            *Class Counsel*

                                            Joseph I. Marchese (P85862)
                                            Philip L. Fraietta (P85228)

**BURSOR & FISHER, P.A.**
1330 Avenue of the Americas, 32nd Floor
New York, New York 10019
Tel: 646.837.7150
jmarchese@bursor.com
pfraietta@bursor.com

Frank S. Hedin
Arun G. Ravindran
**HEDIN HALL LLP**
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: 305.357.2107
fhedin@hedinhall.com
aravindran@hedinhall.com

*Other Counsel for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| RICHARD PRATT and LARRY JONES, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> KSE SPORTSMAN MEDIA, INC., <br><br> Defendant. | Case No. 21-cv-11404-TLL-PTM <br><br> Hon. Thomas L. Ludington <br><br> Mag. Judge Patricia T. Morris |

## PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR
## ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARDS

## STATEMENT OF ISSUES PRESENTED

1.      Whether this Court should award Class Counsel and Plaintiffs' other counsel attorneys' fees, costs, and expenses in the amount of $3,325,000 – 35% of the $9,500,000 Settlement Fund created for the benefit of the class – to compensate and reimburse them for achieving a substantial cash benefit for a class of consumers under Michigan's Preservation of Personal Privacy Act, M.C.L. §§ 445.1711-1715, *et seq.*?

**Plaintiffs' Answer: Yes.**

2.      Whether this Court should award Plaintiffs Richard Pratt and Larry Jones a service award of $1,500 each in recognition of their zealous efforts on behalf of the class?

**Plaintiffs' Answer: Yes.**

**CONTROLLING AND MOST APPROPRIATE AUTHORITIES**

- Fed. R. Civ. P. 23(h)

- *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269 (6th Cir. 2016)

- *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003)

- *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483 (E.D. Mich. 2008)

- *In re Rio Hair Naturalizer Prods. Liab. Litig.*, 1996 WL 780512 (E.D. Mich. Dec. 20, 1996)

- *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974)

# TABLE OF CONTENTS

**PAGE(S)**

I.   BACKGROUND ..................................................................................3

    A.   The Litigation and Work Performed to Benefit the Class ...................5

II.   SUMMARY OF THE SETTLEMENT ..........................................................7

III.   THE REQUESTED SERVICE AWARD REFLECTS MR. STRANO'S ACTIVE INVOLVEMENT HERE AND SHOULD BE APPROVED..........7

IV.   THE REQUESTED ATTORNEYS' FEES AND COSTS ARE REASONABLE AND SHOULD BE APPROVED ......................................9

    A.   The Percentage Method Should Be Used to Calculate Fees..............................................................................................9

    B.   The Reasonableness of the Requested Fees and Costs Is Supported by This Circuit's Six-Factor Test ......................................13

        1.   Counsel Have Secured a Valuable Benefit for the Class..........14

        2.   Societal Stake in Complex Consumer Privacy Litigation ........15

        3.   Counsel Took the Case on a Contingent Basis, Confronting Significant Risk of Nonpayment..........................16

        4.   The Complexity of the Litigation Supports the Requested Fees ..........................................................................20

        5.   The Parties Are Both Represented by Skilled Counsel ............20

        6.   The Hourly Value of the Legal Services Is Reasonable ..........21

V.   CONCLUSION................................................................................25

# TABLE OF AUTHORITIES

**PAGE(S)**

## Cases

*Arp v. Hohla & Wyss Enterprises, LLC*,
  2020 WL 6498956 (S.D. Ohio Nov. 5, 2020)....................................21, 22, 23, 24

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ........................................................................................13

*Boelter v. Advance Magazine Publishers Inc.*,
  210 F. Supp. 3d 579 (S.D.N.Y. 2016)..................................................................5

*Boelter v. Hearst Communications, Inc.*,
  192 F. Supp. 3d 427 (S.D.N.Y. 2016)..................................................................5

*Boelter v. Hearst Communications, Inc.*,
  269 F. Supp. 3d 172 (S.D.N.Y. 2017)..................................................................5

*Bozung v. Christianbook, LLC*,
  2023 WL 2385004 (W.D. Mich. Mar. 6, 2023)..................................................18

*Dick v. Sprint Commc'ns Co. L.P.*,
  297 F.R.D. 283 (W.D. Ky. 2014).......................................................................14

*Edwards v. Hearst Commc'ns, Inc.*,
  2016 WL 6651563 (S.D.N.Y. Nov. 9, 2016).........................................................6

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ........................................................................................15

*Est. of McConnell v. EUBA Corp.*,
  2021 WL 1966062 (S.D. Ohio May 17, 2021) ...................................................21

*Fournier v. PFS Invs., Inc.*,
  997 F. Supp. 828 (E.D. Mich. 1998)......................................................10, 11, 22

*Gascho v. Global Fitness Holdings, LLC*,
  822 F.3d 269 (6th Cir. 2016).......................................................................passim

*Goodell v. Charter Communications, LLC*,
  2010 WL 3259349 (W.D. Wis. Aug. 17, 2010)..................................................18

*Hadix v. Johnson*,
  322 F.3d 895 (6th Cir. 2003)..............................................................................7

*Higgins v. TV Guide Magazine, LLC*,
  Case No. 15-cv-13769-SJM (E.D. Mich. Dec. 19, 2018).............................12, 14

*Hillson v. Kelly Servs. Inc.*,
  2017 WL 3446596 (E.D. Mich. Aug. 11, 2017)..................................................12

*Horton v. GameStop, Corp.*,
  380 F. Supp. 3d 679 (W.D. Mich. 2018) ..............................................................6

