# Exhibit C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| RICHARD PRATT and LARRY JONES, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KSE SPORTSMAN MEDIA, INC.,<br><br>Defendant. | Case No. 21-cv-11404-TLL-PTM<br><br>Hon. Thomas L. Ludington<br><br>Mag. Judge Patricia T. Morris |

## DECLARATION OF FRANK S. HEDIN
## IN SUPPORT OF PLAINTIFFS' MOTION FOR
## ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARDS

I, Frank S. Hedin declare under penalty of perjury, pursuant to 28 U.S.C. § 1746 and based on my own personal knowledge, that the following statements are true:

1.     I am a partner at Hedin Hall LLP and Plaintiffs' other counsel in this action. I submit this declaration in support of Plaintiffs' Motion for Attorneys' Fees, Costs, Expenses, And Service Awards, filed concurrently herewith.

2.     I hereby incorporate Paragraphs 3-21, 26-29 of the Declaration of E. Powell Miller in support of Plaintiffs' Motion for Attorneys' Fees, Costs, Expenses, and Service Awards, filed herewith, as if fully stated herein.

## BACKGROUND AND EXPERIENCE

3.      I am a member in a good standing of the Florida Bar and the State Bar of California; the United States District Courts for the Southern District of Florida, Middle District of Florida, Northern District of California, Southern District of California, Central District of California, Eastern District of California, Western District of Michigan, Eastern District of Michigan, and Western District of Wisconsin; and the United States Courts of Appeals for the Second Circuit, Seventh Circuit, and Ninth Circuit, and am admitted to practice on a *pro hac vice* basis before several other federal district courts.

4.      I received my Bachelor of Arts from University of Michigan in 2008 and my Juris Doctor, *magna cum laude*, from Syracuse University College of Law in 2012.

5.      From August 2012 through November 2013, I served as law clerk to the Honorable William Q. Hayes, United States District Judge for the Southern District of California. During my clerkship with Judge Hayes, I managed half of the Court's civil docket and drafted orders and opinions at all stages of litigation in a wide range of matters, including numerous class actions.

6.      In early 2014, I began working as an associate attorney at Carey Rodriguez Milian Gonya LLP, a boutique litigation firm in Miami, Florida, where I focused my practice on the prosecution of consumer class actions.  *See, e.g.,*

*Farnham v. Caribou Coffee Co.*, No. 16-cv-295-wmc (W.D. Wisc.); *Chimeno-Buzzi v. Hollister Co., et al.*, No. 14-23120-CIV, 2015 WL 9269266 (S.D. Fla. Dec. 18, 2015); *Edwards v. Hearst Communications Inc.*, No. 15-cv-9279-AT (S.D.N.Y. Nov. 9, 2016); *Norberg v. Shutterfly, Inc.*, No. 15-cv-5351 (N.D. Ill. Dec. 29, 2015); *Rivera, et al. v. Google, Inc.*, No. 16-cv-2714 (N.D. Ill. Feb. 27, 2017).  I also represented both plaintiffs and defendants in intellectual property, employment, and general commercial litigation matters, on both hourly and contingent-fee arrangements.  I was partner and head of the firm's class action litigation practice at the time of my departure at the end of February 2018.

7.     My partner David W. Hall and I formed Hedin Hall LLP in March 2018. With offices in Miami, Florida and San Francisco, California, Hedin Hall focuses on consumer privacy and securities class actions.

8.     My firm has successfully prosecuted dozens of consumer data-privacy class action lawsuits in state and federal courts nationwide as court-appointed class counsel, including in matters alleging claims for violation of Michigan's Preservation of Personal Privacy Act ("PPPA").  *E.g.*, *Kokoszki v. Playboy Enterprises, Inc.*, No. 19-cv-10302-BAF (E.D. Mich. May 18, 2020) (class counsel in action alleging sale of *Playboy* subscribers' personal information in violation of the Michigan PPPA, obtained $3.8 million non-reversionary class settlement); *Rivera et al. v. Google, LLC*, No. 2019-CH-00990 (Cir. Ct. Cook Cty. Ill., Apr. 5,