*In re Cardizem CD Antitrust Litig.*,
  218 F.R.D. 508, (E.D. Mich. 2003) ...............................................................passim

iv

*In re CMS Energy ERISA Litig.*,
   2006 WL 2109499 (E.D. Mich. June 27, 2006)........................................................8
*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
   248 F.R.D. 483 (E.D. Mich. 2008) .............................................................. passim
*In re Rio Hair Naturalizer Prods. Liab. Litig.*,
   1996 WL 780512 (E.D. Mich. Dec. 20, 1996) ................................... 15, 17, 20
*In re Telectronics Pacing Sys., Inc.*,
   137 F. Supp. 2d 985 (S.D. Ohio 2001) ...................................................................19
*Isabel v. City of Memphis*,
   404 F.3d 404 (6th Cir. 2005).........................................................................................21
*Kain v. The Economist Newspaper NA, Inc.*,
   Case No. 4:21-cv-11807-MFL-CI (E.D. Mich.) .................................... 1, 8, 14, 24
*Kinder v. Meredith Corp.*,
   Case No. 14-cv-11284-TLL (E.D. Mich. May 18, 2016).......................... 3, 12, 14
*Kirchoff v. Flynn*,
   786 F.2d 320 (7th Cir. 2006).........................................................................................10
*Kogan v. AIMCO Fox Chase L.P.*,
   193 F.R.D. 496 (E.D. Mich. 2000) ..........................................................................17
*Kokoszki v. Playboy Enterprises, Inc.*,
   Case No. 2:19-cv-10302 (E.D. Mich. Aug. 19, 2020).............................. 8, 12, 14
*Kolinek v. Walgreen Co.*,
   311 F.R.D. 483 (N.D. Ill. 2015).......................................................................... 9, 10, 11
*Lasalle Town Houses Coop Assoc. v. City of Detroit*,
   2016 WL 1223354 (E.D. Mich. Mar. 29, 2016) ....................................................7
*Loftus v. Outside Integrated Media, LLC*,
   Case No. 2:21-cv-11809 (E.D. Mich. Aug. 9, 2022)........................... 2, 8, 14, 24
*Lyngaas v. Curaden AG*,
   2020 WL 5249203 (E.D. Mich. Sept. 3, 2020).....................................................9
*Mathias v. Accor Econ. Lodging, Inc.*,
   347 F.3d 672 (7th Cir. 2003).........................................................................................13
*Moulton v. U.S. Steel Corp.*,
   581 F.3d 344 (6th Cir. 2009).........................................................................................13
*N.Y.S. Teachers' Ret. Sys. v. Gen. Motors Co.*,
   315 F.R.D. 226 (E.D. Mich. 2016) ...........................................................................11
*Nashel v. New York Times Co.*,
   2022 WL 6775657 (E.D. Mich. Oct. 11, 2022) ............................................. 7, 18
*Nilsen v. York Cty.*,
   400 F. Supp. 2d 266 (D. Me. 2005) .........................................................................10
*Palmer Park Square, LLC v. Scottsdale Ins. Co.*,
   878 F.3d 530 (6th Cir. 2017).........................................................................................6

*Perdue v. Kenny A. ex rel. Winn*,
   559 U.S. 542 (2010) ..........................................................................12
*Perlin v. Time Inc.*,
   Case No. 16-cv-10635-GCS (E.D. Mich. Oct. 15, 2018) ................................. 3, 14
*Pratt v. KSE Sportsman Media, Inc.*,
   586 F. Supp. 3d 666 (E.D. Mich. 2022)...........................................................7
*Ramey v. Cincinnati Enquirer, Inc.*,
   508 F.2d 1188 (6th Cir. 1974)................................................. 13, 22, 23
*Stanley v. U.S. Steel Co.*,
   2009 WL 4646647 (E.D. Mich. Dec. 8, 2009) ...................................................16
*Van Horn v. Nationwide Prop. & Cas. Ins. Co.*,
   436 F. App'x 496 (6th Cir. 2011) ........................................................21

**Statutes**

The Michigan PPPA, M.C.L. § 445.1712........................................................ passim

**Rules**

Fed. R. Civ. P. 12(b)(6).................................................................... 7, 18
Fed. R. Civ. P. 23 ..............................................................................5
Fed. R. Civ. P. 23(h) ........................................................................3, 9
Fed. R. Civ. P. 26 ..............................................................................4

The Settlement Agreement ("SA") negotiated by Plaintiffs and Class Counsel with KSE Sportsman Media, Inc. ("KSE") brought under the Michigan Preservation of Personal Privacy Act (the "PPPA"), and preliminarily approved by this Court on August 25, 2023, represents the best-ever per-class member recovery in a PPPA settlement by a wide margin. ECF No. 80. The SA—the result of multiple mediations with different federal judges, including a full-day mediation the Honorable Gerald E. Rosen (Ret.) (former E.D. Mich. Chief Judge, now a mediator at JAMS (Detroit))—creates a $9,500,000 non-reversionary cash Settlement Fund ("SF") which equates to a per-Class Member aggregate recovery of $655, from which every Settlement Class Member ("SCM") (except for those who request exclusion from the SA) will <u>automatically</u> receive (i.e., without filing a claim form) a *pro rata* cash payment of roughly $420, far exceeding the per-class member recovery in previous PPPA settlements. The Settlement also provides meaningful prospective relief by requiring KSE to refrain, in perpetuity, from disclosing to any third party the subscription information of any of the Michigan-based subscribers to any of its publications.

Moreover, the Settlement compares very favorably with settlements in similar case, including those recently approved by this Court. *See, e.g.*, *Strano v. Kiplinger Washington Editors, Inc.*, No. 1:21-cv-12987 PageID.1900 (E.D. Mich. Oct. 11, 2023) (approving class settlement paying roughly $248 per class member); *Moeller*

*v. The Week Publications, Inc.*, No. 1:22-cv-10666 PageID.2338 (E.D. Mich. Oct. 11, 2023) (same); *Perlin v. Time, Inc.* (No. 2:16-cv-10635 PageID.778-789) (E.D. Mich.) (approving class settlement to pay between $25-50 per claimant).

Obtaining this relief did not come easily. Plaintiffs shouldered significant risk, conducted a lengthy pre-filing investigation, engaged in dispositive motion practice, formal discovery, including third-party discovery, and conducted contentious, arm's-length negotiations, including three full-day mediations overseen by former federal judges: the Hon. Wayne R. Andersen (Ret.), the Hon. James F. Holderman (Ret.), and the Hon. Gerald E. Rosen (Ret.).

The unprecedented result, and the efficiency in which it was obtained, would not have been possible without the significant investments of time and resources in the prosecution of PPPA actions over the past decade by Class Counsel and Plaintiffs' other counsel (together, "Plaintiffs' Counsel"), providing knowledge, experience, and well-developed body of PPPA jurisprudence necessary to achieve the SA.[1] This accumulated knowledge and experience, in a niche area of law, to efficiently obtain this SA weighs strongly in favor of requested fee's reasonableness.