2022) (class counsel in action alleging violations of Illinois's Biometric Information Privacy Act ("BIPA"), obtained $100 million non-reversionary class settlement); *Olsen, et al. v. ContextLogic Inc.*, No. 19CH06737 (Cir. Ct. Cook Cty. Ill., Jan 7, 2020) (class counsel in action alleging violations of the federal Telephone Consumer Protection Act ("TCPA"), successfully defeated defendant's motion to compel arbitration and obtained $16 million non-reversionary class settlement); *Donahue v. Everi Payments, Inc., et al.*, No. 2018-CH-15419 (Cook Cty., Ill. Cir. Ct.) (class counsel in action alleging disclosure of consumers' credit and debit card information on printed transaction receipts in violation of the federal Fair and Accurate Credit Transactions Act, obtained $14 million non-reversionary class settlement); *Owens, et al. v. Bank of America, N.A., et al.*, No. 19-cv-20614-MGC (S.D. Fla.) (class counsel in action alleging the improper assessment of overdraft fees when accounts were not actually overdrawn, obtained $4.95 million class settlement); *Liggio v. Apple Federal Credit Union*, No. 18-cv-1059-LO (E.D. Va.) (class counsel in action alleging the improper assessment of overdraft fees for "non-recurring" debit card transactions misclassified as "recurring" debit card transactions, obtained $2.7 million class settlement).

9.    My firm also represents investors in securities class actions in state and federal courts across the country.  *E.g.*, *In re Menlo Therapeutics Inc. Sec. Litig.*, Case No. 18CIV06049 (Cal. Sup Ct., San Mateo Cty.) ($9.5 million class

settlement on behalf of IPO investors); *In re EverQuote, Inc. Sec. Litig.*, (N.Y. Supreme, New York Cty.), Case No. 651177/2019 ($4.74 million class settlement on behalf of IPO investors); *Plymouth Cty. Retirement System v. Impinj, Inc., et al.*, Index No. 650629/2019 (N.Y. Sup. Ct., N.Y. Cty.) (co-lead counsel for plaintiff class of investors asserting Securities Act claims arising from initial and secondary public offerings, obtained aggregate $20 million class settlement); *In re PPDAI Grp. Sec. Litig.*, (N.Y. Sup. Ct., N.Y. Cty.) ($9 million settlement for investor class); *In re Altice USA, Inc. Sec. Litig.*, 711788/2018 (N.Y. Sup. Ct., Queens Cty.) ($4.75 million settlement for investor class); *Plutte v. Sea Ltd.*, No. 655436/2018 (N.Y. Sup. Ct., N.Y. Cty.) ($10.75 million settlement for investor class).

10.    And we frequently represent indigent litigants in civil rights and housing matters on a *pro bono* basis. *E.g.*, *Groover v. U.S. Corrections, LLC, et al.*, No. 15-cv-61902-BB (S.D. Fla. July 16, 2018) (representing plaintiff and putative class against country's largest private prisoner extradition companies in Section 1983 civil rights action alleging violations of the Eighth Amendment).

11.    Over the past five years alone, my firm has helped recover over $350 million in all-cash relief for the classes of consumers and investors that we have represented.

12.    Attached hereto as **Exhibit 1** is a current firm resume for Hedin Hall LLP.

5

## RELEVANT PPPA LITIGATION EXPERIENCE

13.     My firm and I have successfully litigated claims against numerous defendants for alleged violations of Michigan's PPPA, beginning in 2016 with the action titled *Edwards v. Hearst Communications, Inc.* in the Southern District of New York, where I served as one of plaintiff's counsel along with my co-counsel in this action at Bursor & Fisher, P.A.