---

[1] In granting final approval to a similar class in *Loftus v. Outside Integrated Media, LLC*, No. 2:21-cv-11809 (E.D. Mich. Aug. 9, 2022), the Honorable Mark A. Goldsmith commended the work of the attorneys representing the class – the same counsel here – and noted that "the class has benefited in a concrete way" from the "very effective work" done by Plaintiff's counsel. *See* **Exhibit F** hereto, 8/9/22 Hearing Tr. at 7:9-8:2 (approving Class Counsel's attorneys' fees request for 35% "where the lawyers did produce significant results for the class in very short order").

Accordingly, Plaintiffs respectfully requests pursuant to Rule 23(h) that the Court approve attorneys' fees, costs, and expenses of 35% of the SF, or $3,325,000, and service awards of $1,000 each for Plaintiffs for their service as class representatives. The requested fee is an equal percentage to that approved by this Court in other PPPA class settlements. *See Strano*, No. 1:21-cv-12987 PageID.1897–1901 (awarding 35% of $6.845 million settlement in PPPA case paying roughly $248 per class member); *Moeller*, No. 1:22-cv-10666 PageID.2335–2339 (awarding 35% of $5 million settlement in PPPA case paying roughly $248 per class member); *Kinder v. Meredith Corp.*, 1:14-cv-11284 PageID.2766-2772 (E.D. Mich. May 18, 2016) (awarding 35% of $7.5 million settlement in PPPA case paying roughly $50 per claimant). And it is a <u>lesser</u> percentage than other courts in this District have approved. *Perlin v. Time Inc.*, No. 2:16-cv-10635 PageID.1087-1095 (E.D. Mich. Oct. 15, 2018) (awarding 40% of $7.4 million settlement resolving PPPA claim paying between $25-$50 per claimant). The SA here outperforms every PPPA settlement in structure and per-class member recovery, by a wide margin. This Court should approve the requested fees, costs, expenses, and service award.

## I.     BACKGROUND

On June 15, 2021, Plaintiffs filed the Class Action Complaint against KSE. Compl., ECF No. 1. Plaintiffs allege that before July 30, 2016, KSE disclosed information related to its customers' magazine subscription histories and personal

reading habits without their consent in violation of the PPPA. *Id.* ¶¶ 1–10, 42–49.

From the start, the Parties engaged in direct communication, and per Rule 26, discussed early resolution. *See* **Exhibit A** hereto, Declaration of E. Powell Miller in Support of Plaintiffs' Motion for Attorneys' Fees, Costs, Expenses, and Service Award ("EPM Decl.") ¶ 7. To that end, the Parties agreed to engage in mediative efforts.[2] *Id.* The Parties went through an extensive settlement process involving several mediations with different mediators. *Id.* Throughout the process, KSE produced information to Plaintiffs' counsel concerning class size, KSE's financial condition, and KSE's ability to withstand a class-wide judgment. *Id.* ¶ 8. The Parties also engaged in written and document discovery, which included the production of thousands of pages of documents, numerous third-party subpoenas, and a motion to compel (ECF No. 40). *Id.* The information obtained by Plaintiffs was then subjected to a detailed analysis by a forensic accountant hired by Class Counsel. *Id.* Ultimately, the Parties, with the assistance of Judges Rosen and Holderman, reached agreement on a framework for a class-wide resolution of the case, which they memorialized into a term sheet on April 26, 2023. *Id.* ¶ 9. In the months following, the Parties negotiated and finalized the full-form SA (attached to the Decl. as Ex. 1), conducted

---

[2]  After an unsuccessful mediation, KSE filed its Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1)&(6), arguing, *inter alia*, that Plaintiffs' claims were time-barred by a three-year statute of limitations and that Plaintiffs lack Article III standing to pursue their claims. ECF No. 17. On February 15, 2022, after full briefing, the Court denied KSE's Motion to Dismiss in its entirety. ECF No. 24.

a competitive bidding process and selected a proposed Settlement Administrator, and worked together to finalize the Settlement Class List, which included the assistance of Plaintiffs' database management expert. *Id.* ¶ 10.

On August 25, 2023, the Court preliminary approved the SA. ECF No. 80. Since then, Plaintiffs' Counsel has worked with the Settlement Administrator to administer the Notice Plan.[3]

### A.    The Litigation and Work Performed to Benefit the Class

Beginning in 2015, Plaintiffs' Counsel began investigating and litigating cases against publishers for alleged PPPA violations. The theory of liability was novel. Although a few other cases had been filed against publishers, none had progressed through class certification or summary judgment. PF Decl. ¶ 4. Despite the uncertainty, Plaintiffs' Counsel litigated numerous PPPA issues of first impression, such as: (i) whether an alleged violation of the statute was sufficient to confer Article III standing; (ii) whether the statute violated the First Amendment on its face or as applied; (iii) whether plaintiffs could pursue class action claims for statutory damages in federal court under Rule 23 in light of MCR 3.501(A)(5); and (iv) whether a 2016 amendment to the statute applied retroactively. *See, e.g.*, *Boelter*

---

[3] *See* **Exhibit B** hereto, Declaration of Philip L. Fraietta in Support of Plaintiffs' Motion for Attorneys' Fees, Costs, Expenses, and Service Award ("PF Decl.") ¶ 18; & **Exhibit C** hereto, Declaration of Frank S. Hedin in Support of Plaintiffs' Motion for Attorneys' Fees, Costs, Expenses, and Service Award ("FH Decl.") ¶ 23.

*v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427 (S.D.N.Y. 2016); *Boelter v. Advance Magazine Publishers Inc.*, 210 F. Supp. 3d 579 (S.D.N.Y. 2016); *see also id.* ¶ 5. Plaintiffs' Counsel then conducted vigorous discovery, including in-depth research into data industry practices, such as data appending and data cooperatives, and ultimately third-party discovery from those companies. Through that discovery, Plaintiffs' Counsel amassed a wealth of institutional knowledge regarding the data industry. *Id.* ¶ 6; FH Decl. ¶ 20. Plaintiffs' Counsel won a motion for summary judgment in *Boelter v. Hearst Commc'ns, Inc.*, 269 F. Supp. 3d 172 (S.D.N.Y. 2017). This summary judgment victory provided a roadmap to liability for publishers based on the above data industry practices. PF Decl. ¶ 7.