14.     On May 29, 2018, shortly after Mr. Hall and I founded Hedin Hall, and nearly two years after the July 31, 2016 effective date of the Michigan legislature's amendment to the PPPA (an amendment which*, inter alia*, made "actual damages" a prerequisite to stating a claim and removed a prevailing plaintiff's entitlement to statutory damages), my firm initiated *Horton v. GameStop Corp.*, 380 F. Supp. 3d 679 (W.D. Mich. 2018), a PPPA class action alleging that the defendant had disclosed the plaintiff's and other Michigan residents' personal reading information between May 29, 2015 and July 31, 2016 (the effective date of the amendment to the PPPA) – in violation of the unamended version of the PPPA that existed up until July 30, 2016. The defendant moved to dismiss on the grounds that, *inter alia*, the complaint failed to state a claim for violation of the unamended PPPA because the case had been filed after the amendment's July 31, 2016 effective date.  In successfully defeating this motion, my firm obtained the first decision in the country holding that, regardless of the date on which a PPPA action

6

is commenced, "the unamended [PPPA] applies to . . . claims that accrued prior to July 31, 2016, and, consequently, [a] plaintiff [asserting such a claim] [is] not required to plead actual damages." *Horton*, 380 F. Supp. 3d at 683. The *Horton* decision paved the way for Plaintiffs' Counsel's successful prosecution of the instant action against KSE on behalf of the Settlement Class, because here, as in *Horton*, the Complaint alleges violations of the unamended, pre-July 31, 2016 version of the statute, arising from Defendant's disclosures of personal reading information that pre-dated the statutory amendment's July 31, 2016 effective date. Indeed, invoking the pre-July 31, 2016 version of the statute in this case enabled Plaintiffs to seek statutory damages for the putative class, without showing "actual damages," and thus was instrumental in securing the Settlement presently before the Court.

15.    After obtaining the *Horton* decision on September 28, 2018, my firm and co-counsel initiated numerous additional PPPA actions against publishers of written materials between May and June of 2019 (sometimes referred to as "wave two" of PPPA litigation), further refining our skills for prosecuting such claims and, in the process, prevailing on other important legal issues implicated by the statute. *E.g., Huguelet, et al. v. Maxim Inc.*, No. 19-cv-4452-ALC (S.D.N.Y., filed May 15, 2019); *Kokoszki v. Playboy Enterprises, Inc.*, No. 19-cv-10302-BAF-RSW (E.D. Mich., filed Jan. 30, 2019); *Chelone, et al. v. America's Test Kitchen*

*LP*, No. 2:19-cv-11757-TGB-MKM (E.D. Mich., filed June 19, 2019); *Lin v. Crain Commc'ns Inc.*, No. 19-cv-11889 (E.D. Mich., filed June 25, 2019); *Forton v. TEN: Publishing Media, LLC*, No. 1:19-cv-11814-JEL-PTM (E.D. Mich., filed June 19, 2019).

16.     For example, in *Lin v. Crain Communications, Inc.*, my firm brought the first ever PPPA class action against a Michigan-based defendant on behalf of a non-Michigan-resident plaintiff and a proposed nationwide class. Specifically, the complaint alleged that a Michigan-based company had disclosed, from its headquarters in Michigan, the personal reading information of the plaintiff (a resident of Virginia) and all of its other subscribers nationwide to third parties prior to July 31, 2016, in violation of the unamended version of the PPPA. The defendant moved to dismiss on the grounds that the PPPA only protects and is only enforceable by Michigan residents, to the exclusion of out-of-state residents – presenting an issue of first impression concerning the territorial reach of the PPPA. We defeated defendant's motion, and in so doing obtained the first decision in the country holding that the PPPA "allow[s] non-Michigan residents to pursue claims against Michigan resident-defendants."  *Lin*, 2020 WL 248445, at *4. Although the extraterritoriality issue in *Lin* does not directly bear on the claims alleged in this case, my firm's successful prosecution of the *Lin* action (together with our co-counsel) further cemented our ability to prevail on complex and novel issues under

the PPPA and strengthened both our knowledge of the statute and our reputation
litigating claims under it.