Plaintiffs' Counsel then successfully argued that the amended version of the PPPA does not apply to claims that accrued prior to its effective date of 7/31/16. *Horton v. GameStop, Corp.*, 380 F. Supp. 3d 679, 683 (W.D. Mich. 2018) (holding amended version of the PPPA does not apply to claims filed after its effective date of 7/31/16 where the alleged disclosures occurred prior to the effective date). FH Decl. ¶ 14; PF Decl. ¶ 8. And, in the above PPPA litigation, it was assumed that PPPA cases were governed by a 3-year statute of limitations. FH Decl. ¶ 17; PF Decl. ¶ 9; *see, e.g.*, *Hearst*, 269 F. Supp. 3d at 172; *Edwards v. Hearst Commc'ns, Inc.*, 2016 WL 6651563 (S.D.N.Y. Nov. 9, 2016). Nonetheless, shortly before filing this case, Plaintiffs' Counsel recognized that the Sixth Circuit's opinion in *Palmer*

*Park Square, LLC v. Scottsdale Ins. Co.*, 878 F.3d 530 (6th Cir. 2017), and relevant Michigan authority, arguably provided a basis for applying a 6-year limitation period to PPPA claims, and thus may provide an avenue for class recovery under the original PPPA. After that extensive pre-suit investigative analysis, and motion practice, this Court issued the first-of-its-kind decision finding that a six-year statute of limitations applies to PPPA claims. ECF No. 24; FH Decl. ¶ 19; PF Decl. ¶ 9.

## II.  SUMMARY OF THE SETTLEMENT

The SA delivers an instant benefit to 14,503 SCMs as it creates a non-reversionary $9,500,000 SF, with a per-Class Member aggregate recovery of $655, and SCMs will *automatically* be mailed a *pro rata* check of roughly $420, SA ¶¶ 1.33, 2.1, providing meaningful relief to SCMs, in a timely and streamlined manner.

## III.  THE REQUESTED SERVICE AWARD REFLECTS MR. PRATT'S AND MR. JONES' ACTIVE INVOLVEMENT HERE AND SHOULD BE APPROVED

Service awards are often awarded in common-fund cases in the 6th Circuit. *Hadix v. Johnson*, 322 F.3d 895, 898 (6th Cir. 2003). The following factors are used in approving such an award: (1) actions to protect the class's interests and if that resulted in a substantial benefit to the class; (2) financial risk the class representative assumed; and (3) time and effort the class representative dedicated. *Lasalle Town Houses Coop Assoc. v. City of Detroit*, 2016 WL 1223354, at *7 (E.D. Mich. Mar. 29, 2016). Based on these factors, service awards of $1,500 each for Mr. Pratt and

Mr. Jones are reasonable and are less than the amount awarded to the class representatives in other PPPA cases: *Kokoszki v. Playboy Enterprises, Inc.*, 2:19-cv-10302 PageID.1066 (E.D. Mich. Aug. 19, 2020) (awarding $5,000), *Loftus*, No. 2:21-cv-11809 PageID.1957 (same), and *Kain v. The Economist Newspaper NA, Inc.*, No. 4:21-cv-11807 PageID.1369 (same), and a fraction of the amounts awarded in comparable settlements. *See, e.g.*, *In re CMS Energy ERISA Litig.*, 2006 WL 2109499, at *3 (E.D. Mich. June 27, 2006) (awarding class representatives $15,000).

Mr. Pratt and Jones spent considerable time protecting the class's interests. *See* **Exhibit D** hereto, Declaration of Richard Pratt ("RP Decl."); & **Exhibit E** hereto, Declaration of Larry Jones ("LJ Decl."). They assisted in investigating their claims, detailed their magazine subscription histories, and aided in drafting the Complaint. RP Decl. ¶¶ 3-4; LJ Decl. ¶¶ 3-4; EPM Decl. ¶ 26. They searched for and produced documents to KSE in discovery. RP Decl. ¶ 7; LJ Decl. ¶ 7; EPM Decl. ¶ 28. They have been actively consulted throughout the settlement process—through this filing. RP Decl. ¶¶ 6-9; LJ Decl. ¶¶ 6-9; PM Decl. ¶¶ 26-29. Thus, the Service Awards are fair, reasonable, and should be approved. *See* Order, ECF No. 80, PageID.1812 ("Lead Plaintiffs' incentive award is only $1,500 . . . so there are no concerns about the incentive award creating a misalignment of interests or inequality.").

## IV.   THE REQUESTED ATTORNEYS' FEES AND COSTS ARE REASONABLE AND SHOULD BE APPROVED

The requested fee and cost award of $3,325,000, 35% of the common fund, is reasonable and merits approval. Courts may award "reasonable attorney's fees and nontaxable costs that are authorized by law or the parties' agreement." Fed. R. Civ. P. 23(h). The SA provides that Plaintiffs' Counsel may petition the Court for an award of attorneys' fees, costs, and expenses up to 35% of the SF. SA, ¶ 8.1.

As set forth below, the Court should calculate Plaintiffs' Counsel's fee using the "percentage-of-the-fund" method and find that the requested award of 35% of the SF is reasonable and well supported by applicable Sixth Circuit law.

### A.   The Percentage Method Should Be Used to Calculate Fees

"When awarding attorney fees in a class action, district courts generally have discretion to choose whether to calculate fees based on the lodestar method—multiplying the number of hours reasonably expended by a reasonable hourly rate—or based on the percentage method—awarding class counsel a percentage of the monies recovered." *Lyngaas v. Curaden AG*, 2020 WL 5249203, at *1 (E.D. Mich. Sept. 3, 2020) (citing *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016)). "As the two methods measure the fairness of the fee . . . , it is necessary that district courts be permitted to select the more appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." *Id.*, at *1.

9

In "choosing between the percentage and lodestar approaches," courts "look to the calculation method most commonly used in the marketplace at the time such a negotiation would have occurred." *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 500–01 (N.D. Ill. 2015); *see also, e.g.*, *Nilsen v. York Cty.*, 400 F. Supp. 2d 266, 278 (D. Me. 2005) ("There is good reason for using a market-oriented approach. If a consumer wanted to determine a reasonable plumber's, mechanic's or dentist's fee, the consumer would have to look to the market. Why should lawyers be different?").