17.     In this "second wave" of PPPA litigation, which spanned from
September 2018 (when *Horton* was decided) through the end of July 2019, the
consensus across the federal judiciary and the plaintiffs and defense bars alike was
that the statute was governed by a three-year limitation period, and it was thus
universally understood at that time that claims for violation of the pre-amended
version of the statute would no longer be actionable as of July 31, 2019 (three
years after the amendment's effective date). *See Edwards*, 2016 WL 6651563, at
*1 (noting that "a three- year statute of limitations admittedly governs [the
plaintiff's PPPA] claims").

18.     Nonetheless, on June 15, 2021, nearly five years after the effective
date of the PPPA's amendment, and after performing an extensive pre-suit
investigation and an in-depth legal analysis of relevant issues, including the Sixth
Circuit's decision in *Palmer Park Square, LLC v. Scottsdale Insurance Company*,
878 F.3d 530 (6th Cir. 2017), my firm, together with our co-counsel in this case,
initiated this action, which alleges violations of the pre-amended version of the
statute that accrued between June 15, 2015 (*six* years prior to the filing of the
action) and July 30, 2016 – based on an argument developed by my firm that the
PPPA was actually subject to the six-year limitation period found in M.C.L. §5813,

rather than the three-year period found in M.C.L. § 5805(2) (which up until that point had been universally applied in every prior PPPA case).

19.     On November 24, 2021, the KSE moved to dismiss the complaint on the ground that, *inter alia*, Plaintiffs' claim was time-barred by section 5805(2)'s three-year limitation period. On February 15, 2022, following full briefing on the limitation-period question, the Court issued an opinion denying Defendant's motion to dismiss in full, rejecting defendant's argument that the three-year period governs PPPA claims and holding that the six-year limitation period found in Section 5813 governs such claims. *Pratt v. KSE Sportsman Media, Inc.*, 586 F. Supp. 3d 666, 673 (E.D. Mich. 2022) (holding that "[a] six-year statute of limitations applies to PPPA claims").

## THE INSTANT LITIGATION

20.     As discussed above, prior to initiating the instant action (or any of the other "third wave" PPPA cases), my firm and Class Counsel (together, "Plaintiffs' Counsel") performed a lengthy, several-months-long factual investigation into subscriber list disclosure practices in effect during the relevant pre-July 31, 2016 time period of KSE Sportsman Media, Inc. and other defendants.  This investigative work began in December 2020 when my firm reviewed and analyzed relevant legal authorities addressing Michigan's statutory scheme concerning limitation periods.  Due to the confidential nature of Defendant's alleged

disclosures, our pre-suit investigation into the facts underlying this case (as well as industry-wide list disclosure practices generally) was extensive and involved in-depth research into several publishing industry practices, including data appending and data cooperatives. Part of this research included locating and obtaining years' worth of archived versions of webpages containing statements made by Defendant and its affiliates concerning their data-sharing practices and practices of renting lists of its magazine subscribers, as well as historical copies of data cards reflecting such practices that were publicly accessible online prior to July 31, 2016.

## HEDIN HALL'S TIME AND COSTS EXPENDITURES

21.     My firm undertook this matter, as with each of the other PPPA cases outlined above, on a contingency basis.  My firm and I have devoted a significant amount of time to these matters, including to the investigation, preparation, prosecution, and resolution of the instant matter.

22.     The excellent result we obtained in this case, and the efficiency with which we obtained it, would not have been possible without the significant investments of time and other resources that we made towards the prosecution of the PPPA actions outlined above over the better part of the past decade, which provided us with the knowledge, experience, and well-developed body of PPPA jurisprudence necessary to achieve this Settlement.

23.     We will continue to spend time on future work in connection with the

fairness hearing, coordinating with JND, monitoring settlement administration, and responding to Settlement Class Member inquiries.

24.     Due to the commitment of time and capital investment required to litigate this action and the other PPPA actions outlined above, my firm had to forego other consumer class-action work.

25.     To date, my firm has expended $8,939.63 in out-of-pocket costs and expenses in connection with the prosecution of this case, including assisting in paying for full-day mediations with Chief Judge Rosen, Judge Holderman, and Judge Andersen.  Attached as **Exhibit 2** is an itemized list of those costs and expenses.  These costs and expenses are reflected in the records of my firm and were necessary to prosecute this litigation.  Cost and expense items are billed separately, and such charges are not duplicated in my firm's billing rates.