With respect to consumer class actions in particular, where "the normal practice . . . is to negotiate a fee arrangement based on a percentage of the plaintiffs' ultimate recovery," *Kolinek*, 311 F.R.D. at 501, the federal judiciary is in near unanimous agreement that the percentage-of-the-fund approach best yields the fair market price for the services provided by counsel to the class for purposes of determining a reasonable attorneys' fee award at settlement. *See Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 2006) ("When the prevailing method of compensating lawyers for similar services is the contingent fee, then the contingent fee *is* the market rate."); *see, e.g.*, *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 532 (E.D. Mich. 2003) ("This Court's decision to apply the percentage-of-the-fund method is consistent with the majority trend[.]"). This is especially true where, as in this case, a settlement establishes a non-reversionary common fund for the benefit of the Class. *See Fournier v. PFS Invs., Inc.*, 997 F. Supp. 828, 831–32 (E.D. Mich.

1998) ("the percentage of the fund method . . . allows for a more accurate approximation of a reasonable award for fees."). Thus, in recent non-reversionary common fund cases, like here, district courts of the Sixth Circuit have applied the percentage-of-the-fund method in determining a reasonable attorneys' fee award. *See In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 502 (E.D. Mich. 2008) ("the Sixth Circuit has observed a 'trend towards adoption of a percentage of the fund method in common fund cases'").

And the percent-of-the-fund method best replicates the *ex ante* market value of the services that counsel provided to the Class. It is the means by which an informed Class and counsel would have established counsel's fee at the outset of the litigation. *See Kolinek*, 311 F.R.D. at 501 (in consumer class-action litigation, "the normal practice [is] to negotiate a fee arrangement based on a percentage of the plaintiffs' ultimate recovery"). The percentage-of-the-fund method also better aligns counsel's interests with those of the Class because it bases the fee on the results the lawyers achieve for their clients rather than on the number of motions they file, documents they review, or hours they work, and it avoids some of the problems the lodestar-times-multiplier method can foster (such as encouraging counsel to delay resolution of the case when an early resolution may be in their clients' best interests). *N.Y.S. Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 243 (E.D. Mich. 2016) (explaining that while "[t]he lodestar method better accounts for the amount

11

of work done . . . the percentage of the fund method more accurately reflects the results achieved"). It is also simpler to apply. *See also, e.g.*, *Fournier*, 997 F. Supp. at 832 (noting that the percentage-of-the-fund method provides the "benefit" of "readily ascertainable fee amounts"); *Hillson v. Kelly Servs. Inc.*, 2017 WL 3446596, at *2 (E.D. Mich. Aug. 11, 2017) (stating that "[t]he percentage-of-recovery approach is 'easy to calculate'" and "'establishes reasonable expectations on the part of plaintiffs' attorneys.'") (citation omitted).[4] As explained in *Cardizem*:

> The lodestar [method] remains difficult and burdensome to apply, and it positively encourages counsel to run up the bill, expending hours that are of no benefit to the class. Moreover, use of the lodestar may result in undercompensation of talented attorneys. Experienced practitioners know that a highly qualified and dedicated attorney may do more for a class in an hour than another attorney could do in ten. The lodestar can end up prejudicing lawyers who are more efficient with a less expenditure of time.

*In re Cardizem CD Antitrust Litig.* (E.D. Mich. Nov. 26, 2002)[5]. For these reasons, the percentage-of-the-fund method (rather than the lodestar method) has been used to calculate a reasonable attorneys' fee award in all other PPPA class actions to have settled in this District, including by this Court. *See, e.g.*, *Strano*, No. 1:21-cv-12987 PageID.1900; *Moeller*, No. 1:22-cv-10666 PageID.2338; *Kinder*, 1:14-cv-11284

---

[4] The lodestar approach would create a perverse incentive for Class Counsel to reject or delay accepting the Settlement now before the Court merely to bill more hours through a litigation strategy that would be more wasteful, unnecessary, and risky.

[5] By contrast, the lodestar approach is most appropriately applied in federal fee-shifting cases. *See, e.g.*, *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010).

PageID.2771; *Higgins v. TV Guide Magazine, LLC*, 2:15-cv-13769 PageID.1201 (E.D. Mich. Dec. 19, 2018); *Kokoszki*, 2:19-cv-10302 PageID.1066.

Accordingly, consistent with the recent trend in the Sixth Circuit, including the fee decisions in the PPPA cases cited above, this Court should calculate Plaintiffs' Counsel's fee using the percentage-of-the-fund method.

### B.    The Reasonableness of the Requested Fees and Costs Is Supported by This Circuit's Six-Factor Test

The Sixth Circuit in *Ramey* articulates six "germane" factors to determining reasonableness of a requested percentage to award as attorneys' fees: (1) value of benefit to the class; (2) society's stake in rewarding attorneys who produce the settlement's benefits, to maintain an incentive to others; (3) whether the work was performed on a contingent fee basis; (4) complexity of the litigation; (5) skill and standing of counsel on both sides; and (6) the value of the legal services performed on an hourly basis. *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974); *Gascho*, 822 F.3d at 280 (describing these factors as "germane" to the fee inquiry); *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009).

A "reasonable" fee in common-fund case typically ranges "from 20 to 50 percent." *Shane Grp. v. BCBS of Mich.*, 2015 WL 1498888, at *15 (E.D. Mich. Mar. 31, 2015); *see also Mathias v. Accor Econ. Lodging, Inc.*, 347 F.3d 672, 677 (7th Cir. 2003) (noting the "usual 33-40 percent contingent fee" to plaintiff's lawyers). The award is calculated as percentage "from the fund as a whole." *Boeing Co. v. Van*

*Gemert*, 444 U.S. 472, 478 (1980); *Gascho*, 822 F.3d at 282 (the "[a]ttorney's fees are the numerator" and "the dollar amount of the Total Benefit to the class (including the benefit to class members, attorney's fees, and [potentially] the costs of administration)" is the denominator). Courts in this District, and this Court in *Strano*, *Moeller*, and *Kinder*, have awarded 35%-40% of common funds in PPPA cases.[6]

Here, where Plaintiffs' Counsel achieved the best per-class member recovery ever in a PPPA case, by a wide margin, the requested award is reasonable.