I declare under penalty of perjury that the above and foregoing is true and accurate. Executed this 17th day of October 2023 at Miami, Florida.

*/s Frank S. Hedin*
Frank S. Hedin

# Exhibit 1

# HEDIN HALL LLP

## FIRM RÉSUMÉ

With offices in Miami, Florida and San Francisco, California, Hedin Hall LLP represents consumers and shareholders in data-privacy, financial services, and securities class actions in state and federal courts nationwide.

Our firm prosecutes difficult cases aimed at redressing injuries suffered by large, diverse groups of people.  Over the past decade alone, our work has helped secure billions of dollars in relief for consumers and investors and facilitated important changes in business practices across a wide range of industries.

### Representative Matters

Notable examples of our work include:

Consumer & Data-Privacy Matters

- *Owens, et al. v. Bank of America, N.A., et al.*, No. 19-CV-20614-MGC (S.D. Fla.) (class counsel in overdraft fee class action, non-reversionary $4.95 million settlement pending final approval);

- *Liggio v. Apple Federal Credit Union*, No. 18-cv-1059-LO (E.D. Va.) (class counsel in overdraft fee class action, non-reversionary $2.7 million settlement granted final approval);

- *Olsen, et al. v. ContextLogic Inc.,* No. 2019CH06737 (Ill. Cir. Ct. Jan. 7, 2020) (class counsel in action alleging violation of Telephone Consumer Protection Act ("TCPA"), non-reversionary $16 million settlement finally approved);

- *In re Everi Holdings, Inc. FACTA Litigation*, No. 18CH15419 (Ill. Cir. Ct. Jan. 7, 2020) (class counsel in 14 related actions alleging violations of Fair and Accurate Credit Transactions Act against various casino entities and common payment processor, $14 million non-reversionary class settlement recently reached);

- *Chimeno-Buzzi v. Hollister Co.* (S.D. Fla.) (class counsel in action alleging violation of TCPA, non-reversionary $10 million settlement finally approved);

- *Farnham v. Caribou Coffee Co., Inc.* (W.D. Wisc.) (class counsel in action alleging violation of TCPA, non-reversionary $8.5 million settlement finally approved);

# HEDIN HALL LLP

- *Lin v. Crain Communications, Inc.*, No. 2:19-cv-11889-VAR-APP (E.D. Mich.) (counsel for putative nationwide class in action alleging violation of Michigan's Personal Privacy Preservation Act against Michigan-based publishing conglomerate);

- *Norberg v. Shutterfly, Inc.* (N.D. Ill.) (putative class action alleging the collection of individuals' immutable "scans of face geometry" in violation of Illinois' Biometric Information Privacy Act ("BIPA"));

- *Rivera v. Google, Inc.* (N.D. Ill.) (putative class action arising from Google's alleged collection of individuals' immutable "scans of face geometry" in violation of BIPA);

- *In re Facebook Biometric Privacy Litig.* (N.D. Cal.) (first-of-its-kind data privacy class action arising from Facebook's alleged collection of individuals' immutable "scans of face geometry" in violation of BIPA);

- *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litig.* (N.D. Cal.) (class action alleging claims in connection with the Volkswagen diesel-cheating scandal, resulting in over $17 billion recovery).

<u>Securities Matters</u>

- *City of Sterling Heights General Employees' Retirement System v. Prudential Financial, Inc.* (D. N.J.) ($33 million settlement for class of aggrieved investors);

- *Louisiana Municipal Police Employees' Pension Fund v. KPMG, LLP, et al.* (N.D. Ohio) ($32.6 million settlement for class of aggrieved investors);

- *Cyan v. Beaver County Employees Retirement Fund*, (U.S. Supreme Court) (contributed to *certiorari*, merits, and *amici* briefing in 9-0 plaintiffs' victory on issues of first impression pertaining to concurrent jurisdiction and dual sovereignty, the PSLRA and SLUSA, and the Securities Act removal bar);