### 1.   Counsel Have Secured a Valuable Benefit for the Class

The value of the benefit to the class is the most vital factor in assessing the reasonableness of fees. *Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. 283, 299 (W.D. Ky. 2014). This includes considering tangible and intangible benefits. *See Gascho*, 822 F.3d at 282 (must consider cash and noncash settlement components). The risk of continued litigation is also a factor. *Dick*, 297 F.R.D. at 299.

The SA here provides for an excellent recovery, creating a $9,500,000 non-reversionary cash SF for the benefit of 14,503 SCMs. Deducting notice and administration costs and the requested attorneys' fees and service award, SCMs will *automatically* be mailed a check for roughly $420, a payment far in excess, per-class

---

[6] *See Strano*, No. 1:21-cv-12987 PageID.1900; *Moeller*, 1:22-cv-10666 PageID. 2338; *Kinder*, 1:14-cv-11284 PageID.2771; *Higgins*, 2:15-cv-13769 PageID.1201; *Perlin*, 2:16-cv-10635 PageID.1093; *Kokoszki*, 2:19-cv-10302 PageID.1066; *Loftus*, 2:21-cv-11809 PageID.1957; *Kain*, 4:21-cv-11807 PageID.1368.

member, of every previous PPPA settlement, and in many of those, class members were required to file claims and, accordingly, 80-90% did not receive any payment.

Weighed against the risks of continued litigation—including the Court's decisions on dispositive motions, additional fact and expert discovery necessary for trial, and other potential obstacles that could strip the class of any recovery—the value of the immediate monetary recovery that the SA affords thus supports the reasonableness of the requested attorneys' fees. The first factor is well satisfied.

### 2. Societal Stake in Complex Consumer Privacy Litigation

Society has a strong stake in rewarding attorneys who produce the type of benefits achieved by the SA here. *See In re Cardizem*, 218 F.R.D. at 533; *see also Gascho*, 822 F.3d at 287 ("Consumer class actions . . . have value to society . . . as deterrents to unlawful behavior . . . and as private law enforcement regimes that free public sector resources."). It is thus in society's interest to encourage litigation that protects important consumer privacy rights that would not otherwise be safeguarded. *See In re Rio Hair Naturalizer Prods. Liab. Litig.*, 1996 WL 780512, at *17 (E.D. Mich. Dec. 20, 1996) ("Without compensation to those who are willing to undertake the inherent complexities and unknowns of consumer class action litigation, enforcement of the federal and state consumer protection laws would be jeopardized."); *In re Cardizem*, 218 F.R.D. at 534 ("Encouraging qualified counsel to bring inherently difficult and risky but beneficial class actions . . . benefits

society."). When individual class members seek relatively small statutory damages, "[e]conomic reality dictates that [their] suit proceed as a class action or not at all." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974).

Society has a vital interest in incentivizing complex litigation to protect consumer privacy. Class actions are the most realistic means of safeguarding this privacy under the PPPA, especially given that consumers are often unaware of the ongoing privacy rights violations (here, it was alleged that KSE secretly disclosed its customers' personal reading information). The alternative would have been no enforcement, and the allegedly unlawful conduct would have continued unabated.

Finally, the Class's reaction to the requested fee award also confirms its fairness and reasonableness. *See In re Delphi*, 248 F.R.D. at 504 ("The Class's overwhelming favorable response lends further support to the conclusion that the requested fee award is fair and reasonable."). The Notices here specifically stated that counsel intends to apply for a fee of up to 35% of the SF. Since dissemination, *not one* SCM has submitted an objection to the SA. Thus, the Class, as a microcosm of society, has recognized the societal value of this litigation by giving the SA a resounding stamp of approval. This factor thus supports the requested award.

### 3. Counsel Took the Case on a Contingent Basis, Confronting Significant Risk of Nonpayment

Undertaking an action on a contingency basis lends additional support to the reasonableness of a requested fee award. *See In re Cardizem*, 218 F.R.D. at 533;

*Stanley v. U.S. Steel Co.*, 2009 WL 4646647, at *3 (E.D. Mich. Dec. 8, 2009) ("Numerous cases recognize that the contingent fee risk is an important factor in determining the fee award."). When attorneys invest significant time and resources in pursuing the litigation, despite the risk they will not be compensated, this factor is generally satisfied. *In re Rio*, 1996 WL 780512, at *18; *Kogan v. AIMCO Fox Chase L.P.*, 193 F.R.D. 496, 504 (E.D. Mich. 2000). The contingent nature of the case is amplified where class counsel face a formidable defendant.

Plaintiffs' Counsel pursued the action on a contingency basis, and as such, during litigation, Plaintiffs' Counsel invested significant time, effort, and resources without any compensation. EPM Decl. ¶ 22; FH Decl. ¶ 21; PF Decl. ¶ 11. Plaintiffs' Counsel, pre-filing, extensively investigated the facts and legal issues, which was informed by the vast experience and expertise they had accumulated during their prosecution of numerous other PPPA litigations and guided by the well-established body of PPPA jurisprudence those efforts had produced. EPM Decl. ¶¶ 5-6; FH Decl. ¶¶ 13-23; PF Decl. ¶ 3-10. Cognizant of the risk of nonpayment, Plaintiffs' Counsel nonetheless embarked on a fact-intensive investigation of KSE's practices, filed the case, and engaged in dispositive motion practice and discovery. EPM Decl. ¶ 5; FH Decl. ¶¶ 19-20. Plaintiffs' Counsel also paid for and participated in the full-day mediations with Chief Judge Rosen, Judge Holderman, and Judge Andersen. PF Decl. ¶ 12; FH Decl. ¶ 25. Plaintiffs' Counsel fronted this investment of time and

resources, despite the significant risk of nonpayment inherent in this case. EPM Decl. ¶ 22; PF Decl. ¶ 11; FH Decl. ¶¶ 21, 24.

And given the defenses mounted by KSE, led by experienced defense counsel, success on the legal issues presented here was far from certain. EPM Dec. ¶¶ 15–17. But for the Settlement, Plaintiffs would have to overcome numerous defenses, such as: (i) the PPPA does not prohibit the disclosure of the magazine subscriptions information at issue (because third-party recipients of the disclosures are KSE's agents), (ii) that KSE also provided proper notice of its practices, and (iii) that the PPPA is an impermissible special law. EPM Decl. ¶ 17.