- *Wiley v. Envivio, Inc., et al.* (Cal. Sup. Ct., San Mateo Cnty.) ($8.5 million settlement for class of aggrieved investors);

- *In re MobileIron Shareholder Litig.* (Cal. Sup. Ct., Santa Clara Cnty.) ($7.5 million settlement for class of aggrieved investors);

- *In re Model N Shareholder Litig.* (Cal. Sup. Ct., San Mateo Cnty.) ($8.55 million settlement for class of aggrieved investors);

- *Silverman v. Motorola, et al.* (N.D. Ill.) ($200 million settlement for class of aggrieved investors);

- *United Food and Commercial Workers Union Local 880 v. Chesapeake Energy Corp., et al.* (W.D. Okla.) (obtained multiple favorable precedent-setting decisions related to

# HEDIN HALL LLP

typicality, tracing, adequacy, materiality, and negative causation under the Securities Act of 1933);

- *Xiang v. Inovalon Holdings, Inc., et al.* (S.D.N.Y.) (obtained favorable precedent-setting decisions related to statute of limitations, falsity, causation, and materiality under the Securities Act of 1933);

- *Buelow v. Alibaba Group Holding Ltd., et al.* (Cal. Sup. Ct., San Mateo Cnty.) ($75 million settlement, obtained several favorable precedent-setting decisions related to statute of limitations, the relation-back doctrine, falsity, causation, and materiality under the Securities Act of 1933);

- *In re Herald, Primeo, and Thema Funds Sec. Litig.* (S.D.N.Y.) ($62.5 million settlement for victims of Madoff Ponzi scheme).

## Biographies of Principal Attorneys

<u>Frank S. Hedin</u>

Frank S. Hedin manages the firm's Miami office.  He is a member in good standing of the Florida Bar and the State Bar of California.  Mr. Hedin received his Bachelor of Arts from University of Michigan and his Juris Doctor, *magna cum laude*, from Syracuse University College of Law.  After graduating from law school, he served for fifteen months as law clerk to the Honorable William Q. Hayes, United States District Judge for the Southern District of California.  Prior to establishing Hedin Hall LLP, Mr. Hedin was a partner at a litigation boutique in Miami, Florida, where he represented both plaintiffs and defendants in consumer and data-privacy class actions, employment-related collective actions, and patent and trademark litigation, and served as head of the firm's class action practice.

<u>David W. Hall</u>

David W. Hall manages the firm's San Francisco office.  Before founding Hedin Hall LLP, Mr. Hall managed cases for one of the largest plaintiffs' firm in the United States, where he pioneered and developed, inter alia, the firm's state court Securities Act and data privacy

# HEDIN HALL LLP

practices. Earlier in his legal career, he served as judicial law clerk to the Honorable Irma E. Gonzalez, United States District Judge for the Southern District of California.  Mr. Hall is a graduate of the University of California, Hastings College of the Law, *cum laude*, and the New England Conservatory of Music.  At Hastings College of the Law, he served as Staff Editor of the Hastings Business Law Journal, teaching assistant in the Legal Writing & Research Department, and extern to the Honorable Joyce L. Kennard of the California Supreme Court.

**Firm Offices**

<u>Miami, Florida</u>

Frank S. Hedin
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131

Telephone:    (305) 357-2107
Facsimile:     (305) 200-8801
E-Mail:          fhedin@hedinhall.com

<u>San Francisco, California</u>

David W. Hall
Four Embarcadero Center, Suite 1400
San Francisco, California 94104

Telephone:    (415) 766-3534
Facsimile:     (415) 402-0058
E-Mail:          dhall@hedinhall.com

# Exhibit 2

**<u>Hedin Hall LLP: *Pratt v. KSE Sportsman Media, Inc.* Expenses thru 10/16/23</u>**

| Expense | Amount |
|---|---|
| Marketing costs and fees | $5,120.88 |
| Mediation | $3,818.75 |
| Total: | **$8,939.63** |