In considering the reasonableness of a fee request in a contingency class action settlement, courts consider how the legal market would have assessed the case's risk at its inception and, in turn, how the market's risk assessment would have affected a hypothetical *ex ante* fee negotiation between counsel and potential client. *See Goodell v. Charter Commc'ns, LLC*, 2010 WL 3259349, at *1 (W.D. Wis. Aug. 17, 2010) ("The question is not how risky the case looks when it is at an end but how the market would have assessed the risks at the outset."). Here, Plaintiffs' Counsel began their pre-filing investigation in late 2020, when there were no other PPPA claims being prosecuted against KSE (or others) by any attorneys in the country. FH Decl. ¶ 20. Plaintiffs' claims here depended on counsel successfully arguing that a six-year limitation period applied. *See id.* ¶¶ 18-19. And Plaintiff faced risk on a

Rule 12(b)(6) motion for failure to state a claim. *See Nashel v. New York Times Co.*, 2022 WL 6775657 (E.D. Mich. Oct. 11, 2022); *see also Bozung v. Christianbook, LLC*, 2023 WL 2385004 (W.D. Mich. Mar. 6, 2023). Considering these significant, threshold risks, this litigation was likely viewed as too risky to pursue by other counsel. Plaintiffs' Counsel nonetheless plowed forward and negotiated the SA presently before the Court for approval. And no other counsel came forward to compete for control, to propose to the Court that it be appointed lead counsel at a lower fee structure, or to offer to share in the case's risk and expense with Plaintiffs' Counsel—establishing that Plaintiffs' Counsel would have been able to obtain the requested Fee Award of 35% of the SF in an *ex ante* negotiation with the Class. Moreover, despite the serious risk of non-recovery to the Class, at the outset, Plaintiffs' Counsel nevertheless expended a significant amount of attorney time and expenses investigating, prosecuting, and resolving the claims without any guarantee of payment. *See* EPM Decl. ¶¶ 5-6; PF Decl. ¶¶ 4-6; FH Decl. ¶¶ 18-21. And their law firms were forced to forego representing clients in other matters they otherwise would have taken on. *See* EPM Decl. ¶ 22; PF Decl. ¶ 11; FH Decl. ¶ 24. Plaintiffs' Counsel should be rewarded for devoting substantial resources investigating and prosecuting the case on behalf of the Class. Thus, the requested Fee Award reasonably compensates Plaintiffs' Counsel for assuming the risk at the outset and embarking on time-consuming and expensive litigation for the Class's benefit.

### 4.   The Complexity of the Litigation Supports the Requested Fees

The complexity of the litigation reinforces the reasonableness of the requested fee award. *In re Cardizem*, 218 F.R.D. at 533. "[M]ost class actions are inherently complex." *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001). This case is no exception. It involved multiple layers of factual complexity, much of which was obscured at the outset due to KSE's alleged concealment of its practices from consumers. This required extensive preliminary investigation into KSE's business practices, its methods of data collection and aggregation, and the nature of its relationships with various third-party data companies. FH Decl. ¶ 20.

The case also involved complex legal issues. KSE challenged the merits of the claims, raising a statute of limitations defense and were prepared to assert numerous other defenses to the merits and the propriety of class certification. FH Decl. ¶¶ 19. This further supports the reasonableness of the requested fees.

### 5.   The Parties Are Both Represented by Skilled Counsel

The skill of the Parties' counsel, including professionalism and experience, also validates the reasonableness of the requested fee award. *In re Rio*, 1996 WL 780512, at *18. And "the ability of [counsel] to negotiate a favorable settlement in the face of formidable legal opposition further evidences the reasonableness of the fee award requested." *In re Delphi*, 248 F.R.D. at 504. Plaintiffs' Counsel have significant experience litigating class actions of similar size, scope, and complexity

as here. EPM Decl. ¶¶ 24-25; PF Decl. ¶¶ 4-10, 13-17; FH Decl. ¶¶ 3-19. They regularly engage in complex litigation involving consumer privacy, including PPPA cases. *See id.* Plaintiffs' Counsel faced highly skilled counsel, as KSE is represented by an experienced law firm and it made clear that, but for the Settlement, it would dispute its liability and assert multiple defenses. EPM Decl. ¶¶ 15, 17. Given the skill of counsel on both sides, the requested fee award's reasonableness is apparent.

### 6.    The Hourly Value of the Legal Services Is Reasonable

The final factor assesses the value of the legal services performed on an hourly basis, also known as the "lodestar." *See Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005). Here, as discussed, the percentage-of-the-fund method, not the lodestar method, is the appropriate method for computing a reasonable fee. The potential use for counsel's lodestar here would be to "cross-check" that amount with the amount of fees requested by counsel as a percentage of the fund. Even then, however, a cross-check of counsel's lodestar is "not required." *Arp v. Hohla & Wyss Enterprises, LLC*, 2020 WL 6498956, at *7 (S.D. Ohio Nov. 5, 2020); *see also Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 501 (6th Cir. 2011)); *Est. of McConnell v. EUBA Corp.*, 2021 WL 1966062, at *6 (S.D. Ohio May 17, 2021) ("lodestar cross-check" is "not required"). Rather, where the percentage-of-the-fund method is used to compute counsel's fee, a lodestar cross-check is optional and discretionary. *See Van Horn*, 436 F. App'x at 501 (finding that district courts

have complete discretion when deciding to calculate attorneys' fees based on the percentage-of-the-fund or lodestar methods; thus a cross-check analysis is optional). *In re Delphi*, 248 F.R.D. at 503 (applying percentage-of-the-fund-method in awarding fees in common-fund settlement, without addressing *Ramey* factor related to "the value of the services on an hourly basis"); *Fournier*, 997 F. Supp. at 833.

Here, like in *Delphi*, *Fournier*, and *Arp*, the SA's background demonstrates that there is no need to "cross-check" the requested fee (35% of the SF) with the lodestar value of the time Plaintiffs' Counsel expended on the prosecution of solely this case. The non-reversionary common-fund SA achieved here is a direct result of Plaintiffs' Counsel's multi-year investigation into certain disclosure practices in effect in segments of the publishing industry in 2015-16, Plaintiffs' Counsel's extensive analysis of the applicable statute of limitations (and other threshold issues), and the significant time (thousands of hours) and other resources Plaintiffs' Counsel expended prosecuting related litigations and developing favorable bodies of PPPA jurisprudence on issues of critical importance to the claims alleged in this case. *See* PF Decl. ¶¶ 4-10; FH Decl. ¶¶ 13-18. This included methodically reviewing historical data cards found in cached Internet archives to identify companies whose practices violated the PPPA, FH Decl. ¶ 20, and litigating (and prevailing on) critically important issues such as the retroactivity of the Michigan legislature's amendment to the PPPA that became effective on 7/31/16 and the applicability of

the catch-all six-year limitation period to these claims. FH Decl. ¶¶ 14-19; PF Decl. ¶ 8-9. Thus, the SA, and this case, should not be viewed in a vacuum, but rather as part of a multi-year project in which counsel devoted substantial time, money, and resources for the benefit of Michigan consumers (i.e. the SCMs), on a contingency basis without any guarantee of recovering fees for their work or reimbursement for out-of-pocket expenses. *See* PF Decl. ¶ 11; FH Decl. ¶ 22 ("The excellent result we obtained in this case, and the efficiency with which we obtained it, would not have been possible without the significant investments of time and other resources that we made towards the prosecution of the PPPA actions outlined above over the better part of the past decade, which provided us with the knowledge, experience, and well-developed body of PPPA jurisprudence necessary to achieve this Settlement.").

In *Arp*, the court awarded counsel a percentage of a common settlement fund as a fee, based on circumstances similar to those here. Noting that "courts have broad discretion when it comes to awarding a reasonable fee and when weighing the *Ramey* factors," the court explained why "a lodestar cross-check is not required" in all cases:

> What the lodestar . . . case does not reflect is Class Counsel's work in other [similar] cases that directly benefited the class . . . A firm's expertise in a niche area provides important context when analyzing the reasonableness of fees.
>
> It would be inequitable for a court to reduce a fee award based on a lodestar cross-check without considering a law firm's work in other cases raising the same or similar issues. That work may . . . substantially enhance the result Class Counsel is able to achieve [because] (1) successfully litigating a particular issue may improve

23

> the settlement prospects of cases raising the same issue, (2)
> developing expertise in a specific niche improves the firm's ability
> to effectively litigate within that niche, and (3) the work product
> from one case can be used in a case raising the same issue,
> resulting in value that is not adequately reflected in a lodestar.
>
> . . . the percentage-of-the-fund approach automatically factors into
> the award any enhancement to the settlement derived from Class
> Counsel's work in similar cases [and] encourages efficiency,
> judicial economy, and aligns interests of the lawyers with the class.

*Arp*, 2020 WL 6498956, at *7-8 (cleaned up). And in *Loftus*, Judge Goldsmith

adopted the same rationale in approving Class Counsel's request for 35% of the fund

without undertaking a lodestar cross-check:

> [T]he request for 35 percent is in line with what other courts have
> approved and especially in this context where the lawyers did
> produce significant results for the class in very short order . . .
> they should be rewarded appropriately for having done a very
> effective job as class counsel.

**Ex. 6** (Fin. Approv. Hrg. Tr., 7:21-8:1); *see also Kain*, 4:21-cv-11807 PageID.1368;

*Strano*, No. 1:21-cv-12987 PageID.1900; *Moeller*, No. 1:22-cv-10666 PageID.2338.

Plaintiffs' Counsel's request for a 35% fee here rests on the same set of

circumstances that supported awarding a percentage-of-the-fund fee in *Strano*,

*Moeller*, *Arp*, *Loftus*, and *Kain*. Similarly, Plaintiffs' Counsel should be rewarded

for efficiently achieving the best per-class member settlement ever in a PPPA case,

and for negotiating a non-reversionary structure that automatically provides

*meaningful* relief to all SCMs, as well as meaningful prospective relief. This result

would not have been possible without the thousands of hours of time Plaintiffs'

Counsel devoted, over several years, investigating the publishing industry's disclosure practices, developing law on each of the critically important issues underlying the PPPA claim alleged here, and protecting the ability of consumers to continue prosecuting these cases under the prior version of the statute. *See* EPM Decl. ¶¶ 5-6, PF Decl. ¶¶ 4-10; FH Decl. ¶¶ 13-22. In this context, the requested fee of 35% of the common fund is reasonable and appropriate, regardless of the hours expended solely on the prosecution of this case. *See id.* ("A firm's expertise in a niche area provides important context when analyzing the reasonableness of a fee").

Accordingly, this factor also confirms the reasonableness of the requested fee.

## V.   CONCLUSION

Based on the above, Plaintiffs respectfully request that the Court (1) approve attorneys' fees, costs, and expenses in the amount of 35% of the SF, or $3,325,000; (2) grant Mr. Pratt and Mr. Jones service awards of $1,500 in recognition of their efforts on behalf of the class; and (3) award any other relief as the Court deems reasonable and just.

Dated: October 16, 2023      Respectfully submitted,

By: */s/ E. Powell Miller*
E. Powell Miller (P39487)
**THE MILLER LAW FIRM, P.C.**
950 W. University Drive, Suite 300
Rochester, MI 48307
Tel: 248.841.2200
epm@millerlawpc.com

*Class Counsel*

Joseph I. Marchese (P85862)
Philip L. Fraietta (P85228)
**BURSOR & FISHER, P.A.**
1330 Avenue of the Americas, 32nd Floor
New York, New York 10019
Tel: 646.837.7150
jmarchese@bursor.com
pfraietta@bursor.com

Frank S. Hedin
Arun G. Ravindran
**HEDIN HALL LLP**
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: 305.357.2107
fhedin@hedinhall.com
aravindran@hedinhall.com

*Other Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I, E. Powell Miller, an attorney, hereby certify that on October 17, 2023, I served the above and foregoing ***Plaintiffs' Motion for Attorneys' Fees, Costs, Expenses, and Service Awards*** on all counsel of record by filing it electronically with the Clerk of the Court using the CM/ECF filing system.

*/s E. Powell Miller*
E. Powell Miller
